1

2

3

4

5

6

7

8                                   **UNITED STATES DISTRICT COURT**

9                                 **CENTRAL DISTRICT OF CALIFORNIA**

10

11 | BLACK LIVES MATTER LOS | Case No.: CV 20-5027 CBM (ASx) |

12 | ANGELES, *et al.*, | |
|     Plaintiff, | |

13 | | **ORDER RE: COURT'S RULING ON PLAINTIFFS' APPLICATION** |

14 | vs. | **FOR TEMPORARY RESTRAINING ORDER  [53][54]** |

15 | CIY OF LOS ANGELES, *et al.*, | |
|     Defendant. | |

16

17

18

19       Pending before the Court is Plaintiffs' Ex-Parte Application for Temporary

20 Restraining Order ("TRO") and Defendants' Request to Strike Plaintiffs'

21 Application for TRO and, in the alternative, for additional time to file opposition

22 no later than April 27, 2021.  (Dkt. 54.)

23                             **BACKGROUND**

24       This putative class action concerns the response of the Los Angeles Police

25 Department ("LAPD") to protests and demonstrations which occurred throughout

26 Los Angeles in the wake of the death of George Floyd.   Subsequently, Plaintiffs'

27 filed a TRO on June 24, 2020, seeking to enjoin LAPD from using projectiles or

28 baton strikes to disperse or control crowds, limit Defendants' cite and release time

1  frame to 15 minutes, limit detentions to no more than 30 minutes, and require

2  Defendants to adhere to CDC guidelines when keeping protestors held in buses.

3       Plaintiffs' filed this second TRO in light of recent protests in Echo Park that

4  occurred on March 25, 2021.  Plaintiffs allege LAPD "fired on non-violent

5  protestors with 40 mm and 37 mm weapons."[1]  Two weeks prior, at the Breonna

6  Taylor solidarity protest, Plaintiffs allege that LAPD struck a member of the press

7  in the back and as a result, he was rendered unconsciousness and suffered a

8  concussion.  Plaintiffs seek to enjoin the LAPD's use of 40mm and 37mm less-

9  lethal launchers in public demonstrations except when deployed by officers that

10  are properly trained.  Plaintiff also seek to restrict LAPD from aiming the weapons

11  at the upper bodies of demonstrators at close range within five feet.

12       On April 15, 2021, the Court held a status conference.  Subsequent to the

13  status conference, as ordered by the Court, Defendants submitted video evidence

14  showing how to load and use the 40mm less-lethal launcher and a video of officers

15  simulating a "skirmish line" while using the 37mm less-lethal launcher.

16  Defendants also submitted LAPD's Use of Force Tactics Directive, which includes

17  the Department's policy and protocols for using the 37mm and 40mm less-lethal

18  launchers.  (Dkt. 65.)  The Court also considered Plaintiffs' Supplemental filing, a

19  declaration of a journalist that who attended the Echo Park demonstration, that

20  was submitted after the status conference.  (Dkt. 68.)

21  **JURISDICTION**

22       The Court has jurisdiction over this action pursuant to 42 U.S.C. § 1983 and

23  28 U.S.C. § 1343.

24

25

26

27  _____

28  [1]  The 37mm Foam Baton Round consists of five foam rubber projectiles that are discharged at once. The 40mm Less-Lethal Launcher has a rifled barrel that uses a single foam projectile. (Exh. 3, p. 73.)

1

**LEGAL STANDARD**

2       The standard for issuing a TRO requires the party seeking relief to show (1)

3   that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable

4   harm in the absence of injunctive relief, (3) that the balance of equities tips in his

5   favor, and (4) that injunctive relief is in the public interest.  *See Winter v. Nat. Res.*

6   *Def. Council*, 555 U.S. 7, 20 (2008).  Under this standard, "serious questions

7   going to the merits and a balance of hardships that tips sharply towards the

8   plaintiff can support the issuance of a preliminary injunction, so long as the

9   plaintiff also shows that there is a likelihood of irreparable injury and that the

10  injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d

11  1127, 1135 (9th Cir. 2011) (internal quotations omitted).  Temporary restraining

12  orders "should be restricted to serving their underlying purpose of preserving the

13  status quo and preventing irreparable harm just so long as is necessary to hold a

14  hearing, and no longer."  *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1131

15  (9th Cir. 2006).

16

**DISCUSSION**

17  **A.      Request for Judicial Notice**

18       Plaintiffs' request that this Court take judicial notice of three exhibits: 1) An

19  Independent Examination report of the Los Angeles Police Department 2020

20  Protest Response, 2) A report prepared by the National Police Foundation, titled

21  "A Crisis of Trust," and 3) A report issued by the Los Angeles Police Department

22  titled "Safe LA 2020 Civil Unrest After Action Report."

23       Exhibit 1 is a report made available on the City of Los Angeles, City Clerk

24  website that analyzed LAPD's crowd control tactics and compliance with existing

25  departmental policies during the demonstrations resulting from the death of

26  George Floyd.  The report indicates that people were "struck in the face and head"

27  by 37 mm and 40 mm munitions, which caused "significant injuries."  Exhibit 2

28

3

1    summarizes findings and recommendations of LAPD's tactics and policies and

2    Exhibit 3 is a review of the LAPD's action after the June 2020 demonstrations.

3           The City of Los Angeles and Los Angeles Police Department are

4    government entities and the documents Plaintiffs attach as exhibits are publicly

5    available online.  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir.

6    2010) (holding that courts may take judicial notice of official information posted

7    on a government website if its accuracy is undisputed).  The Court **grants**

8    Plaintiffs' request to take judicial notice of Exhibits 1, 2 and 3.

9    **B.      Likelihood of Success on the Merits**

10          Fourth Amendment excessive force claims are analyzed under the

11   framework outlined by the Supreme Court in *Graham v. Connor*, 490 U.S. 386

12   (1989).  *Donovan v. Phillips*, 685 Fed. App'x. 611, 612 (9th Cir. 2017).  Under

13   *Graham*, all claims of excessive force by law enforcement should be analyzed

14   under the Fourth Amendment's "reasonableness" standard.  *Davis v. City of Las*

15   *Vegas*, 478 F.3d 1048, 1054 (9th Cir. 2007).  "This analysis requires balancing the

16   nature and quality of the intrusion on a person's liberty with the countervailing

17   governmental interests at stake to determine whether the force used was

18   objectively reasonable under the circumstances." *Id.* (internal quotation marks

19   omitted).

20          "Reasonableness" of a given use of force must be measured from the

21   perspective of a reasonable officer on the scene and must appreciate the "split-

22   second judgments" that officers must often make. *Graham*, 490 U.S. at 396.  The

23   Ninth Circuit has held that it was unreasonable to use pepper spray and projectiles

24   against individuals "who were suspected of only minor criminal activity, offered

25   only passive resistance, and posed little to no threat of harm to others." *Nelson v.*

26   *City of Davis*, 685 F.3d 867, 884-87 (9th Cir. 2012)

27          The Plaintiffs provide evidence in the form of declarations and videos that

28   LAPD likely violated Plaintiffs' Fourth Amendment rights by using less-lethal

launchers (37mm and 40mm) against Plaintiffs who state that they were peacefully demonstrating (or reporting on the demonstrations) at Echo Park on March 25, 2021, and the Breonna Taylor solidarity protest on or around March 11, 2021, when they suffered injuries from less-lethal projectiles.[2]  Dkt. No. 58-7 ¶ 2, Exh. 13, 14 (shot by a "less lethal projectile" in the right arm between the elbow and shoulder and partner was shot in the abdomen "at close range"); Dkt. No. 58-3 ¶¶ 2-3, Exh. 7 (shot by a "less-lethal munition" in the back while filming the demonstration and walking away from the area); Dkt. No. 58-4 ¶ 3, Exh. 8, 9 (LAPD firing "less lethal projectiles" at "less than a two feet distance" of the protestors "aim[ed] directly at [their] upper body); Dkt. No. 58-8 ¶ 2, Exh. 15 (shot by a "less lethal projectile at the left side of my abdomen at close range").

Defendant's Use of Force policy states that Less-Lethal force options are only permissible when:

> An officer reasonably believes that suspects or subjects in a crowd are *violently resisting* a lawful order to disperse or *poses an immediate threat of violence or physical harm*. . . . [M]ere non-compliance do[es] not alone justify the use of Less-Lethal force. . . .

LAPD Use of Force-Tactics Directive.

The recommended deployment range for the 37mm launcher is 10 feet to 50 feet from the front of the crowd and the recommended deployment range for the 40mm is five feet (up to 110 feet for the effective deployment range).  *Id.*  The

---

[2]  Exhibit 4 is a Declaration of Christina Astorga who participated in a demonstration that occurred on August 21, 2020, who received injuries as a result from the officers use of the less-lethal launchers and Exhibit 5, a video of the demonstration which depicts the officers using less-lethal projectiles.

The Declaration of Andrew Guerrero, who participated in a downtown Los Angeles protest on August 26, 2020, declares that he was injured from the officers' use of the less-lethal munition and further states LAPD fired the launcher without "providing any opportunity to disperse." (Dkt. No. 58-6 ¶ 3, 4)

1    video evidence shows that the less-lethal launchers were used in close range of the

2    Plaintiffs, which likely caused significant injuries.  The Court finds Plaintiffs have

3    shown a likelihood of success on their Fourth Amendment claim.

4    **C.      Irreparable Harm**

5              Plaintiffs must demonstrate that they are likely to suffer irreparable harm in

6    the absence of an injunction.  Plaintiffs argue that an injunction is warranted "in

7    light of the potential for serious injuries the LAPD continues to cause" and the

8    "potential[] lethal injuries."

9              Irreparable injury is not presumed by the Court upon a showing of a

10   likelihood of success on the merits.  *Herb Reed Enters., LLC v. Fla. Ent. Mgmt.*,

11   736 F.3d 1239, 1248-49 (9th Cir. 2013).  A party seeking injunctive relief must

12   proffer evidence sufficient to establish a likelihood of irreparable harm.  *Id.* at

13   1251.  "To demonstrate irreparable injury as to their Fourth Amendment injury

14   here, Plaintiffs must demonstrate a likelihood, not a mere possibility, of future

15   irreparable injury of the same character."  *Downes-Covington v. Las Vegas Metro.*

16   *Police Dep't*, 2020 U.S. Dist. LEXIS 240330, at *35 (D. Nev. Dec. 17, 2020).

17             Here, Plaintiffs provide evidence of past and recent demonstrations since

18   the death of George Floyd involving Officer Derek Chauvin, in which Defendants

19   used less-lethal munition on protestors who do not appear to be violently resisting

20   or posing an immediate threat of violence or physical harm.  Plaintiffs state that

21   the trial of Derek Chauvin is expected to reach a verdict between April 19, 2021,

22   and April 23, 2021, and as a result, Plaintiffs will plan protest and demonstrations

23   that will likely be widespread and substantial.  (Decl. Abdullah ¶ 3.)  As of the

24   writing of this Order, closing arguments in the Derek Chauvin case are set for

25   today, Monday, April 19, 2021.  It is reasonable to believe that demonstrations will

26   continue.  The Court finds that Plaintiffs have shown a likelihood of irreparable

27   injury.  *See, e.g., Abay v. City of Denver*, 445 F. Supp. 3d 1286, 1294 (D. Colo.

28   2020) (granting-in-part a TRO and enjoining officers from discharging Kinetic

1  Impact Projectiles ("KIPs") and all other "non- or less-lethal projectiles" to target

2  the head, pelvis, or back, and from shooting KIPs indiscriminately into a crowd).

3  **D.      Balance of the Equities and the Public Interest**

4           In their Motion to Strike, Defendants argue that enjoining officers from

5  using crowd control tools to protect the rights of those who wish to lawfully

6  exercise their First Amendment rights, as well as the safety and security of the

7  public, is harmful.  Plaintiffs assert the "balance of interest" tips strongly in their

8  favor because Defendants' "indiscriminate" use of less-lethal launchers are

9  commonly fired on bystanders or non-violent and distant protestors.[3]

10          When the government is a party, these last two factors of the standard for

11  issuing a TRO merge.  *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th

12  Cir. 2014).  Plaintiffs must identify the harm that a TRO might cause a Defendant

13  and weigh it against the injury to a Plaintiffs.  *Lavan v. City of Los Angeles*, 2011

14  U.S. Dist. LEXIS 46030, at *13 (C.D. Cal. Apr. 22, 2011).  As to public interest,

15  "it is always in the public interest to prevent the violation of a party's

16  constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)

17          Here, Plaintiffs' TRO does not discuss potential harm to Defendants, but the

18  Court considered potential harm to Defendants in issuing this order.  There is a

19  strong interest in preserving a person's First Amendment rights, including the right

20  of peaceful assembly.  On balance, Plaintiffs' requested relief is tailored to

21  restricting LAPD's use of less-lethal launchers on peaceful protestors and those

22  who are documenting the demonstrations.  Plaintiffs' tailored request does not

23  seek to ban LAPD's crowd control tactics; their request limits LAPD's use of the

24  launchers in order to ensure that the safety of the protestors and the officers can

25  both be achieved.

26

27  [3]  *See* Los Angeles Times, LAPD Projectiles Fired at Lakers Crowd Causes Severe Injuries (Oct.
28  15, 2020), *available at:* https://www.latimes.com/california/story/2020-10-15/lapd-projectiles-gruesome-injuries-lakers-celebration.

**CONCLUSION**

Accordingly, Defendants' Request to Strike Plaintiffs' TRO and, in the alternative, additional time to file opposition is **DENIED**.  The Court **GRANTS-IN-PART** Plaintiffs' TRO and orders as follows:

- LAPD is restricted from using the 40mm and 37mm launchers in public demonstrations except by officers who are properly trained and certified to use the less-lethal launchers;

- LAPD must give a verbal warning to disperse consist with the LAPD use of force directive and a reasonable opportunity to comply before deploying a 40mm or 37mm launcher, except when an officer is attacked;

- The 40mm and 37mm less-lethal launcher may only be used on persons who pose a threat of serious bodily harm to others, including law enforcement;

- The 40mm launcher must not be used to target the head, neck, face, eyes, or spine of a person; and

- LAPD is restricted from aiming the launchers at the upper bodies of demonstrators and within five feet.

**IT IS SO ORDERED.**

DATED: April 19, 2021

CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE