MICHAEL N. FEUER, City Attorney – SBN 111529
KATHLEEN A. KENEALY, Chief Deputy City Attorney – SBN 212289
SCOTT MARCUS, Senior Assistant City Attorney – SBN 184980
CORY M. BRENTE, Senior Assistant City Attorney – SBN 115453
GABRIEL S. DERMER, Assistant City Attorney – SBN 229424
GEOFFREY R. PLOWDEN, Deputy City Attorney – SBN 146602
200 North Main Street, 6th Floor, City Hall East
Los Angeles, CA 90012
Phone No.: (213) 978-7038  Fax No.: (213) 978-8785
Email: geoffrey.plowden@lacity.org

*Attorneys for Defendants* CITY OF LOS ANGELES and CHIEF MICHEL MOORE

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLACK LIVES MATTER LOS ANGELES et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES, et al.,<br><br>Defendants. | Case No. 2:20-cv-05027 CBM (ASx)<br><br>**DECLARATION OF ROGER MURPHY IN SUPPORT OF DEFENDANTS' MOTION TO (1) DISSOLVE OR CLARIFY TEMPORARY RESTRAINING ORDER IN PART, (2) IN THE INTERIM, TO STAY TEMPORARY RESTRAINING ORDER IN PART, OR (3) IN THE ALTERNATIVE, TO STAY TEMPORARY RESTRAINING ORDER IN PART PENDING EMERGENCY APPELLATE RELIEF**<br><br>Judge: Hon. Consuelo B. Marshall<br>Hearing Date: Not later than April 22, 2021, per Fed. R. Civ. P. 65(b)(4) |

I, ROGER MURPHY, declare:

1. I am employed by the City of Los Angeles as a Lieutenant with the Los Angeles Police Department ("LAPD"). My current assignment is the Lieutenant of the K-9 Unit of the Metropolitan Division and I have held this position for two months. Prior to this assignment, I was assigned to Metropolitan's B Platoon for 14 years. I am one of the Los Angeles Police Department's designated experts with regard to the use of Less Lethal Munitions in crowd control situations.

2. I have over 35 years of experience as a police officer. My career in law enforcement began in 1985 when I joined the Monterey Park Police Department. In 1990, I joined the Los Angeles Police Department ["LAPD"]. I have participated in many major public demonstrations in my career, including the 1992 Rodney King demonstrations, the 2000 DNC demonstration, the 2014 Ferguson demonstration in Los Angeles as well as the George Floyd protests of 2020. I assisted in the planning and organization of the department's response to many of those public demonstrations, and supervised and deployed in the field in those responses throughout the City of Los Angeles. I am readily familiar with the tools and tactics utilized by the LAPD, as well as the training and policies associated with the utilization of those tools and tactics, including Less Lethal Munitions [LLMs]. I participated in the first use of the first use of the 37mm launcher and beanbag shotgun in a crowd control situation as a patrol officer in the early 1990s, in which a crowd of over 500 persons was effectively dispersed within five minutes. I have taught an excess of 12,000 law enforcement officers in the proper deployment of Less Lethal Munitions ["LLMs"] and Mobile Field Force tactics from various law enforcement agencies including the LAPD, Orange County Sheriff's Department, California National Guard and other smaller law enforcement agencies. I went through the original Mobile Field Force ["MFF"] training in 1992 following the Los Angeles demonstrations and assisted in developing the most recent MFF training.

3. I have reviewed the Plaintiffs' *Ex Parte* application for a Temporary

Restraining Order and Preliminary Injunction, as well as the accompanying Points and Authorities and declarations filed in support thereof. I have also reviewed the Court's Order RE: Court's Ruling on Plaintiffs' Application for Temporary Restraining Order.

4. The language contained in the second, third and fifth bullet points of this Court's Temporary Restraining Order ["TRO"] eliminates the effectiveness of both the 40mm and 37mm launcher. Law enforcement is required to maintain the balance between citizens' rights to exercise their free speech in public demonstrations and the safety of the public. When demonstrations are peaceful, law enforcement stays out of the way of the demonstration, and remains in the area to ensure the rights of the demonstrators are not impeded. When persons intent on violence insert themselves into otherwise peaceful protests, law enforcement officers may use the 40mm launcher to effectively deal with those persons, while allowing the peaceful demonstrators to continue unhindered. When demonstrators become violent, or large numbers of people begin looting or setting fire to property, then the 37mm becomes an effective tool, as it moves a large crowd out of an area and enables law enforcement to disperse the crowd, thereby protecting persons and property from further destruction. This Court's TRO eliminates the ability of law enforcement to effectively use these tools for these purposes.

5. Following the 1992 Rodney King demonstrations in Los Angeles, which stemmed from the jury verdict in the trial of the officers accused of using excessive force against Rodney King and the Christopher Commission's finding regarding the lack of mid-level use of force options, the Department has invested substantial time and resources in improving its ability to effectively manage public demonstrations and reduce harm to persons and property that may accompany such demonstrations. Since 1992, LAPD's MFF training has been built around its primary and most effective crowd dispersal tool—the 37mm launcher. The purpose of the 37mm is to reduce direct contact between the crowd and officers thus reducing the need for officers to directly physically engage with the crowd.. The 37mm launcher serves as a de-escalation tool,

giving both sides time to consider their options and hopefully result in compliance with the lawful orders of law enforcement. Without the 37mm, and with the restrictions imposed on the 40mm by this Court, officers are limited to the bean bag shotgun and the baton to deal with persons in crowds who threaten violence or violently resist arrest. The baton requires officers to come in close contact with the crowd to physically engage with the threatening persons. This close contact with the crowd can result in escalated tensions. LAPD has spent the past 27 years working to deescalate crowd control encounters and reduce the use of police batons in public demonstrations. The Court's TRO, as currently worded, will necessarily result in an increase in direct contact between officers and the crowd and effectively limits officers' crowd control tools to the use of a baton and increases the likelihood of injuries to officers and members of the crowd. Conversely, the 37mm effectively allows officers to disperse a violent crowd from a distance thereby minimizing the need for direct physical contact with the crowd.

  6. Per LAPD training guidelines, 37mm less-lethal munitions may be used only when "[a]n officer reasonably believes that suspects or subjects in a crowd are violently resisting a lawful order to disperse or pose an immediate threat of violence or physical harm," and then may only be skip-fired at the ground 5 to 10 feet in front of the crowd after an order to disperse has been given—unless officers or other persons are attacked and must respond to one or more suspect's actions. The 37mm requires incident commander authorization before it can be deployed. It is important to note that the 37mm is not a target-specific LLM, in other words it is not aimed at a particular person, but is aimed at the ground in front of a crowd meeting the Department's criteria and the five foam-rubber discs that are discharged bounce up and strike members of the crowd.

  7. Per LAPD policy, 40mm less-lethal munitions may be used only when "[a]n officer reasonably believes that a suspect or subject is violently resisting arrest or poses an immediate threat of violence or physical harm," and then should be aimed at "the navel area or belt line" or "a leg, arm, or hand" of a person five feet to 110 feet from the

officer, with a warning first—if feasible.  The advantage of the 40mm is its accuracy.  The 40mm launcher is equipped with a site that displays a red dot on its target. This device is effective up to 110 feet.  It is important to note that the 40mm LLM is not a crowd control or crowd dispersal LLM.  It is a target-specific LLM, which means it is specifically aimed at a particular person whose conduct or behavior meets the criteria set forth above.  It is not designed or used for crowd control or crowd management. Rather, it is designed and used to address specific identifiable threats to officers and members of the public, and those threatening individuals are often located within the crowd.

     8. Since the civil unrest events of the summer of 2020, many LAPD officers have received training in all three LLMS—beanbag shotgun, 40mm launcher, and 37mm launcher and their use specific to crowd control situations.

**Second Bullet Point of the TRO**

     9. With respect to the Court's second bullet point, which reads as follows:

> "LAPD must give a verbal warning to disperse consist[sp] with the LAPD use of force directive and a reasonable opportunity to comply before deploying a 40mm or 37mm launcher, except when an officer is attacked."

The 40mm launcher is a target-specific tool, and is not used to disperse a crowd. Requiring a dispersal order before it is used suggests that it would have a role in dispersing a crowd, which it does not.

     10. A dispersal order requires everyone in the crowd to leave an area.  Before a dispersal order is given, the LAPD must declare an unlawful assembly.  This Court's TRO can be read to limit law enforcement's ability to use the 40mm LLM to effectively deal with violent persons unless an entire demonstration has been declared unlawful.

     11. Additionally, although it may not be the Court's intention, the order can be read to prohibit the use of the 40mm in a situation where persons in a crowd control situation are being actively assaulted but the Department has not yet declared the assembly to be unlawful and given an order to disperse.  This limitation, intentionally or

v

unintentionally, puts officers and members of the public at risk. For example, officers in a crowd control situation see certain individuals in the crowd attacking and physically assaulting another individual in the crowd. Under the Court's order, as written, officers appear to be prohibited from targeting the attackers with 40mm launcher unless the Department had first declared the entire assembly to be unlawful and given an order to disperse. This seems contrary to public safety and effectively eliminates the Department's ability to protect individuals who are being violently assaulted.

**Third Bullet Point**

12. With respect to the Court's third bullet point, which reads as follows:

    *"The 40mm and 37mm less-lethal launcher may only be used on persons who pose a threat of serious bodily harm to others, including law enforcement."*

Per LAPD policy, police officers can use the 40mm launcher when a suspect or subject is *violently resisting arrest or posing a threat of violence or serious physical harm*. The 40mm LLM is an intermediate force option. The Court's order eliminates the language relating to persons who are violently resisting arrest or posing a threat of violence. The standard used by the Court, restricting use of the 40mm to persons who pose a threat of "serious bodily harm", is vague and can be interpreted as essentially the same as the standard for lethal force, which is lawfully permitted when a person poses a threat of "serious bodily injury or death". It is unclear what the difference is between "serious bodily injury" and "serious bodily harm". If a police officer observes an imminent threat of serious bodily harm to himself or others, the officer may lawfully and reasonably opt for lethal force to protect human life, rather than a less lethal tool.

13. LAPD uses the 37mm launcher to disperse large crowds. It is not a target-specific tool. By requiring law enforcement personnel to first make a determination that the crowd is threatening serious bodily harm, the Court has restricted law enforcement's ability to use the tool for its intended purpose—to disperse a crowd which contains individuals who are threatening violence or violently resisting arrest.

vi

**Fifth Bullet Point**

14. With respect to the Court's fifth bullet point, which reads as follows:

> *"LAPD is restricted from aiming the launchers at the upper bodies of demonstrators and within five feet."*

Per LAPD policy, 37mm launchers are never to be aimed at any portion of a person. Rather, they are aimed at the ground, and the five foam-rubber discs that are discharged are skipped off the ground in front of the crowd. By contrast, the 40mm LLM is a target-specific LLM which is aimed at a particular person. The LAPD trains its officers not to target the head, neck, spine, chest, groin or kidneys. They are permitted to target the belt area and abdomen. It appears from this order that the Court is restricting an officer's ability to aim the weapon as trained.

I declare under penalty of perjury under the laws of the United States and State of California that the foregoing is true and correct. Executed on April 20, 2021 in Los Angeles, California.

_____
Roger Murphy, Lieutenant