Cynthia Anderson Barker, SBN 75764
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
t. 213 381-3246  f. 213 381-3246
e. cablaw@hotmail.com

Paul Hoffman, SBN 71244
Michael D. Seplow, SBN 150183
Aidan McGlaze, SBN 277270
John C. Washington, SBN 315991
SCHONBRUN, SEPLOW, HARRIS,
HOFFMAN & ZELDES LLP
200 Pier Avenue, Suite 226
Hermosa Beach, California 90254
t. 310 396-0731; f. 310 399-7040
e. hoffpaul@aol.com
e. mseplow@sshhzlaw.com
e. amcglaze@sshhzlaw.com
e. jwashington@sshhlaw.com

Barrett S. Litt, SBN 45527
Lindsay Battles, SBN 262862
KAYE, MCLANE, BEDNARSKI & LITT
975 E. Green Street
Pasadena, California 91106
t. 626 844-7660 f. 626 844-7670
e. blitt@kmbllaw.com
e. lbattles@kmbllaw.com

Pedram Esfandiary, SBN 312569
e. pesfandiary@baumhedlundlaw.com
Monique Alarcon, SBN 311650
e. malarcon@baumhedlundlaw.com
Bijan Esfandiari, SBN 223216
e. besfandiari@baumhedlundlaw.com
R. Brent Wisner, SBN 276023
e. rbwisner@baumhedlundlaw.com
BAUM, HEDLUND, ARISTEI &
GOLDMAN, P.C.
10940 Wilshire Blvd., 17th Floor
Los Angeles, CA 90024
t. 310 207-3233 f. 310 820-7444

Attorneys for Plaintiffs
Additional Counsel on Next Page

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| BLACK LIVES MATTER LOS ANGELES, et al.,<br><br>PLAINTIFFS,<br><br>v.<br><br>CITY OF LOS ANGELES, et al.,<br><br>DEFENDANTS. | Case No.: 2:20-cv-05027 CBM-AS<br><br>**OPPOSITION TO DEFENDANTS' EX PARTE APPLICATION TO DISSOLVE, STAY OR MODIFY THE TEMPORARY RESTRAINING ORER**<br><br>Date and Time: TBA<br>Courtroom: 8B |

Carol A. Sobel, SBN 84483
Katherine Robinson, SBN 323470
Weston Rowland, SBN 327599
LAW OFFICE OF CAROL A. SOBEL
1158 26th Street, #552
Santa Monica, CA 90403
t. 310 393-3055
e. carolsobel@aol.com
e. klrobinsonlaw@gmail.com
e. rowland.weston@gmail.com

Colleen Flynn, SBN 234281
LAW OFFICE OF COLLEEN FLYNN
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
t. 213 252-9444
r. 213 252-0091
e. cflynn@yahoo.com

Matthew Strugar, SBN 232951
LAW OFFICE OF MATTHEW STRUGAR
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90039
t. 323 696-2299
e. matthewstrugar@gmail.co

Jorge Gonzalez, SBN 100799
A PROFESSIONAL CORPORATION
2485 Huntington Dr., Ste. 238
SAN MARINO, CA 91108-2622
t. 626 328-3081
e. jgonzalezlawoffice@gmail.com


Olu Orange, SBN 213653
Orange Law Offices
3435 Wilshire BLvd., Ste. 2910
LOS ANGELES, CA. 90010-2015
T. 213 736-9900
f. 213 417-8800
e. o.orange@orangelawoffices.com

## I. INTRODUCTION

Defendants' request for reconsideration of the Court's Temporary Restraining Order ignores the evidence before the Court, the LAPD's own policies and the extensive reports recently published documenting widespread problems with the LAPD's policing of last Spring's demonstrations and the misuse of the projectile launchers covered by the Court's Order. There is no basis to change or modify the Order before the May 3, 2021 preliminary injunction hearing.

First, Plaintiffs submitted extensive documentation, including videos, evidencing the repeated misuse of these weapons by officers. Some of this evidence is as recent as March 25, 2021. Defendants do not even attempt to address this evidence.

Second, Lt. Murphy's declaration is in conflict with the LAPD's own more restrictive policies. It is not this Court's obligation to sort out the disarray within the Department over the limitations on the use of these weapons. Most of what is in this Court's Order is covered by LAPD's policies. The problem is that LAPD officers lack the training and discipline to abide by those policies. Requiring the LAPD to operate within its own policies is a strong basis for emergency relief, not a reason to modify the Court's Order. To the extent this Court's Order imposes limitations beyond the LAPD's own policies, these additional temporary restrictions are fully justified by the evidence of threatened injury before the Court.

Finally, this Court's Order is supported by three recent reports examining the LAPD response to the protests last Spring. As the Chaleff Report made clear, the LAPD lacks the training and supervision to use these weapons in a crowd control setting. If the LAPD remedies its internal problems and can convince the Court that it can deploy these weapons in a lawful manner, there will be a time when the Court's intervention is no longer needed. That time has not come yet.

Defendants complain that Plaintiffs should have brought their Application sooner but they brought their Application within about two weeks of the March 25th Echo Park incident and less than a week after the release of the last two reports from the LAPD and the Police Foundation, providing support for the relief requested of this Court.[1] Thus, this Application is timely.

## II. THE COURT'S ORDER IS SUPPORTED BY THE EVIDENTIARY RECORD AND LOS ANGELES POLICE DEPARTMENT POLICY

The Court's Order granting Plaintiffs' request for a Temporary Restraining Order pending the hearing on a Preliminary Injunction provided limited relief on five points. Defendants now seek to dissolve or stay the entire Order, or modify it to include only narrower versions of the second, third and fifth points. As issued, the Court's Order, for the most part, does no more than require compliance with Defendants' own policies.

### A. The Court's Order Did Not Effectively Ban the 37mm Launcher

To be clear, the Court did not ban the use of the 37 mm weapon. Rather, that was the result of a Directive issued by Chief Moore and announced before the Police Commission on April 20, 2021.[2] All the Court required is that the 37mm Launcher not be deployed at the upper body, or at a distance of less than five feet from the target. Dkt. 71, p. That is also what LAPD policy requires. *See* Pl. Ex. 3, p. 73 ("Safe LA") ("The foam baton rounds are skip fired in front of the crowd and are not fired directly at an individual.")

While LAPD policy restricts use of the 37mm Launcher as a target-specific weapon, Plaintiffs' evidence establishes that is not how it was used. Officers were

---

[1] This addresses the Court's conclusion in the initial denial of a TRO that it was concerned there was a lack of evidence the LAPD would engage in such abuses again.

[2] *See* LAPD halts use of certain projectile weapons at protests - Los Angeles Times (latimes.com), April 21, 2021

2

repeatedly documented deploying the 37mm weapon at extremely close range and aimed directly at the upper body of the declarant as recently as the Echo Park protests late last month, causing large wounds close to the heart area. *See* Pl. Vol. III: Monterrosa Decl. and Exhibits [Dkt. 68-1]; Barbadillo Decl. and Ex. 8, 9 (video) [Dkt. 58-4]; Astorga Decl. and Ex. 4 and 5. [Dkt 58-2] (All videos filed at Dkt. 59)

According to the LAPD's After-Action Report, "Safe LA," examining the LAPD's response to the Floyd protests last Spring, an updated Use of Force Directive was issued in September 2020. The Directive provided that:

> Less-lethal force options, including the beanbag shotgun, shall not be used for a suspect or subject who is passively resisting or merely failing to comply with commands. Verbal threats of violence or mere non-compliance do not alone justify the use of less-lethal force.

*Safe LA After Action Report*, Pl. Ex. Vol. II, Ex. 3, p. 80 and n.32. Although this language issued in a directive on the use of beanbag weapons, it is intended to be applicable to any "less-lethal force option." *Id.* Each of Plaintiffs' declarants in support of the TRO application averred that they did nothing justifying use of a less-lethal force option. *See e.g.,* Astorga shot at close range as she argued with an officer, armed only with a cell phone. Dkt. 58-2 [Pl. Vol. III, Astorga, Ex. 4, 5.

### B. The Requirement of Trained and Certified Personnel

The Court directed persons be "properly trained and certified." Defendants want the Court to amend the first point in the Order to require only that personnel completed department training on the weapons. Under Defendants' proposed language, would it be sufficient to count training before the Floyd Protests last Spring? If so, that would just reinforce the deficiencies identified in the Reports before the Court.

3

The Court ordered nothing more than what all three reports on the Floyd Protests concluded was necessary. Each report came to the same conclusion: prior training was inadequate. As the Chaleff Report found, LAPD officers were only required to be trained once on the use of 40 mm weapons and most officers received extremely limited and insufficient training on these weapons in 2018. Pl. Vol. I, Ex. 1, p. 45 (pt. 39-42). The Chaleff Report's findings were echoed by those of the Police Foundation in its report for the Los Angeles Police Commission, "A Crisis of Trust." The Police Foundation noted that "[s]ome LAPD personnel [lacked] contemporary training on … the use of less-lethal instruments. Vol. I, Ex. 2, p.7 (Finding 1.4). As a result, the use of less-lethal weapons was found to be "inconsistent." *Id.* (Finding 1.3). In its own report, the LAPD recognized the need for regular training and "[a] clear understanding regarding when to deploy less-lethal and the level of approval necessary should be reiterated and clarified to avoid confusion. … Officers trained in less-lethal should attend annual weapons manipulation training." Vol. III, Ex. 3, pp. 115-116.

The consequence of insufficient training and "inconsistency" here was serious injuries to Plaintiffs and others and the ongoing threat of future when they demonstrate again. In addition to the serious head and face injuries to Plaintiffs shown in the Complaint, others have now filed lawsuits showing less-lethal weapons deployed in violation of constitutional standards.[3] *See* Ex. 18, 19.

The requirement to train and certify personnel does not impose a significant burden, if any, on Defendants. In September 2020, the Department began additional training on the use of the 37mm launcher and the 40mm launchers. As of 2021, the 40mm Less-Lethal Launcher is included in the yearly firearm

---

[3] *See e.g., CJ Montano v. City of Los Angele, et al.,* Case 2:20-cv-07241 CBM AS, Dkt. 1 Filed 08/12/20 (photo of head injury at p. 16); *Deon Jones v. City of Los Angeles, et al.,* Case 2:20-cv-11147-SVW-SK, Dkt.1 Filed 12/09/20 (photo of head injury at p. 6)

qualification requirement. *Id.* at p.81. It is not clear what, if any, training has been instituted on the use of the 37mm Launcher. At a minimum, the Court's Order is consistent with the LAPD's new requirement that an individual qualify annually on the 40mm weapon and the recommendations in its After-Action report.

### C. Current LAPD Policy Requires A Warning Before Use of the 40mm

Defendants object to the Court's second point, requiring a warning before any less-lethal weapons are launched at protestors and seek to limit a warning to use of the 37mm weapon since the proposed order describes firing projectiles at the ground after a warning. The 40mm weapon is only a target-specific weapon.

Defendants' proposed language is contrary to LAPD policy, which requires a warning before use of the 40mm Launcher. Ex. 20 (available on the LAPD's website at tac-dir-17-40mm-launcher.pdf (lapdonline.org).

> An officer shall, when feasible, give a verbal warning prior to using the 40mm LLL to control an individual. The warning is not required when an officer is attacked and must respond to the suspect's actions. Additionally, if a tactical plan requires the element of surprise to stabilize the situation, a warning is not required. Examples of this would be a hostage situation or a subject threatening suicide. However, officers are reminded that the surprise/tactical element must still be needed at the actual time the 40mm LLL is fired. The verbal warning should include a command and a warning of potential consequences of the use of force. The command should be similar to "drop the weapon" or "stop what you are doing" followed by a warning similar to "or we may use the 40mm, and that may cause you injury." The use or non-use of the warning shall be documented.

*Id.* These warnings are essential given the evidence of misuses of these weapons before the Court.

### D. The Restriction on Aiming at Upper Bodies and At a Distance of No Less Than Five Feet Is Consistent with LAPD Policy

The LAPD Use of Force – Tactics Directive No. 17 advises that the 40mm weapon "primary target area is the navel area or belt line." Ex. 20, p. 5. If shots to this area are "do not appear to be effective," then "a leg, arm or hand" may be

targeted as a "viable alternative." The LAPD policy is that "Officers shall not target the head, neck, spine, chest, groin or kidneys." *Id.* Because LAPD bans aiming at the upper torso (chest and kidney), the request to dissolve, stay or modify the fifth element of the TRO must be denied.

### III. DEFENDANTS' ARGUMENTS TO DISSOLVE THE TRO ARE UNAVAILING

#### A. Plaintiff's Request for a TRO Was Timely.

Defendants' timeliness argument ignores Plaintiffs evidence of the LAPD's abuses of First Amendment rights at the Breonna Taylor protest on March 11, 2021 in Hollywood and the Echo Park homelessness protests on March 25, 2021.[4] This is particularly important in light of the ongoing protests about police misconduct with each new incident around the country.

#### B. Dissolving or Changing the Court's Order is Otherwise Unwarranted

Defendants' federalism concerns are unsupported. *See* Dkt. 75-1 at 14. *Belknap v. Leary*, 427 F.2d 496, 498 (2d Cir. 1970), has no bearing on this case. In *Belknap*, the Second Circuit found that police inaction did not warrant an injunction because there was not "a continuation of police failure . . ." *Id.* at 498. As the court held, if there were a continuation, this *would* justify the injunction. *Id.* Instead, it was only a "single . . . failure" which did not suggest any likelihood that protestors' constitutional rights would be violated again. *Id.* at 499. *See Hull v. Petrillo*, 439 F.2d 1184, 1189 (2d Cir. 1971) ("Though the court in *Belknap* may well have been correct in concluding that a problem no longer existed, there is no basis in the record" here for the conclusion). The evidence before the Court demonstrates that this is a continuing problem, and not a single incident. The abuses have continued,

---

[4] This addresses the Court's conclusion in its initial denial of TRO, that it was concerned there was a lack of evidence the LAPD would engage in such abuses again.

even after three investigations confirmed the systemic problems within the LAPD that resulted in these use of force abuses. Absent relief, the abuses will continue and protestors will be injured, as they continue to be.

Defendants' suggestion that they cannot be enjoined from using excessive force against protestors because of *City of L.A. v. Lyons*, 461 U.S. 95 (1983), is plainly wrong. Dkt. 75-1 at 15-16. *Lyons* held there was no real or immediate threat that any particular motorist would be stopped for a traffic offense and then illegally choked into unconsciousness without provocation. *Id.* at 105. Plaintiffs and the class they represent intend to protest in the same circumstances for which Defendants have abused these weapons and caused injury to protestors.

There is ample, essentially uncontested evidence that the Defendants are continuing to engage in these abuses. As demonstrated in Plaintiffs' Motion, courts may and routinely do issue injunctions limiting uses of force against protestors in similar circumstances. First, this is not a problem with an individual officer or few officers. Defendants own report indicates that over a few days of protests they fired approximately 11,305 less lethal rounds at protestors, many of whom, like Plaintiffs, were non-violent. Vol. II, Ex. 3 at 74. Even more, subsequent events, including recent uses of the weapons, and extended reports further confirm systemic, repeated problems, and a likelihood of recurrence and an actual threat to Plaintiffs and persons like them.

Defendants argue that limiting their uses of these weapons may prevent them for using the weapons at all. Dkt. 75-1 at 17. The Court's Order does not do this. First, if officers fear a threat of serious bodily harm, as throwing certain objects may cause, they may use the weapons – as the Court ordered – if they can target the specific subject/suspect without striking innocent protestors. Dkt. 71 at 8. As to situations short of this, where there is no threat of serious bodily harm, Defendants have shown they will injure innocent protestors of the indiscriminate

7

discharge of these projectiles in the general direction of a specific suspect/subject, causing serious and potentially fatal injuries. *See generally* Dkt. 15-1 Haar Decl. (describing the effects of these weapons as Defendants are using them). Defendants and their officers have shown – again and again –that they cannot or will not refrain from using these weapons in ways consistent with deadly and drastically excessive force.

The Court's order appropriately limits the weapon to situations where such uses would be justified. Nothing in Defendants' motion suggests this is inappropriate. Courts across the country have issued similar relief, The evidence justifies these restrictions.

Defendants' central contention is that limiting the weapons' use is inappropriate because it could have the effect of limiting their use in ways their policies do not.[5] Defendants suggest that these launchers may serve a purpose where it would amount to non-lethal force, citing *Elifritz v. Fender*, 460 F. Supp. 3d 1088, 1101 (D. Or. 2020). Even if that were so, Defendants by all indications will continue to go far beyond that purpose absent an injunction, which is why one limiting the weapon as the Court has is appropriate. Similarly, where there were First and Fourth Amendment violations against peaceful protestors, the same *Elifritz* court enjoined the same police department from using an even less dangerous use of force, tear gas, similarly. *Don't Shoot Portland v. City of Portland*, 465 F. Supp. 3d 1150, 1157 (D. Or. 2020) (limiting use of the tear gas to situations "in which the lives or safety of the public or the police are at risk."). In each of the cases Plaintiffs cited in their application, similar arguments that allegedly constitutional uses of force could be affected by an injunction would

---

[5] It is not apparent that the Court's order actually differs substantially from the LAPD's policies, other than to provide more concrete and actionable guidance. It is not clear, for example, how one is "violent" in the sense of the LAPD's policies, and yet is not a risk of harm.

apply. There, as here, the fact that Defendants are highly likely continue to misuse these weapons in ways that could cause serious injuries warrants an injunction limiting them to such circumstances where these uses would be appropriate.

To the extent the court's temporary restraining order overlaps with much of the LAPD's policies, which it does in many respects, this also obviously militates against modifying the order. Dkt. 75-1 at 6 (City requests Court amend the order to instead "hold the City to compliance with its written use-of-force policies.").

## IV. CONCLUSION

For all these reasons, the Court's TRO is appropriate and fully supported by the evidence. Defendants have a full opportunity to brief these issues for the May 3, 2021 hearing on the issuance of a Preliminary Injunction. There is no reason to change the TRO before then. As previously addressed the balance of hardships and other bases for a TRO favor Plaintiffs. For the same reason staying the TRO is not appropriate and would expose Plaintiffs to the injuries the TRO was designed to prevent. The Ex Parte Application must be denied.

Respectfully submitted,

DATED: April 21, 2021          LAW OFFICE OF CAROL A. SOBEL

                                        By:   */s/ Carol A. Sobel*
                                              CAROL A. SOBEL
                                              *Attorneys for Plaintiffs*