# DECLARATION OF CAROL A. SOBEL

I, CAROL A. SOBEL, declare:

1. I am one of the attorneys for Plaintiffs in this action. I have personal knowledge of the facts set forth below and could and would testify to these facts.

2. Attached to my declaration at Exhibit 18 is a true and correct copy of page 16 of the complaint filed in *CJ Montano v. City of Los Angeles*, Case No. 2:20-cv-07241 CBM AS, Dkt. 1 Filed 08/12/20. I downloaded a copy of the complaint from PACER and extracted the attached Exhibit 18. It is my understanding, based on review of a body camera video released by the Los Angeles Police Department following an investigation of Mr. Montano's use of force complaint that Mr. Montano was struck in the head with a projectile while walking away from police, with his hands up in the air, at the protests against the killing of George Floyd in the Fairfax area of Los Angeles on May 30, 2020.

3. Attached to my declaration at Exhibit 19 is a true and correct copy of page 6 of the complaint filed in *Deon Jones v. City of Los Angeles, et al.*, Case No. 20-cv-11147 SVW SK, Dkt. 1, Filed 12/09/20. I downloaded the complaint on PACER after attorneys for the plaintiff at Gibson Dunn sent me a copy of an order issued by the Court in the case. Based on my review of the Complaint, I understand the photo in Exhibit 19 to be an accurate depiction of injuries to Mr. Jones after he was struck in the head with a projectile on May 30, 2020 near Pan Pacific Park.

4. Attached at Exhibit 20 is a true and correct copy of a document titled "Los Angeles Police Department Use of Force Tactics Directive, Directive No. 17, dated July 2018. I downloaded Exhibit 20 from the LAPD website, lapdonline.org. Exhibit 20 is identical to the document I viewed on the LAPD's website.

I declare that the foregoing is true and correct. Executed this 21st day of April at Los Angeles, California.

                                  /s/   Carol A. Sobel
                                CAROL A. SOBEL

**EXHIBIT 18**

49. Hospital staff informed plaintiff that he had suffered a brain bleed and that he was at risk of seizures and serious infection. Plaintiff was prescribed, among other treatments, pain killers, anti-seizure medication, and upon discharge a cane to prevent him from losing his balance as a result of his serious brain injury. Plaintiff spent 4 days at Cedars-Sinai, 2 of which were spent in the hospital's ICU.

50. Plaintiff's injuries are still being evaluated by medical professionals. As a direct and proximate result of being shot by law enforcement personnel, plaintiff suffered a serious laceration to his head, a concussion, including a brain bleed, and an injury to his tail bone. As a further direct and proximate result, plaintiff continues to experience, *inter alia*, post-concussion syndrome, hearing loss, recurrent dizziness, nausea, mental confusion and inability to comprehend social cues, significantly reduced proficiency in understanding written and spoken language, is easily disturbed when hearing music (which causes great distress given that he is currently enrolled as a music student at the Los Angeles Recording School), and suffers from emotional distress.

EXHBIT 19

 

*Mr. Jones after being struck by a Rubber Bullet*

11. It is time for the LAPD to stop deploying Rubber Bullets to suppress peaceful protests. The right to protest peacefully, to march, and to petition the government for a redress of grievances is fundamental and cannot be "controlled" or suppressed through arbitrary and unconscionable violence.

12. This country was born in protest, and the Founders that created our nation inscribed the right to protest into the very first amendment of the Bill of Rights. As the United States Supreme Court has acknowledged, "'speech to protest racial discrimination is essential political speech lying at the core of the First Amendment.'" *NAACP v. Clairborne Hardware Co.*, 458 U.S. 886, 915 (1982) (quoting *Henry v. First Nat'l Bank of Clarksdale*, 595 F.2d 291, 303 (5th Cir. 1979)). Unless this Court acts now, the LAPD's unconstitutional use of Rubber Bullets to attack, control, and suppress peaceful protest will continue just like the attacks on civil rights demonstrators a generation ago. This cycle of violence must be stopped, peaceful protests must be

**EXHIBIT 20**



# LOS ANGELES POLICE DEPARTMENT
# USE OF FORCE-TACTICS DIRECTIVE

Directive No. 17                                                                                                          July 2018

## 40mm LESS-LETHAL LAUNCHER

### PURPOSE

The purpose of this Directive is to familiarize officers with the use, nomenclature, and operation procedures of the 40mm Less-Lethal Launcher (40mm LLL).



### PROTOCOL

Whenever practicable, officers shall exercise de-escalation techniques to resolve potential use of force incidents and seek voluntary compliance from suspects/subjects. The courts have held that Less-Lethal force options are "capable of inflicting significant pain and may cause serious injury." Therefore, consistent with the Department's Use of Force Policy, Less-Lethal force options are only permissible when:

> **An officer reasonably believes that a suspect or subject is violently resisting arrest or poses an immediate threat of violence or physical harm.**

Less-Lethal force options shall not be used for a suspect or subject who is passively resisting or **merely failing to comply** with commands. Verbal threats of violence or **mere non-compliance** do not alone justify the use of Less-Lethal force.

An officer may use the 40mm LLL as a reasonable force option to control a suspect when **the suspect poses an immediate threat to the safety of the officer or others.**

Officers shall also consider:

- The severity of the crime versus the governmental interest in the seizure; and
- Whether the suspect was actively resisting arrest or attempting to evade arrest.

The following **do not** alone justify the use of the 40mm LLL:

- Verbal threats of violence
- Mere non-compliance

The 40mm LLL shall not be used to target the head, neck, face, eyes, or spine unless lethal force is authorized.

PTE 12/9/19

Use of Force - Tactics Directive No. 17
40mm Less-Lethal Launcher
Page 2

The 40mm Less-Lethal Launcher may be used in crowd control situations against a single subject/suspect as a target-specific less-lethal option.

Officers shall inspect the ammunition and the holder to ensure only 40mm eXact iMpact ammunition is utilized.



**PROCEDURES**

The minimum recommended deployment range for the 40mm LLL is five feet, while the effective deployment range is up to 110 feet. Officers should always consider weapon retention principles when deploying the 40mm LLL to prevent a subject/suspect from gaining control of the launcher. When officers realize the need for a 40mm LLL, they should broadcast, "Code Sam-40."

If tactically and environmentally feasible, the 40mm LLL officer should deploy the launcher from a position of cover with a designated cover officer. The 40mm LLL officer alerts other officers when he/she is ready to fire by shouting or broadcasting, "40mm Ready!" The primary officer gives the clear to fire signal by shouting or broadcasting, "40mm, Standby!" This alerts the officers at the scene that the firing of the 40mm LLL is about to occur.

When firing the 40mm LLL, officers should assess the effectiveness of each round fired. The effectiveness of the 40mm eXact iMpact round is based on the energy at impact. Therefore, the round may have little or no effect on a subject/suspect who:

- Has a large body mass;
- Is wearing heavy clothing/body armor;
- Is under the influence of drugs; or
- Is in an altered state and cannot feel the impact of the sponge round.

**Tactical Considerations**

- Size of suspect versus size of officer
- Clothing
- Altered mental state (may not be effective)
- Any known history of mental illness
- Age and/or physical condition of the suspect
- Suspect's access to weapons
- Suspect's ability to retreat or escape
- Bystanders' involvement
- Availability of back-up officers (Can suspect be distracted until other units arrive?)
- Background/Foreground (What is behind/in front of the suspect?)
- Officers should maintain distance from the suspect

If shots to the navel area or belt line do not appear to be effective, then a leg, arm or hand may be a viable alternative target.

**If control is not achieved and/or it appears that the 40mm eXact iMpact round is not effective, even after changing target areas, the officers must assess the viability of an alternate force option.** Additionally, officers should continue to assess the suspect's actions and the effectiveness of each force option used.

Use of Force - Tactics Directive No. 17
40mm Less-Lethal Launcher
Page 3

If officers encounter a self-mutilating or suicidal individual, the use of the 40mm LLL may be a reasonable force option (based on the tactical scenario) to stop his/her actions and afford the individual the opportunity to receive the needed medical treatment.

Generally, officers should not deploy the 40mm LLL at a fleeing suspect. Officers should pursue and attempt to contain the suspect, while continually assessing the situation and considering the most appropriate tactical plan. Additionally, officers should avoid deploying the 40mm LLL on individuals who:

- Are on an elevated or unstable surface which could cause a fall that could result in a significant impact injury;
- Are operating or riding any mode of transportation; or
- Are known to be pregnant, under 12 years of age, elderly or visibly frail.

The 40mm LLL is not a substitute for deadly force. When conducting a building search for a suspect who may be armed, standard firearms must be deployed. Having a 40mm LLL along with other force options during the search, will provide officers with different options should the situation change.

**Use of Force Warning**

An officer shall, when feasible, give a verbal warning prior to using the 40mm LLL to control an individual. The warning is not required when an officer is attacked and must respond to the suspect's actions. Additionally, if a tactical plan requires the element of surprise to stabilize the situation, a warning is not required. Examples of this would be a hostage situation or a subject threatening suicide. However, officers are reminded that the surprise/tactical element must still be needed at the actual time the 40mm LLL is fired.

The verbal warning should include a command and a warning of potential consequences of the use of force. The command should be similar to "drop the weapon" or "stop what you are doing" followed by a warning similar to "or we may use the 40mm, and that may cause you injury."

The use or non-use of the warning shall be documented. The Non-Categorical Use of Force Report, Form 1.67.05, Use of Force Summary heading shall include:

- The name of the officer giving the warning; and
- An explanation and appropriate justification for not using the warning.

Statements that the "element of surprise was needed" or "for officer safety" reasons will not justify non-use of the warning. The explanation for non-use must:

- Clearly articulate why the element of surprise was needed;
- Explain in detail any officer safety considerations; and
- List all pertinent reasons that justify why the warning was not provided.

The use of the warning, or the reasons for non-use of the warning will be factors considered in the determination whether the use of force was objectively reasonable.

### Tactical Discharges

Tactical discharges (disabling lights, breaking out windows, etc.) are allowed, but are not recommended, as they may cause secondary, unintended impacts. Before a tactical discharge is used to break a window, officers should consider that an individual may be behind the window and subject to impact by the 40mm round.

Tactical discharges **may** be an effective option in **limited** circumstances. Officers must assess the situation after each tactical discharge, and if the launcher is not producing the desired effect, discontinue its use. Officers must be prepared to give the rationale behind their decision to fire the 40mm LLL as a tactical discharge. The reporting procedure for a tactical discharge is the same as a discharge that does not strike a person (Employee's Report, Form 15.07.00).

In the event the 40mm LLL is used for a tactical discharge, it should be communicated to all officers at scene prior to its use, for their situational awareness.

### Reporting

The use of a 40mm LLL for any reason other than an approved training exercise shall be documented according to established Department procedures on the Non-Categorical Use of Force Report; however, when a 40mm LLL is fired and the round does not strike a person, a use of force report is not necessary and an Employee's Report, Form 15.07.00, should be completed to document the incident. Supervisors shall obtain photographs of all visible and complained of injuries, even when evidence of injury is not present.

### Medical Treatment

Any person struck with a 40mm eXact iMpact round shall be transported to a Department-approved facility for medical treatment prior to booking. The person should be carefully monitored for signs of distress. If a medical emergency exists, officers shall request a rescue ambulance to respond to their location.

### DEFINITIONS

**40mm Less-Lethal Launcher:** A tactical single-shot launcher configured with a green stock and pistol grip, a rifled barrel, picatinny rail mounting system and Department-approved optics. The color green is used to signify that the 40mm launcher is for the 40mm eXact iMpact round only.

**Code Sam-40:** The radio code used to broadcast a request for a 40mm LLL.

Use of Force - Tactics Directive No. 17
40mm Less-Lethal Launcher
Page 5

**40mm eXact iMpact Round:** The 40mm round is a point-of-aim, point-of-impact, direct fire round consisting of a plastic body and a sponge nose that is spin stabilized via the incorporated rifling collar and the 40mm launcher's rifled barrel. It can be identified by its silver metal case and blue plastic nose. These sponge rounds are designed to be non-penetrating, and upon striking a target, distribute energy over a broad surface area. The sponge round utilizes smokeless powder as the propellant and has velocities that are extremely consistent.

**Tactical Discharge:** The purposeful discharge at an object to assist officers in a tactical situation, such as to disable lighting or break windows.

**Target Areas:** The primary target area is the navel area or belt line, but officers may target the suspect's arms, hands or legs when practicable. If the hand is the selected target, consider its location and what it is holding. Officers shall not target the head, neck, spine, chest, groin, or kidneys.

---

**Points to Remember**

- 5 feet is the minimum deployment range
- Deployment range is from 5 to 110 feet
- Assessment between rounds is critical
- **Do not target the head, neck, spine, chest, groin, or kidneys**
- Reportable use of force if a round strikes a person
- Have a backup plan in the event the 40mm round is ineffective
- 40mm LLL should not be deployed unless lethal force is available for cover
- Form 15.07.00 required when the Launcher is fired and the round does not strike a person, and for tactical discharge

---

**Important Reminder**

**Deviation from these basic concepts sometimes occurs due to the fluid and rapidly evolving nature of law enforcement encounters and the environment in which they occur. Deviations may range from minor, typically procedural or technical, to substantial deviations from Department tactical training. Any deviations are to be explained by the involved officer(s), and justification for substantial deviation from Department tactical training shall be articulated and must meet the objectively reasonable standard of the Department's Use of Force Policy.**

---

MICHEL R. MOORE
Chief of Police

DISTRIBUTION "A"