1
2
3
4
5
6
7
8
9
10

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLACK LIVES MATTER LOS ANGELES, *et al.*,<br><br>     Plaintiff,<br><br>vs.<br><br>CIY OF LOS ANGELES, *et al.*,<br><br>     Defendant. | Case No.: CV 20-5027 CBM(ASx)<br><br>**AMENDED ORDER RE: RULING ON PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER  [71][75]** |

The matter before the Court is Defendants' Motion to Dissolve or Clarify pursuant to Fed. R. Civ. P. 65(b)(4), in the interim, Motion to stay the Temporary Restraining Order ("TRO"), or in the alternative, Motion to stay TRO pending emergency appellate relief.  (Dkt. 75.)  In this case, notice was given and Defendants had an opportunity to be heard during the April 15, 2021, hearing. Therefore, Rule 65(b)(4) does not apply.  Accordingly, Defendants' Motion is denied.  However, the parties have now met and conferred, and agreed that the Court's previous order should be modified.

1

## BACKGROUND

2    This putative class action concerns the response of the Los Angeles Police

3    Department ("LAPD") to protests and demonstrations which occurred throughout

4    Los Angeles in the wake of the death of George Floyd.   Subsequently, Plaintiffs'

5    filed a TRO on June 24, 2020, seeking to enjoin LAPD from using projectiles or

6    baton strikes to disperse or control crowds, limit Defendants' cite and release time

7    frame to 15 minutes, limit detentions to no more than 30 minutes, and require

8    Defendants to adhere to CDC guidelines when keeping protestors held in buses.

9    Plaintiffs' filed this second TRO in light of recent protests in Echo Park that

10   occurred on March 25, 2021.  Plaintiffs allege LAPD "fired on non-violent

11   protestors with 40 mm and 37 mm weapons."[1]  Two weeks prior, at the Breonna

12   Taylor solidarity protest, Plaintiffs allege that LAPD struck a member of the press

13   in the back and as a result, he was rendered unconsciousness and suffered a

14   concussion.  Plaintiffs seek to enjoin the LAPD's use of 40mm and 37mm less-

15   lethal launchers in public demonstrations except when deployed by officers that

16   are properly trained.  Plaintiff also seek to restrict LAPD from aiming the weapons

17   at the upper bodies of demonstrators at close range within five feet.

18   On April 15, 2021, the Court held a status conference.  Subsequent to the

19   status conference, as ordered by the Court, Defendants submitted video evidence

20   showing how to load and use the 40mm less-lethal launcher and a video of officers

21   simulating a "skirmish line" while using the 37mm less-lethal launcher.

22   Defendants also submitted LAPD's Use of Force Tactics Directive, which includes

23   the Department's policy and protocols for using the 37mm and 40mm less-lethal

24   launchers.  (Dkt. 65.)  The Court also considered Plaintiffs' Supplemental filing, a

25

26

27   [1]  The 37mm Foam Baton Round consists of five foam rubber projectiles that are discharged at

28   once. The 40mm Less-Lethal Launcher has a rifled barrel that uses a single foam projectile.
     (Exh. 3, p. 73.)

declaration of a journalist that who attended the Echo Park demonstration, that was submitted after the status conference.  (Dkt. 68.)

## JURISDICTION

The Court has jurisdiction over this action pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343.

## LEGAL STANDARD

The standard for issuing a TRO requires the party seeking relief to show (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of injunctive relief, (3) that the balance of equities tips in his favor, and (4) that injunctive relief is in the public interest.  *See Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008).  Under this standard, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support the issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotations omitted).  Temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer."  *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006).

## DISCUSSION

### A.    Request for Judicial Notice

Plaintiffs' request that this Court take judicial notice of three exhibits: 1) An Independent Examination report of the Los Angeles Police Department 2020 Protest Response, 2) A report prepared by the National Police Foundation, titled "A Crisis of Trust," and 3) A report issued by the Los Angeles Police Department titled "Safe LA 2020 Civil Unrest After Action Report."

1   Exhibit 1 is a report made available on the City of Los Angeles, City Clerk
2   website that analyzed LAPD's crowd control tactics and compliance with existing
3   departmental policies during the demonstrations resulting from the death of
4   George Floyd.  The report indicates that people were "struck in the face and head"
5   by 37 mm and 40 mm munitions, which caused "significant injuries."  Exhibit 2
6   summarizes findings and recommendations of LAPD's tactics and policies and
7   Exhibit 3 is a review of the LAPD's action after the June 2020 demonstrations.
8       The City of Los Angeles and Los Angeles Police Department are
9   government entities and the documents Plaintiffs attach as exhibits are publicly
10  available online.  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir.
11  2010) (holding that courts may take judicial notice of official information posted
12  on a government website if its accuracy is undisputed).  The Court **grants**
13  Plaintiffs' request to take judicial notice of Exhibits 1, 2 and 3.

14  **B.    Likelihood of Success on the Merits**

15      Fourth Amendment excessive force claims are analyzed under the
16  framework outlined by the Supreme Court in *Graham v. Connor*, 490 U.S. 386
17  (1989).  *Donovan v. Phillips*, 685 Fed. App'x. 611, 612 (9th Cir. 2017).  Under
18  *Graham*, all claims of excessive force by law enforcement should be analyzed
19  under the Fourth Amendment's "reasonableness" standard.  *Davis v. City of Las
20  Vegas*, 478 F.3d 1048, 1054 (9th Cir. 2007).  "This analysis requires balancing the
21  nature and quality of the intrusion on a person's liberty with the countervailing
22  governmental interests at stake to determine whether the force used was
23  objectively reasonable under the circumstances."  *Id.* (internal quotation marks
24  omitted).

25      "Reasonableness" of a given use of force must be measured from the
26  perspective of a reasonable officer on the scene and must appreciate the "split-
27  second judgments" that officers must often make.  *Graham*, 490 U.S. at 396.  The
28  Ninth Circuit has held that it was unreasonable to use pepper spray and projectiles

against individuals "who were suspected of only minor criminal activity, offered only passive resistance, and posed little to no threat of harm to others." *Nelson v. City of Davis*, 685 F.3d 867, 884-87 (9th Cir. 2012)

The Plaintiffs provide evidence in the form of declarations and videos that LAPD likely violated Plaintiffs' Fourth Amendment rights by using less-lethal launchers (37mm and 40mm) against Plaintiffs who state that they were peacefully demonstrating (or reporting on the demonstrations) at Echo Park on March 25, 2021, and the Breonna Taylor solidarity protest on or around March 11, 2021, when they suffered injuries from less-lethal projectiles.[2] Dkt. No. 58-7 ¶ 2, Exh. 13, 14 (shot by a "less lethal projectile" in the right arm between the elbow and shoulder and partner was shot in the abdomen "at close range"); Dkt. No. 58-3 ¶¶ 2-3, Exh. 7 (shot by a "less-lethal munition" in the back while filming the demonstration and walking away from the area); Dkt. No. 58-4 ¶ 3, Exh. 8, 9 (LAPD firing "less lethal projectiles" at "less than a two feet distance" of the protestors "aim[ed] directly at [their] upper body); Dkt. No. 58-8 ¶ 2, Exh. 15 (shot by a "less lethal projectile at the left side of my abdomen at close range").

Defendant's Use of Force policy states that Less-Lethal force options are only permissible when:

> An officer reasonably believes that suspects or subjects in a
> crowd are *violently resisting* a lawful order to disperse or *poses an*

---

[2] Exhibit 4 is a Declaration of Christina Astorga who participated in a demonstration that occurred on August 21, 2020, who received injuries as a result from the officers use of the less-lethal launchers and Exhibit 5, a video of the demonstration which depicts the officers using less-lethal projectiles.

The Declaration of Andrew Guerrero, who participated in a downtown Los Angeles protest on August 26, 2020, declares that he was injured from the officers' use of the less-lethal munition and further states LAPD fired the launcher without "providing any opportunity to disperse." (Dkt. No. 58-6 ¶ 3, 4)

*immediate threat of violence or physical harm*. . . . [M]ere non-compliance do[es] not alone justify the use of Less-Lethal force. . . .

LAPD Use of Force-Tactics Directive.

The recommended deployment range for the 37mm launcher is 10 feet to 50 feet from the front of the crowd and the recommended deployment range for the 40mm is five feet (up to 110 feet for the effective deployment range). *Id.* The video evidence shows that the less-lethal launchers were used in close range of the Plaintiffs, which likely caused significant injuries. The Court finds Plaintiffs have shown a likelihood of success on their Fourth Amendment claim.

## C.   Irreparable Harm

Plaintiffs must demonstrate that they are likely to suffer irreparable harm in the absence of an injunction. Plaintiffs argue that an injunction is warranted "in light of the potential for serious injuries the LAPD continues to cause" and the "potential[] lethal injuries."

Irreparable injury is not presumed by the Court upon a showing of a likelihood of success on the merits. *Herb Reed Enters., LLC v. Fla. Ent. Mgmt.*, 736 F.3d 1239, 1248-49 (9th Cir. 2013). A party seeking injunctive relief must proffer evidence sufficient to establish a likelihood of irreparable harm. *Id.* at 1251. "To demonstrate irreparable injury as to their Fourth Amendment injury here, Plaintiffs must demonstrate a likelihood, not a mere possibility, of future irreparable injury of the same character." *Downes-Covington v. Las Vegas Metro. Police Dep't*, 2020 U.S. Dist. LEXIS 240330, at *35 (D. Nev. Dec. 17, 2020).

Here, Plaintiffs provide evidence of past and recent demonstrations since the death of George Floyd involving Officer Derek Chauvin, in which Defendants used less-lethal munition on protestors who do not appear to be violently resisting or posing an immediate threat of violence or physical harm. Plaintiffs state that the trial of Derek Chauvin is expected to reach a verdict between April 19, 2021,

1    and April 23, 2021, and as a result, Plaintiffs will plan protest and demonstrations

2    that will likely be widespread and substantial.  (Decl. Abdullah ¶ 3.)  As of the

3    writing of this Order, closing arguments in the Derek Chauvin case are set for

4    today, Monday, April 19, 2021.  It is reasonable to believe that demonstrations will

5    continue.  The Court finds that Plaintiffs have shown a likelihood of irreparable

6    injury.  *See, e.g., Abay v. City of Denver*, 445 F. Supp. 3d 1286, 1294 (D. Colo.

7    2020) (granting-in-part a TRO and enjoining officers from discharging Kinetic

8    Impact Projectiles ("KIPs") and all other "non- or less-lethal projectiles" to target

9    the head, pelvis, or back, and from shooting KIPs indiscriminately into a crowd).

10   **D.    Balance of the Equities and the Public Interest**

11            In their Motion to Strike, Defendants argue that enjoining officers from

12   using crowd control tools to protect the rights of those who wish to lawfully

13   exercise their First Amendment rights, as well as the safety and security of the

14   public, is harmful.  Plaintiffs assert the "balance of interest" tips strongly in their

15   favor because Defendants' "indiscriminate" use of less-lethal launchers are

16   commonly fired on bystanders or non-violent and distant protestors.[3]

17            When the government is a party, these last two factors of the standard for

18   issuing a TRO merge.  *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th

19   Cir. 2014).  Plaintiffs must identify the harm that a TRO might cause a Defendant

20   and weigh it against the injury to a Plaintiffs.  *Lavan v. City of Los Angeles*, 2011

21   U.S. Dist. LEXIS 46030, at *13 (C.D. Cal. Apr. 22, 2011).  As to public interest,

22   "it is always in the public interest to prevent the violation of a party's

23   constitutional rights."  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)

24            Here, Plaintiffs' TRO does not discuss potential harm to Defendants, but the

25   Court considered potential harm to Defendants in issuing this order.  There is a

26

27   [3] *See* Los Angeles Times, LAPD Projectiles Fired at Lakers Crowd Causes Severe Injuries (Oct.

28   15, 2020), *available at:* https://www.latimes.com/california/story/2020-10-15/lapd-projectiles-gruesome-injuries-lakers-celebration.

strong interest in preserving a person's First Amendment rights, including the right of peaceful assembly.  On balance, Plaintiffs' requested relief is tailored to restricting LAPD's use of less-lethal launchers on peaceful protestors and those who are documenting the demonstrations.  Plaintiffs' tailored request does not seek to ban LAPD's crowd control tactics; their request limits LAPD's use of the launchers in order to ensure that the safety of the protestors and the officers can both be achieved.

## CONCLUSION

Accordingly, Defendants' Request to Strike Plaintiffs' TRO and, in the alternative, additional time to file opposition is **DENIED**.  The Court's previous Order is modified as follows:

1. LAPD is restricted from using the 40mm and 37mm launchers in public demonstrations except by officers who successfully completed Department training and meet all annual qualification requirements on the weapons;

2. An officer may use 40mm less-lethal munitions only when the officer reasonably believes that a suspect is violently resisting arrest or poses an immediate threat of violence or physical harm. The use of 40mm less-lethal munitions should be preceded by a warning, if feasible;

3. An officer may use 37mm less-lethal munitions as a crowd control tool only with the prior approval of the incident commander and only when a dispersal order has been issued, unless immediate action is necessary to stop violence, to ensure public safety and restore order. A warning to disperse must be given, consistent with all of the dispersal order requirements set forth in LAPD Use of Force – Tactics Directive No. 11.1, and then the officer may fire the 37 mm at the ground 5 to 10 feet in front of the crowd. The 37 mm may not be used as a target specific munition unless absolutely necessary to prevent imminent serious bodily injury to the officer or others.

1        4. The 40mm launcher must not be used to target the head, neck, face, eyes,

2  kidneys, chest, groin or spine of a person.

3        5. The 40 mm and 37 mm launchers should be fired at a distance of five feet

4  or greater from another person, unless an officer or other person is attacked and

5  there is a threat of imminent serious harm.

6        This order supersedes the Order re TRO issued on April 19, 2021.

9        **IT IS SO ORDERED.**

12  DATED: April 28, 2021

16  _____
    CONSUELO B. MARSHALL
17  UNITED STATES DISTRICT JUDGE