Cynthia Anderson Barker, SBN 75764
National Lawyers Guild
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
t. 213 381-3246  f. 213 381-3246
e. cablaw@hotmail.com

Paul Hoffman, SBN 71244
Michael D. Seplow, SBN 150183
Aidan McGlaze, SBN 277270
John C. Washington, SBN 315991
SCHONBRUN, SEPLOW, HARRIS,
HOFFMAN & ZELDES LLP
200 Pier Avenue, Suite 226
Hermosa Beach, California 90254
t. 310 396-0731; f. 310 399-7040
e. hoffpaul@aol.com
e. mseplow@sshhzlaw.com
e. amcglaze@sshhzlaw.com
e. jwashington@sshhlaw.com

Attorneys for Plaintiffs
Additional Counsel on Next Page

Barrett S. Litt, SBN 45527
Lindsay Battles, SBN 262862
MCLANE, BEDNARSKI & LITT
975 E. Green Street
Pasadena, California 91106
t. 626 844-7660 f. 626 844-7670
e. blitt@mbllegal.com
e. lbattles@mbllegal.com

Pedram Esfandiary, SBN 312569
e. pesfandiary@baumhedlundlaw.com
Monique Alarcon, SBN 311650
e. malarcon@baumhedlundlaw.com
Bijan Esfandiari, SBN 223216
e. besfandiari@baumhedlundlaw.com
R. Brent Wisner, SBN 276023
e. rbwisner@baumhedlundlaw.com
BAUM, HEDLUND, ARISTEI &
GOLDMAN, P.C.
10940 Wilshire Blvd., 17th Floor
Los Angeles, CA 90024
t. 310 207-3233 f. 310 820-7444

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| BLACK LIVES MATTER LOS ANGELES, ET AL., <br><br> PLAINTIFFS, <br><br> v. <br><br> CITY OF LOS ANGELES, ET AL., <br><br> DEFENDANTS. | Case No.: 2:20-cv-05027 CBM-AS <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM AND POINTS OF AUTHORITIES** <br><br> DATE: AUGUST 16, 2022 <br> TIME: 10:00 A.M. <br> COURT: Courtroom 8D |

1   Carol A. Sobel, SBN 84483                    Shakeer Rahman SBN 332888
2   Katherine Robinson, SBN 323470               LAW OFFICE OF SHAKEER RAHMAN
    Weston Rowland, SBN 327599                   838 East 6th Street
3   LAW OFFICE OF CAROL A. SOBEL                 Los Angeles, CA 90010
4   1158 26th Street, #552                       t. 323 546-9236
    Santa Monica, CA 90403                       e. e. shakeerr@cangress.org
5   t. 310 393-3055
6   e. carolsobel@aol.com
    e. klrobinsonlaw@gmail.com
7   e. rowland.weston@gmail.com                  Olu Orange, SBN 213653
8                                                Orange Law Offices
                                                 3435 Wilshire BLvd., Ste. 2910
9   Colleen Flynn, SBN 234281                    LOS ANGELES, CA. 90010-2015
10  LAW OFFICE OF COLLEEN FLYNN                  T. 213 736-9900
    3435 Wilshire Blvd., Suite 2910              f. 213 417-8800
11  Los Ángeles, CA 90010                        e. o.orange@orangelawoffices.com
12  t. 213 252-9444
13  r. 213 252-0091
    e. cflynnlaw@yahoo.com                       James Do Kim
14                                               LAW OFFICES OF DO KIM, APLC
15  Matthew Strugar, SBN 232951                  3435 Wilshire Blvd., Suite 2700
16  LAW OFFICE OF MATTHEW STRUGAR                Los Angeles, CA 90010
    3435 Wilshire Blvd., Suite 2910              t. 213 251-5440
17  Los Angeles, CA 90010                        f. 213 232 4919
18  t. 323 696-2299                              e. dkim@dkimlaw.com
    e. matthewstrugar@gmail.com
19
20  Denisse Gastelum SBN 282771
21  GASTELUM LAW, APC
    3767 Worsham Ave.
22  Long Beach, CA 90808-1774
23  t. 213 340 6112
    e. dgastelum@gastelumfirm.com
24
25
26
27
28

TO DEFENDANTS AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on August 16, 2022, at 10:00 a.m., in Courtroom 8D of the United States District Court for the Central District of California, 350 W. 1st St., Los Angeles, California 90012, Plaintiffs will, and hereby do, move the Court to certify this case as a class action pursuant to F.R.Civ.P. 23(b)(2), 23(b)(3), 23(b)(1) (or alternatively or conjunctively 23(c)(4)).

### 1. *Injunctive relief class (F.R.Civ.P Rule 23(b)(2)).*

The proposed Injunctive Relief Class is defined as:

All persons who have in the past participated, presently are participating, or may in the future participate in, or be present at, demonstrations within the City of Los Angeles in the exercise of their rights of free speech, assembly and petition in general, and particularly as it relates to protesting police violence and discrimination against people of color, especially African-Americans.

The injunctive relief organizational class representatives are Black Lives Matter Los Angeles ("BLMLA") and CANGRESS, dba Los Angeles Community Action Network (LA CAN). Each Plaintiff is a representative of the injunctive relief individual class.

The fact that the 23(b)(2) class includes members who "in the future may" be affected is proper in an injunctive relief class.[1]

---

[1] *See, e.g., Manual for Complex Litigation*, 4th Ed., §21.222, ("A class may be defined to include individuals *who* may not become part of the class until later"). Certifications that include potential future class members are routine. *See, e.g., Yaffe v. Powers*, 454 F.2d 1362, 1364 (1st Cir. 1972) ("all other individuals who wish to ... engage ... in peaceful political discussion ... without surveillance ... by defendants"); *Probe v. State Teachers' Retirement System*, 780 F.2d 776, 780 (9th Cir. 1986) (those who "are or will be employed"; inclusion of "future members does not render the class definition so vague as to preclude certification"); *Nozzi v. Hous. Auth. of the City of Los Angeles*, 2016 WL 2647677, at *3 (C.D. Cal. May 6, 2016) (those who "are or will be" Section 8 recipients, citing *Probe*).

**2. *Damages Classes. (F.R.Civ.P Rule 23(b)(3)).***

One or more of the named Plaintiffs bring this action individually and on behalf of proposed classes of all other persons similarly situated pursuant to FRCivP Rule 23(b)(1), (b)(2) and (b)(3). The damages classes are defined as:

a. **Arrest Class**: Beginning May 29, 2020, and continuing through June 2, 2020, all persons present at or during the aftermath of protests regarding the killing of George Floyd in the City of Los Angeles, who were arrested by the LAPD on misdemeanor charges of failure to obey a curfew, failure to disperse, failure to follow a lawful order of a police officer and/or unlawful assembly, and who were held on buses and subjected to prolonged tight hand-cuffing, denied access to bathrooms, water and food, and held in enclosed spaces without ventilation.

The Class Representatives for this class are Alicia Barrera-Trujillo, Krystle Hartsfield, Nelson Lopez, Nadia Khan, Devon Young, Linus Shentu, Alexander Stamm, Steven Roe, Maia Kazin, and Jonathan Mayorca, all of whom fit within the class definition.

b. **Infraction Class**: Beginning May 29, 2020, and through June 2, 2020, all persons present at or during the aftermath of protests regarding the killing of George Floyd in the City of Los Angeles, who were arrested and taken into custody, charged with infractions, and not released in the field, as required by Penal Code § 853.5.

The Class Representatives for this class are Jonathan Mayorca, Nadia Khan, Nelson Lopez, Alicia Barrera-Trujillo, Maia Kazin, and Devon Young, all of whom fit within the class definition.

c. **Direct Force Class**: Beginning May 29, 2020, and continuing through June 2, 2020, all persons present at or during the aftermath of protests regarding the killing of George Floyd in the City of Los Angeles, who were struck by either "less-lethal weapons" (including 37mm and 40 mm

projectiles, and bean-bag shotguns), batons, or otherwise physically struck by an LAPD officer, and who were neither violently resisting nor posing an immediate threat of violence or physical harm.

The Class Representatives for the Direct Force class are named plaintiffs David Contreras, Tina Crnko, Abigail Rodas, Christian Stephen Roe, Shannon Lee Moore, Clara Aronovich and Eva Grenier – all of whom were the direct object of police use of force by "less lethal" munitions, batons or knock-downs, all of whom fit within the class definition

This motion is based on the accompanying exhibits and declarations, exhibits and declarations previously filed in this case in conjunction with the applications for a Temporary Restraining Order/Preliminary Injunction, the files and records in this case, and on such further evidence as may be presented at a hearing on the motion.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which first took place on June 28, 2021 and was continued in exchanged emails during the weeks of July 19, 2021 and May 23, 2022.

The parties have concurrently filed a Stipulated Briefing Schedule for the Court's approval.

DATED: May 26, 2022

McLANE, BEDNARSKI & LITT, LLP
LAW OFFICES OF CAROL SOBEL
SCHONBRUN, SEPLONE, ET AL.

By: /s/ Barrett S. Litt
    BARRETT S. LITT

By: /s/ Carol A. Sobel
    CAROL A. SOBEL

Attorneys for Plaintiffs

3

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................. 1

II.   GENERAL CLASS CONSIDERATIONS. ......................................... 3

      A.   Plaintiffs Meet The Definiteness Requirement. ..................... 3

      B.   Presumptions Applicable To Certification. ............................ 4

III.  THIS ACTION SATISFIES THE REQUIREMENTS OF RULE 23(A),
      AND THE RULE 23(B)(2) AND 23(B)(3) PREDOMINANCE
      REQUIREMENT. ................................................................................ 5

      A.   Numerosity ................................................................................. 5

      B.   Typicality. .................................................................................. 5

      C.   Adequacy of representation. .................................................... 6

           1.   The class representatives' interests are not antagonistic to the
                interests of the class ......................................................... 6

           2.   Counsel are well qualified to represent the class. ......... 6

      D.   Common questions exist and predominate ............................ 7

           1.   Arrest Class .................................................................... 10

           2.   Infraction Class .............................................................. 13

           3.   Direct Force Class ......................................................... 14

           4.   Additional Authorities Supporting The foregoing Certifications 15

      E.   Individualized Damages Do Not Defeat Predominance ...... 21

      F.   Liability Is Appropriately Certified Under Rule 23(c)(4). ... 22

IV.   THIS CASE MEETS THE OTHER REQUIREMENTS OF RULE 23(B). 22

      A.   Superiority And Manageability Are Met ............................. 22

      B.   Classwide General And Statutory Damages Are Determinable And, In
           Any Event, The Issue Can Be Deferred. ............................... 23

      C.   Rule 23(B)(2)'S Requirements Are Also Met ...................... 25

i

D.   Alternatively, Rule 23(B)(1)'s Requirements Are Met.........................25

V.   CONCLUSION. ...............................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aichele v. City of Los Angeles*,
 314 F.R.D. 478 (C.D. Cal. 2013)................................................................. Passim

*Allman v. Coughlin*,
 577 F. Supp. 1440 (S.D.N.Y. 1984) .....................................................18

*Amador v. Baca*,
 2014 WL 10044904 (C.D. Cal. Dec. 18, 2014)...................................22

*Amchem Prods., Inc. v. Windsor*,
 521 U.S. 591 (1997).............................................................................23

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
 568 U.S. 455, 133 S. Ct. 1184 (2013) .................................................14

*Augustin v. Jablonsky*,
 819 F. Supp. 2d 153 (E.D.N.Y. 2011) .................................................24

*Barham v. Ramsey*,
 434 F.3d 565 (D.C. Cir. 2006)...............................................................9

*Barnes v. Dist. of Columbia*,
 278 F.R.D. 14 (D.D.C. 2011) ..............................................................24

*Bateman v. Am. Multi-Cinema, Inc.*,
 623 F.3d 708 (9th Cir. 2010) ..............................................................25

*Bell v. Little Axe Indep. Sch. Dist. No. 70 of Cleveland Cnty.*,
 766 F.2d 1391 (10th Cir. 1985) ...........................................................24

*Betances v. Fischer*,
 304 F.R.D. 416 (S.D.N.Y. 2015) .........................................................24

*Briseno v. ConAgra Foods, Inc.*,
 844 F.3d 1121 (9th Cir. 2017) ...............................................................4

*Brown v. City of Detroit*,
 2012 WL 4470433 (E.D. Mich. Sept. 27, 2012) ................................12

*Butler v. Suffolk County*,
 2013 WL 1136547 (E.D.N.Y. Mar. 19, 2013)....................................12

*Carnegie v. Household Int'l, Inc.*,
 376 F.3d 656 (7th Cir. 2004) .........................................................23, 25

iii

*Castro v. Cnty. of Los Angeles*,
  833 F.3d 1060 (9th Cir. 2016) ....................................................... 12, 13

*Chang v. United States*,
  217 F.R.D. 262 (D.D.C. 2003) .............................................. 8, 9, 12, 25

*Chua v. City of Los Angeles*,
  2017 WL 10776036 (C.D. Cal. May 25, 2017) ............................ 7, 9, 16

*City of Canton v. Harris*,
  489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) ..................... 18

*City of St. Louis v. Praprotnik*,
  485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) ........................ 20

*Comcast v. Behrend*,
  569 U.S. 27 (2013) .......................................................................... 21

*Davis v. City of Ellensburg*,
  869 F.2d 1230 (9th Cir.1989) ......................................................... 18

*Dellums v. Powell*,
  566 F.2d 167 (D.C. Cir. 1977) .................................................... 9, 24

*Dougherty v. City of Covina*,
  654 F.3d 892 (9th Cir. 2011) .......................................................... 18

*Esplin v. Hirschi*,
  402 F.2d 94 (10th Cir. 1968) ............................................................ 4

*Fuller v. City of Oakland*,
  47 F.3d 1522 (9th Cir. 1995) .......................................................... 21

*Gomez v. Vernon*,
  255 F.3d 1118 (9th Cir.2001) ......................................................... 20

*Grandstaff v. City of Borger*,
  767 F.2d 161 (5th Cir. 1985) ..................................................... 15, 17

*Green v. Baca*,
  226 F.R.D. 624 (C.D. Cal. 2005) ...................................................... 2

*Hammond v. County of Madera*,
  859 F.2d 797 (9th Cir. 1998) ......................................................... 20

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .................................................... 6, 7, 8

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir.1992) ............................................................. 6

*Hazle v. Crofoot*,
 727 F.3d 983 (9th Cir. 2013) ............................................................24

*Healey v. Louisville Metro Gov't*,
 2021 WL 149859 (W.D. Ky. Jan. 15, 2021) .......................................18

*Henry v. Cty. of Shasta*,
 132 F.3d 512 (9th Cir. 1997) ......................................................16, 20

*Hessel v. O'Hearn*,
 977 F.2d 299 (7th Cir. 1992) ............................................................24

*Hickey v. City of Seattle*,
 236 F.R.D. 659 (W.D. Wash. 2006) .....................................................9

*In re Nassau Cnty. Strip Search Cases*,
 461 F.3d 219 (2d Cir. 2006) ..............................................................22

*In re Nassau Cnty. Strip Search Cases*,
 742 F. Supp. 2d 304 (E.D. N.Y. 2010) ..............................................24

*Inflight Motion Pictures, Inc.*,
 582 F. 2d 507 (9th Cir. 1978) ..............................................................6

*Jackson v. Gates*,
 975 F.2d 648 (9th Cir. 1992) ............................................................19

*Jimenez v. Allstate Ins. Co.*,
 765 F.3d 1161 (9th Cir. 2014) ......................................................7, 21

*Jordan v. Cnty. of Los Angeles*,
 669 F.2d 1311 ......................................................................................5

*Kerman v. City of New York*,
 374 F.3d 93 (2d Cir. 2004) ................................................................24

*Larez v. City of Los Angeles*,
 946 F.2d 630 (9th Cir. 1991) ........................................16, 19, 20, 21

*Leadholm v. City of Commerce City*,
 2017 WL 1862313 (D. Colo. May 9, 2017) .......................................17

*Levya v. Medline Indus.*,
 716 F.3d 510 (9th Cir. 2013) ............................................................21

*MacNamara v. City of N.Y.*,
 275 F.R.D. 125 (S.D.N.Y. 2011) .................................................9, 12

*Mann v. City of Chula Vista*,
 2020 WL 5759749 (S.D. Cal. Sept. 28, 2020).................................12

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) ................................................................4

*McRorie v. Shimoda*,
   795 F.2d 780 (9th Cir. 1986) .......................................................16, 21

*Melgar v. CSK Auto, Inc.*,
   681 F. App'x 605 (9th Cir. 2017) ........................................................4

*Meredith v. Erath*,
   342 F.3d 1057 (9th Cir.2003) .............................................................12

*Montiel v. City of Los Angeles*,
   2 F.3d 335 (9th Cir. 1993) ...................................................................2

*Moss v. U.S. Secret Serv.*,
   2015 WL 5705126 (D. Or. Sept. 28, 2015) ........................................9

*Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*,
   246 F.R.D. 621 (C.D. Cal. 2007)............................................7, 8, 17, 23

*Nelson v. City of Davis*,
   685 F.3d 867 (9th Cir. 2012) ..............................................................15

*Nozzi v. Hous. Auth. of the City of Los Angeles*,
   2016 WL 2647677 (C.D. Cal. May 6, 2016).........................................1

*Packard v. City of New York*,
   2019 WL 2493515 (S.D.N.Y. Mar. 8, 2019).......................................18

*Parker v. Time-Warner Entm't*,
   331 F.3d 13 (2nd Cir. 2003) .................................................................4

*Probe v. State Teachers' Retirement System*,
   780 F.2d 776 (9th Cir. 1986) ................................................................1

*Pulaski & Middleman, LLC v. Google, Inc.*,
   802 F.3d 979 ........................................................................................21

*Rodriguez v. City of Los Angeles*,
   2014 WL 12515334 (C.D. Cal. Nov. 21, 2014) .................................24

*Roy v. Cnty. of Los Angeles*,
   2018 WL 3436887 (C.D. Cal. July 11, 2018)......................................24

*Scott v. Clarke*,
   2012 WL 6151967 (W.D. Va. Dec. 11, 2012)......................................21

*Shorter v. Baca*,
   101 F. Supp. 3d 876 (C.D. Cal. 2015) ..................................................2

*Siebert v. Severino*,
  256 F.3d 648 (7th Cir. 2001) ............................................................................24

*Spalding v. City of Oakland*,
  2012 WL 994644 ............................................................................................9

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ..........................................................................6

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*,
  308 F.R.D. 630 (N.D. Cal. 2015) ..................................................................22

*Thompson v. Lake*,
  607 Fed. App'x 624 (9th Cir. 2015)...............................................................12

*Torres v. Madrid*,
  141 S. Ct. 989, 209 L. Ed. 2d 190 (2021)......................................................15

*Torres v. Mercer Canyons Inc.*,
  835 F.3d 1125 (9th Cir. 2016) ........................................................................8

*Trujillo v. City of Ontario*,
  428 F. Supp. 2d 1094 (C.D. Cal. 2006) ........................................................21

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016)........................................................................7, 8, 9, 22

*Valentino v. Carter- Wallace, Inc.*,
  97 F.3d 1227 (9th Cir. 1996) ........................................................................22

*Vaquero v. Ashley Furniture Industries, Inc.*,
  824 F.3d 1150 (9th Cir. 2016) ......................................................................21

*Vizcaino v. U.S. Dist. Ct.*,
  173 F.3d 713 (9th Cir. 1999) ..........................................................................4

*Vodak v. City of Chicago*,
  2006 WL 1037151 (N.D. Ill. 2006) ................................................................9

*Waine-Golston v. Time Warner Entm't-Advance/New House P'ship*,
  2012 WL 6591610 (S.D. Cal. Dec. 18, 2012) ................................................4

*Walje v. City of Winchester*,
  773 F.2d 729 (6th Cir. 1985) ........................................................................24

*Walker v. Life Ins. Co. of the Sw.*,
  953 F.3d 624 (9th Cir. 2020) ..........................................................................4

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)..............................................................................4, 7, 25

*Williams v. Brown*,
   214 F.R.D. 484 (N.D. Ill. 2003)..................................................................9

*Yaffe v. Powers*,
   454 F.2d 1362 (1st Cir. 1972)..................................................................1

**Statutes**

Cal. Civil Code §52(a)...................................................................................25
Cal. Civil Code § 52.1..................................................................................25
California Penal Code §835.5..........................................................................3
California Penal Code § 835.6.......................................................................17
California Penal Code § 853.5.....................................................................2, 3
California Penal Code § 853.6.................................................................13, 16

**Rules**

F.R.Civ.P. 23.............................................................................................1, 2
FRE 801(d)(2)................................................................................................2
FRE 801(d)(2)(D)..........................................................................................2
FRE 803(8)(C)...............................................................................................2

**Other Authorities**

1 *Newberg on Class Actions* § 3:6 (5th Ed.) ...............................................4
3 *Newberg on Class Actions* §7:27 (5th Ed.) ..............................................4
7AA C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 1778
   (3d ed. 2005).........................................................................................8, 22
*Manual for Complex Litigation*, 4th Ed., §21.222 .................................1, 22

## I.     INTRODUCTION

Plaintiffs move for an order certifying this case as a class action under Rule 23(b)(2) for injunctive relief and Rule 23(b)(3) or 23(c)(4) for damages, and appointing Plaintiffs' counsel as class counsel under Rule 23(g). The Court is familiar with the backdrop to the Floyd protests at issue here, and Plaintiffs will not elaborate on the facts, but do rely on the evidence presented with this motion and for the two TRO/preliminary injunction motions.

The injunctive relief claims here are aimed at protecting Plaintiffs' First Amendment right to protest. The LAPD has a long history of settlements and consent decrees resulting from LAPD's historical pattern and practice of aggressive and unlawfully shutting down First Amendment protected protests through failing to provide proper unlawful assembly notices, failing to provide reasonable opportunity to disperse, failing to provide directions for dispersal, unleashing unreasonable and excessive force against protestors, kettling and detaining or arresting protestors (including arresting on charges entitling the arrestee to immediate field release on a promise to appear), engaging in punitive arrests, holding arrestees on buses without water and bathrooms in tight handcuffs, and failing to release (or not arresting but only citing) people entitled to immediate release on their own recognizance. This historic pattern was on full display in LAPD's response to the Floyd protests.

The damages class claims here, as the proposed damages class definitions contained in the Notice of Motion reflect, break into three groupings. 1) The *Arrest Class*, who were handcuffed and held on buses without water and bathroom access for hours; 2) the *Infraction Class*, who were arrested when they should have been released in the field on a promise to appear; and 3) the *Direct Force Class*, composed of people who were struck by the improper and indiscriminate use of batons and "less-lethal" weapons, or forced to the ground, and who were not violently resisting arrest and did not present an immediate threat of physical harm.

For the facts in support of this motion, Plaintiffs primarily rely on the

Declarations of Carol Sobel (the "Sobel Class Dec."), who has summarized the relevant discovery and investigative facts as they relate to this motion; of class representatives; of police expert Roger Clark; the three City related government reports into the LAPD's response to the George Floyd protests[2] and documents produced by Defendant City in discovery or available on its websites, which are admissible as both party statements under FRE 801(d)(2)(D)[3] and government reports under FRE 803(8)(C)[4]. In particular, Ms. Sobel's declaration provides great detail, only a handful of which could be referenced herein. The Court is directed to that declaration for a full exposition of the underlying facts.

The foregoing underlying evidence details the LAPD's repeated failures over the last two decades to respect the rights of protestors in situations where the LAPD perceived that some individuals among a peaceful group were engaged in unlawful activity. For no legitimate or justifiable reason, thousands of protestors (the Arrest Class) were detained on cramped, unventilated buses, without access to food or water, and kept in tight plastic handcuffs that tore at their skin behind their back, This occurred during the pandemic when such a detention in enclosed spaces increased the risk of exposure to COVID 19. Several detainees were subjected to the humiliation and pain of urinating on themselves, left on the closed buses with the smell of urine from another detainee, and/or released after curfew with no ready

---

[2] 1) The Los Angeles City Council's commissioned Independent Examination Of The Los Angeles Police Department 2020 Protest Response by Gerald Chaleff ("Chaleff Report") Ex. 1;2) LAPD's Safe LA After Action Report ("After Action Report")  Ex, 3; and 3) the Los Angeles Police Commission's commissioned "A Crisis of Trust," by the National Police Foundation ("NPF Report") Ex, 2, .

[3] See, e.g., *Green v. Baca*, 226 F.R.D. 624, 635–36 (C.D. Cal. 2005) (finding reports of LA County independent counsel Merrick Bobb constituted party admissions under FRE 801(d)(2) "because the County retained him as Special Counsel to review the Sheriff's Department and its operations and activities")

[4] See, e.g., *Shorter v. Baca*, 101 F. Supp. 3d 876, 906–07 (C.D. Cal. 2015), *vacated, on other grounds* 895 F.3d 1176 (9th Cir. 2018) (County commissioned CCJV Report admissible against LA County); *Montiel v. City of Los Angeles*, 2 F.3d 335, 341–42 (9th Cir. 1993) (Christopher Commission Report admissible against City of LA); *Green v. Baca, supra*.

means to get home.

At least hundreds (the Infraction Class) were arrested and charged on infractions in violation of California Penal Code §835.5, which requires that infraction arrestees be cited and released in the field; custodial detention is not permitted by law. And for other misdemeanors, LAPD had available but did not use mobile field resources enabling them to check for warrants and book alleged violators in the field in approximately 15 minutes, which would have avoided unlawfully cramping them into buses for hours. Time and again, peaceful protestors were physically struck by potentially lethal "less-lethal" projectiles, the improper use of police batons and physically forcing protestors to the ground (the Direct Force Class). There were dozens of serious injuries, including many head injuries.

The precise class definitions are set out in the Notice of Motion. In the interest of preserving space for more substantive discussion, we do not repeat them, but only summarize each. Each of the three damages classes are for the time period May 29-June 2, 2020, during and in the aftermath of the George Floyd protests: 1) **The Injunctive Relief Class:** past, present and future people who may participate in protests, especially around police issues. 2) **The Arrest Class:** all arrestees who were held on buses and subjected to prolonged tight hand-cuffing, denied access to bathrooms, water and food, and held in enclosed spaces without ventilation. 3) **The Infraction Class**: those charged with infractions but nonetheless arrested and not released in the field as required by Penal Code § 853.5. And 4) **The Direct Force Class:** those physically struck by police (including by less-lethal projectiles or batons) who were not violently resisting arrest and did not pose an immediate threat of violence of physical harm.

## II.   GENERAL CLASS CONSIDERATIONS.

### A.   PLAINTIFFS MEET THE DEFINITENESS REQUIREMENT.

The class definitions meet the definiteness requirements of Rule 23, which requires that the class is defined objectively, is capable of membership ascertainment

when appropriate, and is defined without regard to the merits of the claim or the seeking of particular relief. 1 *Newberg on Class Actions* § 3:6 (5th Ed.) (hereafter "*Newberg*"); *Melgar v. CSK Auto, Inc.*, 681 F. App'x 605, 607 (9th Cir. 2017) (citing *Vizcaino v. U.S. Dist. Ct.*, 173 F.3d 713, 721–22 (9th Cir. 1999)). The Ninth Circuit has no administrative feasibility requirement, and self-identification of class membership is proper. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1125–33 (9th Cir. 2017). *Briseno* "foreclose[es]" the argument that "a self-identifying class" is improper., *Melgar,* 681 F. App'x at 607.

## B.   PRESUMPTIONS APPLICABLE TO CERTIFICATION.

When analyzing class certification, the court takes the complaint's allegations as true, and performs a "rigorous analysis," which may require it "to probe behind the pleadings." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 352 (2011). This is not a merits determination. *See Waine-Golston v. Time Warner Entm't-Advance/New House P'ship*, 2012 WL 6591610 (S.D. Cal. Dec. 18, 2012). "[I]f there is to be an error made, let it be in favor and not against the maintenance of the class" since the class definition can later be modified or the class decertified.[5] *See Esplin v. Hirschi,* 402 F.2d 94, 99 (10th Cir. 1968). If the Court believes that any of the proposed class definitions should not be certified as defined, but could be certified with modifications, the Court "*should* alter the class definition in lieu of rejecting class certification, if possible") (original emphasis) 3 *Newberg on Class Actions* §7:27 (5th ed.) (citing cases from several circuits).[6]

---

[5] *See also Parker v. Time-Warner Entm't Corp.*, 331 F.3d 13, 18 (2nd Cir. 2003) "an appellate court . . . is noticeably less deferential" to a denial than a grant of class certification.

[6] *See also Walker v. Life Ins. Co. of the Sw.*, 953 F.3d 624, 633–34 (9th Cir. 2020) (rejecting defense objection to district court's narrowing the proposed class definition, which "contention directly conflicts with Ninth Circuit precedent, *obligating* district courts to tailor class definitions in a way that avoids predominance issues") (emphasis supplied); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012) (directing the district court to narrow a proposed class definition in a manner the Court found acceptable).

## III. THIS ACTION SATISFIES THE REQUIREMENTS OF RULE 23(A), AND THE RULE 23(B)(2) AND 23(B)(3) PREDOMINANCE REQUIREMENT.

Federal class actions must meet the prerequisites of Rule 23(a): *Numerosity:* The class must be so numerous that joinder of all members individually is "impracticable." Rule 23(a)(1); *Commonality:* There must be questions of law or fact common to the class. Rule 23(a)(2); *Typicality*: The claims or defenses of the class representative must be typical of the claims or defenses of the class. Rule 23(a)(3); and *Adequacy of representation:* The person representing the class must be able fairly and adequately to protect the interests of all members of the class. Rule 23(a)(4). Because Plaintiffs seek certification of both injunctive relief and damages classes, the Rule 23(b)(3) requirement that common issues predominate is addressed below in conjunction with Rule 23(a) commonality.

### A. NUMEROSITY.

The Classes all meet the numerosity requirement, ranging from tens of thousands (the Injunctive Relief Class) to approximately 4000 people (the Arrest Class), to at least several hundred (the Infraction Class), and to several dozen (likely over 100, the Direct Force Class).  See Sobel Class Dec., ¶¶ 44-47. The Infraction Class consists of at least 800 more, people. *Id.*, ¶¶ 91, 100, 104. The Direct Force Class consists of at least 75 people, likely well in excess of 100. *Id.*, ¶¶ 119-140. These figures far exceed the generally accepted minimum numerosity requirement. *See Newberg* § 3:12 (a "class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone"); *Jordan v. Cnty. of Los Angeles,* 669 F.2d 1311, 1319 & n.10 (9th Cir. 1992 (listing 13 cases with class members of fewer than 100, including 8 with fewer than 40).

### B. TYPICALITY.

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of

5

conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992) (citations omitted). Claims are typical "if they are reasonably coextensive with those of absent class members;" they needn't be "substantially identical." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). This analysis applies in mass protest cases. *See* § III(D).

The Class Representative Plaintiffs' claims are typical of their respective classes. Each Injunctive Relief individual named as a Class Representative participated in recent past protests, intends to do so in the future, and experienced LAPD's complained of conduct. See Declarations contained in Exhibit 104. Each Injunctive Relief organizational Plaintiff participated in and/or organized some of the protests, experienced LAPD's complained of conduct and the violation of their rights, both in their own right and on behalf of their members. See Declarations of Melina Abdulla and Darren "Pete" White. Each damages class representative experienced the violation of which they are a class representative.

## C.   ADEQUACY OF REPRESENTATION.

### 1.   *The class representatives' interests are not antagonistic to the interests of the class.*

Rule 23(a)(4)'s requirements that the representative parties will fairly and adequately protect the interests of the class are met when (1) there is no conflict of interest between the legal interests of the named plaintiffs and those of the proposed class, and (2) counsel for plaintiffs are competent to represent the class. *Lenvill v. Inflight Motion Pictures, Inc.*, 582 F. 2d 507, 512 (9th Cir. 1978); *Staton*, 327 F.3d at 957 (2003). Here, the class members' interests are aligned. Each Class Representative Plaintiff has signed a declaration stating they meet the class definition for which they are designated, are unaware of any conflicts of interest, and understand and will execute their class representative responsibilities. See Named Plaintiffs' Declarations at Exhibit 104.

### 2.   *Counsel are well qualified to represent the class.*

Plaintiffs' counsel are experienced class action and civil rights practitioners,

6

including the three lawyers designated as class counsel in the protest class actions of *Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*, 246 F.R.D. 621 (C.D. Cal. 2007) (hereafter "*MIWON*") (LAPD arrests and brutality at immigrant rights protest); in *Aichele v. City of Los Angeles*, 314 F.R.D. 478 (C.D. Cal. 2013) (hereafter "*Aichele*") (LAPD arrests at Occupy LA area on City Hall lawn); and in *Chua v. City of Los Angeles*, 2017 WL 10776036 (C.D. Cal. May 25, 2017) (hereafter "*Chua*") (LAPD arrests at 2014 Ferguson protests in downtown LA) – Paul Hoffman, Carol Sobel and Barry Litt. All three have extensive civil rights and class action expertise and experience, and are considered among the premiere attorneys in Los Angeles for such work. *See* Declarations of Barrett S. Litt, Paul Hoffman and Carol A. Sobel and accompanying exhibits.

### D.    COMMON QUESTIONS EXIST AND PREDOMINATE.

Rule 23(a) requires common questions; Rule 23(b)(3) requires for a damages class that the common questions "predominate" over individual issues, a standard not applicable to a 23(b)(2) class, which requires only that "the party opposing the class has acted or refused to act on grounds that apply generally to the class"). For commonality, there need not be commonality of "[a]ll questions of fact and law." *Hanlon*, 150 F.3d at 1019. "[S]hared legal issues with divergent factual predicates" or "a common core of salient facts coupled with disparate legal remedies" are sufficient. *Ibid*. Where, as here, "examination of all the class members' claims will produce a common answer" to a central common question, Rule 23(a) commonality is met. *Wal-Mart*, 564 U.S. at 352. Only to the extent necessary to determine Rule 23's applicability do courts examine the underlying legal merits. *Id*. at 351-52; *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014).

Rule 23(b)(3) predominance adds a layer to Rule 23(a) commonality. A "common question [under Rule 23(a)(1)] is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct.

1036, 1045 (2016) (quoting *Newberg* § 4:50, at 196–97). "The predominance inquiry [under Rule 23(b)(3)] 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Id.* (quoting *Newberg* § 4:49, at 195-96). So long as "'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3)'" even if there are other important individualized issues like "damages or some affirmative defense.'" *Id.* (quoting 7AA C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 1778, at 123–24 (3d ed. 2005)).[7]

"[M]ore *important questions apt to drive the resolution* of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016) (emphasis supplied.) If "common questions present a *significant aspect of the case and they can be resolved for all members of the class in a single adjudication*, there is clear justification for handling the dispute on a representative rather than on an individual basis," and predominance is satisfied. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (quoting *Federal Practice and Procedure,* § 1778) (emphasis supplied).

Courts routinely certify both injunctive relief and damages classes in mass protest cases. *See, e.g.*, *MIWON*, 246 F.R.D. at 629-30, 634 (dispersal and generalized force at Mayday 2007 protest; "the common issues in the First Amendment claim, Fourth Amendment claim, [and] *Monell* claim . . . are more than sufficient to meet the predominance requirement of Rule 23(b)(3)"); *Aichele*, 314

---

[7] To the extent that Defendants contend that some (small number) in the crowd engaged in aggressive and unlawful conduct against LAPD officers, that is such an affirmative defense and does not undermine class certification. *See, e.g.*, *Chang v. United States*, 217 F.R.D. 262, 272 (D.D.C. 2003) ("plaintiffs correctly contend that the existence of a defense [because 'some class members may have been engaged in violent or otherwise unlawful conduct'] based on individual misconduct for one or a few of the class members would not preclude class certification so long as common issues of fact and law *predominate*") (original emphasis).

F.R.D. at 491 (dispersal and arrests for Occupy LA protests); *Chua v. City of Los Angeles*, 2017 WL 10776036, at *13 (kettling and arresting people protesting failure to bring criminal charges in 2014 against officer who killed Michael Brown in Ferguson, Mo.); *Moss v. U.S. Secret Serv.*, 2015 WL 5705126, at **4–5 (D. Or. Sept. 28, 2015) (Rule 23(b)(3) damages class for breakup of demonstrators and subsequent arrests); *Spalding v. City of Oakland*, 2012 WL 994644 (arrests of protestors).[8]

There are several different ways that Plaintiffs can establish the City's liability based on common proof, any one of which would alone constitute a "central issue… [that] can be said to predominate." even if there are other important individualized issues like "damages or some affirmative defense.'" *Tyson Foods,* , 136 S. Ct. at 1045. These include 1) Was there a custom and practice – either in combination with similar violations at prior protests or based on the extensiveness of the violation during the George Floyd protests such that those repeated actions alone were sufficient to establish a custom and practice (including failures to do field arrests on infractions; tightly handcuffing arrestees and holding them for extended periods without access to food, water or bathrooms; indiscriminate and inappropriate uses of less lethal weapons such as 37 mm and 40 mm launchers, and batons, and did these violate either due process or the Fourth Amendment? 2) Was there a manifest failure to train its employees on the foregoing issues despite acknowledged similar violations during past protests in violation of due process? 3) Were the foregoing violations authorized by a policymaker because a) LAPD Chief Michael Moore set, directed and/or ratified the challenged policies and practices by personally directing

---

[8] *See also, e.g.*, *Vodak v. City of Chicago*, 2006 WL 1037151, at *1 (N.D. Ill. 2006) ("all persons who were surrounded by Defendants" and arrested during anti-Iraq War march); *MacNamara v. City of N.Y.*, 275 F.R.D. 125, 143-46 (S.D.N.Y. 2011) (arresting, ketting protestors in groups, or otherwise taking police action on a group basis); *Hickey v. City of Seattle*, 236 F.R.D. 659, 664 (W.D. Wash. 2006); *Alliance for Global Justice v. Dist. of Columbia*, Civ. 01-0811 (D.D.C. 2006); *Barham v. Ramsey*, 434 F.3d 565 (D.C. Cir. 2006); *Chang v. United States*, 217 F.R.D. 262 (D.D.C. 2003); *Dellums v. Powell*, 566 F.2d 167 (D.C. Cir. 1977); *Williams v. Brown*, 214 F.R.D. 484, 485 (N.D. Ill. 2003).

the arrests and uses of force during the first days of the class period, which were replicated from the same play book on subsequent days, and b) despite repeated violations of LAPD policies during the course of the police conduct over the five-day class period (including the above and the repeated failures to turn on body worn video cameras), no discipline was imposed for such violations. Authorities in support of these issues as a basis for *Monell* liability are provided below, primarily in Section III(D)(4) *infra*. First, we address each damages class.

### 1. ARREST CLASS

The Arrest Class is composed of people who 1) attended the George Floyd protests and were arrested during the class period on various infraction or misdemeanor charges (see proposed class definition for details) and 2) were held on buses and in "slammer" vans, and subjected to prolonged tight hand-cuffing, denied access to bathrooms, water and food, and held in enclosed spaces without ventilation. As indicated previously, the LAPD arrested more than 4,000 people during the five-day period of May 29 to June 2, 2020. Sobel Dec., ¶¶ 45-50. The arrestees were uniformly tightly handcuffed, first in the arrest holding areas and then on the buses; once on the buses, they were uniformly without water or bathroom access, and endured lengthy bus stays. See e.g., Exhibits 103, 113, 115, 116 (Class Representatives TRO Declarations)[9]; Sobel Dec. III(A), ¶¶ 51-90. The *Chaleff Report* found that, on 5/29-5/31, "LAPD arrested and detained individuals for exceedingly long periods of time" (Finding # 48, pg. 62); that arrestees "were detained for hours while handcuffed and were not provided with water or the use of bathroom facilities and were held in close conditions without masks during a pandemic environment" (Finding # 49, pg. 63; see also pgs. 46-47.) The LAPD had "not corrected the issues related to detention and arrests identified in the 2011 Occupy LA and the 2014 Ferguson protests." (Finding # 50, pg. 63); that there was

---

[9] : Declarations of Lopez and Roe (5/29 arrests); Hartsfield, Mayorca and Khan (5/30 arrests); Barrera-Trujillo, Kazin and Stamm (6/1 arrests); and Shentu and Young (6/2 arrests).

1   inadequate preparation and planning for potential mass arrests, resulting in "a last-
2   minute, uncoordinated effort to manage the arrests of more than 4,000 individuals,"
3   for which there were insufficient personnel "to process the arrestees and a lack of
4   buses or vans to transport them to the field jails. Arrestees were held   while
5   handcuffed for exceedingly long periods of time before buses" arrived, the "field jail
6   locations were miles from arrest locations" resulting in releasing people at times
7   when they "were again in violation of the curfew," those assigned to the field jails
8   "had not received training on field jail procedures," and LAPD inappropriately used
9   the UCLA Jackie Robinson Stadium as a field jail. *Id.,* Finding #s 46, 50, 51, 53, 54,
10   55, 56, pgs. 62-63.

11       As indicated previously, the LAPD arrested more than 4,000 people during
12   the five day period of May 29 to June 2, 2020. See Sobel Dec., ¶¶ 45-90. The vast
13   majority of arrestees "were detained handcuffed without water or bathroom access
14   on average for well over four hours," with many in the 6-8 hour range. Sobel Dec.,
15   ¶ 90. The minimum time spent for those handcuffed and detained on buses was 2-
16   2½ hours, and that was likely not more than a few dozen arrestees. Sobel Dec., ¶ 78.

17        The problems of bus detentions with "tight handcuffs for an extended period
18   of time" and "deni[al of] access to bathroom facilities or water"  were to have been
19   corrected after the Occupy LA 2011and Ferguson 2014, but were not. *Id.,* pg. 17.
20   "Despite having nearly a decade to revise and exercise custody procedures, the
21   LAPD did not have an adequate arrestee processing procedure in place resulting in
22   arrestees being in handcuffs for extended periods of time and arrestees allegedly not
23   being allowed access to bathroom facilities or water," *ibid.,* even though the Occupy
24   LA Settlement provided that arrestees would "not be placed on transportation buses
25   with tight handcuffs for an extended period of time," and would "not be denied
26   access to bathroom facilities or water while held in police custody." *Id,,* pg. 85.

27       The *Aichele* Occupy LA class certification decision is directly on point. Judge
28   Gee certified a damages class of protestors arrested over a defined time period and

a subclass of those arrested and transported to jail on buses. The class member evidence of "experiencing and observing conditions that were applied to everyone on the buses and during subsequent detention," including tight handcuffs and denial of bathroom access, supported certification. 314 F.R.D. at 489, 495-96. Here, Plaintiffs have similar evidence, plus the findings of the government reports, particularly the *Chaleff Report*. Plaintiffs "challeng[ing] the overall conditions in which they were detained on the buses … need not prove that every single class member was subjected to every single adverse condition to establish a custom or practice" *Aichele,* 314 F.R.D. at 490. The identical analysis applies here.[10] The Ninth Circuit has made clear that tight handcuffing that causes unnecessary pain alone establishes a constitutional violation.[11] Since *Aichele*, the standard for pretrial conditions of confinement have been clarified to require only objective deliberate indifference, making a determination of liability more straightforward. *See Castro*

---

[10] *See also, e.g., MacNamara v. City of New York*, 275 F.R.D. 125 (S.D. N.Y. 2011) (finding commonality and predominance where protest arrestees were subjected to cruel and inhumane confinement conditions involving prolonged handcuffing, inadequate seating and sanitary facilities, and exposure to various chemicals while detained); *Chang v. United States*, 217 F.R.D. 262, 267 (D.D.C. 2003) (common predominant claims included, *inter alia,* that plaintiffs "suffered significant pain from excessively tight handcuffs, were held on buses for hours with their hands in cuffs"). Aside from these protest specific conditions of confinement cases, it is indisputable that jail conditions challenges are generally cognizable. *See, e.g., Brown v. City of Detroit*, 2012 WL 4470433 (E.D. Mich. Sept. 27, 2012) (separate (b)(3) certifying two classes of arrestees, one held for more than 16 hours without bedding, and one detained for more than 48 hours without probable cause determination; liability certification proper even if damages had to be bifurcated); *Butler v. Suffolk County*, 2013 WL 1136547 (E.D.N.Y. Mar. 19, 2013) ((b)(3) certification of whether jail conditions were "cruel or inhuman" and "whether Defendants were deliberately indifferent to th[os]e conditions").

[11] *See, e.g., Meredith v. Erath,* 342 F.3d 1057, 1063 (9th Cir.2003) (holding that "to place and keep [a person] in handcuffs that were so tight that they caused her unnecessary pain violated her Fourth Amendment right to be free from an unreasonable seizure"); *Thompson v. Lake*, 607 Fed. App'x 624, 625 (9th Cir. 2015) (plaintiff is "not required to show that the handcuffs caused visible physical injury; it is enough that the handcuffs caused [plaintiff] unnecessary pain") (citations omitted). *Mann v. City of Chula Vista*, No. 18-CV-2525-WQH-MDD, 2020 WL 5759749, at *5 (S.D. Cal. Sept. 28, 2020) ("The Ninth Circuit has long recognized that overly tight handcuffing may constitute excessive force … when the handcuffs caused demonstrable injury or unnecessary pain, or when officers ignored or refused requests to loosen the handcuffs once alerted that the handcuffs were too tight").

1    *v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016).

2         **2.**   **INFRACTION CLASS**

3         The *Chaleff Report* also explained that, on May 29, all 365 arrests were for

4 violation of LAMC Section 80.02 (failure to obey a lawful order of a police officer),

5 which is an infraction, and that, "[o]ver the course of several days of protests, prior

6 to the declaration of a curfew, most of the arrests by LAPD were" for this same

7 infraction. *Id*, pgs. 46-47. The *Chaleff Report* concluded that at least the arrests

8 "made on Thursday, Friday, and Saturday [May 29-31] were made under a

9 Municipal Code Section that is an infraction requiring a citation and release in the

10 field." *Id.*, Finding #47, pg. 62. Arrests for these three days exceed 1800. It also

11 concluded that LAPD "has not corrected the issues related to detention and arrests

12 identified in the 2011 Occupy LA and the 2014 Ferguson protests." *Id*., Finding #50,

13 pg. 63. The 2011 Occupy LA lawsuit, *Aichele*, *supra*, certified an OR [Own

14 Recognizance] Subclass on the same essential theory as that advanced here (there,

15 that those arrested were entitled to OR release under Penal Code § 853.6; here that

16 they never should have been arrested and were entitled to field release under §

17 853.5). *See Chaleff Report*, pg. 46 ("An infraction is like a traffic ticket, in that the

18 person arrested is only required to show proof of identification and sign a promise

19 to appear in order to be released at the location of the traffic stop"). Although

20 Plaintiffs have not yet had the opportunity to fully examine LAPD records to

21 determine the precise number of infraction arrests, they estimate, based on LAPD

22 documents and class member reports, that the number exceeds 700. Sobel Dec., ¶¶

23 91, 100-104. Since the issue for this class is the propriety of arrests when charged

24 with an infraction, commonality and predominance are self-evident; the City's

25 records will identify who is in the class, and the question for each class member is

26 the same: whether their arrest was lawful since they were only charged with an

27 infraction. The evidence shows *Monell* violations on the three theories: the

28 consistent treatment constitutes a custom and practice; the failure to train is self-

1 evident in light of prior agreements; and no action was taken to correct these actions.

2 See authorities discussed in the following Section III(D)(3).

3      Defendants contend that, unless they cited protestors for an infraction before

4 their arrest, they did not violate the law if they released arrestees on an infraction,

5 and that this undermines class certification. While Plaintiffs fundamentally disagree,

6 whoever is correct is of no moment for class certification because, once the class is

7 certified, whatever the correct answer is applies to the class. "Rule 23(b)(3) requires

8 [only] a showing that questions common to the class predominate, not that those

9 questions will be answered, on the merits, in favor of the class." *Amgen Inc. v.*

10 *Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 459, 133 S. Ct. 1184 (2013).

11           **3.**    **DIRECT FORCE CLASS**

12      The LAPD Safe LA Report identified four types of less-lethal munitions used

13 against the protestors: 37mm less-lethal foam rubber baton; the 40mm Less-Lethal

14 Launcher; the Beanbag Shotgun; and, the Stinger Grenade .60 caliber.  Safe LA

15 2020: p. 72.  Over 10,000 rounds of less-lethal munitions were used.  *Id.* at p. 74.

16 The Chaleff Report preliminarily concluded that "the majority of injuries reported

17 occurred from the deployment of the 40mm rounds." *Id.*, pg. 44. Proper use of the

18 40mm requires a "greater level of training, marksmanship and competency," which

19 training was lacking for most of the officers authorized to use 40mm.  See Chaleff

20 Findings # 38 (lack of supervisorial direction over use of the 40mm), #s 40-42

21 (40mm requires high level of training, and last general officer training was 2018), #

22 44 (LAPD directive authorizing the use of 40mm has no detailed guidance on use in

23 public order policing situations), pg. 45. "The 40mm training was problematic for

24 several reasons," including that one engaged in criminal conduct may be behind

25 those engaged in lawful conduct, requiring a very precise use of the 40mm, and

26 highly trained and skilled officers; otherwise "individuals who are not involved in

27 criminal activity can unintentionally be hit and injured." *Id.*, pg. 8. Numerous class

28 member declarations attest that the less lethal projectiles were used indiscriminately

against crowds and hit people who were doing nothing but standing and protesting, or in some instances running away to avoid being shot, *see, e.g.,* Declarations of Moore, Roe, Contreras, and Crnko (Ex. , even though 40 mm rounds are only permissible "in crowd control situations against a single subject/suspect as a target-specific less lethal option," and may not "be used to disperse a crowd." Chaleff Report, pgs. 41-42. See also Sobel Dec. ¶¶ 108-120. Similarly, the 37 mm was used indiscriminately, including extensively on May 29 and May 30. See Sobel Dec. ¶¶ 121-128.

Batons were used improperly in response to the protests in violation of LAPD policy, which only allows the use of a baton as an impact device where there is violence or an imminent threat of violence or physical harm. Specifically, they were used as offensive weapons to inflict baton strikes against peaceful protestors who had all avenues of exit closed off by the police. See Sobel Dec. ¶¶ 130-134.

A Fourth Amendment seizure occurs when officers "by means of physical force or show of authority terminates or restrains freedom of movement through means intentionally applied." *Nelson v. City of Davis*, 685 F.3d 867, 875 (9th Cir. 2012) (citations and quotation marks omitted). *See Torres v. Madrid*, 141 S. Ct. 989, 1003, 209 L. Ed. 2d 190 (2021) ("the application of physical force to the body of a person with intent to restrain is a seizure even if the person does not submit and is not subdued"). Here, physical force was used to restrain the freedom to stay.

### 4. ADDITIONAL AUTHORITIES SUPPORTING THE FOREGOING CERTIFICATIONS

**CUSTOM AND PRACTICE:** The widespread occurrence over several nights of all three of the class claims – bus conditions for arrestees, the infraction arrests and widespread improper uses of force–in and of themselves are substantial evidence of a custom and practice. *See, e.g., Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985) ("repeated acts of abuse on this night, by several officers in several episodes, tend[] to prove a disposition to disregard human life and safety so

prevalent as to be police policy or custom").[12] When combined with the fact that these types of violations had occurred previously, and even had been the subject of cessation agreements or orders, a custom and practice is clearly established. *See*, e.g., the *Chaleff Report's* discussion of four prior protest case agreements or court orders regarding police activity in the cases: *MIWON v. City of Los Angeles* (police breakup of MacArthur Park May Day 2007 demonstration limiting less-lethal weapons to use only against "aggressive or combative behavior" or "to prevent the destruction of property," and requiring annual training for Metro staff and at least bi-annual training for officers ranked Sergeant I and above); Occupy LA, the *Aichele* case discussed above ("[a]rrestees shall not be placed on transportation buses with tight handcuffs for an extended period of time," "[a]rrestees shall not be denied access to bathroom facilities or water while held in police custody," and "[a]rrestees shall be released on their own recognizance if charged only with a misdemeanor, pursuant to California Penal Code 853.6;" the Ferguson protest settlement, *Chua v. City of Los Angeles*, 2017 WL 10776036, at *13 (C.D. Cal. May 25, 2017) ("[a]rrestees shall not be zip-tied for extended periods of time"; "[a]rrestees shall not be incarcerated for extended periods of time," and "[a]rrestees shall not be denied 'OR' (released on their own recognizance) for misdemeanor charges pursuant to California Penal Code 853.5PC." *Chaleff Report.*, pgs. 84-86. The BLM protests demonstrated that, when significant arrests were made, these standards were completely discarded and ignored during the BLM protests at issue in this case.

That the challenged conduct was or should have been known to raise serious constitutional issues is clear, given the history of the City of Los Angeles' prior

---

[12] *Grandstaff* has been repeatedly cited approvingly by the Ninth Circuit. *See, e.g., McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986) (repeated violation by several prison officers on single day sufficient to establish policy and custom); *Larez v. City of Los Angeles,* 946 F.2d 630, 645 (9th Cir. 1991); *Henry v. Cty. of Shasta*, 132 F.3d 512, 519 (9th Cir. 1997), opinion amended on *denial* of reh'g, 137 F.3d 1372 (9th Cir. 1998).

1   litigation on the same issues. See, e.g., *MIWON*, 246 F.R.D. at 635 (certifying
2   (23(b)(3) class in light of Plaintiffs' allegation that "the City's failure to implement
3   policies to ensure the rights of demonstrators, given the City's obligations under
4   the *NLG* and *Crespo* settlements, arises to a municipal policy or custom of
5   deliberate indifference to the First Amendment rights of the public"); *Aichele*, 314
6   F.R.D. at 487 (certifying 23(b)(3) protest class in light of evidence of arrests without
7   dispersal orders, "holding Plaintiffs for hours on buses or in a garage, without access
8   to bathroom facilities or water, while tightly handcuffed, before they were booked,"
9   and  failure to release Plaintiffs OR pursuant to Penal Code § 835.6). Both cases
10  resulted in seven figure settlements.
11        Other authorities, particularly for a custom and practice of excessive force,
12  include decisions regarding centralized, Command staff decisions regarding the use
13  of force. *See, e.g., MIWON*, 246 F.R.D. at 634 (excessive force class of protestors
14  for 2007 May Day demonstration based on "the command decisions to disperse the
15  crowd and to authorize the use of less-lethal munitions if the crowd's behavior
16  warranted it"); *Leadholm v. City of Commerce City*, *supra,* 2017 WL 1862313 (D.
17  Colo. May 9, 2017) (single incident excessive force involving multiple officers);
18  *Grandstaff v. City of Borger*, 767 F.2d at 171 (5th Cir. 1985) (described above).
19        **FAILURE TO TRAIN**: In tandem with the above, the agreements/orders for
20  how to address certain protest related issues, and the obvious need for training in
21  light of the history of violations, meant that the City of Los Angeles was obligated,
22  but nonetheless failed, to train officers and command staff. *Chaleff Report*, Finding
23  #27, pg. 60. ("There was a lack of training to properly prepare command officers for
24  managing large crowds with the possibility of civil unrest and many command
25  officers stated they did not feel confident in handling these incidents"). As discussed
26  in the Direct Force Class section below, lack of training was a major issue in how
27  LAPD employed force during the protests. In general, there was a failure to train
28  officers on arrest and confinement issues, and the use of force during protests. *See,*

*e.g., Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) ("Failure to train may amount to a policy of 'deliberate indifference,' if the need to train was obvious and the failure to do so made a violation of constitutional rights likely. *City of Canton v. Harris,* 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Similarly, a failure to supervise that is 'sufficiently inadequate; may amount to 'deliberate indifference.' *Davis v. City of Ellensburg,* 869 F.2d 1230, 1235 (9th Cir.1989).") The failure to follow written agreements or orders ensuring that 1) force would be appropriately employed in protest situations, 2) bus conditions for arrestees would provide minimally reasonable treatment, and 3) those entitled to be field release would not be arrested all evidence a custom and practice, deliberate indifference and failure to train.

Other authorities for lack of training resulting in injury include *Healey v. Louisville Metro Gov't,* No. 317CV00071RGJRSE, 2021 WL 149859, at *24–25 (W.D. Ky. Jan. 15, 2021) (certifying over-detention class based on claim of continuing pattern of violations resulting both from institutional policies or lack of same "and/or an egregious failure to train and supervise LMDC staff to prevent such misconduct"); *Allman v. Coughlin*, 577 F. Supp. 1440, 1442-43 (S.D.N.Y. 1984) ((b)(3) certification where, after prison unrest, prisoners surrendered peacefully and prison guards engaged in unnecessary and excessive force; evidence suggested systematic violations of inmates' rights and "the possibility of a gross failure on the part of the defendants to properly select, train, and supervise the CERT line officers;" predominant issue of law was whether failures in selection, training, and supervision violated inmates' rights because they resulted in the class's alleged injuries); *Packard v. City of New York*, No. 115CV07130ATSDA, 2019 WL 2493515, at *5 (S.D.N.Y. Mar. 8, 2019), *report and recommendation adopted,* 2019 WL 1714669 (S.D.N.Y. Apr. 16, 2019) (recommending certification of (b)(3) protest arrest class for failure to train once plaintiffs narrow class and subclass definitions).

**DIRECT ACTS OF FINAL POLICY MAKER/RATIFICATION:** Chief

1  Moore was present at the protests on May 29-30 resulting in over 1000 arrests,
2  directed the arrests on May 29-30 and praised the LAPD's handling of the protests
3  as "harsh and strong…but necessary." *See* https://www.youtube.com
4  /watch?v=2ShbW0251-M. Given that the police response on May 31 to June 2
5  followed the same playbook as on May 29 to May 30 – indiscriminate arrests:
6  arresting people ultimately charged only with infractions; applying painful and
7  prolonged tight handcuffing; holding arrestees on buses for hours with no ventilation
8  or access to bathrooms, water or food; and indiscriminate use of batons and "less-
9  lethal" weapons – all  elaborated on below –Chief Moore engaged in,  approved
10 and/or ratified the police conduct throughout the class period. *Ninth Circuit Model*
11 *Civil Instruction 9.6* (Final policy maker, while acting as final policy maker,
12 deprived the plaintiff of his/her constitutional rights, which conduct was a moving
13 force in the violation).[13]

14      Notably, neither Chief Moore, the LAPD, nor the Police Commission imposed
15 discipline on anyone for these systemic violations even though they were fully aware
16 of them through internal reporting, the Chaleff Report, the investigations of civil
17 rights lawsuits filed after the protests, and several Critical Use of Force reports which
18 found incidents to be squarely out of policy. Sobel Dec. ¶¶ 16-42 and materials cited
19 therein. *See, e.g., Ninth Circuit Model Civil Instruction 9.7* (A species of final policy
20 maker liability arises where an employee of a defendant government entity deprived
21 a plaintiff of a federally protected right under color of state law, and an official of
22 the entity with "final policymaking authority… ratified [name of defendant's
23 employee]'s [act[s] [failure to act], that is, [name of alleged final policymaker] knew

---

26 [13] In Los Angeles, the police chief is the final policymaker on police matters. *See, e.g.,*
27 *Larez v. City of Los Angeles*, 946 F.2d at 646 (9th Cir.1991) (describing then LAPD police chief
   Darryl Gates as "an authorized policymaker on police matters"); *Jackson v. Gates*, 975 F.2d 648,
28 655 (9th Cir. 1992) ("Under the Charter of the City of Los Angeles, …the police chief is clearly
   the final authority on disciplining officers")..

of and specifically made a deliberate choice to approve [name of defendant's employee]'s [act[s]] [failure to act] and the basis for it."); *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988) (plurality opinion) ("[i]f the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final"); *Larez v. City of Los Angeles*, 946 F.2d 630, 645 – 648 (9th Cir. 1991) (evidence that police chief made or ratified a decision that deprived plaintiffs of their constitutional rights would suffice for official liability); *Hammond v. County of Madera*, 859 F.2d 797, 802, 803 (9th Cir. 1998) (board, which was responsible for approving transfers of rights-of-way, accepted and approved of transfer documents that resulted in deprivation of constitutional rights).

The evidence of widespread violations (summarized above) has been known to LAPD since the original complaint was filed in this case, and reinforced by the various reports documenting the events, which combined provide damning evidence of widespread violations in the conditions of arrest, handling of infractions and use of "less-lethal" weapons. Yet, there have been only three out-of-policy findings (what was done about them is currently unknown) on the use of force although at least five plaintiffs in this case were shot in the head and were not engaged in conduct justifying such force, and plaintiffs in several other lawsuits were similarly struck in the head, face and neck. SAC, ¶ 126. None of the extensive bus and infraction violations were deemed worthy of findings of violations or discipline. Chief Moore was present during some of the events and made public statements as referenced above and submitted reports that did not take issue with most of the LAPD''s unlawful conduct. SAC ¶ 129; Sobel Dec., ¶¶ 16-39.

Failing to discipline and turning a blind eye to known violations constitutes a custom or policy under *Monell. See, e.g., Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir.2001); *Henry v. County of Shasta,* 132 F.3d 512, 519 (9th Cir.1997) (when a municipality 'turn[s] a blind eye to severe violations of inmates' constitutional

rights-despite having received notice of such violations-a rational fact finder may properly infer the existence of a previous policy or custom of deliberate indifference"); *Larez v. City of Los Angeles*, 946 F.2d 630, 646-47 (9th Cir. 1991) (consistent failure to discipline for obvious violations is sufficient evidence of a policy or custom and acquiescence in the violations); *Fuller v. City of Oakland*, 47 F.3d 1522, 1535 (9th Cir. 1995) (ratification may be established by proving a municipality's failure to meaningfully investigate and respond to complaint of constitutional violations); *McRorie v. Shimoda,* 795 F.2d 780, 784 (9th Cir.1986) (violation if "officials took no steps to reprimand or discharge the[ir subordinates], or if they otherwise failed to admit the [subordinates'] conduct was in error"); *Ninth Circuit Model Civil Instruction 9.6* (2007).

Other authorities regarding the LAPD'S and Chief Moore's consistent failure to discipline violations or even clearly identify them constituted ratification and acquiescence in unconstitutional conduct include *Trujillo v. City of Ontario*, 428 F. Supp. 2d 1094, 1111 (C.D. Cal. 2006), *aff'd sub nom. Bernhard v. City of Ontario*, 270 F. App'x 518 (9th Cir. 2008) (granting plaintiffs partial summary judgment on *Monell* ratification claim; class certification had previously been granted); *Scott v. Clarke*, 2012 WL 6151967 (W.D. Va. Dec. 11, 2012) (denying motion to dismiss prisoners' class claim for medical deliberate indifference and ratification on *Monell* claim and declining to address class certification at the pleading stage).

**E.   INDIVIDUALIZED DAMAGES DO NOT DEFEAT PREDOMINANCE.**

So long as Plaintiffs' "damages stemmed from the defendant's actions that created the legal liability" the "presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)." *Levya v. Medline Indus.*, 716 F.3d 510, 514 (9th Cir. 2013) (distinguishing *Comcast v. Behrend*, 569 U.S. 27, 38 (2013)). The Ninth Circuit has repeatedly confirmed this point. *See, e.g., Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 (9th Cir. 2015; *Jimenez,* 765 F.3d at 1168; *Vaquero v. Ashley Furniture Industries, Inc.*, 824 F.3d 1150, 1154-55

(9th Cir. 2016) ("our precedent is well settled on this point").

###### F. LIABILITY IS APPROPRIATELY CERTIFIED UNDER RULE 23(C)(4).

Rule 23(c)(4) provides that "when appropriate an action may be brought or maintained as a class action with respect to particular issues." Thus, it is proper to certify a Rule 23(b)(3) class for liability only. *See Tyson Foods*, 136 S. Ct. at 1045 (so long as "'one or more of the central issues . . . are common . . . and can be said to predominate," Rule 23(b)(3) certification is proper); *Valentino v. Carter- Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) ("Even if the common questions do not predominate . . . so that class certification of the entire action is warranted, Rule 23 authorizes … isolat[ing] the common issues under Rule 23(c)(4)(A) and proceed[ing] with class treatment" for those); 7A *Wright & Miller* §1778 (certification of one or more issues proper "even though important matters will have to be tried separately"). In the "typical" Rule 23(c)(4) case, the court certifies "liability, leaving only damages" to be litigated individually. *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 308 F.R.D. 630, 640 (N.D. Cal. 2015). That is the case here (although certification of classwide general or statutory damages, see below. may, as a practical matter, resolve the issue). *See also, e.g., In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 226 (2d Cir. 2006) (Rule 23(c)(4) certification appropriate "when common questions predominate only as to 'particular issues'"); *Amador v. Baca*, 2014 WL 10044904, at *9 (C.D. Cal. Dec. 18, 2014) (the "Ninth Circuit—and respected jurists across the country—have energetically endorsed the concept" of issue certification for liability only); *Manual for Complex Litigation, Fourth* § 21.24 (4th ed.).

## IV. THIS CASE MEETS THE OTHER REQUIREMENTS OF RULE 23(B).

### A. SUPERIORITY AND MANAGEABILITY ARE MET.

In addition to predominance, Rule 23(b)(3) requires that class adjudication be "***superior*** to other available methods" and identifies several factors, including individual class member interest in controlling the litigation; the existence of other

pending litigation on the same controversy; and manageability. The leading consideration addressed in the case law is the existence of numerous claims too small to litigate individually. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (policy "at the very core of the class action mechanism" is to make adjudications for "small recoveries" viable. While there is a handful of individual BLM cases involving significant injuries, the class member claims here are not significant enough to justify individual litigation for the vast majority of class members. (There are a few class member claims included in this case with injuries significant enough to justify individual litigation, which will be negotiated individually. Very few lawyers, if any, would handle such the typical class member claim here individually because the damages are relatively small. See Declaration of Barrett S. Litt, ¶23. Thus, few individuals have an interest in controlling the litigation (and those who do can opt out of the class). There are no overlapping class cases (but there are a handful of individual claims).

Manageability is demonstrated by the fact that many similar cases have been certified. Liability can be determined readily on a classwide basis. Unless the Court certifies this case for general or statutory damages (see below), it would make sense to bifurcate liability and damages, try liability, and then determine how to handle damages. *See, e.g., Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) (a "global settlement ,,, will be a natural and appropriate sequel" to a liability finding, and "Rule 23 allows … imaginative solutions," including bifurcation, appointment of a special master, decertifying the class for subsequent proceedings, and others, to address damages.") *Id.*; *accord MIWON*, 246 F.R.D. at 636.

### B. CLASSWIDE GENERAL AND STATUTORY DAMAGES ARE DETERMINABLE AND, IN ANY EVENT, THE ISSUE CAN BE DEFERRED.

The damages within the Arrest and Infraction classes are uniform and readily determinable since all have very similar injuries (handcuffing/conditions of confinement and arrests rather than field release). General or presumed damages flow from the principle that, where there is "a constitutional violation and

[indisputably] some injury to the plaintiff, the plaintiff is entitled to an award of compensatory damages as a matter of law." *Kerman v. City of New York*, 374 F.3d 93, 124 (2d Cir. 2004) (general damages for excessive force and deprivations of liberty).[14]

Classwide general or presumed damages have been certified in several class actions. *See Betances v. Fischer*, 304 F.R.D. 416, 431 (S.D.N.Y. 2015) (general damages for unlawful post-release conditions resulting in incarceration, and presumed damages for less severe liberty restrictions such as curfews and travel); *In re Nassau Cnty. Strip Search Cases*, 742 F. Supp. 2d at 331 (general damages per unlawful strip search for dignitary harm); *Augustin v. Jablonsky*, 819 F. Supp. 2d 153 (E.D.N.Y. 2011) (same); *Barnes v. Dist. of Columbia*, 278 F.R.D. 14, 21 (D.D.C. 2011) (same and for unlawful overdetentions); *Roy v. Cnty. of Los Angeles*, 2018 WL 3436887, at **3–4 (C.D. Cal. July 11, 2018) (general damages for people held pursuant to ICE holds); *Aichele*, 314 F.R.D. at 496 (general damages in protest arrest case); *Rodriguez v. City of Los Angeles*, 2014 WL 12515334, at 1, 5–7 (C.D. Cal. Nov. 21, 2014) (general damages for arrests based on unconstitutional gang injunction imposing curfew); *Dellums v. Powell*, 566 F.2d 167 (D.C. Cir. 1977) (general damages, though not so denominated, for protest arrests and detentions).

---

[14] General or presumed damages have been found appropriate for First and Fourth Amendment rights. *See, e.g.*, *Hessel v. O'Hearn*, 977 F.2d 299, 301-02 (7th Cir. 1992) (presumed damages recoverable for "substantive constitutional rights, such as the right to freedom of speech, or the right to be free from unreasonable searches and seizures"; no proof of injury is required but plaintiff may argue for "heavy damages" because the right invaded was "important'") (citation omitted); *Walje v. City of Winchester*, 773 F.2d 729, 732 (6th Cir. 1985) (First Amendment free speech general damages "necessary ... to fully vindicate the challenged substantive right"); *Bell v. Little Axe Indep. Sch. Dist. No. 70 of Cleveland Cnty.*, 766 F.2d 1391 (10th Cir. 1985) (First Amendment presumed damages without proof of actual damages); *Siebert v. Severino*, 256 F.3d 648, 655 (7th Cir. 2001) ("general (or presumed) damages for a Fourth Amendment violation, even without proof of injury."); *cf. Hazle v. Crofoot*, 727 F.3d 983, 992-93 (9th Cir. 2013) (compensatory damages for parole revocation and imprisonment due to refusal of residential drug-treatment program that required plaintiff to acknowledge higher power, citing *Kerman* favorably).

1    Here, the Court should certify classwide general damages for the unlawful
2    detention of those arrested for an infraction, and the bus conditions of prolonged
3    detention – or, alternatively, defer determination of the best means of handling
4    damages until after liability has been determined. *See, e.g.*, *Carnegie*, 376 F.3d at
5    661. As to force injuries, Plaintiffs propose general damages for those who did not
6    require medical treatment and individualized damages for those who did.

7    Further, Civil Code § 52.1 incorporates statutory damages under of $4000 per
8    violation under Cal. Civil Code §52(a). Such damages are readily determinable and
9    appropriate for class treatment. *See, e.g., Bateman v. Am. Multi-Cinema, Inc.*, 623
10   F.3d 708 (9th Cir. 2010) (reversing denial of class certification where District Court
11   found that the statutory damages provided by FACTA were disproportionate to the
12   harm because Congress intended statutory damages to apply to each violation).

13   ### C. RULE 23(B)(2)'S REQUIREMENTS ARE ALSO MET.

14   Certification under Rule 23(b)(2) is appropriate where, as here, the opposing
15   party "has acted or refused to act on grounds generally applicable to the class." Rule
16   23(b)(2) applies "when a single injunction or declaratory judgment would provide
17   relief to each member of the class." *Dukes*, 564 U.S. at 360 (internal quotation marks
18   and citations omitted). The Court already has issued a temporary injunction.

19   ### D. ALTERNATIVELY, RULE 23(B)(1)'S REQUIREMENTS ARE MET.

20   Rule 23(b)(1) provides for maintaining where there are risks of "inconsistent
21   or varying adjudications" or where, individual adjudications  "would substantially
22   impair or impede [other class members'] ability to protect their interests." Although
23   certification under this rule is relatively rare, it has been expressly applied in protest
24   cases. *See Chang v. United States*, 217 F.R.D. 262, 273 n.5 (D.D.C. 2003) (certifying
25   on Rule 23(b)(1) as well as other grounds).

26   ## V. CONCLUSION.

27   For the reasons stated above, the Court should certify the proposed classes,
28   and approve the proposed class representatives and class counsel.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DATED: May 26, 2022

McLANE, BEDNARSKI & LITT, LLP
LAW OFFICES OF CAROL SOBEL
SCHONBRUN, SEPLOW, ET AL.

By: */s/ Barrett S. Litt*
BARRETT S. LITT

By: */s/ Carol A. Sobel*
CAROL A. SOBEL

Attorneys for Plaintiffs