**MICHAEL N. FEUER**, City Attorney – SBN 111529
**SCOTT MARCUS,** Chief Assistant City Attorney – SBN 184980
**CORY M. BRENTE,** Senior Assistant City Attorney – SBN 115453
**GABRIEL S. DERMER,** Assistant City Attorney – SBN 229424
**GEOFFREY PLOWDEN**, Deputy City Attorney – SBN 146602
**JOSEPH S. PERSOFF**, Deputy City Attorney – SBN 307986
200 No. Main Street, 6th Floor City Hall East
Los Angeles, California 90012
Email:  geoffrey.plowden@lacity.org
Phone:  (213) 978-7038 Fax No: (213) 978-8785

*Attorneys for Defendants*
**CITY OF LOS ANGELES and CHIEF MICHEL MOORE**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLACK LIVES MATTER LOS ANGELES, CANGRESS (DBA LA CAN), STEVEN ROE, NELSON LOPEZ, TINA ČRNKO, JONATHAN MAYORCA, ABIGAIL RODAS, KRYSTLE HARTFIELD, NADIA KHAN, CLARA ARANOVICH, ALEXANDER STAMM, MAIA KAZIM, ALICIA BARRERA-TRUJILO, SHANNON LEE MOORE, DEVON  YOUNG, LINUS SHENTU, individually and on behalf of a class of similarly situated persons,<br><br>PLAINTIFFS,<br><br>v.<br><br>CITY OF LOS ANGELES, a municipal entity, CHIEF MICHEL MOORE , and DOES 1-10 inclusive,<br><br>DEFENDANTS. | CASE NO. **CV20-05027 CBM-AS**<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>[Filed concurrently with Compendium of Evidence; Request for Judicial Notice; Decl. of Geoffrey Plowden; Omnibus Objections to Evidence; [Proposed] Order Sustaining Evidentiary Objections; and [Proposed] Order Denying Motion for Class Certification]<br><br>HEARING<br>DATE: AUGUST 16, 2022<br>TIME: 10:00 A.M.<br>COURTROOM 8D |

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................1

II.   BACKGROUND ...................................................................................................2

    A.    The City Erupts Following The Death Of George Floyd .........................2

    B.    After Several Days, Peaceful Protests Take Hold ....................................4

    C.    The Training Of LAPD Officers ...............................................................4

    D.    The 20 Plaintiffs And Their Claims .........................................................5

    E.    The 70 Other Plaintiffs Bringing Individual Claims ...............................6

III.  LEGAL ARGUMENT ...........................................................................................6

    A.    Class Certification Standard......................................................................6

    B.    Plaintiffs Provide No Basis For Certifying Any Class ............................7

    C.    Plaintiffs Fail To Demonstrate Satisfaction Of Rule 23's Requirements ..........7

        1. Numerosity...........................................................................................7

        2. Plaintiffs' Claims Cannot Be Proven By Common Evidence ..................8

            a) Direct Force Class .......................................................................9

            b) Infraction Class .........................................................................14

            c) Arrest Class ...............................................................................15

        3. Typicality ...........................................................................................17

            a) Direct Force ..............................................................................18

            b) Infraction ..................................................................................19

            c) Arrest ........................................................................................19

        4. Adequacy ...........................................................................................21

            a) Plaintiffs....................................................................................21

            b) Law Office of Carol A. Sobel ..................................................23

        5. Predominance and Superiority............................................................24

        6. Injunction ...........................................................................................24

IV. CONCLUSION.....................................................................................................25

i

# TABLE OF AUTHORITIES

**Cases**

*Ahmad v. City of St. Louis*,
  995 F.3d 635 (8th Cir. 2021)................................................................22

*Aichele v. City of L.A.*,
  314 F.R.D. 478 (C.D. Cal. 2013) .....................................................16, 17

*Alvarez v. XPO Logistics Cartage, LLC*,
  No. 2:18-cv-03736, 2020 U.S. Dist. LEXIS 199326 (C.D. Cal. Nov. 15, 2017).........22

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
  568 U.S. 455 (2013).........................................................................6

*Anti Police-Terror Project v. City of Oakland*,
  No. 20-cv-03866, 2021 U.S. Dist. LEXIS 200363 (N.D. Cal. Oct. 18, 2021)..10, 12, 25

*Astorga v. Cnty. of L.A.*,
  No. 2:20-CV-09805-AB (AGRx), 2021 U.S. Dist. LEXIS 246222 (C.D. Cal. Oct. 21,
  2021)......................................................................................8

*B.K. v. Snyder*,
  922 F.3d 957 (9th Cir. 2019)................................................................9

*Bates v. UPS*,
  511 F.3d 657 (9th Cir. 2007)...............................................................25

*Black Lives Matter 5280 v. City and Cnty. of Denver*,
  338 F.R.D. 506 (D. Col. June 28, 2021) ....................................................10

*Blake v. Cnty of Santa Clara*,
  No. 16-cv-01279, 2016 U.S. Dist. LEXIS 100468 (N.D. Cal. Aug. 1, 2016)...............20

*Bowerman v. Field Asset Servs.*,
  No. 18-16303, Slip Opn. at 18-23 (9th Cir. July 5, 2022) ...................................7

*Chang v. U.S.*,
  217 F.R.D. 262 (D.D.C. 2003)..............................................................17

*Chua v. City of L.A.*,
  No. CV16-00237, 2017 U.S. Dist. LEXIS 224221 (C.D. Cal. May 25, 2017) ............22

*City of Canton v. Harris*,
  489 U.S. 378 (1989)........................................................................12

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) ..........................................................................6

*Dirs. Guild of Amer., Inc. v. Warner Bros., Inc.*,
  No. CV 83-4764, 1985 U.S. Dist. LEXIS 16325 (C.D. Cal. Aug. 30, 1985)..............23

*Doyle v. Chrysler Grp., LLC*,
  663 Fed.Appx. 576 (9th Cir. 2016)........................................................14

*Dundon v. Kirchmeier*,
  No. 1:16-cv-406, 2021 U.S. Dist. LEXIS 252852 (D.N.D. Dec. 29, 2021).................11

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

*Edgerly v. City & Cnty. of S.F.*,
    599 F.3d 946 (9th Cir. 2010)...................................................................14
*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011)....................................................6, 17, 19
*Frye v. Oleshea*,
    No. C 08-5288, 2009 U.S. Dist. LEXIS 62914 (N.D. Cal. July 6, 2009).....................15
*Hernandez v. City of San Jose*,
    241 F.Supp.3d 959 (N.D. Cal. 2017) ...................................................10
*In re Silver Wheaton Corp. Sec. Litig.*,
    No. 2:15-cv-05146, 2017 U.S. Dist. LEXIS 72787 (C.D. Cal. May 11, 2017).............21
*J. K. J. v. City of San Diego*,
    17 F.4th 1247 (9th Cir. 2021) .......................................................12, 13, 19
*J.J. v. M.F.*,
    223 Cal. App. 4th 968 (Cal. Ct. App. 2014) ...........................................10
*Jimenez v. Allstate Ins. Co.*,
    765 F.3d 1161 (9th Cir. 2014)...........................................................9
*Just Film, Inc. v. Buono*,
    847 F.3d 1108 (9th Cir. 2017).......................................................18, 24
*L.A. v. Lyons*,
    461 U.S. 95 (1983) .....................................................................25
*Livingston v. Hoffnagle*,
    No. 9:19-CV-0353, 2019 U.S. Dist. LEXIS 195276 (N.D. N.Y. Nov. 8, 2019)...........15
*MacNamara v. City of N.Y.*,
    275 F.R.D. 125 (S.D. N.Y. 2011) ......................................................17
*Marcus v. Bush*,
    No. 11-CV-4049, 2013 U.S. Dist. LEXIS 70574 (E.D. N.Y. May 17, 2013)..............15
*Moeller v. Taco Bell Corp.*,
    No. C 02-5849 PJH, 2012 U.S. Dist. LEXIS 104454 (N.D. Cal. July 26, 2012)...........9
*Murchison v. Cnty. of Tehama*,
    69 Cal. App. 5th 867 (Cal. Ct. App. 2021) ............................................10
*NEI Contr. & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*,
    926 F.3d 528 (9th Cir. 2019)..........................................................20
*Nelson v. City of Davis*,
    685 F.3d 867 (9th Cir. 2012)..........................................................11
*Panagacos v. Towery*,
    2014 U.S. Dist. LEXIS 98982 (W.D. Wash. July 21, 2014), *affirmed by* 692 Fed.Appx.
    330 (9th Cir. 2017)....................................................................16
*People v. McKay*,
    27 Cal. 4th 601 (2002) ...............................................................14

iii

*Pulse Elecs., Inc. v. U.D. Elec. Corp.*,
  No. 3:18-cv-00373, 2021 U.S. Dist. LEXIS 49101 (S.D. Cal. Mar. 15, 2021)............23
*Reviere v. Phillips*,
  No. 1:11-cv-00483, 2014 U.S. Dist. LEXIS 22954 (E.D. Cal. Feb. 21, 2014) ............15
*Riddick v. AT&T*,
  No. 2:12-cv-02033, 2017 U.S. Dist. LEXIS 76795 (E.D. Cal. May 18, 2017)............23
*Rodriguez v. Gates*,
  No. CV 99-13190, 2002 U.S. Dist. LEXIS 10654 (C.D. Cal. May 30, 2002) .............12
*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ..................................................................................................20
*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003)......................................................................................22
*Trauth v. Spearmint Rhino Cos. Worldwide, Inc.*,
  No. 09-1316, 2010 U.S. Dist. LEXIS 147958 (C.D. Cal. July 26, 2010)....................21
*Turner v. Procopio*,
  No. 13-CV-693, 2020 U.S. Dist. LEXIS 55052 (W.D. N.Y. Mar. 27, 2020) .............15
*U.S. v. Prantil*,
  764 F.2d 548 (9th Cir. 1985)......................................................................................24
*Valle v. Global Exch. Vacation Club*,
  320 F.R.D. 50 (C.D. Cal. 2017) .................................................................................19
*Virginia v. Moore*,
  553 U.S. 164 (2008) ..................................................................................................14
*Welling v. Alexy*,
  155 F.R.D. 654 (N.D. Cal. 1994) ...............................................................................22
*Young v. Cnty. of L.A.*,
  655 F.3d 1156 (9th Cir. 2011)....................................................................................10
*Zinser v. Accufix Research Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001)....................................................................................24

**Statutes**
Cal. Pen. Code § 853.5...................................................................................................14

**Other Authorities**
3 *Newberg on Class Actions* § 3:12 (5th ed.) .................................................................8
CACI 1304 .....................................................................................................................10
CACI 1305A ...................................................................................................................10

**Rules**
ABA Model Rules, Rule 3.7 ............................................................................................23
California Rules of Professional Conduct, Rule 3.7 ........................................................23
Fed. R. Civ. P. 23 .............................................................................................................6

iv

# I.    INTRODUCTION

Plaintiffs' allegations provide eighteen perspectives of the chaos that spread throughout Los Angeles following the death of George Floyd. Their experiences reflect heartfelt protests, despair, vandalism, arson, and unfettered looting unlike anything the City has seen in almost 30 years and what virtually no LAPD Officer on the force had ever experienced. On top of that, the City was in the early days of a once-in-a-century pandemic.

As they allege, some Plaintiffs protested in Downtown, some in Hollywood, and some in the Fairfax area. Some were struck with batons, some with less-lethal munitions, and some neither. Some were arrested. Based on these experiences, Plaintiffs raise serious claims requiring serious attention. These claims cannot receive that attention in a class action, however. Plaintiffs allege injuries ranging from bruising requiring no medical attention, to a broken jaw with profuse bleeding requiring urgent surgery. It is not only unfair to treat those claims as the same, but it would be contrary to the law.

The simplest reason why none of the classes should be certified is that Plaintiffs have not and cannot demonstrate how liability will be proven via common evidence. Establishing each of their claims will ultimately turn on the reasonableness of the force used against them, whether there was probable cause for their arrest, and the reasonableness of the conditions of their confinement. These determinations necessarily require examination of individual circumstances of each use of force, arrest, and confinement. Commonality is not the only hurdle preventing class certification here, however; superiority is lacking as well, as demonstrated by the 32 other lawsuits brought by 70 other individuals arising out of the same protests.

Because Rule 23 does not allow for class certification here, Plaintiffs motion should be denied and each Plaintiffs' claims should be litigated on their own merits.

1

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

## II.    BACKGROUND

### A.    The City Erupts Following The Death Of George Floyd

George Floyd was killed on Monday, May 25, 2020. Compendium of Evidence ("COE"), Ex. 1, ¶ 2. Two days later was the regularly-scheduled protest against then-L.A. County District Attorney Jackie Lacey. COE, Ex. 1, ¶ 8. Held weekly since November 2017, this protest generally involved about 30 people and lasted until 5 p.m. COE, Ex. 1, ¶ 8. The May 27 protest started with about 30 protestors, but swelled to 200, and after the typical end of the rally, moved onto the 101 Freeway. COE, Ex. 1, ¶ 8. The protestors eventually left the freeway and marched through Downtown until after 10:00 p.m., when LAPD issued a dispersal order and the crowd complied. COE, Ex. 1, ¶ 8.

On Thursday, May 28, at 7:30 p.m., a group of about 50 protestors began to march from City Hall toward the 110 Freeway on-ramp. COE, Ex. 1, ¶ 9. Some members of the group began vandalizing businesses and gathering rocks and bottles. COE, Ex. 1, ¶ 9. At 8:30 p.m. LAPD issued a dispersal order but the crowd disregarded it. COE, Ex. 1, ¶ 9. At 11:25 p.m. LAPD issued another dispersal order and most dispersed. COE, Ex. 1, ¶ 9. LAPD made three misdemeanor arrests. COE, Ex. 1, ¶ 9.

On Friday, May 29, a crowd of protestors began to form in the Downtown area. COE, Ex. 1, ¶ 10. As the night progressed, officers observed that individuals in the protest crowd began lighting trashcan fires and using fireworks, rocks, bottles, and laser pointers against police officers. COE, Ex. 1, ¶ 10. LAPD made 264 felony and misdemeanor arrests that night. COE, Ex. 1, ¶ 10.

On Saturday, May 30, a small group began peacefully demonstrating at Pan Pacific Park in the Fairfax area. COE, Ex. 1, ¶ 11. LAPD's intelligence estimated that approximately 100 people would attend this protest. COE, Ex. 1, ¶ 11. By 1 p.m. the protest grew to over 2,500 people. COE, Ex. 1, ¶ 11. Members of the crowd grew violent, surrounding an MTA bus on 3rd Street and Fairfax Avenue; the driver and

2

passengers were still on the bus. COE, Ex. 1, ¶ 11. The protestors slashed the bus's tires, spray-painted the exterior, and threw objects at it. COE, Ex. 1, ¶ 11. Officers were deployed to evacuate the bus; when the officers arrived, members of the crowd surrounded the officers and began throwing objects at them. COE, Ex. 1, ¶ 11. While the officers were responding, protestors vandalized and burned some of those officers' police vehicles. COE, Ex. 1, ¶ 11. Concurrently, about 600 people were protesting in Downtown, and members of that group were looting businesses, vandalizing police vehicles, and throwing objects such as rocks and bottles at officers. COE, Ex. 1, ¶ 12. There were also mostly peaceful protests in South Los Angeles. COE, Ex. 1, ¶ 12.

As LAPD resources were stretched, LAPD requested assistance from the L.A. County Sheriff's Department, the Manhattan Beach Police Department, the Calif. Highway Patrol, and the Sheriffs' Departments from Orange County, Santa Barbara County, and Ventura County. COE, Ex. 1, ¶ 14. Chief Moore mobilized the entire department, cancelling all scheduled days off and vacation for sworn personnel; this was the first time a mobilization order was issued since 1992. COE, Ex. 1, ¶ 13.

To contain what became chaos, LAPD began conducting mass arrests due to failure to disperse and curfew violations. COE, Ex. 1, ¶ 18. Due to the surrounding disorder and hostility toward the police officers, it was determined it was not feasible to process arrests in the field, and arrestees were transported to Westwood and Van Nuys, in addition to traditional jails, for processing. COE, Ex. 1, ¶ 18, 19; Dkt. 136-19, ¶ 13; Dkt. 136-27, ¶ 13. Further, LAPD did not possess sufficient jail vans to accommodate this transportation, so LAPD requested and utilized buses from the MTA and the Sheriff's Department. COE, Ex. 1, ¶ 19. 855 people were arrested on May 30, including 72 felony arrests for looting, weapons violations, assaults with deadly weapons, and attempted murder. COE, Ex. 1, ¶ 20.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

The National Guard arrived on Sunday, May 31. COE, Ex. 1, ¶ 21. The daytime saw mostly peaceful protests that became violent as evening approached. COE, Ex. 1, ¶ 22. Once curfew began at 8 p.m., LAPD began conducting arrests of the violators.  COE, Ex. 1, ¶ 22. 719 persons were arrested on May 31. COE, Ex. 1, ¶ 22.

On Monday, June 1, there was mass looting in the Valley and in the Hollywood area. COE, Ex. 1, ¶ 23. LAPD made approximately 1,378 arrests on June 1, mostly for looting, curfew violations, and disobeying orders. COE, Ex. 1, ¶ 23.  Tuesday, June 2, saw a continued trend in peaceful protests during the day with an increase of violence in the evening. COE, Ex. 1, ¶ 24. LAPD made 969 arrests that day.  COE, Ex. 1, ¶ 24.

## B.    After Several Days, Peaceful Protests Take Hold

The next few days saw continued protests, but they were largely peaceful, and the number of arrests plummeted. On Wednesday, June 3, there was a protest in Downtown of approximately 8,000 people. COE, Ex. 1, ¶ 25. That day LAPD made 55 arrests, which were mostly for curfew violations. COE, Ex. 1, ¶ 25. The following day, a crowd of approximately 4,000 protested in Downtown and there were only 20 arrests, mostly due to curfew violations in the early morning well before the protest. COE, Ex. 1, ¶ 26.

On June 6 there was another protest beginning at Pan Pacific Park in the Fairfax area with about 1,500 people. COE, Ex. 1, ¶ 28. There were no reports of injuries, damage, or arrests as a result of the protest. COE, Ex. 1, ¶ 28. The next day there was a protest in Hollywood of approximately 15,000 people. COE, Ex. 1, ¶ 29. From June 5-7, LAPD made 12 arrests related the city-wide protests. COE, Ex. 1, ¶ 30.

## C.    The Training Of LAPD Officers

In accordance with California law, LAPD officers begin their career at the Police Academy, where they receive training under a curriculum developed by California's Commission on Police Officer Standards and Training ("POST"). 11 C.C.R. § 1005. That training is a minimum of 664 hours and covers 41 individual topics, such as laws of

4

arrest, use of force, domestic violence, traffic enforcement, and terrorism awareness. COE, Exs. 57-58. At the Academy, LAPD recruits also receive eight hours of crowd management and control training. COE, Ex. 3, ¶ 2. This training covers LAPD's use of force policy, use of less-lethal munitions, de-escalation, squad formations, and performing arrest and rescue circles. *Id*. Recruits are also certified in using the 40mm launcher and bean bag shotgun. *Id*. In addition to this training, LAPD officers are required to undergo 24 hours of perishable skills training every two years, which includes training on use of force, arrest and control, strategic communications, and use of firearms. *Id*., ¶ 3. From December 2017 through February 2019, approximately 7,935 LAPD personnel attended additional training which included squad movements and deployment of less-lethal weapons in crowd control. *Id*., ¶ 8.

On top of formal training, LAPD officers have access to written training policies on topics such as crowd management, intervention, and control, training bullets on mobile field force, use of the 40mm launcher, and the Emergency Operations Guide. COE, Ex. 3, ¶ 6.  Further, all squad leaders and mobile field force leaders are reminded to brief their squads on the proper use of less-lethal weaponry. COE, Ex. 3, ¶ 7.  These briefings occurred during the May 2020 protests. *Id*.; Dkt. 136-14, 125:17-126:12.

LAPD has expanded its formal training since May 2020.  Since September 2020, approximately 7,200 LAPD personnel have attended training that covers less-lethal weapon deployment in crowd control incidents. COE, Ex. 3, ¶ 4. LAPD's training on crowd control and use of less-lethal weaponry **exceeds** POST guidelines. *Id*., ¶ 12.

### D.    The 20 Plaintiffs And Their Claims

The operative complaint includes 20 plaintiffs who allege causes of action for (1) injunctive relief; (2) violation of Fourth and Fourteenth Amendments; (3) violation of Cal. Civ. Code § 52.1; (4) assault; (5) battery; and (6) false arrest/false imprisonment. Dkt. 109, pp. 60-65. Plaintiffs seek to certify four classes: (1) an injunctive class; (2) an

5

---

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

arrest class; (3) an "Infaction" class of those who were taken into custody in violation of Cal. Pen. Code § 853.5; and (4) a class of those who were struck by police force. Dkt. 136, pp. 3-5. All proposed classes are for the period of May 29, 2020 through June 2, 2020. Dkt. 136, pp. 3-5.

### E.    The 70 Other Plaintiffs Bringing Individual Claims

In addition to the claims in this lawsuit, at least 32 other lawsuits involving 70 different plaintiffs have been filed against the City of Los Angeles and/or individual police officers arising out of the protests following the death of George Floyd. COE, Exs. 25-56. One case has 38 individual plaintiffs. COE, Ex. 25.

## III.    LEGAL ARGUMENT

### A.    Class Certification Standard

Plaintiffs bear the burden to show class certification is warranted and "must affirmatively demonstrate [their] compliance" with Rule 23. *Wal-Mart Stores, Inc. v. Dukes* ("*Wal-Mart*"), 564 U.S. 338, 350 (2011). Under Rule 23, Plaintiffs must establish that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Under Rule 23(b)(3), Plaintiffs must additionally show that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and effectively adjudicating the controversy. "[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim[.]'" *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465-66 (2013) (quoting *Wal-Mart*, 564 U.S. at 351); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (merits are "often highly relevant").

6

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

### B.    Plaintiffs Provide No Basis For Certifying Any Class

Plaintiffs' Motion is fatally flawed because nowhere in the Motion do Plaintiffs show that any of the substantive claims can be proven by common evidence. Rather, Plaintiffs' Motion rests on an assumption that every person injured by police force, transported to a field jail, or taken into custody and ultimately charged with an infraction suffered a violation of their constitutional rights. Plaintiffs' assumption is demonstrated by their proposed class definitions. For example, the proposed Arrest Class includes those who were "subject to prolonged tight hand-cuffing" and the Direct Force Class includes those "who were not violently resisting arrest and did not pose an immediate threat of violence [or] physical harm." Dkt. 136, p. 16. Not only are Plaintiffs not entitled to such an assumption, but how will common evidence demonstrate whose hand-cuffing was "prolonged" or "tight" or whether someone was "not violently resisting arrest" and "did not pose an immediate threat of violence [or] physical harm"? Plaintiffs provide no explanation of these necessary points. As demonstrated below, Defendants can affirmatively show that Plaintiffs' substantive claims cannot be proven by common evidence, but it is of course not Defendants' burden to do so; it is Plaintiffs' burden to show. Because Plaintiffs make no such showing, their Motion fails outright. *Bowerman v. Field Asset Servs.*, No. 18-16303, Slip Opn. at 18-23 (9th Cir. July 5, 2022) (district court erroneously certified class where plaintiffs failed to demonstrate liability was subject to common proof).

### C.    Plaintiffs Fail To Demonstrate Satisfaction Of Rule 23's Requirements

#### 1.    Numerosity

Defendants do not dispute that Plaintiffs meet the numerosity requirement for the proposed Injunction, Infraction, and Arrest Classes. Plaintiffs' Motion and supporting evidence demonstrates, however, that Plaintiffs do not meet the numerosity requirement for the proposed Direct Force Class, as those items demonstrate that the size of the

7

proposed class is approximately equal to the number of persons who have already brought individual lawsuits.

Plaintiffs argue that the proposed Direct Force Class "consists of at least 75 people, likely well in excess of 100." Dkt. 136, p. 18. In support of this assertion, the Motion cites to the Sobel Declaration, which states that, "Plaintiffs estimate that the class of individuals struck by less-lethal munitions is approximately 80-100 persons." Dkt. 136-1, p. 41, ¶ 119. Based on the 32 other lawsuits filed against the City alleging unreasonable force against protestors, there are already approximately 70 other individual claims that have been filed against the City. COE, Exs. 25-56. Additionally, nine Plaintiffs in this lawsuit allege that they were subjected to unreasonable force. Therefore, based on Plaintiffs' estimate, every person in the proposed Direct Force Class may already be accounted for via individual lawsuit.

But even if there may be additional class members, Plaintiffs have not shown that joinder would be impracticable, as Rule 23 requires. Based on Plaintiffs' class size estimate, adding any additional Plaintiffs would not be a substantial additional number. This lawsuit has 20 plaintiffs; another lawsuit has 38. COE, Ex. 25. As authority cited by Plaintiff shows, a class of less than 40 fails to raise a presumption of impracticality of joinder. 3 *Newberg on Class Actions* § 3:12 (5th ed.); *see also Astorga v. Cnty. of L.A.*, No. 2:20-CV-09805-AB (AGRx), 2021 U.S. Dist. LEXIS 246222, at *9 (C.D. Cal. Oct. 21, 2021) (38 individuals insufficient to meet the numerosity requirement).

## 2.    Plaintiffs' Claims Cannot Be Proven By Common Evidence

A common question "must be of such a nature that it is capable of classwide resolution—which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. In other words, the question should "drive the resolution of the litigation,"

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

which "necessarily depends on the nature of the underlying claims." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014).

Plaintiffs cannot meet the commonality requirement because resolving the claims for the three proposed damages classes will require determining (1) whether force used against the individual was reasonable; (2) whether probable cause supported the arrest of the individual; and (3) whether the conditions of the confinement of the person was reasonable. Answering these questions requires examination of the individual circumstances surrounding each use of force, arrest, or confinement. Therefore, the claims cannot be resolved by common questions of fact. *See Moeller v. Taco Bell Corp.*, No. C 02-5849 PJH, 2012 U.S. Dist. LEXIS 104454, at *13-14 (N.D. Cal. July 26, 2012) ("It is not only damages that are individualized, but also liability and causation, because the issue is whether an individual class member has any claim at all. See Pryor v. Aerotek Scientific, LLC, 278 F.R.D. 516, 532-33 (C.D. Cal. 2011). Such fact-specific individual liability and damages questions cannot be determined on a classwide basis.").

### a) Direct Force Class

Plaintiffs cannot establish commonality for the Direct Force Class because they cannot establish liability on a class basis or that any common policy or practice caused any alleged violation. Plaintiffs' proposed Direct Force Class consists of "those physically struck by police (including by less-lethal projectiles or batons) who were not violently resisting arrest and did not pose an immediate threat of violence of physical harm." Dkt. 136, p. 16. This proposed class alleges claims for (1) violation of the Fourth and Fourteenth Amendments; (2) violation of California's Bane Act; (3) assault; and (4) battery. Dkt. 115, pp. 63-67. Examining the elements of the claims the proposed Direct Force Class seeks to bring confirms the absence of commonality. *B.K. v. Snyder*, 922 F.3d 957, 975 (9th Cir. 2019) (court erred certifying class "based on an apparent misconception of the legal framework for [the] claim.").

9

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Excessive force claims under the Fourth Amendment require examination of the totality of the circumstances surrounding the use of force, including the severity of the crime at issue, whether the suspect posed an immediate threat, and whether the suspect was actively resisting arrest. *Young v. Cnty. of L.A.*, 655 F.3d 1156, 1163 (9th Cir. 2011). To establish their Fourteenth Amendment claims, Plaintiffs will have to establish that excessive force was used against them with deliberate indifference, which requires a showing that the police officer either knew or was willfully blind to the risk posed by his actions. *Hernandez v. City of San Jose*, 241 F.Supp.3d 959, 973 (N.D. Cal. 2017). Plaintiffs' Bane Act claim will not only require establishing a constitutional violation, but also that the officer had a specific intent to violate the plaintiff's right to freedom from unreasonable seizure. *Murchison v. Cnty. of Tehama*, 69 Cal. App. 5th 867, 896 (Cal. Ct. App. 2021). The claims for assault and battery will also turn on the reasonableness of the force used under the circumstances. *J.J. v. M.F.*, 223 Cal. App. 4th 968, 976 (Cal. Ct. App. 2014); *see also* CACI 1304, 1305A. Plaintiffs provide no method for resolving these issues with common evidence.

Another court declined to certify a class in a nearly identical case, *Black Lives Matter 5280 v. City and Cnty. of Denver*, 338 F.R.D. 506 (D. Col. June 28, 2021). In that case, also arising out of the protests following the death of George Floyd, the court noted that "to establish that each putative class member did not pose a specific or immediate threat to the safety of police officers or others—such as by throwing rocks or shaking fences—would also require individualized factual inquiries," and that resolving the claims would require the court "to undertake an individualized factual inquiry to determine whether an officer's use of force against a given protester was justified." *Id*. at 509-10; *see also Anti Police-Terror Project v. City of Oakland* ("*Oakland*"), No. 20-cv-03866, 2021 U.S. Dist. LEXIS 200363, at *22 (N.D. Cal. Oct. 18, 2021) ("Given the fact-specific inquiry required to determine whether a particular use of force is

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

reasonable, the proposed class definition, which encompasses *every* use of gas by OPD or mutual aid partners over a four-day period, raises a multitude of individualized issues about the specific circumstances surrounding the use of tear gas.").

The different circumstances of the plaintiffs demonstrates this point. Ms. Moore declared that she was hit with a less lethal munition immediately after someone standing near her threw a bottle at the police. Dkt. 136-10, p. 1, ¶ 4. An investigation found that Ms. Moore was hit with the munition after the officer was aiming at a third party, missed, and the munition ricocheted off a wall and struck Ms. Moore. Dkt. 136-1, p. 48, ¶ 141. Mr. Mayorca testified that he was hit in the leg with a less lethal munition after the munition ricocheted off someone else. COE, Ex. 17, 23:4-13. Ms. Rodas testified she was struck with a less lethal munition when people behind her were throwing bottles at the police, also suggesting that she was not the intended target of the shot.  COE, Ex. 11, 38:7-39:4. Others testified that they do not know who fired the shot that hit them or whether that officer was aiming at them or someone else. *See, e.g.*, COE, Ex. 23, 25:3-5, 26:4-9, Ex. 14, 26:15-18, 27:1-4. These varying circumstances are significant because they will need to be analyzed in detail when determining whether the use of force was justified. *See Nelson v. City of Davis*, 685 F.3d 867, 878-83 (9th Cir. 2012) (pages of analysis of evidence to determine whether plaintiff suffered a violation).  And for those Plaintiffs who do not even know how they were hit with a munition, forensic analysis will be necessary to determine the validity of their claims. *See Dundon v. Kirchmeier*, No. 1:16-cv-406, 2021 U.S. Dist. LEXIS 252852, at *57-80 (D.N.D. Dec. 29, 2021) (no seizure when officers used less-lethal munitions to disperse crowd). This necessary analysis is antithetical to class treatment.

Plaintiffs are therefore unable to demonstrate that the putative class members' substantive claims can be proven via common evidence; this precludes class certification, even if Plaintiffs could demonstrate a practice of a failure to properly train

11

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

officers (which, as explained below, they have not). As one court explained, "the question of whether a particular policy, practice or custom existed within the LAPD might be litigated on behalf of the class. However, the question of whether any such policy, practice or custom contributed to each individual plaintiff's injuries-- cannot be determined outside of the specific facts of each case." *Rodriguez v. Gates*, No. CV 99-13190, 2002 U.S. Dist. LEXIS 10654, at *39-40 (C.D. Cal. May 30, 2002).

Plaintiffs' are not entitled to class certification for the additional reason that they have not demonstrated any custom, policy, or practice of a failure to train. Plaintiffs do not challenge LAPD policies on the use of less-lethal munitions, so Plaintiffs will have to prove there was a custom or practice of disregarding these formal policies. Notably, Plaintiffs' Motion is silent on what, specifically, the failure to train was. *City of Canton v. Harris*, 489 U.S. 378, 390-91 (1989) ("[F]or liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury."). Was the alleged failure to train on the proper distances to discharge the weapon? Or was the alleged failure to train on where to aim? Plaintiffs do not say. This is all relevant because, if there was a failure to train, that specific failure will need to be tied to the specific constitutional violation in order to establish liability. *J. K. J. v. City of San Diego*, 17 F.4th 1247, 1255 (9th Cir. 2021) (plaintiff required to establish that the failure to train "actually caused" the constitutional violation); *see also Oakland*, 2021 U.S. Dist. LEXIS 200363, at *15 (commonality lacking where "any liability on the part of the City will depend on *different* policies and practices").

Regardless, the custom, policy, and practice of LAPD was to train officers on use of less-lethal munitions. Officers were subject to formal training in accordance with POST requirements. COE, Ex. 3. But the training was not limited to formal training. Reminding officers of the proper use of less-lethal munitions was pattern and practice during the protests:

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

That was a discussion that was had all the time to remind the captains and lieutenants and sergeants – to remind the officers of what the target zones were when firing these type of weapons and to ensure that they were used appropriately, whether it was target specific or if it was in a disbursal-type because of an assault on officers.

…

I reminded everyone what the policy was based on what the policy was. I reminded them of the strike zones. I reminded them of when to use, when not to use and all those things; so **that was something that was discussed at the beginning watch – you know, at my watch every day**.

Dkt. 136-14, 125:17-126:12; COE, Ex. 3, ¶ 7 ("Sergeants and lieutenants should brief their squads on the proper use of less-lethal. . . . I witnessed this briefing occur during the summer protests of 2020."). Officers also had access to policies on use of less-lethal weapons and crowd control. COE, Ex. 3, ¶ 6. This evidence defeats Plaintiffs' entire theory of a failure to train. As it is their burden, Plaintiffs must prove by a preponderance of evidence there was a failure to train, rather than, to the extent there are any constitutional violations, "the officers' failure to heed their training." *J. K. J.*, 17 F.4th at 1256. They have not and cannot.

Plaintiffs rely almost entirely on the Chaleff Report, which is an inadmissible after-the-fact analysis by a third party. [1] *See* Dkt. 136, pp. 27-28. This testimony from Dep. Chief Rodriguez and Sgt. Quiroz is what was actually happening during the protests. Regardless, the Chaleff Report notes a dispositive limitation on its findings:

Each incident and parts of an incident is unique. Police use of force must be evaluated based on the facts and circumstances facing the officer at the time of the force incident. To accurately assess reasonableness, the articulation expressed by the officer and a thorough examination of the facts and evidence surrounding the use of force is required for each incident. Given the thousands of interactions between officers and members of the public during May-June 2020, it was not feasible to examine each incident.

Dkt. 136-2, p. 81. Therefore, the foundation for Plaintiffs' legal theory concludes that the claims of the Direct Force class cannot be resolved via common evidence.

---

[1] Plaintiffs' theory of a failure to train is also substantially founded on prior lawsuits alleging similar conduct, referring to the City's "history of violations." *See* Dkt. 137, p. 30. But none of these cases that Plaintiffs rely on involved either a finding of liability or an admission of wrongdoing. Therefore, there is only a history of allegations, rather than any history of violations, and Plaintiffs' reliance on them do not establish any policy or practice of a failure to train.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Finally, Plaintiffs acknowledge that individualized determinations will be necessary for calculating damages and offer no methodology for calculating damages for any proposed class. Dkt. 136, p. 38. The holdings Plaintiffs reference that individualized findings as to the amount of damages does not defeat class certification applies only "in cases where there existed a common methodology for calculating damages." *Doyle v. Chrysler Grp., LLC*, 663 Fed.Appx. 576, 579 (9th Cir. 2016).

### b) Infraction Class

Plaintiffs do not show how they can commonly establish liability on behalf of the putative Infraction Class. Plaintiffs frame the Infraction Class as simply a violation of Cal. Pen. Code § 853.5, *see* Dkt. 136, p. 4, but a violation of that section does not give rise to a cause of action. Instead, the Infraction Class seeks to bring claims for violation of the Fourth and Fourteenth Amendments. *See* Dkt. 115, pp. 64-65. A violation of Section 853.5 is not a constitutional violation, however; therefore, resolving liability will require examining the circumstances surrounding each arrest to make probable cause and deliberate indifference determinations, precluding a finding of commonality.

A violation of Section 853.5 does not give rise to a constitutional violation. *People v. McKay*, 27 Cal. 4th 601, 605 (2002) ("[C]ustodial arrests for fine-only offenses do not violate the Fourth Amendment and [] compliance with state arrest procedures is not a component of the federal constitutional inquiry."); *Virginia v. Moore*, 553 U.S. 164, 172 (2008) ("We thought it obvious that the Fourth Amendment's meaning did not change with local law enforcement practices—even practices set by rule."). Rather, resolving the claim will require a probable cause determination, which examines the facts and circumstances within the arresting officer's knowledge to determine whether the plaintiff had committed an offense. *Edgerly v. City & Cnty. of S.F.*, 599 F.3d 946, 953-56 (9th Cir. 2010) (resolving constitutional claim based on violation of state criminal procedural law by conducting probable cause analysis).

14

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

### c) Arrest Class

Plaintiffs seek to certify a class of those arrested on misdemeanor charges and "who were held on buses and subjected to prolonged tight hand-cuffing, denied access to bathrooms, water, and food, and held in enclosed spaces without ventilation." Dkt. 136, p. 4. This putative class alleges two claims for violation of the (1) Fourth and Fourteenth Amendments and (2) False Arrest/False Imprisonment. Dkt. 115, pp. 60-61, 65. As with the other proposed classes, Plaintiffs do not explain how liability for these claims can be proven via common evidence, thereby failing to satisfy their burden as the moving party. Plaintiffs' claims cannot be resolved by common evidence, as claims challenging conditions of confinement turn on the specific facts of the confinement, and the putative class members' experiences varied significantly based on where they were arrested, when and how they were transported, and where they were transported to.

A fundamental factor in condition of confinement claims is the length of deprivation. *Turner v. Procopio*, No. 13-CV-693, 2020 U.S. Dist. LEXIS 55052, at *34 (W.D. N.Y. Mar. 27, 2020) (no constitutional violation with detention less than 5 hours); *Reviere v. Phillips*, No. 1:11-cv-00483, 2014 U.S. Dist. LEXIS 22954, at *29 (E.D. Cal. Feb. 21, 2014) ("While Plaintiff was not given access to water or sanitation for up to five hours, these deprivations were temporary and the duration was not such that it posed a threat of serious physical harm or illness."); *Marcus v. Bush*, No. 11-CV-4049, 2013 U.S. Dist. LEXIS 70574, at *12 (E.D. N.Y. May 17, 2013) (discussing temporal significance); *Frye v. Oleshea*, No. C 08-5288, 2009 U.S. Dist. LEXIS 62914, at *7 (N.D. Cal. July 6, 2009) ("Substantial deprivations of shelter, food, drinking water or sanitation for four days, for example, are sufficiently serious to satisfy the objective component of an Eighth Amendment claim."); *see also Livingston v. Hoffnagle*, No. 9:19-CV-0353, 2019 U.S. Dist. LEXIS 195276, at *21-22 (N.D. N.Y. Nov. 8, 2019) ("Unconstitutional conditions of confinement have generally been found when the

15

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

duration of the deprivation is sufficiently long, or when the deprivation is an ongoing condition of an inmate's confinement, rather than the result of a single, isolated incident."). That arrestees were placed on a bus or placed in zip-tie handcuffs is insufficient alone to establish a violation. *Panagacos v. Towery*, 2014 U.S. Dist. LEXIS 98982, at *16 (W.D. Wash. July 21, 2014), *affirmed by* 692 Fed.Appx. 330 (9th Cir. 2017) ("Panagacos claims the zip tie on her wrist was too tight and left imprints on her skin, and that the conditions during holding and transport were overcrowded. This did not violate any constitutional rights . . . .").

Here, the length of confinement among those arrestees varied significantly:

| Plaintiff | Length |
|---|---|
| Barrera-Trujillo | On bus for at least 7 hours.  COE, Ex. 12, 21:23-22:11, 22:20-23:11. |
| Hartsfield | 30-45 minute drive.  COE, Ex. 16, 42:23 – 43:1. |
| Lopez | 5 minute drive.  COE, Ex. 20, 30:18-31:4. |
| Khan | Unknown.  COE, Ex. 19, 46:15-18. |
| Young | 2 hours on bus.  COE, Ex. 24, 18:5-8. |
| Shentu | 1 to 2 hour drive, on bus about 4-5 hours. COE, Ex. 21, 29:5-13. |
| Stamm | 45 minute drive and 2 hours on bus waiting.  Dkt. 136-19, ¶ 13. |
| Roe | 4 hours in custody total.  COE, Ex. 22, 23:5-7. |
| Kazin | About 5.5 hours on bus total.  COE, Ex. 18, 21:6-10. |
| Mayorca | 2 hours in custody total.  COE, Ex. 17, 27:25-28:3. |

Plaintiffs' rely on *Aichele v. City of L.A.*, 314 F.R.D. 478 (C.D. Cal. 2013), where the court certified a conditions of confinement class, but the facts there are significantly distinct. *Aichele* arose out of a single protest on a single day at a single location. *Id*. at 482-83. The plaintiffs sought certification of two sub-classes: those transported to LAPD's Metropolitan Detention Center and those transported to the Van Nuys jail by the L.A. County Sheriff's Department. *Id*. at 482. Here, in contrast, Plaintiffs seek

16

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

certification of a class of persons arrested at multiple protests over multiple days and transported on multiple types of vehicles to multiple locations. *See* COE, Ex. 1, ¶¶ 32-37 (discussing unprecedented nature of protests). This distinction is significant because the court in *Aichele* found that commonality was present as the putative class members were all subject to the same "generalized conditions of confinement" and therefore "the conditions of their detention are shared." *Id*. at 490. This same distinguishing factor is present in the other cases relied on by Plaintiffs. *MacNamara v. City of N.Y.*, 275 F.R.D. 125, 151 (S.D. N.Y. 2011) ("Because all class members were subject to a common detention system at a single location, they share the following common questions . . ."); *Chang v. U.S.*, 217 F.R.D. 262, 272 (D.D.C. 2003) ("Plaintiffs correctly point out that in the cases now before this Court all of the arrests occurred at the same place and time, resulting from a single police action in which the putative class members were treated as a group by the defendants.").

The *Aichele* court also focused on the unrebutted evidence that all class members were subjected to being around people who "were ultimately forced to urinate on the buses, creating unsanitary conditions and a foul odor resulting not only from the urination but from vomiting caused by the stench." 314 F.R.D. at 490, n.12. That is not the case here, as Plaintiffs put forth no evidence of any similar bus condition.

### 3.    Typicality

Typicality tests whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct. *Ellis*, 657 F.3d at 984. A plaintiff fails to meet the typicality requirement if his "unique background and factual situation require[d] him to prepare to meet defenses that [were] not typical of the defenses which may be raised against other members of the proposed class." *Id*.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

### a) Direct Force

Typicality is absent for the proposed Direct Force class because the proposed class representatives experienced different types of alleged excessive force; some allege harm from a 40mm less-lethal launcher, some from a 37mm less-lethal launcher, some from beanbag shotguns, and some from batons:

| Plaintiff | Alleged Force |
|---|---|
| Roe | 40mm (likely based on description), COE, Ex. 22, 19:6-9. |
| Crnko | Unclear whether 40mm, 37mm, or beanbag shotgun, COE, Ex. 23, 25:3-5, 26:4-9 (Ms. Crnko does not know which officer shot her or where the officer was aiming). |
| Rodas | Unclear whether injured by police munition, COE, Ex. 11, 39:12-22, 51:22-52:2, 52:18-53:5. |
| Aranovich | Baton and 37mm (likely based on description), COE, Ex. 13, 30:24-31:14, 32:17-33:6. |
| Moore | 40mm, Dkt. 132, p. 3. |
| Grenier | Baton, 37mm (likely based on description of impact), COE, Ex. 15, 14:19-15:6. |
| Contreras | 37mm (likely based on description), COE, Ex. 14, 22:15-23. |

These distinctions are significant because Plaintiffs' liability theory is a failure to train on use of these less-lethal weapons, and there are distinct policies and training for each of these weapons, so resolving *Monell* liability will require tying the specific failure to train to each use of force. For example, if Plaintiffs' theory is that officers were inadequately trained on marksmanship which caused officers to hit unintended targets, that would be relevant for use of a 40mm, which is intended to be deployed directly at the target, but not so with a 37mm, which is not, or with a baton which requires no marksmanship training. *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017)

18

(typicality demonstrated by class members having been injured by the same course of conduct); *see also J. K. J.*, 17 F.4th at 1255 (plaintiffs must prove that failure to train was the moving force behind the alleged constitutional violation).

Typicality is also not met specifically as to Ms. Rodas as litigation of her claim would be unique and risk becoming a focus of the litigation, because the cause of her injury is unclear. *Ellis*, 657 F.3d at 984 (unique factual situation requiring plaintiff to meet defenses not typical of proposed class precludes typicality finding). Ms. Rodas alleges she was hit by a rubber bullet, but in the emergency room just after sustaining her injury, her companion told the medical staff she was injured from a fall. COE, Ex. 11, 49:3-10; Dep. Ex. 10,016 ("Pt was walking down the street when she fell 20 mins ago.  Pt was walking on the curb and tripped.").

### b)    Infraction

The claims of Plaintiffs Mayorca, Kazin, and Young are not typical of the proposed Infraction Class because they are not members of the proposed class as they were charged with misdemeanors. COE, Ex. 6, No. 20, Ex. 7, No. 17; Dkt. 136-25, ¶ 5. Typicality is lacking where the plaintiff is not a member of the proposed class. *Valle v. Global Exch. Vacation Club*, 320 F.R.D. 50, 57-58 (C.D. Cal. 2017).

### c)    Arrest

Typicality is lacking for all proposed Arrest Class representatives because either (1) they do not have Article III standing to seek recovery for an alleged condition of confinement, (2) they were not charged with a misdemeanor and therefore not a member of the proposed class, or (3) due to the substantially varying experiences of each person's transport (length, location, and method of transportation), no representative's claims are typical of the class they seek to represent.

Standing is a threshold issue in any lawsuit and, in the class action context, the standing inquiry focuses on the class representatives. *NEI Contr. & Eng'g, Inc. v.*

19

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

*Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528, 532 (9th Cir. 2019). For a plaintiff to have standing, the plaintiff must have suffered an invasion of a legally protected interest that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). This proposed class is based on alleged harm of (1) prolonged tight hand-cuffing; (2) denial of access to bathrooms; (3) denial of access to water; and (4) denial of access to food. Dkt. 136, p. 4. Of the 10 proposed class representatives, however, Mr. Roe is the *only* one who requested use of the bathroom and was denied and Plaintiffs Roe and Barrera-Trujillo were the only ones to request water and be denied.[2] Ms. Hartsfield testified she was allowed to drink water without even requesting it. COE, Ex. 16, 50:24-51:2, 57:1-14. None of the Plaintiffs requested food. And, unlike in *Aichele*, no Plaintiff put forth evidence they were subjected to unsanitary conditions on the bus due lack of bathroom access. Finally, as to handcuffs, there is no evidence that Mr. Mayorca, Mr. Stamm, Ms. Kazin, or Ms. Young requested loosening. Therefore, Plaintiffs have not demonstrated they suffered an injury-in-fact. *Blake v. Cnty of Santa Clara*, No. 16-cv-01279, 2016 U.S. Dist. LEXIS 100468, at *4-5 (N.D. Cal. Aug. 1, 2016) ("Plaintiff has not alleged that he has suffered injury from these particular conditions of confinement. General grievances about conditions of confinement do not state an Article III case or controversy."). Because Plaintiffs lack standing, they do not have typicality.

Plaintiffs Lopez, Khan, Barrera-Trujillo, and Young do not meet the typicality requirement as they are not members of putative class because they were not charged with misdemeanors, as the proposed class definition requires. Dkt. 136, p. 4; COE, Ex. 5, No. 20, Ex. 8, No. 17, Ex. 9, No. 20.

---

[2] In his Interrogatory responses, Mr. Shentu responded that he never requested food, water, or bathroom access, but at deposition he contended he did request water and bathroom access. COE, Ex. 4, ¶¶ 10, 12, 14; Ex. 21, 31:2-14.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1    Finally, no Plaintiff meets the typicality requirement because of their varying

2    transportation experiences. Mr. Roe was arrested downtown on May 29 and transported

3    on a bus to a jail "only a few blocks away." Dkt. 15, p. 64, ¶ 7.  In contrast, Mr. Stamm

4    was arrested in Hollywood on June 1 and transported by Sheriff Department bus to

5    Westwood and Ms. Hartsfield was arrested in the Fairfax area on May 30 and

6    transported via LAPD van to Van Nuys. Dkt. 15, pp. 73-74; COE, Ex. 10, No. 9. As the

7    vehicles were different, the conditions of the transportation were different: an LAPD van

8    seats 12 people, a Sheriff's bus seats about 40, an MTA bus seats about 38, and Sheriff's

9    and MTA buses have windows, while other vehicles did not. COE, Ex. 2, ¶ 5. Therefore,

10   each person's transportation experience could only be typical of those who transported

11   along the same route in the same vehicle.

12       4.    **Adequacy**

13           a)    **Plaintiffs**

14       None of the Plaintiffs have demonstrated their adequacy because none of them

15   submitted declarations prepared in support of this Motion. A plaintiff must offer

16   affirmative evidence that they satisfy the requirements of Rule 23, including the

17   adequacy requirement. *In re Silver Wheaton Corp. Sec. Litig.*, No. 2:15-cv-05146, 2017

18   U.S. Dist. LEXIS 72787, at *23 (C.D. Cal. May 11, 2017) (citing *Stockwell v. City &*

19   *Cty. of S.F.*, 749 F.3d 1107, 1111 (9th Cir. 2014)). Plaintiffs submit no declaration or

20   deposition testimony at all on behalf of Black Lives Matter Los Angeles, CANGRESS,

21   Steven Roe, Tina Crnko, Abigal Rodas, Eva Grenier, David Contreras, Jeffrey Trotter,

22   or Orlando Hinkston, which precludes a finding of their adequacy. *Trauth v. Spearmint*

23   *Rhino Cos. Worldwide, Inc.*, No. 09-1316, 2010 U.S. Dist. LEXIS 147958, at *16-17, 20

24   (C.D. Cal. July 26, 2010) (Plaintiffs' failure to provide declarations precluded court from

25   concluding that they were adequate representatives).

26

27                                    21

28

1    Plaintiffs submit declarations on behalf of the remaining plaintiffs, but these are

2    the declarations prepared in support of Plaintiffs' initial request for a temporary

3    restraining order. *See* Dkts. 136-9-11, 19, 23-30. These declarations are now over two

4    years old; they were filed before the operative complaint, before any court rulings,

5    before any response to any complaint, and before any discovery. That Plaintiffs were

6    apparently not vested enough in the litigation to submit updated declarations

7    demonstrates they are not prosecuting the action vigorously on behalf of the class, as

8    required. *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (class representative

9    must prosecute the action vigorously on behalf of the class); *Welling v. Alexy*, 155

10   F.R.D. 654, 659 (N.D. Cal. 1994) (plaintiff was an inadequate class representative

11   because of his "demonstrated level of disinterest" in the lawsuit). Plaintiffs' deposition

12   testimony further demonstrates their inadequacy. For example, when Ms. Khan was

13   asked at deposition about the lawsuit, she continuously responded, "my lawyer would

14   know that," and Ms. Hartsfield acknowledged she "can only speak for what [her]

15   experiences were."  COE, Ex. 16, 10:20-11:3, Ex. 19, 51:9-52:17.

16   Additionally, Ms. Grenier testified that she was at the protests as a legal observer

17   rather than as a protestor and Mr. Mayorca attended to film the protests, which renders

18   them inadequate representatives. *See Ahmad v. City of St. Louis*, 995 F.3d 635, 644 (8th

19   Cir. 2021) (legal observer inadequate to represent protestors); *Chua v. City of L.A.*, No.

20   CV16-00237, 2017 U.S. Dist. LEXIS 224221, at *25-27 (C.D. Cal. May 25, 2017)

21   (same); COE, Ex. 15, 9:22-10:7; Ex. 17, 21:21-24, 24:21-25:7. Therefore, no Plaintiff

22   has met their burden of showing they have the requisite familiarity and interest in the

23   case necessary to demonstrate their adequacy. *Alvarez v. XPO Logistics Cartage, LLC*,

24   No. 2:18-cv-03736, 2020 U.S. Dist. LEXIS 199326, at *11-12 (C.D. Cal. Nov. 15, 2017)

25   (representative must demonstrate familiarity with case).

26

27                                            22

28

### b)    Law Office of Carol A. Sobel

The Law Office of Carol A. Sobel is inadequate because, as Plaintiffs' Motion demonstrates, Ms. Sobel will be a necessary witness at trial, which disqualifies Ms. Sobel and her firm under both the California Rules of Professional Conduct and the ABA Model Rules, Rule 3.7, for violating the advocate-witness rule. Plaintiffs' Motion relies extensively on Ms. Sobel's personal knowledge and putative expert testimony to establish alleged policies, practices, and custom, as well as to explain concepts and authenticate documents[3]: "Aside from the unreliability of the assumptions about when times were entered in relation to the initial detention and handcuffing, this 1.3 percent does not constitute a scientifically drawn random sample that is statistically reliable." Dkt. 136-1, pp. 21-22; *see also, e.g.*, p. 26 ("I concluded from reviewing Defendants' evidence that the failure to give a dispersal order in Downtown Los Angeles on June 1, 2020 was deliberate."). Ms. Sobel's testimony will be indispensable to establish a *Monell* violation at trial. *Pulse Elecs., Inc. v. U.D. Elec. Corp.*, No. 3:18-cv-00373, 2021 U.S. Dist. LEXIS 49101, at *61, n.18 (S.D. Cal. Mar. 15, 2021) ("[T]he Court expresses concern over Plaintiff's ability to lay foundation for and authenticate such samples unless Plaintiff intends to call its own counsel as a witness."); *Riddick v. AT&T*, No. 2:12-cv-02033, 2017 U.S. Dist. LEXIS 76795, at *13, n.3 (E.D. Cal. May 18, 2017) (risk of merging roles as advocate and witness where attorney provided calculations); *Dirs. Guild of Amer., Inc. v. Warner Bros., Inc.*, No. CV 83-4764, 1985 U.S. Dist. LEXIS 16325, at *29-31 (C.D. Cal. Aug. 30, 1985) (class counsel inadequate due to violation of M.R. 3.7).

---

[3] Plaintiffs' substantial reliance on the Sobel Declaration is an improper and prejudicial circumvention of the page limit requirements, as they rely on the 52-page declaration to provide facts that belong in the Motion. *See Coach, Inc. v. Celco Customs Servs. Co.*, No. CV 11-10787, 2014 U.S. Dist. LEXIS 201038, at *38, n.96 (C.D. Cal. June 5, 2014) (incorporating by reference into memorandum improperly circumvents page limit requirements).

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Additionally, Ms. Sobel notes that attorney Weston Rowland from her firm (whose name is on the pleading), attended one of the protests with Ms. Grenier (and he defended her deposition, COE, Ex. 15). Dkt. 136-1, p. 51. Mr. Rowland is therefore a necessary, percipient witness to resolving Ms. Grenier's claims (he may also be a putative class member), also requiring disqualification of The Law Office of Carol A. Sobel. "Attorneys must elect in which capacity they intend to proceed, either as counsel or as a witness, and promptly withdraw from the conflicting role." *U.S. v. Prantil*, 764 F.2d 548, 553 (9th Cir. 1985).

### 5. Predominance and Superiority

The predominance and superiority analysis required under Rule 23(b)(3) is similar to, but more demanding than, the commonality analysis required under Rule 23(a). *Just Film, Inc.*, 847 F.3d at 1120. As discussed above, Plaintiffs have not demonstrated, and cannot demonstrate, that liability for their substantive claims can be determined commonly. Therefore, individualized issues predominate and resolving each putative class members' claims would be unmanageable.

Plaintiffs also have not shown that proceeding via class action is superior to individual actions. Plaintiffs argue that there are "a handful" of other individual cases and that "very few lawyers" would handle individual claims. Dkt. 136, p. 36. These contentions are belied by the fact that at least 32 other lawsuits involving 70 different plaintiffs have been filed arising out of the same protests. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1191 (9th Cir. 2001) (additional, individual suits indicate that interested parties have decided that individual actions are an acceptable way to proceed).

### 6. Injunction

Plaintiffs seek to certify an injunction class consisting of anybody who has or may protest in the City of Los Angeles. Dkt. 136, p. 3. This proposed class should not be certified for a number of reasons; the first being that the proposed class is substantially

24

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

overbroad. While it is unclear what specific injunctive relief Plaintiffs are seeking, the proposed class definition includes those who are acting unlawfully; it would therefore be inappropriate to prohibit any use of force categorically. *See Oakland*, 2021 U.S. Dist. LEXIS 200363, at *18-19 (declining certification of injunction class because Plaintiffs failed to demonstrate the broad definition is appropriate).

Second, no Plaintiffs have standing because they cannot demonstrate a sufficient likelihood that they will be again wronged in a similar way. *Bates v. UPS*, 511 F.3d 657, 985 (9th Cir. 2007). Tellingly, Plaintiffs propose a class period ending June 2, 2020 even though the protests continued through June 7, 2020. In fact, June 7, 2020 saw one of the single largest protests of the entire protest period, yet without the chaos and alleged wrongs experienced the days prior. Further, Plaintiffs attended a number of subsequent protests yet present no evidence they were subject to the same violations. *See* COE, Ex. 12, 27:3-18; Ex. 21, 33:7-25; Ex. 20, 45:5-16; Ex. 23, 53:6-16 (has protested 30-40 times since May 30, 2020 and has not been injured); *L.A. v. Lyons*, 461 U.S. 95, 108 (1983) ("[I]t is surely no more than speculation to assert either that Lyons himself will again be involved in one of those unfortunate instances, or that he will be arrested in the future and provoke the use of a chokehold by resisting arrest, attempting to escape, or threatening deadly force or serious bodily injury."). Not only does this lack of subsequent harm demonstrate a lack of standing, but it also demonstrates a lack of policy, custom, or practice to commit these alleged violations.

## IV.   CONCLUSION

Because Plaintiffs have not demonstrated compliance with Rule 23, their Motion should be denied.

DATED:   July 7, 2022

**MICHAEL N. FEUER**, City Attorney
**SCOTT MARCUS**, Chief Assistant City Attorney
**CORY M. BRENTE**, Senior Assistant City Attorney
**GABRIEL S. DERMER**, Assistant City Attorney
**GEOFFREY PLOWDEN**, Deputy City Attorney
**JOSEPH S. PERSOFF**, Deputy City Attorney

By:   /s/ Joseph S. Persoff
          Joseph S. Persoff
          Deputy City Attorney

Attorneys for Defendants
**CITY OF LOS ANGELES and
CHIEF MICHEL MOORE**

26