**MICHAEL N. FEUER**, City Attorney – SBN 111529
**SCOTT MARCUS,** Chief Assistant City Attorney – SBN 184980
**CORY M. BRENTE,** Senior Assistant City Attorney – SBN 115453
**GABRIEL S. DERMER**, Assistant City Attorney – SBN 229424
**GEOFFREY PLOWDEN**, Deputy City Attorney – SBN 146602
**JOSEPH S. PERSOFF**, Deputy City Attorney – SBN 307986
200 No. Main Street, 6th Floor City Hall East
Los Angeles, California 90012
Email:  geoffrey.plowden@lacity.org
Phone:  (213) 978-7038 Fax No: (213) 978-8785

*Attorneys for Defendants*
**CITY OF LOS ANGELES and CHIEF MICHEL MOORE**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLACK LIVES MATTER LOS ANGELES, CANGRESS (DBA LA CAN), STEVEN ROE, NELSON LOPEZ, TINA ČRNKO, JONATHAN MAYORCA, ABIGAIL RODAS, KRYSTLE HARTFIELD, NADIA KHAN, CLARA ARANOVICH, ALEXANDER STAMM, MAIA KAZIM, ALICIA BARRERA-TRUJILO, SHANNON LEE MOORE, DEVON  YOUNG, LINUS SHENTU, individually and on behalf of a class of similarly situated persons, <br><br>                 PLAINTIFFS, <br><br> v. <br><br> CITY OF LOS ANGELES, a municipal entity, CHIEF MICHEL MOORE , and DOES 1-10 inclusive, <br><br>                 DEFENDANTS. | CASE NO. **CV20-05027 CBM-AS** <br><br><br> **NEW AUTHORITY IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

1    In support of their Opposition to Plaintiffs' Motion for Class Certification, Dkt.

2    144, Defendants City of Los Angeles and Chief Michel Moore submit the following new

3    authority for the Court's consideration.  On August 24, 2022, the Ninth Circuit issued its

4    opinion in *Martinez v. Newsom*, Case No. 20-56404.  The opinion is relevant to the

5    discussion on pages 24-25 of Defendants' Opposition regarding the issue of Plaintiffs'

6    Article III standing.  The relevant portions of the Ninth Circuit opinion are located on

7    pages 12-15 of the Slip Opinion, which is attached for the Court's convenience.

8

9    DATED:   August 25, 2022        Respectfully Submitted,

10                                    **MICHAEL N. FEUER**, City Attorney
                                      **SCOTT MARCUS**, Chief Assistant City Attorney
11                                    **CORY M. BRENTE**, Senior Assistant City Attorney
                                      **GABRIEL S. DERMER**, Assistant City Attorney
12                                    **GEOFFREY PLOWDEN**, Deputy City Attorney
                                      **JOSEPH S. PERSOFF**, Deputy City Attorney

13                                    By:   /s/ Joseph S. Persoff
14                                          JOSEPH S. PERSOFF
                                            Deputy City Attorney
15
                                      Attorneys for Defendants
16                                    **CITY OF LOS ANGELES and**
                                      **CHIEF MICHEL MOORE**
17

18

19

20

21

22

23

24

25

26

27

28

1

NEW AUTHORITY IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| Danielle Howard Martinez; D. P., a minor, by his Guardian ad Litem Erica Wedlow; K. P., a minor, by his Guardian ad Litem Brittany Williams; T. W., a minor by his Guardian ad Litem Dahl Johnson; P. C., a minor by her Guardian ad Litem Raven Campbell; LASHONDA HUBBARD; AMBER WOOD, *Plaintiffs-Appellants*, | No. 20-56404 <br><br> D.C. No. 5:20-cv-01796-SVW-AFM <br><br><br> OPINION |

v.

GAVIN NEWSOM, Governor; STATE OF CALIFORNIA; CALIFORNIA STATE BOARD OF EDUCATION; CALIFORNIA DEPARTMENT OF PUBLIC HEALTH; CALIFORNIA HEALTH AND HUMAN SERVICES; SANDRA SHEWRY, State Public Health Officer and Department of Public Health Director; CALIFORNIA DEPARTMENT OF EDUCATION; TONY THURMOND, State Superintendent of Public Education; CALIFORNIA SCHOOL FOR THE DEAF, Fremont and Riverside; CALIFORNIA SCHOOL FOR THE BLIND DIAGNOSTIC CENTER, Northern California, Central California

Southern California; FREMONT
UNIFIED SCHOOL DISTRICT;
OAKLAND UNIFIED SCHOOL
DISTRICT; MT. DIABLO UNIFIED
SCHOOL DISTRICT; SAN RAMON
VALLEY UNIFIED SCHOOL DISTRICT;
WEST CONTRA COSTA UNIFIED
SCHOOL DISTRICT; CUPERTINO
UNION SCHOOL DISTRICT; HAYWARD
UNIFIED SCHOOL DISTRICT; SAN
JUAN UNIFIED SCHOOL DISTRICT;
SBE LATITUDE 37.8 HIGH SCHOOL;
LONG BEACH UNIFIED SCHOOL
DISTRICT; SOUTH PASADENA
UNIFIED SCHOOL DISTRICT;
CAPISTRANO UNIFIED SCHOOL
DISTRICT; SANTA ANA UNIFIED
SCHOOL DISTRICT; RIVERSIDE
UNIFIED SCHOOL DISTRICT; CHAFFEY
JOINT UNION HIGH SCHOOL
DISTRICT; MILPITAS UNIFIED
SCHOOL DISTRICT; GARDEN GROVE
UNIFIED SCHOOL DISTRICT; IRVINE
UNIFIED SCHOOL DISTRICT;
CORONA-NORCO UNIFIED SCHOOL
DISTRICT; MORENO VALLEY UNIFIED
SCHOOL DISTRICT; ETIWANDA
ELEMENTARY SCHOOL DISTRICT;
SAN BERNARDINO CITY UNIFIED
SCHOOL DISTRICT; SAN FRANCISCO
UNIFIED SCHOOL DISTRICT; LOS
ANGELES UNIFIED SCHOOL DISTRICT;
SAN JOSE UNIFIED SCHOOL
DISTRICT; SBC - HIGH TECH HIGH

SCHOOL DISTRICT,
              *Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted December 6, 2021
Submission Vacated March 7, 2022
Resubmitted August 17, 2022
Pasadena, California

Filed August 24, 2022

Before:  MILAN D. SMITH, JR., KENNETH K. LEE, and
        DANIELLE J. FORREST, Circuit Judges

Opinion by Judge Milan D. Smith, Jr.;
Concurrence by Judge Lee

## SUMMARY[*]

### Individuals with Disabilities Education Act

The panel affirmed in part and vacated in part the district court's dismissal of claims brought by a group of students and parents who alleged that every school district in California failed to adequately accommodate special needs students after California public school transitioned to remote instruction in March 2020 in response to the COVID-19 pandemic.

In this putative class action, plaintiffs alleged that defendants violated the Individuals with Disabilities Education Act and the Fourteenth Amendment, and they sought declaratory and injunctive relief. The district court dismissed plaintiffs' claims for failure to exhaust administrative remedies under the IDEA.

The panel held that plaintiffs lacked standing to sue school districts in which they were not enrolled and the State Special Schools, which they did not attend, because they did not allege that those defendants injured them personally. The panel held that, even if the "juridical link" doctrine, providing an exception to the rule that a named plaintiff who has not been harmed by a defendant is generally an inadequate and atypical class representative for purposes of Fed. R. Civ. P. 23, ever applies outside of the Rule 23 context, it would not apply here.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the California public schools' return to in-person instruction mooted plaintiffs' claims against the California Department of Education and the State Superintendent of Public Education, as well as their claims against other defendants seeking injunctions requiring a return to in-person instruction or reassessment and services until students return to in-person instruction. Surviving were plaintiffs' claims against the school districts in which they were enrolled seeking compensatory education, a declaratory judgment, and attorneys' fees and costs.

The panel held that under the IDEA, plaintiffs were required to exhaust administrative remedies before filing their claims against their school districts, seeking relief for the denial of a free and appropriate public education (FAPE) during the time they were receiving remote instruction. The panel held inapplicable exceptions to the exhaustion requirement for when plaintiffs seek systemic or structural relief, when it is improbable that adequate relief can be obtained by pursuing administrative remedies, or when exhaustion would be futile. For the systemic exception, plaintiffs did not satisfy the requirement that they identify an agency decision, regulation, or other binding policy that caused their injury. The inadequacy exception did not apply because even though some of their claims were based on the Fourteenth Amendment, plaintiffs sought relief for the denial of a FAPE, and unnamed class members were not required to exhaust. The panel declined to consider for the first time on appeal plaintiffs' argument regarding the futility exception. The panel also declined to consider an argument regarding exhaustion of a claim for breach of a settlement agreement because such a claim was not included in the complaint.

The panel vacated the district court's judgment
dismissing on the merits the claims that plaintiffs lacked
standing to bring and remanded with instruction to dismiss
those claims for lack of subject-matter jurisdiction.  The
panel vacated the district court's judgment as to the claims
against the California Department of Education and the State
Superintendent of Public Education, which were moot, and
remanded with instructions to dismiss those claims.  The
panel affirmed the district court's dismissal of the claims
against plaintiffs' school districts for failure to exhaust
administrative remedies.

Concurring, Judge Lee wrote separately to urge laying to
rest a potential "juridical link" exception to Article III
standing.  Judge Lee wrote that the majority opinion declined
to address whether the juridical link doctrine could ever be
viable, reasoning that plaintiffs lacked standing here even if
the panel assumed the doctrine applied.  Judge Lee wrote
that he would prefer extinguishing the remaining embers of
any such misguided exception to constitutional standing.

---

## COUNSEL

Maxwell V. Pritt (argued) and Erica Nyborg-Burch (argued),
Boies Schiller Flexner LLP, San Francisco, California;
Diana Renteria, Law Offices of Sheila C. Bayne, Newport
Beach, California; for Plaintiffs-Appellants.

Len Garfinkel (argued), Deputy General Counsel; Amy
Bisson Holloway, General Counsel; California Department
of Education, Sacramento, California; for Defendants-
Appellees California Department of Education, Tony
Thurmond, California School for the Deaf, and California
School for the Blind Diagnostic Center.

S. Daniel Harbottle (argued), Sydney J. Blaauw, and Tracy Petznick Johnson, Harbottle Law Group, Irvine, California, for Defendants-Appellees Corona-Norco Unified School District, Garden Grove Unified School District, Irvine Unified School District, and Moreno Valley Unified School District.

Marlon C. Wadlington (argued), Scott D. Danforth, and Kristin M. Meyers, Atkinson Andelson Loya Ruud & Roma, Cerritos, California, for Defendants-Appellees Chaffey Joint Union High School District, Capistrano Unified School District, Long Beach Unified School District, Riverside Unified School District, Santa Ana Unified School District, South Pasadena Unified School District, and Milpitas Unified School District.

Kirin K. Gill, Deputy Attorney General, Rob Bonta, Attorney General; Office of the Attorney General, Sacramento, California; for Defendants-Appellees Gavin Newsom, State of California, California State Board of Education, California Department of Public Health, California Health and Human Services, and Sandra Shewry.

Seth Gordon and Louis Leone, Leone Alberts & Duus APC, Concord, California, for Defendants-Appellants Fremont Unified School District, Oakland Unified School District, Mt. Diablo Unified School District, San Ramon Valley Unified School District, West Contra Costa Unified School District, and Cupertino Union School District.

Lynn A. Garcia and Domenic D. Spinelli, Spinelli Donald & Nott, Sacramento, California, for Defendants-Appellees Hayward Unified School District and San Juan Unified School District.

8                           MARTINEZ V. NEWSOM

Katherine C. Den Bleyker, Lewis Brisbois Bisgaard & Smith LLP, Los Angeles, California, for SBE Latitude 37.8 High School.

Edward Kang and Thomas Madruga, Olivarez Madruga Law Organization LLP, Los Angeles, California, for Defendants-Appellees Etiwanda Elementary School District and San Bernardino City Unified School District.

Mark Saul Posard, Gordon Rees LLP, San Francisco, California, for Defendant-Appellee San Francisco Unified School District.

Sue Ann Evans, Managing Senior Counsel, Dannis Woliver Kelley, Long Beach, California, for Defendants-Appellees Los Angeles Unified School District and San Jose Unified School District

Kevin S. Wattles, Soltman Levitt Flaherty & Wattles LLP, Thousand Oaks, California, for Defendant-Appellee SBC - High Tech High School District.

## OPINION

M. SMITH, Circuit Judge:

A group of students and parents allege that every school district in California failed to adequately accommodate special needs students after California public schools transitioned to remote instruction in March 2020 in response to the COVID-19 pandemic. To address appellants' claims, we examine whether Plaintiffs were required to exhaust administrative remedies pursuant to the Individuals with Disabilities in Education Act (IDEA), 20 U.S.C. § 1400 *et seq.*, before filing their lawsuit. We hold that exhaustion was required.

**I**

Plaintiffs are four students enrolled in the Etiwanda and Chaffey Joint Union High School Districts as well as their parents. They allege that when California public schools transitioned to remote instruction in March 2020, every school district in the state failed to determine "what changes needed to be made to [special needs students'] individualized education programs ('IEP') to account for the differences in distance learning compared to in-person instruction." They allege that their IEPs were not updated to account for remote instruction, they were not offered sufficient accommodations after the transition, and they were denied a free and appropriate public education (FAPE) during the time they were receiving remote instruction.

Plaintiffs filed a putative class action lawsuit on behalf of "all special needs students and their parents in California." They sued hundreds of defendants, including, but not limited to: (1) the California Department of Education (CDE); (2) California Superintendent of Public Instruction Tony

Thurmond; (3) every school district in the state of California; and (4) the California School for the Deaf, the California School for the Blind, and the Diagnostic Centers of California (the State Special Schools).[1]

Plaintiffs' claims against the school districts are straightforward: they allege that the districts failed to adequately accommodate special needs students after the transition to remote instruction, thereby denying them—and every other special needs student in the state—a FAPE. Plaintiffs' claims against the CDE and Superintendent Thurmond are more complicated. During the transition to remote instruction, the CDE issued guidance that encouraged the school districts to "[w]ork with each family . . . to determine what [a] FAPE looks like . . . during COVID-19," "[e]nsure children with disabilities are included in all offerings of school education models by using the IEP process," and "[u]se [the] annual IEP to plan for [a] traditional school year and while not required, it is suggested LEAs include distance learning plans or addendums to address distance learning needs during immediate or future school site closures." Plaintiffs allege that because this guidance "encouraged, but did not require, the state's school districts" to take these measures, the CDE and Superintendent Thurmond either dissuaded or prohibited school districts from updating special needs students' IEPs and from offering adequate accommodations. At oral

---

[1] Plaintiffs also sued the following defendants but voluntarily dismissed their claims against them: (1) the state of California, (2) California Governor Gavin Newsom, (3) California's State Board of Education, (4) the California Health and Human Services Agency, (5) the California Department of Public Health, and (6) the Director of the California Department of Public Health.

argument, Plaintiffs characterized this guidance as "a policy of inaction" and "a blanket decision not to act."

Plaintiffs allege that Defendants violated the IDEA and the Fourteenth Amendment, and seek declaratory and injunctive relief.**[2]** Specifically, Plaintiffs request (1) a declaration that Defendants violated the IDEA, (2) an injunction requiring them "to immediately reassess . . . special needs students assigned to engage in distance learning" or return them to in-person instruction, and (3) an injunction ordering them to provide special needs students with various educational services "until such time as appropriate accommodations are made . . . or they are returned to in-person instruction." Plaintiffs also request "compensatory education" from the school districts to make up "for [special needs students'] loss of a basic minimum education."

After some Defendants moved to dismiss, the district court dismissed Plaintiffs' claims against all Defendants for failure to exhaust, denied Plaintiffs leave to amend, and dismissed the case. Plaintiffs timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we review de novo whether the IDEA requires exhaustion in these

---

**[2]** The district court understood Plaintiffs to also allege that Defendants violated the Americans with Disabilities Act and the Rehabilitation Act. We do not read the complaint the same way. The only reference to these statutes in the complaint is Plaintiffs' allegation that the school districts are "subject to state and federal law, including but not limited to the IDEA, Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. §794 as amended), and Title II of the Americans with Disabilities Act of 1990 ('ADA'); 29 U.S.C. § 794, *et seq*." But alleging that a defendant is "subject to" a particular statute is not sufficient to state a claim for a violation of that statute. *See* Fed. R. Civ. P. 8(a)(2).

12          MARTINEZ V. NEWSOM

circumstances. *Doe ex rel. Brockhuis v. Ariz. Dep't of Educ.*,
111 F.3d 678, 681 (9th Cir. 1997).

## II

Before analyzing exhaustion, we first address two
jurisdictional issues.**³** *See Henderson ex rel. Henderson v.
Shinseki*, 562 U.S. 428, 434 (2011). First, Plaintiffs sued
hundreds of school districts in which they are not enrolled,
and the State Special Schools, which they do not attend,
without alleging that those defendants harmed them
personally. Accordingly, we consider whether Plaintiffs
have standing to pursue their claims against these defendants
in federal court. Second, California public schools have
returned to in-person instruction since Plaintiffs filed their
complaint, providing Plaintiffs with much of the relief they
seek. *See generally Brach v. Newsom*, 38 F.4th 6 (9th Cir.
2022) (en banc). We thus also consider whether the return to
in-person instruction moots any of Plaintiffs' claims.

## A

To have standing to sue a particular defendant, a plaintiff
must have experienced an injury in fact that is fairly
traceable to the challenged action of that defendant. *Lujan v.
Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "That a suit may
be a class action . . . adds nothing to the question of standing,
for even named plaintiffs who represent a class 'must allege

---

**³** In the district court, the parties appeared to assume that exhaustion
is a jurisdictional issue, but it is not. *See Payne v. Peninsula Sch. Dist.*,
653 F.3d 863, 865, 867 (9th Cir. 2011) (en banc) ("IDEA's exhaustion
requirement is not jurisdictional"; it "is a claims processing provision
that IDEA defendants may offer as an affirmative defense."), *overruled
on other grounds by Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014)
(en banc).

and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)). Accordingly, named plaintiffs generally lack standing to sue defendants that have not injured them personally, even if they allege that those defendants injured absent class members. *See Easter v. Am. W. Fin.*, 381 F.3d 948, 961–62 (9th Cir. 2004) (holding that class action plaintiffs lacked standing to sue trust companies that "never held a named plaintiff's loan"). Plaintiffs do not allege that the districts in which they are not enrolled or the State Special Schools, which they do not attend, have injured them personally. Therefore, Plaintiffs lack standing to sue those defendants in federal court.

Citing our opinion in *La Mar v. H & B Novelty & Loan Company*, 489 F.2d 461 (9th Cir. 1973), Plaintiffs argue that we have recognized a "juridical link" exception to these ordinary rules of standing, and that it applies here. We disagree. In *La Mar*, we held that a named plaintiff who has not been harmed by a defendant is generally an inadequate and atypical class representative for purposes of Federal Rule of Civil Procedure 23. *Id.* at 465–66. However, we recognized an exception when "all defendants are juridically related in a manner that suggests a single resolution of the dispute would be expeditious." *Id.* at 466. In elaborating on this exception, we distinguished the case before us from one in which "all the defendants were officials of a single state and its subordinate units of government" who applied a "common rule." *Id.* at 470.

We did not address Article III standing in *La Mar*. Instead, we concluded that it was unnecessary to address

standing because the plaintiffs' claims failed under Rule 23 even assuming they had standing. *Id.* at 464. The Supreme Court has since disapproved of our practice of assuming standing, so we cannot make the same assumption in this case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–102 (1998). But we need not decide whether the juridical link doctrine *ever* allows a named plaintiff to sue a defendant that did not harm him personally because Plaintiffs' claims fall outside the juridical link doctrine. In other words, Plaintiffs lack standing even if the juridical link doctrine were to apply outside of the Rule 23 context.

In *La Mar*, we confined the juridical link exception to plaintiffs suing "officials of a single state and its subordinate units of government" who applied a "common rule." 489 F.2d at 470. We cited as examples (1) a suit by inmates seeking to enjoin Alabama prison officials from enforcing a Pennsylvania law that required Alabama jails to be segregated by race, (2) a suit by plaintiffs that had been arrested pursuant to Alabama's vagrancy statute seeking to enjoin Alabama officials from enforcing it, and (3) a suit by female students seeking to enjoin a state regulation that required them to pay higher tuition based on their husbands' out-of-state residence, even though the students resided in Pennsylvania. *See id.* at 469–70 (citing *Washington v. Lee*, 263 F. Supp. 327 (M.D. Ala. 1966); *Broughton v. Brewer*, 298 F. Supp. 260 (S.D. Ala. 1969); and *Samuel v. Univ. of Pittsburgh*, 56 F.R.D. 435 (W.D. Pa. 1972)). All of these suits involved state officials enforcing mandatory rules.

The guidance Plaintiffs cite, by contrast, does not require the school districts to do anything. Indeed, Plaintiffs admit that it "encouraged, but did not require, the state's school districts" to take certain measures to accommodate special needs students during remote instruction. Elsewhere in the

complaint Plaintiffs attempt to construe this guidance as a mandatory rule *prohibiting* school districts from accommodating special needs students during remote instruction, and at oral argument Plaintiffs characterized it as "a policy of inaction." But "we are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998), and the guidance contradicts Plaintiffs' claims: it encourages districts to "[w]ork with each family . . . to determine what [a] FAPE looks like . . . during COVID-19," "[e]nsure children with disabilities are included in all offerings of school education models by using the IEP process," and "[u]se annual IEP to plan for traditional school year and . . . include distance learning plans or addendums to address distance learning needs during immediate or future school site closures." In other words, the CDE offered suggestions about how to accommodate special needs students during remote instruction, but ultimately left each district with discretion to decide how to do so. It did not set forth a "common rule" every district was required to follow. Therefore, Plaintiffs' claims against the State Special Schools and the school districts in which they are not enrolled do not fall within the juridical link doctrine, and Plaintiffs lack standing to pursue their claims against these defendants in federal court even if the juridical link doctrine were to exempt Plaintiffs from ordinary principles of Article III standing.

**B**

We now address whether any of Plaintiffs' claims are moot. Plaintiffs filed this lawsuit in August 2020, when most California public schools were holding classes remotely due to the COVID-19 pandemic. Since then, the California

public schools have returned to in-person instruction. Accordingly, we next address how the return to in-person instruction affects Plaintiffs' claims.

We recently held in *Brach* that a similar challenge to California's pandemic school closure orders was moot. In that case, a group of parents and a student challenged California's 2020–21 Reopening Framework, which allowed schools "to permanently reopen once the rate of COVID-19 transmission in their local areas stabilized." *Brach*, 38 F.4th at 9–10. These plaintiffs argued that the federal Constitution required California to reopen schools immediately. *Id.* at 11. Between the summer of 2020, when the suit was filed, and June 2022, when we issued our opinion, much had changed. As vaccines were distributed and COVID-19 transmission declined, California's school closure orders "expired by their own terms" and schools reopened. *See id.* at 10–12. They have remained open for more than a year, despite "the surge of the Omicron COVID-19 variant." *See id.* at 13–14. In addition, California has "'unequivocally renounce[d]' the use of school closure orders in the future." *Id.* at 13 (quoting *Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1153 (9th Cir. 2019) (alternation in original)). Under these circumstances, we held the plaintiffs' claims were moot. *Id.* at 15.

We requested supplemental briefing on the impact of *Brach* on this case. The parties agree that California public schools have returned to in-person instruction, but Plaintiffs argue that "this case is not moot" because they have not received two forms of relief they seek: (1) a declaration that Defendants violated the IDEA and (2) an injunction requiring compensatory education for students who were not adequately accommodated during remote instruction. Plaintiffs do not contest that their other requests for

injunctive relief, such as their request for a return to in-person instruction, are moot.

We agree that Plaintiffs' request for compensatory education means that some of their claims are not moot. If Plaintiffs were to prevail on the claims for which they requested compensatory education, the district court could award this relief despite the return to in-person instruction. But Plaintiffs requested compensatory education only from the school districts. They did not request compensatory education from the CDE and Superintendent Thurmond. Therefore, we next consider whether Plaintiffs' claims against the CDE and Superintendent Thurmond are moot.

Plaintiffs seek three forms of relief from these defendants: (1) the now-moot injunctive relief described above, (2) a declaratory judgment stating that these defendants violated the IDEA, and (3) attorneys' fees and costs. Since Plaintiffs' requests for injunctive relief against these defendants are moot, we turn to Plaintiffs' requests for a declaratory judgment and for attorneys' fees and costs. Neither form of relief, standing alone, can save Plaintiffs' claims. *See California v. Texas*, 141 S. Ct. 2104, 2115 (2021) ("The Declaratory Judgment Act, 28 U.S.C. § 2201, alone does not provide a court with jurisdiction."); *Bayer v. Neiman Marcus Grp.*, 861 F.3d 853, 866–67 (9th Cir. 2017) (holding that an "interest in attorney fees and legal costs associated with [the] action . . . standing alone are insufficient to confer Article III jurisdiction"). The plaintiffs in *Brach* were equally curious to learn whether California's school closures were unlawful, but we held that we could not offer an opinion on the matter in light of the schools' reopening. The same is true here. *See also, e.g.*, *N.Y. State Rifle & Pistol Ass'n v. City of New York*, 140 S. Ct. 1525, 1526 (2020) (holding that claims seeking "declaratory and

injunctive relief against enforcement" of New York City rule
were moot after the rule had been amended).

We thus hold that Plaintiffs' claims against the CDE and
Superintendent Thurmond are moot, as are Plaintiffs' claims
against the other defendants seeking injunctions requiring a
return to in-person instruction or reassessment and services
until students return to in-person instruction. Accordingly, to
this point in our analysis, Plaintiffs' claims against the
school districts in which they are enrolled seeking
compensatory education, a declaratory judgment, and
attorneys' fees and costs survive.

## III

We now turn to Plaintiffs' only remaining claims: those
against the Etiwanda and Chaffey Joint Union High School
Districts.

The IDEA requires states accepting certain federal funds
to provide students with disabilities a FAPE and to maintain
an administrative process students, parents, and educational
agencies can use to resolve disputes about whether an
educational agency is meeting its obligations. 20 U.S.C.
§§ 1412(a)(1), 1415(a); *see also Fry v. Napoleon Cmty.
Schs.*, 580 U.S. 154, 157–59 (2017). A plaintiff seeking
relief for the denial of a FAPE ordinarily must exhaust the
administrative process before filing a lawsuit, even if the
plaintiff asserts claims arising under the Constitution or a
federal statute other than the IDEA. *See* 20 U.S.C.
§ 1415(i)(2)(A), (*l*); *Fry*, 580 U.S. at 165.

The IDEA sets forth a general framework for the dispute
resolution process but allows states to promulgate the
details. *See* 20 U.S.C. § 1415. In California, the
administrative process begins with a complaint, which

triggers a "resolution meeting" between a student's parents and relevant local educational officials. Cal. Educ. Code §§ 56500.2, 56501.5(a)*.* The parties may also mediate their dispute. *Id.* § 56500.3. If the resolution meeting and/or mediation do not resolve the dispute, the parties may proceed to a "due process hearing" before an administrative law judge at the state Office of Administrative Hearings (OAH). *Id.* §§ 56501.5(c), 56504.5(a)*.* [4] A party unsatisfied with the OAH's resolution of the dispute may file a lawsuit in state or federal court. 20 U.S.C. § 1415(i)(2).

Plaintiffs admit in their complaint that they did not exhaust this administrative process before filing this lawsuit. They argue that they were not required to do so because their claims fall within an exception to the exhaustion requirement. We have held that IDEA plaintiffs are not required to exhaust administrative remedies in three circumstances: (1) when they seek systemic or structural relief, (2) when "it is improbable that adequate relief can be obtained by pursuing administrative remedies (e.g., the hearing officer lacks the authority to grant the relief sought)," and (3) when exhaustion would be futile. *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1303–04 (9th Cir. 1992). Plaintiffs argue that all three exceptions apply.

## A

The systemic exception to the IDEA's exhaustion requirement is something of an enigma. We first recognized the exception 30 years ago, but "no published opinion in this

---

[4] Section 56504.5(a) requires the CDE to contract with "another state agency or . . . a nonprofit organization or entity to conduct mediation conferences and due process hearings." Plaintiffs allege, and the CDE agrees, that the CDE has contracted with the OAH to provide these services.

circuit has ever found that a challenge was 'systemic' and exhaustion not required." *Student A ex rel. Parent A v. S.F. Unified Sch. Dist.*, 9 F.4th 1079, 1084 (9th Cir. 2021). After canvassing our precedent, we conclude that to fall within the systemic exception, a plaintiff must, at a minimum, identify an "agency decision, regulation, or other binding policy" that caused his or her injury. *Doe*, 111 F.3d at 684. Because Plaintiffs do not satisfy this requirement, their claims do not fall within the systemic exception.

In *Hoeft*, we held that exhaustion is not required when "an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law." 967 F.2d at 1303–04 (quoting legislative history). Five years later, a group of plaintiffs alleged that the Arizona Department of Education adopted "a policy or practice of not complying with the IDEA" because the Department did not monitor whether juveniles were present at the Pima County Jail and therefore did not provide the juveniles that were present with a FAPE. *Doe*, 111 F.3d at 684. We held that the plaintiffs were required to exhaust because the Department of Education's failure to provide educational services was the result of "inadvertent neglect" rather than an "agency decision, regulation, or other binding policy." *Id.*

More recently, a group of plaintiffs filed a class action lawsuit alleging that the San Francisco Unified School District was "failing its responsibilities to students under the IDEA by not timely identifying evaluating students with disabilities, and, after identifying them, by providing them with insufficiently individualized, 'cookie-cutter' accommodations and services." *Student A*, 9 F.4th at 1081. The plaintiffs argued that they were not required to exhaust because their claims were systemic. *Id.* We disagreed. We first explained that "describing problems as broad and far-

reaching is not enough to meet the standard; a policy or
practice is not necessarily 'systemic' or 'of general
applicability' simply because it 'applie[s] to all students' or
because 'the complaint is structured as a class action seeking
injunctive relief.'" *Id.* at 1084 (quoting *Hoeft*, 967 F.2d at
1304, 1308). We then held that the plaintiffs' claims were
not systemic because the plaintiffs failed to "identif[y] any
policy, much less one of general applicability that the
administrative process could not address," *id.*, and their
allegations were "of bad results, not descriptions of unlawful
policies or practices," *id.* at 1085. Considering the facts of
the case, we concluded that the plaintiffs were not seeking
"anything other than increased funding and greater
adherence to existing policies." *Id.* at 1085.

These cases demonstrate that to fall within the systemic
exception, the injury the plaintiff complains of must "result[]
from an agency decision, regulation, or other binding
policy." *Doe*, 111 F.3d at 684. A plaintiff cannot rely on the
systemic exception simply by reframing an act of
inadvertence or negligence as a policy or practice of not
complying with the IDEA. *See Student A*, 9 F.4th at 1085
(holding that plaintiffs were required to exhaust because they
were unable to identify the "unlawful policies or practices"
that caused them harm and appeared to base their claims on
the district's failure to adhere to existing policies); *Doe*, 111
F.3d at 684 (holding that plaintiffs were required to exhaust
because their injuries were caused by "inadvertent neglect"
rather than "an agency decision, regulation, or other binding
policy"). But that is exactly what Plaintiffs attempt to do
here. Essentially, Plaintiffs assert a negligence claim: they
allege that the districts failed to adequately accommodate
special needs students after the transition to remote
instruction. Plaintiffs' attempts to reframe this claim as a

policy or practice of not complying with the IDEA does not allow them to evade the exhaustion requirement.

**B**

Plaintiffs next argue that their claims fall within the inadequacy exception because OAH cannot resolve constitutional claims, "cannot hear class actions," and "lacks the authority to issue injunctions." Plaintiffs further argue that requiring all 800,000 special needs students in California to exhaust would overwhelm the administrative process so that it would be impossible to exhaust these claims in a timely manner. None of these arguments is persuasive.

First, the Supreme Court held in *Fry* that would-be plaintiffs must exhaust administrative remedies whenever they "seek relief for the denial of a FAPE," 580 U.S. at 165, even if they bring claims "under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities," 20 U.S.C. § 1415(*l*); *Fry*, 580 U.S. at 161. That rule applies here because Plaintiffs seek relief for the denial of a FAPE. They allege that "Defendant Districts have . . . denied . . . Plaintiffs and the members of the Proposed Class a FAPE," and they seek remedies designed to compensate for the denial of a FAPE: "compensatory education, including related services to correct for the denial of a FAPE." Because Plaintiffs seek relief for the denial of a FAPE, they are required to exhaust administrative remedies, even though some of their claims are based on the Fourteenth Amendment.

Second, "the mere fact the complaint is structured as a class action seeking injunctive relief, without more, does not excuse exhaustion." *Hoeft*, 967 F.2d at 1308. Third,

Plaintiffs' fears about 800,000 students overwhelming the administrative process are unfounded because unnamed class members need not exhaust. *Id.* at 1309–10.

## C

Plaintiffs argue that pursuing administrative remedies would be futile because after the district court dismissed the complaint one of the named plaintiffs initiated the administrative process and the OAH dismissed his claim. But our review is limited to "the original papers and exhibits filed in the district court," Fed. R. App. P. 10(a)(1), and the documents Plaintiffs submitted for the first time on appeal are not part of the record. *Kirshner v. Uniden Corp. of Am.*, 842 F.2d 1074, 1077 (9th Cir. 1988); *cf. Jespersen v. Harrah's Operating Co.*, 444 F.3d 1104, 1110 (9th Cir. 2006) ("[A] plaintiff may not cure her failure to present the trial court with facts sufficient to establish the validity of her claim by requesting that this court take judicial notice of such facts."). Therefore, we express no opinion regarding whether this named plaintiff's attempt to exhaust would satisfy the futility exception to IDEA's exhaustion requirement if it were properly presented.

## D

Finally, Plaintiffs argue that they are not required to exhaust because one of the named plaintiffs is entitled to services from the Etiwanda School District pursuant to a settlement agreement, and plaintiffs seeking to enforce IDEA settlement agreements are not required to exhaust because these claims are simply breach of contract claims.

We need not address this issue because Plaintiffs did not include a claim for a breach of this settlement agreement in their complaint. *See Chafin v. Chafin*, 568 U.S. 165, 172

(2013) ("Federal courts may not . . . give 'opinion[s] advising what the law would be upon a hypothetical state of facts.'") (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)); *Riggs v. Prober & Raphael*, 681 F.3d 1097, 1104 (9th Cir. 2012) ("A plaintiff may not try to amend her complaint through her arguments on appeal."). The 64-page complaint references the settlement agreement only twice, and only amid the factual allegations. Although the complaint includes several counts listing Plaintiffs' causes of action, it never asserts a breach of contract claim. Indeed, the word "breach" does not appear anywhere in the complaint. The absence of such a claim is unsurprising because it would make little sense to bring a class action on behalf of every special education student in the state of California based on a settlement agreement that sets forth the particular services to which a single student is entitled. Accordingly, Plaintiffs did not assert a claim based on an alleged breach of a settlement agreement, and we decline to issue an advisory opinion regarding whether such a claim must be exhausted.

## IV

The district court lacked jurisdiction to resolve Plaintiffs' claims against the school districts in which they are not enrolled and the State Special Schools, which they do not attend. We therefore vacate the district court's judgment dismissing those claims on the merits and remand with instructions to dismiss them for lack of subject-matter jurisdiction.[5] Further, in light of the California public

---

[5] The district court also erred in dismissing Plaintiffs' claims against many of these defendants on the merits when the defendants were not parties to the case because they had not been served. *See Omni Cap. Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) ("Before a federal court

schools' return to in-person instruction, Plaintiffs' claims against the CDE and Superintendent Thurmond are moot. We therefore vacate the district court's judgment and remand with instructions to dismiss Plaintiffs' claims against those defendants. Finally, we affirm the district court's dismissal of Plaintiffs' claims against the Etiwanda and Chaffey Joint Union High School Districts for failure to exhaust administrative remedies.

### AFFIRMED IN PART, VACATED IN PART, AND REMANDED.[6]

---

LEE, Circuit Judge, concurring:

I concur with Judge Smith's excellent opinion, but I write separately to urge laying to rest a potential "juridical link" exception to Article III standing that our court hinted at in *La Mar v. H & B Novelty & Loan Company*, 489 F.2d 461 (9th Cir. 1973).  In that case, we observed that a plaintiff who was not harmed by the defendant obviously cannot

---

may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."); *West v. United States*, 853 F.3d 520, 524 (9th Cir. 2017) ("It was clear error for the district court to dismiss the claims against Gordwin, who wasn't a party to the case because he hadn't been served and the time for service had not expired."). We have held, however, that a district court may dismiss claims for lack of subject-matter jurisdiction even if the defendants against whom they are asserted have not been served. *See Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1342 (9th Cir. 1981). Therefore, on remand, the district court need not wait for Plaintiffs to serve these defendants before dismissing Plaintiffs' claims against them for lack of subject-matter jurisdiction.

[6] Appellants shall bear costs.

serve as a class representative under Rule 23. *Id.* at 464–66.
But we also recognized a potential exception if "all
defendants are juridically related in a manner that suggests a
single resolution of the dispute would be expeditious." *Id.*
at 466. The *La Mar* court, however, did not address Article
III standing.

Relying on *La Mar,* Plaintiffs argue that this supposed
juridical link exception allows them to sue districts in which
they are not enrolled and schools that they do not attend. The
majority opinion declines to address whether the juridical
link doctrine could ever be viable, reasoning that Plaintiffs
lack standing here even if we assume it applied. I would
prefer extinguishing the remaining embers of any misguided
"juridical link" exception. I fail to see how a plaintiff's
injury resulting from one defendant's conduct gives him or
her standing to sue other defendants who caused no harm,
even if the defendants are state officials enforcing mandatory
rules that injured other parties.

\* \* \* \* \*

When this court decided *Lar Mar*, there were competing
approaches to standing. 13A Charles Alan Wright & Arthur
R. Miller *Federal Practice and Procedure* § 3531.1 (3d ed.
2022). The Supreme Court's decisions from the late 1960s
to the early 1970s alluringly offered courts the opportunity
to issue sweeping decisions, even if the plaintiffs seemingly
suffered little or no concrete harm. The Court had "greatly
expanded the types of 'personal stake(s)' which are capable
of conferring standing on a potential plaintiff." *Linda R.S.
v. Richard D.*, 410 U.S. 614, 616–617 (1973); *see Baker v.
Carr*, 369 U.S. 186, 204–08 (1962) (individual voters have
standing to challenge state apportionment); *Flast v. Cohen*,
392 U.S. 83, 85–86, 99–101 (1968) (taxpayers have standing

to challenge use of federal funds to support instructional activities and materials in religious and sectarian schools).

At the same time, however, the Court was also reviving a restrictive approach to standing, in part, by requiring plaintiffs to show personal injury. *See Sierra Club v. Morton*, 405 U.S. 727, 734–35 (1972) ("[T]he 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured."); *Linda R.S.*, 410 U.S. at 617 ("Although the law of standing has been greatly changed in the last 10 years, we have steadfastly adhered to the requirement that, at least in the absence of a statute expressly conferring standing, federal plaintiffs must allege some threatened or actual injury resulting from the putatively illegal action before a federal court may assume jurisdiction.").

A few years after *La Mar*, the Supreme Court addressed the relationship between standing doctrine and class-action litigation. In *Simon v. Eastern Kentucky Welfare Rights Organization*, the Court held that class representatives cannot gain standing through injuries to class members. 426 U.S. 26, 40–46 (1976). Named plaintiffs must show personal injury. *Id.* at 40 n.20 ("That a suit may be a class action . . . adds nothing to the question of standing). And if the named plaintiff is an organization, it may seek "associational standing," and must demonstrate that "its members would otherwise have standing to sue in their own right." *Hunt v. Wash. State Apple Advert. Com'n*, 432 U.S. 333, 343 (1977).

We thus measure a class representative's standing by the test set forth for individual plaintiffs in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). 1 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 2:4 (6th ed. 2022); *see Lierboe v. State Farm Mut. Auto. Ins. Co.*,

350 F.3d 1018, 1022–1023 (9th Cir. 2003).    Named plaintiffs must allege that the defendant they chose to sue has wronged them in a legally cognizable way. *Lujan*, 504 U.S. at 560–61; *see Easter v. Am. W. Fin.*, 381 F.3d 948, 961 (9th Cir. 2004) (requiring a named plaintiff in a class action "allege a distinct and palpable injury to himself" that arises from the defendant's actions).    That conduct must be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court."    *Lujan*, 504 U.S. at 563 (alterations is original) (citation omitted).    Importantly, "a plaintiff who has been subject to injurious conduct of one kind [does not] possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject."    *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982).

We conduct this analysis at the claim level.    *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006) ("[A] plaintiff must demonstrate standing for each claim he seeks to press."); *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) ("[S]tanding is not dispensed in gross.").    For each asserted claim, the named plaintiff "must always have suffered a distinct and palpable injury to himself." *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 100 (1979) (internal quotation marks omitted).    So if no class representative has standing to bring a challenge against a defendant's actions, then the claim fails—even if those defendants have allegedly injured other class members. *See Lewis*, 518 U.S. at 357.    Put another way: "Standing cannot be acquired through the back door of a class action."    *Allee v. Medrano*, 416 U.S. 802, 829 (1974) (Burger, C.J., concurring in part and dissenting in part).

Given these developments in standing doctrine, it is hard to imagine a juridical link exception to Article III standing could exist in any form. *See Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62–65 (2d Cir. 2012) (rejecting the juridical link exception to standing); *contra Payton v. Conty. of Kane*, 308 F.3d 673, 680–82 (7th Cir.2002), *cert. denied sub nom.*, *Carroll Conty. v. Payton*, 540 U.S. 812, 124 (2003) (holding that a court should decide class certification first and treat the class as the relevant entity for Article III purposes). Standing doctrine "assures that 'there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party.'" *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (citation omitted). "Where that need does not exist, allowing courts to oversee legislative or executive action 'would significantly alter the allocation of power . . . away from a democratic form of government.'" *Id.* (alteration in original) (citation omitted).

In short, post-*La Mar* decisions from the Supreme Court have unequivocally closed the books on any potential "juridical link" exception to Article III standing.