Cynthia Anderson Barker, SBN 75764
National Lawyers Guild
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
t. 213 381-3246 f. 213 381-3246
e. cablaw@hotmail.com

Paul Hoffman, SBN 71244
Michael D. Seplow, SBN 150183
Aidan McGlaze, SBN 277270
John C. Washington, SBN 315991
SCHONBRUN, SEPLOW, HARRIS,
HOFFMAN & ZELDES LLP
200 Pier Avenue, Suite 226
Hermosa Beach, California 90254
t. 310 396-0731; f. 310 399-7040
e. hoffpaul@aol.com
e. mseplow@sshhzlaw.com
e. amcglaze@sshhzlaw.com
e. jwashington@sshhlaw.com

Attorneys for Plaintiffs
Additional Counsel on Next Page

Barrett S. Litt, SBN 45527
Lindsay Battles, SBN 262862
MCLANE, BEDNARSKI & LITT, LLP
975 E. Green Street
Pasadena, California 91106
t. 626 844-7660 f. 626 844-7670
e. blitt@mbllegal.com
e. lbattles@mbllegal.com

Pedram Esfandiary, SBN 312569
e. pesfandiary@baumhedlundlaw.com
Monique Alarcon, SBN 311650
e. malarcon@baumhedlundlaw.com
Bijan Esfandiari, SBN 223216
e. besfandiari@baumhedlundlaw.com
R. Brent Wisner, SBN 276023
e. rbwisner@baumhedlundlaw.com
BAUM, HEDLUND, ARISTEI &
GOLDMAN, P.C.
10940 Wilshire Blvd., 17th Floor
Los Angeles, CA 90024
t. 310 207-3233 f. 310 820-7444

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

BLACK LIVES MATTER LOS ANGELES, ET AL.,

                        PLAINTIFFS,

v.

CITY OF LOS ANGELES, ET AL.,

                        DEFENDANTS.

Case No.: 2:20-cv-05027 CBM-AS

**PLAINTIFFS' COMBINED OPPOSITION TO DEFENDANTS' MOTION TO DISMISS UNDER FRCIVP 12(B)(1) AND MOTION FOR JUDGMENT ON THE PLEADINGS**

DATE: JANUARY 17, 2023
TIME: 10:00 A.M.
COURT: COURTROOM 8D

Carol A. Sobel, SBN 84483
Weston Rowland, SBN 327599
LAW OFFICE OF CAROL A. SOBEL
1158 26th Street, #552
Santa Monica, CA 90403
t. 310 393-3055
e. carolsobel@aol.com
e. rowland.weston@gmail.com

Colleen Flynn, SBN 234281
LAW OFFICE OF COLLEEN FLYNN
3435 Wilshire Blvd., Suite 2910
Los Ángeles, CA 90010
t. 213 252-9444
r. 213 252-0091
e. cflynnlaw@yahoo.com

Matthew Strugar, SBN 232951
LAW OFFICE OF MATTHEW STRUGAR
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
t. 323 696-2299
e. matthewstrugar@gmail.com

Denisse Gastelum SBN 282771
GASTELUM LAW, APC
3767 Worsham Ave.
Long Beach, CA 90808-1774
t. 213 340 6112
e. dgastelum@gastelumfirm.com

Shakeer Rahman SBN 332888
LAW OFFICE OF SHAKEER RAHMAN
838 East 6th Street
Los Angeles, CA 90010
t. 323 546-9236
e. e. shakeerr@cangress.org

Olu Orange, SBN 213653
Orange Law Offices
3435 Wilshire BLvd., Ste. 2910
LOS ANGELES, CA. 90010-2015
T. 213 736-9900
f. 213 417-8800
e. o.orange@orangelawoffices.com

James Do Kim
LAW OFFICES OF DO KIM, APLC
3435 Wilshire Blvd., Suite 2700
Los Angeles, CA 90010
t. 213 251-5440
f. 213 232 4919
e. dkim@dkimlaw.com

# TABLE OF CONTENTS

I.    INTRODUCTION .............................................................................................1

II.   PLAINTIFFS HAVE PROPERLY STATED CLAIMS UNDER CIVIL
      CODE § 52.1. .................................................................................................2

      A.   CIVIL CODE § 52.1 LAW DOES NOT BAR TREATMENT OF UNRUH ACT
           CLAIMS AS CLASS ACTIONS. ................................................................2

      B.   FEDERAL, NOT STATE, LAW DETERMINES WHETHER A STATE LAW
           CLAIM IN FEDERAL COURT SHOULD BE CERTIFIED AS A CLASS ACTION.
           ...............................................................................................................8

      C.   REGARDLESS OF DEFENDANTS CLASS ARGUMENT REGARDING § 52.1,
           JUDGMENT ON THE PLEADING IS INAPPROPRIATE FOR THE INDIVIDUAL
           PLAINTIFFS' § 52.1 CLAIMS. ................................................................9

III.  THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THE
      SUPPLEMENTAL CLAIMS REGARDLESS OF THE RESOLUTION OF
      THE DEFENDANTS' MOTIONS. ..............................................................10

      A.   COURTS HAVE SUBJECT MATTER JURISDICTION SO LONG AS THE
           COMPLAINT ESTABLISHES AN ACTIONABLE CLAIM WHETHER OR NOT
           THAT CLAIM IS EXPLICITLY ASSERTED IN THE COMPLAINT. ................10

      B.   EVEN IF THE FOURTH AMENDMENT CLAIM DOES NOT COLORABLY
           ESTABLISH FEDERAL JURISDICTION, THERE ARE DUE PROCESS CLAIMS
           FOR THE INFRACTION CLASS THAT THE FACTS ALLEGED GIVE RISE TO.
           .............................................................................................................12

           1.   Cal. Civil Code § 853.5 Creates A Liberty Interest In Not Being
                Arrested On An Infraction, Establishing A Due Process Violation
                For Such Arrests. ......................................................................13

      C.   SUPPLEMENTAL JURISDICTION FOR THE STATE LAW INFRACTION
           CLAIMS EXISTS REGARDLESS OF WHETHER THE COURT FINDS A
           FEDERAL INFRACTION CLASS CLAIM BECAUSE THOSE STATE LAW
           CLAIMS ARISE FROM A COMMON NUCLEUS OF OPERATIVE FACT .......16

IV.   DEFENDANT MOORE DOES NOT HAVE QUALIFIED IMMUNITY
      FOR VIOLATIONS OF THE INFRACTION CLASS'S RIGHTS. .............22

V.    CONCLUSION .............................................................................................22

1

# TABLE OF AUTHORITIES

2

**FEDERAL CASES**

3

*Aichele v. City of Los Angeles*,

4

   314 F.R.D. 478 (C.D. Cal. 2013) ............................................................................7

5

*Allen v. Wright*,

6

   468 U.S. 737  (1984) ..................................................................................................4

7

*Alvarez v. Hill*,

   518 F.3d 1152 (9th Cir. 2008) ...............................................................................12

8

*Amador v. Baca*,

9

   2014 WL 10044904 (C.D. Cal. Dec. 18, 2014) ....................................................7

10

*Ammerman v. Sween*,

11

   54 F.3d 423 (7th Cir. 1995).....................................................................................18

12

*Bates v. United Parcel Service*,

   204 F.R.D. 440 (N.D. Cal. 2001) ............................................................................8

13

*Bautista v. Pan Am. World Airlines*,

14

   828 F.2d 546 (9th Cir. 1987).................................................................................10

15

*Bemis Bros. Bag Co. v. United States*,

16

   289 U.S. 28 (1933) ..................................................................................................12

17

*Berlowitz v. Nob Hill Masonic Management*,

   1996 WL 724776 (N.D. Cal. 1996) ........................................................................8

18

*Carlo v. City of Chino*,

19

   105 F.3d 493 (9th Cir. 1997)...........................................................................15, 22

20

*Carnegie-Mellon Univ. v. Cohill*,

21

   484 U.S. 343 (1988) ..........................................................................................16, 17

22

*Chua v. City of Los Angeles*,

   2017 WL 10776036 (C.D. Cal. May 25, 2017) .....................................................7

23

*Cicio v. Does*,

24

   321 F.3d 83 (2d Cir. 2003).....................................................................................19

25

*Colorado Dept of Public Health and Environment, Hazardous Materials and*
    *Waste Management Div. v. United States*,

26

   2021 WL 3286589 (D. Colo. 2021) .......................................................................19

27

*Craft v. Cnty. of San Bernardino*,

28

   2006 WL 4941829 (C.D. Cal. Mar. 21, 2006)......................................2, 3, 5, 8, 21

*Crull v. GEM Ins. Co.*,
  58 F.3d 1386 (9th Cir. 1995)............................................................................11

*Dann v. Studebaker-Packard Corporation*,
  288 F.2d 201 (6th Cir.1961)............................................................................11

*DCD Programs, Ltd. v. Leighton*,
  833 F.2d 183 (9th Cir.1987)............................................................................10

*Desertrain v. City of Los Angeles*,
  754 F.3d 1147 (9th Cir. 2014) .........................................................................12

*Doyle's Carolina 7, LLC v. Thurber*,
  2011 WL 1637416 (D. Or. Mar. 7, 2011).........................................................11

*Edgerly v. City & Cnty. of San Francisco*,
  713 F.3d 976 (9th Cir. 2013)...........................................................................20

*Elec. Const. & Maint. Co., Inc. v. Maeda Pac. Corp.*,
  764 F.2d 619 (9th Cir. 1985) .......................................................................3, 11

*Erie Railroad Co. v. Tompkins*,
  304 US 64 (1938) ...............................................................................................8

*Foman v. Davis*,
  371 U.S. 178 (1962) .........................................................................................10

*Gibson v. County of Riverside*,
  181 F. Supp. 2d 1057 (C.D. Cal. 2002) .............................................................8

*Golden v. Cnty. of Tulare*,
  2011 WL 1087097 (E.D. Cal. Mar. 23, 2011) ..................................................22

*Hanna v. Plumer*,
  380 US 460 (1965) .............................................................................................8

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir.1992)...............................................................................9

*Hart v. Massanari*,
  266 F.3d 1155 (9th Cir. 2001) ...........................................................................2

*Herman Family Revocable Trust v. Teddy Bear*,
  254 F.3d 802 (9th Cir.2001).......................................................................16, 17

*Hewitt v. Helms*,
  459 U.S. 460 (1983) ...................................................................................14, 22

*Hoffman v. Constr. Protective Servs., Inc.*,
  2004 WL 5642136 (C.D. Cal. 2004).................................................................20

*Hum v. Dericks*,
   162 F.R.D. 628 (D.Hawaii,1995) ............................................................... 9

*In re Beer Distribution Antitrust Litigation*,
   188 F.R.D. 557 (N.D.Cal.1999) ................................................................. 9

*Int'l Ass'n of Machinists & Aerospace Workers v. Republic Airlines*,
   761 F.2d 1386 (9th Cir.1985) .................................................................. 10

*Johnson v. City of Shelby, Miss.*,
   574 U.S. 10 (2014) ..................................................................................... 11

*Kaupp v. Texas*,
   538 U.S. 626 (2003) ................................................................................... 20

*Kentucky Department of Corrections v. Thompson*,
   490 U.S. 454 (1989) ............................................................................. 13, 14

*Milan Exp., Inc. v. Averitt Exp., Inc.*,
   208 F.3d 975 (11th Cir. 2000) ................................................................. 18

*Miranda v. Arizona*,
   384 U.S. 436 (1966) ................................................................................... 20

*Moeller v. Taco Bell Corp.*,
   220 F.R.D. 604 (N.D. Cal. 2004) ............................................................... 8

*Morris v. SPSSM Inv. 8, LP*,
   2014 WL 12573964 (C.D. Cal. Oct. 14, 2014) ........................................ 17

*Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*,
   246 F.R.D. 621 (C.D. Cal. 2007) ............................................................... 7

*Musson Theatrical, Inc. v. Federal Express Corp.*,
   89 F.3d 1244 (6th Cir.1996) ...................................................................... 16

*Nozzi v. Hous. Auth. of City of Los Angeles*,
   806 F.3d 1178 (9th Cir. 2015) .................................................................. 14

*Olim v. Wakinekona*,
   461 U.S. 238 (1983) ................................................................................... 14

*Republic of the Philippines v. Marcos*,
   862 F.2d 1355 (9th Cir. 1988) .................................................................. 18

*Rodriguez v. McLoughlin*,
   214 F.3d 328 (2d Cir. 2000) ...................................................................... 14

*Sandin v. Conner*,
   515 U.S. 472 (1995) ................................................................................... 14

iv

*Sass v. California Board of Prison Terms*,
  461 F.3d 1123 (9th Cir.2006) ................................................................13

*Savage v. Glendale Union High Sch.*,
  343 F.3d 1036 (9th Cir. 2003) ...............................................................11

*Sax v. World Wide Press, Inc.*,
  809 F.2d 610 (9th Cir.1987) ....................................................................9

*Schilling v. Transcor Am., LLC*,
  2010 WL 583972 (N.D. Cal. Feb. 16, 2010) ...........................................2

*Scott v. Pasadena Unified Sch. Dist.*,
  306 F.3d 646 (9th Cir. 2002) .................................................................16

*Stanley v. St. Paul*,
  773 F. Supp. 2d 926 (D. Idaho 2011) ....................................................13

*Taggart v. Solano County*,
  No. CIV-S-05-0783 DFL GGH, 2005 U.S. Dist. LEXIS 31799
  (E.D. Cal. Dec. 6, 2005) ......................................................................2, 3

*Vess v. Ciba-Geigy Corp. USA*,
  317 F3d 1097 (9th Cir. 2003) ..................................................................8

*Virginia v. Moore*,
  553 U.S. 164 (2008) ..............................................................................12

*Wilkinson* v. Austin,
  545 U.S. 209 (2005) ..............................................................................14

*Wolff v. McDonnell*,
  418 U.S. 539 (1974) .........................................................................14, 15

*Workers v. Gibbs*,
  383 U.S. 715 (1966) .........................................................................16, 21

**CALIFORNIA CASES**:

*Bay Area Rapid Transit Dist. v. Sup. Ct.*,
  38 Cal. App. 4th 141 (Cal. Ct. App. 1995) ..........................................4, 5

*Cho v. Seagate Tech. Holdings, Inc.*,
  177 Cal. App. 4th 734, 99 Cal. Rptr. 3d 436 (2009)................................6

*City of San Jose v. Superior Ct.*,
  12 Cal. 3d 447, 525 P.2d 701 (1974) .......................................................5

*Corbett v. Superior Court*,
   101 Cal.App.4th 649, 125 Cal.Rptr.2d 46 (2002)................................................2, 7

*Estate of Burden*,
   146 Cal.App.4th 1021, 53 Cal.Rptr.3d 390 (2007) ................................................6

*Gutierrez v. Carmax Auto Superstores California*,
   19 Cal. App. 5th 1234, 248 Cal. Rptr. 3d 61 (2018) ............................................6

*Madrid v. Perot Systems Corp.*,
   130 Cal. App. 4th 440 (2005) ................................................................................6

*Marler v. E.M. Johansing, LLC*,
   199 Cal. App. 4th 1450, 132 Cal. Rptr. 3d 691 (2011) ........................................6

*Nat'l Solar Equip. Owners' Assn. v. Grumman Corp.*
   235 Cal.App.3d 1273, 1281 (1991) ......................................................................4

*People v. Mickey*,
   54 Cal. 3d 612, 818 P.2d 84 (1991) ....................................................................19

*People v. Saldana*,
   19 Cal. App. 5th 432, 228 Cal. Rptr. 3d 1 (2018)................................................20

*People v. Terry*,
   240 Cal. App. 2d 681, 50 Cal. Rptr. 120, 240 Cal.App.2d 681 (1966)...............20

*Richmond v. Dart Industries, Inc.*,
   29 Cal.3d 462, 174 Cal.Rptr. 515, 629 P.2d 23 (1981) ........................................5

*Sav-On Drug Stores, Inc. v. Superior Ct.*,
   34 Cal. 4th 319, 96 P.3d 194 (2004) ....................................................................5

*Stone St. Cap., LLC v. California State Lottery Com.*,
   165 Cal. App. 4th 109, 80 Cal. Rptr. 3d 326 (2008) ............................................6

*Vasquez v. Sup.Ct. (Karp)*,
   4 Cal. 3d 800, 94 CR 796 (1971).........................................................................6

**FEDERAL STATUTES**

28 U.S.C. § 1367...............................................................................................10, 13
28 U.S.C. § 1367(a) ..........................................................................................10, 17
28 U.S.C. § 1367(c) ............................................................................................6, 17
28 U.S.C. § 1367(c)(3) ...........................................................................................17

**FEDERAL RULES**

Fed. R. Civ. Proc. 8.................................................................................11

Fed. R. Civ. Proc. 8(a)(2) .....................................................................10

Fed. R. Civ. Proc. 15(a) ........................................................................10

Fed. R. Civ. Proc. 12(B)(1) ..................................................................10

Fed. R. Civ. Proc. 12(f) ...........................................................................7

Fed. R. Civ. Proc. 23..........................................................................8, 9

**STATE STATUTES**

Cal. Code of Civ. Proc. § 382............................................................3, 6

Cal. Penal Code 853.5……………………………………….....13, 20

Cal. Penal Code §853.5(a) ....................................................................12

**TREATISES:**

13B *Federal Practice and Procedure* § 3567.1 (1984 and 1988 Supp.) ...............18

*Federal Civil Procedure Before Trial*, Ch. 1-B §1:5 ................................................8

## I.    INTRODUCTION

Although Defendants filed two separate motions – one to dismiss for lack of federal subject matter jurisdiction (and relatedly for lack of supplemental jurisdiction), and one for judgment on the pleadings on the Infraction Class claims, these motions sufficiently overlap that Plaintiffs address them in a combined Opposition.

Defendants argue that the Infraction Class has no Fourth Amendment claim, and so the Court lacks jurisdiction to hear the Infraction Class's supplemental claims. As we explain, although not expressly identified in the Second Amended Complaint ("SAC"), that complaint asserts not only Fourth Amendment claims, but also viable Due Process claims[1], thus giving rise to federal jurisdiction on the Infraction Class claim independently of its Fourth Amendment claim. Further, Defendants have clutched at straws in arguing that, if the federal Infraction Class claim does not survive, this Court lacks jurisdiction to hear the state law claims asserted by the Infraction Class. Defendants are wrong. This is so because, so long as there is a surviving federal claim, jurisdiction to consider supplemental claims exists. Once that is established, the issue becomes whether the Court should exercise its discretion to hear the supplemental jurisdiction, an exercise of discretion that courts in this District have routinely exercised. Because a meaningful part of the dispute over whether the Court has or should exercise jurisdiction intersects with whether the Bane Act (Civil Code § 52.1) allows for class actions, we begin with that issue.

---

[1] Plaintiffs believe that the complaint makes out a First Amendment claim, but, since more facts should be alleged to flesh out that claim, they intend to seek leave to file a motion to amend the complaint to address that and other issues, as well as to update key evidence produced in recent discovery by Defendants.

1

## II.   PLAINTIFFS HAVE PROPERLY STATED CLAIMS UNDER CIVIL CODE § 52.1.

### A.   *CIVIL CODE § 52.1 LAW DOES NOT BAR TREATMENT OF UNRUH ACT CLAIMS AS CLASS ACTIONS.*

Defendants wrongly argue that §52.1(b) of the Civil Code does not authorize a representative action. The only case directly on point that supports their position, a case on which they heavily rely, is *Taggart ex rel. Perry v. Solano Cnty.*, No. CIV-S-05-0783DFLGGH, 2005 WL 3325752, at *4 (E.D. Cal. Dec. 6, 2005). The *Taggart* case, which has no binding effect on this Court (*see, e.g., Hart v. Massanari*, 266 F.3d 1155, 1174 (9th Cir. 2001)), is wrongly decided for a number of reasons, as subsequent federal courts have emphatically recognized. *Taggart* was the first case to address this issue. Two subsequent federal district court decisions decisively rejected *Taggart. See Craft v. Cnty. of San Bernardino*, No. EDCV 05-359-SGL, 2006 WL 4941829, at *3 (C.D. Cal. Mar. 21, 2006); *Schilling v. Transcor Am., LLC*, No. C 08–941, 2010 WL 583972, at *11 (N.D. Cal. Feb. 16, 2010).

Defendants recognize that *Craft* clearly explained why class actions are available under § 52.1 and rejected *Taggart's* reasoning. Nonetheless, Defendants here, as did the *Taggart* court, contend that what was previously § 52.1(a) and is now § 52.1(b) provides that only "[a]ny individual [whose rights have been violated through coercion, threat or intimidation]… may institute and prosecute in their own name and on their own behalf a civil action for damages", so by its terms allows only individual claims and not representative (class) actions. *Craft* decisively and persuasively rejected this analysis, and so we quote it in full:

> The *Taggart* court, first and foremost, appears to read too much into the fact that subsection (b) uses the term "on his or her own behalf." The subsection's use of that term may more simply be read as a means to distinguish itself from subsection (a), which authorized suits by the state Attorney General for statutory violations. *Cf. Corbett v. Superior Court*, 101 Cal.App.4th 649, 670, 125 Cal.Rptr.2d 46 (2002) (refusing

to read particular section of unfair competition laws as precluding the ability to seek a class action without a "suggestion" in the statutory text). The import of the "distinction" cited to by the *Taggart* court is therefore far from clear, or even that suggestive. Even more damaging to the *Taggart* court's construction of the statute is the fact that subsection (g) makes clear that any of the remedies available under section 52.1 are in addition to "any other action, remedy, or procedure that may be available to an aggrieved individual under any other provision of law." Such "other remedy" includes that provided by California Code of Civil Procedure section 382, the class action statute. Far from suggesting a limitation on a private citizen's ability to bring a class action subsection (b) claim, the "language and structure" of section 52.1 suggest that class actions remain as a viable alternative for individuals pursuing a subsection (b) cause of action. Finally, nowhere in the statute's legislative history is there any suggestion by the state legislature that it intended to limit class action relief for a violation of 52.1(b). Indeed, other than the single decision out of the Eastern District, the defendants have been unable to cite to one federal or state case so limiting 52.1(b). Such silence is all the more remarkable given that the statute has been on the books since 1987. Accordingly, the Court holds that a class action is a viable procedure for private parties litigating a claim under section 52.1(b).

*Craft*, 2006 WL 4941829, at *3.

Defendants argue that *Craft*'s analysis was flawed. They contend that *Craft*'s conclusion that the statute's language that "any individual…may institute" likely was intended to distinguish that clause from the one regarding the ability of the Attorney General (or local prosecutors) to file suit would render the "may institute" language surplusage because the clause begins with "Any individual." Their somewhat incoherent argument is difficult to follow. Saying that "any individual" may institute an action in their own name and on their own behalf – after having separately stated that the Attorney General may do so on behalf of the People of the State of California (a term of art referring to the nomenclature normally used when

3

prosecutorial agencies file a lawsuit) – makes perfect sense when it is contained in a separate clause; it distinguishes the two clauses. Defendants' contention is that the "Any individual" clause did not require the addition of the "own name" and "own behalf" language. But that argument does not defeat the conclusion that the Legislature wanted to make clear the distinction between the two clauses – one being brought by the People, and the other brought by an individual in his or her own name and on his or her own behalf. Making the distinction that individuals file in their own name and on their own behalf makes perfect sense in the context of an action that allows prosecutors to bring an action in the name of the People. The distinction makes clear that, as it relates to individuals, a Bane Act claims falls within the general rule under California law that standing is founded on "the basic notion that a party must be aggrieved in order to sue." *Nat'l Solar Equip. Owners' Assn. v. Grumman Corp.* 235 Cal.App.3d 1273, 1281 (1991). (Similarly, to sue in federal court, the plaintiff must have Article III standing, which requires "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright,* 468 U.S. 737, 751 (1984).)

Defendants' attempt to support their interpretation by relying on the "on their own" language of the Bane Act to hold that the Bane Act is a "*personal* cause of action" that is "limited to plaintiffs who themselves have been the subject of violence or threats." *Bay Area Rapid Transit Dist. v. Sup. Ct.*, 38 Cal. App. 4th 141 (Cal. Ct. App. 1995), and similar cases do not help Defendants on this argument. *Bay Area Rapid Transit* involved claims by the parents of an African-American man killed by white police officers. In that context, the Court rejected that claim because the parents had not themselves been the victim of the unlawful act, and the Court interpreted §52.1's language to limit the claim to such persons who were the direct subjects of the unlawful act. That requirement is satisfied in this action.  The class

definitions here require that each class member was personally subjected to the unlawful acts, so the analysis in *Bay Area Rapid Transit* has no bearing in this case.

Defendants also contend that the use of the word "independent" in former subsection (g) [now subsection (h)] means not "in addition to" (as *Craft* and *Schilling* determined) but rather that "even if any other 'remedy' or 'procedure' did mean a class action, that would have to be a class action for a claim *other than* a Bane Act claim. Otherwise, according to Defendants, "'independent' would not mean 'independent.'" That makes no sense when the whole sentence is read, which includes language that 52.1 is "independent of any other action, remedy, or procedure *that may be available to an aggrieved individual* under any other provision of law." (Emphasis supplied.) The "may be available" language only makes sense in the context that § 52.1 was providing an additional remedy. In short, an injured plaintiff can plead more than one claim for relief and does not have to choose between § 52.1 and another cause of action.

Defendants' construction requires the Court to conclude that the Legislature intended to abrogate class actions for Bane Act claims with no hint of doing so in either the Bane Act's text or legislative history. This would require the extraordinary finding that the Legislature was changing a long established California public policy – predating the Bane Act – of strongly encouraging the use of class actions without even a suggestion that this was the intended effect of enacting the Bane Act. *See, e.g., Richmond v. Dart Industries, Inc.*, 29 Cal.3d 462, 473, 174 Cal.Rptr. 515, 629 P.2d 23 (1981) ("this state has a public policy which encourages the use of the class action device"); *Sav-On Drug Stores, Inc. v. Superior Ct.*, 34 Cal. 4th 319, 340, 96 P.3d 194, 209 (2004) (citing and quoting *Richmond v. Dart*); *City of San Jose v. Superior Ct.,* 12 Cal. 3d 447, 457, 525 P.2d 701 (1974) (California has a "recognized policy favoring" class actions).. This policy is so strong that, "if necessary to preserve the case as a class action, the court itself can and should redefine the class

where the evidence before it shows such a redefined class would be ascertainable.'" *Marler v. E.M. Johansing, LLC*, 199 Cal. App. 4th 1450, 1462, 132 Cal. Rptr. 3d 691, 701 (2011) (quoting *Cho v. Seagate Tech. Holdings, Inc.*, 177 Cal. App. 4th 734, 747-48, 99 Cal. Rptr. 3d 436, 447 (2009).

Section 52.1 was first adopted in 1987, well after *Richmond v. Dart*. "[C]ourts generally presume 'the Legislature is aware of court opinions existing at the time it amends [or logically adopts] legislation.' (*Estate of Burden* (2007) 146 Cal.App.4th 1021, 1030, 53 Cal.Rptr.3d 390.)" *Gutierrez v. Carmax Auto Superstores California*, 19 Cal. App. 5th 1234, 1254, 248 Cal. Rptr. 3d 61, 80 (2018), *as modified on denial of reh'g* (Feb. 22, 2018). Thus, courts "presume that the Legislature, when enacting a statute, was aware of existing related laws and intended to maintain a consistent body of rules." *Stone St. Cap., LLC v. California State Lottery Com.*, 165 Cal. App. 4th 109, 118, 80 Cal. Rptr. 3d 326, 333 (2008). Given California's strong public policy in support of class actions, and the fact that the courts have articulated that policy in interpreting California's class action rules, the presumption must be that the Legislature would not have intended to exclude class actions from the Bane Act without clearly stating so.  The Legislature readily could have done that by stating that an individual may not bring a representative or class action under § 52.1.

Section 52.1 is self-evidently a substantive statute, whereas CCP § 382, California's class action statute, "is a procedural device for collectively litigating substantive claims." *Madrid v. Perot Systems Corp.*, 130 Cal. App. 4th 440, 461 (2005) (explaining that the UCL is a substantive statute and § 382 a procedural one). There is nothing in §382, expressly limiting which underlying violations may be given class treatment. Nor is there any such limitation hinted at in its statutory language. Indeed, the sole criteria for certification under §382 is that the question be "one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court." No limitation

as to the type of action is contained in the statute. Thus, California law has fewer criteria than federal law. Under California law, there are only two requirements for class certification: "The first is existence of an ascertainable class, and the second is a well-defined community of interest in the questions of law and fact involved." *Vasquez v. Sup.Ct. (Karp),* 4 Cal.3d 800, 809, 94 CR 796, 801 (1971).

Nothing in the legislative history of §52.1 indicates an intent by the California legislature to alter the general availability of treatment under §382 and prohibit class treatment. A California appeals court rejected a similar argument in *Corbett v. Superior Court*, 101 Cal. App. 4th 649 668 (2002), where the defendant unsuccessfully argued that the state legislature did not intend to permit class actions based on California's Unfair Competition Law because it did not specifically provide for it. "The UCL is a substantive statute and the class action statute is a procedural device for collectively litigating substantive claims. The statutes complement each other…." *Id*. at 670. This conclusion is strongly reinforced by the Legislature's stated intention that §52.1 actions are "independent of any other action, remedy, or procedure that may be available to an aggrieved individual under any other provision of law." §52.1(h) [previously 52.1(g)].

Further, numerous civil rights class actions that contain Civil Code § 52.1 claims have proceeded without controversy regarding that claim. Just drawing on such cases that one or more of the current class counsel have been involved in, these cases include *Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*, 246 F.R.D. 621, 625 (C.D. Cal. 2007) (protest class action); *Aichele v. City of Los Angeles*, 314 F.R.D. 478 (C.D. Cal. 2013) (protest class action); *Chua v. City of Los Angeles*, 2017 WL 10776036 (C.D. Cal. May 25, 2017) (protest class action); *Amador v. Baca*, No. CV-10-1649 SVW, 2014 WL 10044904, at *1 (C.D. Cal. Dec.

18, 2014) (jail strip search class action); and *Craft, supra*. All certified classes that included § 52.1 claims.[2]

> **B.    FEDERAL, NOT STATE, LAW DETERMINES WHETHER A STATE LAW CLAIM IN FEDERAL COURT SHOULD BE CERTIFIED AS A CLASS ACTION.**

Procedural questions in federal court are decided by federal, not state law, even where the claim itself is based on state law. *Erie Railroad Co. v. Tompkins,* 304 US 64, 78-79 (1938). Issues covered by the Federal Rules of Civil Procedure are procedural:

> "Where the issue involved is *directly covered* by the Federal Rules of Civil Procedure, federal law controls under the Supremacy Clause (Art. VI, cl. 2). It is immaterial that the claim sued upon arises under state law and a different result would have been reached in a state court action. [*Hanna v. Plumer* (1965) 380 US 460 [ ]; *Vess v. Ciba-Geigy Corp. USA* (9th Cir. 2003) 317 F3d 1097, 1102--FRCP apply 'irrespective of the source of subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal']"

California Practice Guide (Rutter), <u>Federal Civil Procedure Before Trial,</u> Ch. 1-B §1:56.

---

[2] There are also many examples where courts have certified class actions under the analogous, parallel "Unruh Civil Rights Act". *See Gibson v. County of Riverside*, 181 F. Supp. 2d 1057, 1062 (C.D. Cal. 2002)(court certified a class of persons challenging age restrictions on occupants of housing units in certain zoned areas, where challenge was based in part on the Unruh Act, *Civil Code §§51-53*); *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 614 (N.D. Cal. 2004)(Rule 23 certification of class of disabled persons with claims under *Civil Code §51* and the Americans With Disabilities Act); *Bates v. United Parcel Service, Inc.*, 204 F.R.D. 440, 449 (N.D. Cal. 2001)(order certifying class of UPS applicants alleging ADA and state anti-discrimination claims); *Berlowitz v. Nob Hill Masonic Management*, 1996 WL 724776 (N.D. Cal. 1996)(order certifying (b)(2) and (b)(3) classes of disabled persons suing under *Civil Code §§51* and 54). None of these statutes contained any more specific authorizations for the maintenance of a class action than does § 52.1.

Federal Rule of Civil Procedure 23 governs class actions in federal court, and therefore whether to certify state law claims as a class action is a question of federal law. *See* Cohelan, <u>California Class Actions</u> §1:2 ("Federal procedure determines…class certification procedure" where state law claim has been filed in or removed to federal court); *Sax v. World Wide Press, Inc.,* 809 F.2d 610, 613 (9th Cir.1987) ("Once state law characterizes the actions as either derivative or direct, the applicable procedural rules are determined by federal law. In federal courts, derivative suits are subject to the procedural requirements of Fed.R.Civ.Pro. 23."); *Hum v. Dericks*, 162 F.R.D. 628, 637 (D.Hawaii,1995) (under *Erie*, Hawaii's requirement that plaintiffs must go through a conciliation process before filing a medical practice lawsuit is procedural; class action permitted to proceed).

Rule 23, by its terms, applies to any case where the criteria for class certification under the rule are met. "To maintain an action as a class action, Plaintiffs must meet the requirements of both Rule 23(a) and 23(b). *See,* Fed.R.Civ.P. 23." *In re Beer Distribution Antitrust Litigation*, 188 F.R.D. 557, 561 (N.D.Cal.,1999)(citing *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir.1992)). Defendants have not contended that plaintiffs do not meet the requirements of Rule 23, nor could they.

**C.    REGARDLESS OF DEFENDANTS CLASS ARGUMENT REGARDING § 52.1, JUDGMENT ON THE PLEADING IS INAPPROPRIATE FOR THE INDIVIDUAL PLAINTIFFS' § 52.1 CLAIMS.**

Even if Defendants were correct regarding their contention that the Bane Act does not allow class claims, the individual Plaintiffs' § 52.1 claims would remain, and so judgment on the pleadings – which would dispose of the whole claim – would not be appropriate.

9

**III.   THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THE SUPPLEMENTAL CLAIMS REGARDLESS OF THE RESOLUTION OF THE DEFENDANTS' MOTIONS.**

**A.   COURTS HAVE SUBJECT MATTER JURISDICTION SO LONG AS THE COMPLAINT ESTABLISHES AN ACTIONABLE CLAIM WHETHER OR NOT THAT CLAIM IS EXPLICITLY ASSERTED IN THE COMPLAINT.**

Defendants argue that Plaintiffs' Complaint did not assert supplemental jurisdiction under 28 U.S.C. § 1367(a). It is somewhat unclear whether they contend that lapse is a basis in and of itself to dismiss the claims. To the extent that they so contend, they are wrong on two counts. First, especially since there was no scheduling order in place limiting the time to amend the complaint, the Rule 15 liberal standard for amendment applies. Under Rule 15(a), leave to amend a complaint after a responsive pleading has been filed may be allowed by leave of the court and " 'shall freely be given when justice so requires.' " *Foman v. Davis,* 371 U.S. 178, 182 (1962) (quoting Fed.R.Civ.P. 15(a)). Granting leave to amend rests in the sound discretion of the trial court. *Int'l Ass'n of Machinists & Aerospace Workers v. Republic Airlines,* 761 F.2d 1386, 1390 (9th Cir.1985). This discretion must be guided by the strong federal policy favoring the disposition of cases on the merits and permitting amendments with "extreme liberality." *DCD Programs, Ltd. v. Leighton,* 833 F.2d 183, 186 (9th Cir.1987) (citation and internal quotation marks omitted). Plaintiffs intend to seek leave to file a motion to amend the complaint, which expressly asserts supplemental jurisdiction (and Due Process and First Amendment claims for the Infraction Class, as well as other amendments).

Second, so long as the facts alleged in the complaint establish a claim over which the Court has jurisdiction, it does not matter whether the statutory basis for jurisdiction, the name of the claim or the correct legal theory was identified in the complaint. To properly invoke a federal court's subject-matter jurisdiction, the plaintiff must allege in the pleadings the factual basis for the Court's jurisdiction. See, e.g., *Bautista v. Pan Am. World Airlines*, 828 F.2d 546, 552 (9th Cir. 1987)

("[t]he essential elements of diversity jurisdiction, including the diverse residence of all parties ...." must be alleged); *Doyle's Carolina 7, LLC v. Thurber*, No. CIV. 08-1507-AC, 2011 WL 1637416, at *2 (D. Or. Mar. 7, 2011), *report and recommendation adopted in part sub nom. Doyle's Caroline 7, LLC v. Thurber*, No. CV 08-1507-AC, 2011 WL 1630332 (D. Or. Apr. 29, 2011) (The court will grant defendant's FRCP 12(b)(1) motion to dismiss *if the complaint fails to allege facts* sufficient to establish subject matter jurisdiction. *Savage v. Glendale Union High Sch.,* 343 F.3d 1036, 1039 n. 2 (9th Cir.2003).") (emphasis supplied).

As the Supreme Court explained in *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (allowing § 1983 claim despite failure to allege § 1983), "Federal pleading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. Rule Civ. Proc. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted....[¶] Petitioners stated simply, concisely, and directly events that, they alleged, entitled them to damages from the city. Having informed the city of the factual basis for their complaint, they were required to do no more."

Accordingly, "[t]he pleadings need only identify the basis of the court's jurisdiction, demand for judgment for the relief sought, and contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8. The pleadings need not identify any particular legal theory under which recovery is sought." *Crull v. GEM Ins. Co.*, 58 F.3d 1386, 1391 (9th Cir. 1995).

And, as the Court explained in *Elec. Const. & Maint. Co., Inc. v. Maeda Pac. Corp.*, 764 F.2d 619, 622-23 (9th Cir. 1985):

" 'It has long been established law that, in equity, a plaintiff is entitled to any relief appropriate to the facts alleged in the bill and supported by the evidence, even where he has not prayed for such relief." *Dann v. Studebaker-Packard Corporation,* 288 F.2d 201, 216 (6th

Cir.1961) (citing \*623 *Bemis Bros. Bag Co. v. United States,* 289 U.S. 28, 34 [ ] (1933)). As Wright & Miller state:

" 'The complaint should not be dismissed merely because plaintiff's allegations do not support the legal theory he intends to proceed on, since the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory....' "

*See also Desertrain v. City of Los Angeles*, 754 F.3d 1147 (9th Cir. 2014) (Where plaintiffs fail to raise claim properly in their pleadings, if they raised it in their motion for summary judgment, they should be allowed to incorporate it by amendment); *Alvarez v. Hill*, 518 F.3d 1152, 1159 (9th Cir. 2008) ("it is sufficient that the complaint, alone or supplemented by any subsequent filings before summary judgment, provide the defendant fair notice that the plaintiff is claiming relief under RLUIPA as well as the First Amendment").

As a precautionary measure, Plaintiffs can address these issues in a Third Amended Complaint that specifically alleges supplemental jurisdiction along with other issues. As previously noted, Plaintiffs will seek leave of the Court to file an amended complaint.

**B.      EVEN IF THE FOURTH AMENDMENT CLAIM DOES NOT COLORABLY ESTABLISH FEDERAL JURISDICTION, THERE ARE DUE PROCESS CLAIMS FOR THE INFRACTION CLASS THAT THE FACTS ALLEGED GIVE RISE TO.**

The Defendants contend that, if the Fourth Amendment Claim for the Infraction Class fails, then the supplemental claims for the Infraction Class necessarily fail. While, after full review, Plaintiffs agree that, under *Virginia v. Moore*, 553 U.S. 164, 171-76, 178 (2008), the Infraction Class does not assert a viable Fourth Amendment claim, Defendants' contention is nonetheless wrong. The Infraction Class alleged facts giving rise to other theories of § 1983 liability than the Fourth Amendment (particularly Due Process). For the same reasons explained in the immediately preceding section III(B)(1) regarding the fact that supplemental jurisdiction is established where the complaint alleged the factual basis for it, the

12

same is even more true, and the same case law more explicit, where the complaint alleged the factual basis for legal theories not expressly alleged. It is the facts alleged that give rise to the Court's jurisdiction, not whether the correct legal theory was identified in the complaint. (Defendants' other contention that supplemental jurisdiction is lacking as unrelated if the Fourth Amendment claim is dismissed is addressed in the next Section III(C). First, we explain why the facts alleged establish Due Process claims.

### 1. CAL. CIVIL CODE § 853.5 CREATES A LIBERTY INTEREST IN NOT BEING ARRESTED ON AN INFRACTION, ESTABLISHING A DUE PROCESS VIOLATION FOR SUCH ARRESTS.

The facts alleged in the SAC clearly state that Cal. Penal Code §853.5(a) prohibits California arrests for infractions so long as the person produces identification and signs a promise to appear, and that Infraction Class members were arrested in violation of this law. That ordinance imposes a mandatory duty and creates a liberty interest in not being arrested, given its language, that, "[i]n all cases, except …[inapplicable vehicle codes], in which a person is arrested for an infraction, a peace officer *shall* only require the arrestee to present his or her driver's license or other satisfactory evidence of his or her identity for examination and to sign a written promise to appear.") (emphasis supplied). "If a state statute governing parole uses mandatory language like 'shall' to "create a presumption that parole release will be granted," then an inmate has a state-created liberty interest in parole and may bring a procedural due process challenge to a parole decision. *Sass v. California Board of Prison Terms,* 461 F.3d 1123, 1127 (9th Cir.2006)." *Stanley v. St. Paul*, 773 F. Supp. 2d 926, 928–29 (D. Idaho 2011). § 853.3 creates a liberty interest for those charged with infractions in not being arrested and taken into custody on the infraction. Nonetheless, hundreds of protestors were so arrested, which in turn gives rise to a procedural due process claim by Infraction Class members.

A liberty interest may arise from either of " 'two sources—the Due Process Clause itself [or] the laws of the States.' " *Kentucky Department of Corrections v.*

*Thompson,* 490 U.S. 454, 460 (1989) (quoting *Hewitt v. Helms,* 459 U.S. 460, 466 (1983). A liberty interest "may arise from an expectation or interest created by state laws or policies, *see, e.g., Wolff v. McDonnell*, 418 U.S. 539, 556-558 (1974) (liberty interest in avoiding withdrawal of state-created system of good-time credits)." *Wilkinson* v. Austin, 545 U.S. 209, 221 (2005). "[A] State creates a protected liberty interest by placing substantive limitations on official discretion." *Kentucky Department of Corrections v. Thompson,* 490 U.S. at 462 (quoting *Olim v. Wakinekona,* 461 U.S. 238, 249 (1983)). "[T]he most common manner in which a State creates a liberty interest is by establishing 'substantive predicates' to govern official decisionmaking ... and, further, by mandating the outcome to be reached upon a finding that the relevant criteria have been met." *Kentucky Department of Corrections v. Thompson,* 490 U.S. at 462 (quoting *Hewitt v. Helms,* 459 U.S. at 472 ("specified substantive predicates")). To create a liberty interest, a statute or regulation must "contain 'explicitly mandatory language,' *i.e.,* specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow." *Kentucky Department of Corrections v. Thompson,* 490 U.S. at 463 (quoting *Hewitt v. Helms,* 459 U.S. at 472 [ ])." *Cf. Nozzi v. Hous. Auth. of City of Los Angeles*, 806 F.3d 1178 (9th Cir. 2015), *as amended on denial of reh'g and reh'g en banc* (Jan. 29, 2016) (Housing Authority violated class plaintiffs due process rights where it decreased the amount of their Section 8 benefits and therefore increased the amount they had to pay in rent, without providing the adequate notice one year in advance required by HUD regulations, in which plaintiffs had a protected property interest subject to due process protections).

In *Sandin v. Conner,* 515 U.S. 472 (1995), the Supreme Court altered the liberty interest analysis in the prison context so that a mandatory duty would not necessarily mean that a liberty interest has been created. The Second Circuit has explained that *Sandin* did not alter the application of *Kentucky Department of Corrections, Olim,* and *Hewitt* outside of the prison context. *See Rodriguez v.*

*McLoughlin*, 214 F.3d 328, 338 (2d Cir. 2000). The Ninth Circuit reached the same conclusion and held that, under both pre and post *Sandin* law, a California statute created a liberty interest in a lesser constraint on liberty imposed on a pretrial arrestee than exists here in *Carlo v. City of Chino*, 105 F.3d 493, 498-500 (9th Cir. 1997).

In *Carlo*, a California statute made it mandatory to provide free phone calls to an arrestee, thereby creating a liberty interest in being provided the call. The Court found that such a deprivation of a state created liberty interest was covered by *Sandin*. The Court first noted that "the *Sandin* test appears to apply specifically to prisoners who have been convicted," and that a "majority of the courts that have addressed this question have held that *Sandin* does not govern the assessment of state-created liberty interests for pretrial detainees." *Id*. at 498-499. But, even if *Sandin* applied, the Court ultimately concluded that both under pre-*Sandin* case law and under *Sandin*, Carlo's procedural due process rights were violated. It noted that arrestees have at least the same rights as pretrial detainees, and found that holding an arrestee incommunicado was a restraint atypical of post-arrest detention, and imposed an atypical hardship, thus qualifying under the *Sandin* test. Thus,

> "the right granted by the California statute is one of 'real substance' and merits constitutional due process protections. *Wolff,* 418 U.S. [599] at 557 [(1974)] (state-created right of 'real substance' entitled to due process protections). We hold that by violating the California statute Guerra violated Carlo's constitutional rights" *Id*. at 500.

The same must be even more the case here, where the person was arrested and taken into custody for hours, with its attendant constraints on freedom, since it was mandatory under law and Defendants' own directive that s/he be merely cited and never taken into custody at all.

/ / /

/ / /

/ / /

**C.   SUPPLEMENTAL JURISDICTION FOR THE STATE LAW INFRACTION CLAIMS EXISTS REGARDLESS OF WHETHER THE COURT FINDS A FEDERAL INFRACTION CLASS CLAIM BECAUSE THOSE STATE LAW CLAIMS ARISE FROM A COMMON NUCLEUS OF OPERATIVE FACT**

Even if the Court were to conclude that the Infraction Class has no federal claim, supplemental jurisdiction exists based on the fact that the "federal-law claims and state-law claims in the case "derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'" *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 348–52 (1988) (quoting *Workers v. Gibbs,* 383 U.S. 715, 725 (1966).

Defendants appear to believe that, if this Court were to dismiss the Infraction Class's federal claims, then it necessarily follows that there is no supplemental jurisdiction because "without a colorable claim over which a district court has subject matter jurisdiction, the district court cannot exercise supplemental jurisdiction over state law claims," Doc. 179-1, pg. 7 (citing *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 664 (9th Cir. 2002). But the *Scott* case itself directly contradicts this assertion, In *Scott*, the Ninth Circuit found that it lacked jurisdiction over the single federal claim because Scott lacked Article III standing. Its citations make clear that this proposition only applies where the federal court lacked subject matter over the whole action and all the federal claims in it.

*Scott* cited *Herman Family Revocable Trust v. Teddy Bear,* 254 F.3d 802, 806 (9th Cir.2001) ("*Herman*") for the proposition that, "If the district court dismisses *all federal claims* on the merits, it has discretion under § 1367(c) to adjudicate the remaining claims; if the court dismisses for lack of subject matter jurisdiction, it has no discretion and must dismiss all claims." (Emphasis supplied). *Scott* similarly cited *Musson Theatrical, Inc. v. Federal Express Corp.,* 89 F.3d 1244, 1255 (6th Cir.1996) for the proposition "that, after dismissal of plaintiff's federal *claims* for failure to state a claim under Rule 12(b)(1), '[e]xercise of jurisdiction ... would[ ] violate Article III of the Constitution, because the original federal claim would not

16

have 'substance sufficient to confer subject matter jurisdiction upon the court' "
(Emphasis supplied.) This only applies where the whole action was dismissed for
lack of subject matter jurisdiction.

Other Ninth Circuit cases spell this out clearly. See, e.g., *Morris v. SPSSM
Inv. 8, LP,* 2014 WL 12573964, at *4 (C.D. Cal. Oct. 14, 2014)
("Supplemental jurisdiction may be exercised only when the district court has
original jurisdiction *over the action. Herman Family Revocable Trust v. Teddy Bear*,
254 F.3d 802, 805 (9th Cir. 2001) (['28 U.S.C. § 1367(a)'s] plain language makes
clear that supplemental jurisdiction may only be invoked when the district court has
a hook of original jurisdiction on which to hang it')") (emphasis supplied). *See* 28
U.S.C. § 1367(c)(3) (court may decline to exercise supplemental jurisdiction if it
"has dismissed *all claims* over which it has original jurisdiction") (emphasis
supplied),

Thus, it is clear that one of two conditions deprive the Court of authority to
exercise supplemental jurisdiction – either there is no federal subject matter
jurisdiction over *all* the federal claims, or *all* the federal claims are so insubstantial
that they do not confer federal jurisdiction. Engaging in fairly transparent
legerdemain, Defendants blur the distinction between whether this Court has
jurisdiction over the Infraction Class claim and whether it has jurisdiction over any
of the federal claims. Only the latter deprives the Court of jurisdiction, and
Defendants do not even make a pretense of claiming that the Court lacks subject
matter jurisdiction over the Arrest or Force classes.

Once that threshold is met, the Court may exercise jurisdiction over
supplemental claims (even, as *Scott* and *Herman, supra*, explain, if all federal claims
are dismissed), the test of which is whether the supplemental claims "derive from a
common nucleus of operative fact" from the claims in the case and are "such that [a
plaintiff] would ordinarily be expected to try them all in one judicial
proceeding.'" *Carnegie-Mellon Univ., supra.* "The exercise of the power is

discretionary but ordinarily the power if it exists is exercised; *only exceptionally is the power not employed*. *See* C. Wright, A. Miller & E. Cooper 13B *Federal Practice and Procedure* § 3567.1 (1984 and 1988 Supp.)." *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1359 (9th Cir. 1988) (upholding district court's exercise of pendent jurisdiction) (emphasis supplied).

Here, there is little question that it is appropriate for the Court to exercise its discretion to hear the supplemental claims. All the federal and state claims arise out of the same set of underlying events; the Infraction Class members are, by definition, all also members of the Arrest Class; the proof that would be presented if the Infraction Class and the Arrest Class were separated would substantially overlap since the evidence of the events giving rise to the arrests and the evidence of what happened to arrestees after the arrest is relevant to both class's claims (because the bus conditions that form the basis of the Arrest Class claim are at minimum evidence of the damages suffered as a result of the false arrest of the Infraction Class members). Literally, the only difference in the evidence between the two class is that Infraction Class members were charged only with a misdemeanor, proof of which would require minimal trial time. "The fact that more proof will be required is not necessarily enough to remove a claim from the scope of the court's ancillary jurisdiction." *Milan Exp., Inc. v. Averitt Exp., Inc.*, 208 F.3d 975 (11th Cir. 2000).

As is explained in 13D Fed. Prac. & Proc. Juris. § 3567.1 (3d ed.) [Wright & Miller], "Grant of Supplemental Jurisdiction in 28 U.S.C.A. § 1367(a)"), "*In practice, § 1367(a) requires only that the jurisdiction-invoking claim and the supplemental claim have some loose factual connection*. This standard is broad and fact-specific, and should be applied with a pragmatic appreciation of the efficiency promoted by supplemental jurisdiction." (Emphasis supplied.)

Wright & Miller references "one frequently cited case", *Ammerman v. Sween*, 54 F.3d 423, 424 (7th Cir. 1995) (citing text). In that case, the plaintiff asserted a Title VII employment discrimination claim against the employer and a co-worker,

1  and joined state-law claims for battery against the co-worker, arising from an alleged
2  sexual attack. Although it would not be necessary for the plaintiff to show the sexual
3  attack to prevail in the Title VII claim, the court concluded that the claims arose
4  from a common nucleus of operative fact. *See also, e.g., Cicio v. Does*, 321 F.3d 83,
5  97 (2d Cir. 2003) (Plaintiff's state-law claim for malpractice against medical director
6  of plan administrator arose from common nucleus of operative fact with her federal
7  claim concerning denial of pre-authorization of medical procedure for ERISA plan
8  participant, and therefore invoked supplemental jurisdiction); *Colorado Department*
9  *of Public Health and Environment, Hazardous Materials and Waste Management*
10 *Division v. United States*, 2021 WL 3286589 at *2 (D. Colo. 2021) ("although the
11 environmental laws at issue are different, e.g., one is under state law while the other
12 is under federal law, and the two alleged non-compliances are of different matters,
13 they nonetheless have more than a loose factual connection to each other. After all,
14 this case is about the Facility and Defendants' alleged failure to comply with
15 environmental laws which govern how matters related to that Facility are allegedly
16 required to be handled to protect human health and the environment").

17      Defendants contend that all the bases to decline supplemental jurisdiction are
18 present, but provide flimsy support for that contention. First, they argue that the
19 Infraction Class state law claims are premised on violation of state criminal
20 procedure law that has been subject to limited interpretation, and assert that there is
21 a question about whether transporting someone to a different location to be
22 transported is an arrest.[3] But it is undeniably established that the term "custodial"
23 applies when "a person has been taken into custody or otherwise deprived of his
24 freedom of action in any significant way." *People v. Mickey*, 54 Cal. 3d 612, 648,

25
26 _____

27 [3] They also raise it is a novel issue whether someone initially arrested as a
   misdemeanor but ultimately charged only with an infraction violates PC § 835.5. As
28 was explained at the class certification hearing, Plaintiffs have limited the Infraction
   Class to those initially charged with an infraction.

818 P.2d 84, 98 (1991) (quoting *Miranda v. Arizona,* 384 U.S. 436, 444 (1966). "The *Miranda* test for custody asks whether 'a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave. *People v. Saldana*, 19 Cal. App. 5th 432, 457–58, 228 Cal. Rptr. 3d 1, 18 (2018) (internal quotation marks and citations omitted). An "involuntary transport to a police station for questioning is sufficiently like arres[t] to invoke the traditional rule that arrests may constitutionally be made only on probable cause." *Kaupp v. Texas*, 538 U.S. 626, 630 (2003) (internal quotation marks and citations omitted). *See also, e.g., People v. Terry*, 240 Cal. App. 2d 681, 50 Cal. Rptr. 120 (Ct. App. 1966)*,* 50 Cal.Rptr. 120, 240 Cal.App.2d 681 (App. 2 Dist. 1966) (Defendant who had been physically restrained with handcuffs, interrogated for a substantial period of time, and transported from scene of detention to site where crime was committed at time of interrogation in question was under "arrest"). And the Ninth Circuit, in *Edgerly v. City & Cnty. of San Francisco*, 713 F.3d 976 (9th Cir. 2013), relied on clear California authority to conclude that "Penal Code § 853.5 provides the exclusive grounds for custodial arrest of a person arrested for an infraction." *Id*. at 985. It did not find interpreting § 853.5 at all difficult.[4] Here, there is no meaningful debate that holding a person involuntarily on a bus for hours without access to food, water and bathrooms was an arrest, nor are the established tools to analyze that question absent from the case law.

---

[4] Defendants also cite *Hoffman v. Constr. Protective Servs., Inc.*, No. EDCV 03-01006-VAP, 2004 WL 5642136, at *7 (C.D. Cal. July 13, 2004) for the proposition that "[M]ost of the district courts that have considered this or an analogous issue have declined to certify a state-law-only class action." The "this...issue" that the Court was referencing was maintaining a small FLSA class opt-in action with a larger and more complex state law labor code opt out class action. That analysis has no relevance here, where the federal claims clearly predominate and overlap with the case as a whole and the state law claims.

1    Next, Defendants argue that whether the Bane Act permits class actions is a
2    novel and complex issue of state law such that the Court should decline jurisdiction.
3    But the federal courts have been addressing the issue without declining to exercise
4    supplemental jurisdiction for nearly twenty years without difficulty, as the *Craft* and
5    *Schilling* (and even *Taggart*) cases above evidence (as do also the numerous other
6    federal civil rights cases certifying classes with supplemental Bane Act claims cited
7    at pg. 7). Notably, Defendants have pointed to no case in which any California court
8    has found that any individual claim under California law is not subject to class
9    treatment if it otherwise meets the standards of CCP § 382. If this issue proves itself
10   central to the ultimate resolution of the case (which it should not since Defendants
11   do not even challenge the permissibility of a state law false arrest class action), and
12   the matter goes to the Ninth Circuit, the Circuit has the ability to certify the question
13   to the California Supreme Court if it believes that the federal courts should not
14   decide the issue. See Cal. Rules of Court, Rule 8.548 (authorizing federal courts of
15   appeals to request that the California Supreme Court decide potentially outcome
16   determinative questions where there is no controlling precedent).

17   Finally, Defendants' assertion of judicial economy stands the issue on its head
18   by arguing that dismissing the Infraction Class would save trial time in this case. We
19   have already explained that, to the extent that is true, it would save only limited time.
20   However, that would require a second, state court to consider much of the same
21   evidence in the remanded case, exactly the opposite of the judicial economy that
22   *Gibbs* was concerned with. *See Gibbs,* 383 U.S. at 724 ("the weighty policies
23   of judicial economy and fairness to parties reflected in res judicata doctrine were in
24   themselves strong counsel for the adoption of a rule which would permit
25   federal courts to dispose of the state as well as the federal claims [together]").

26
27
28

**IV.    DEFENDANT MOORE DOES NOT HAVE QUALIFIED IMMUNITY FOR VIOLATIONS OF THE INFRACTION CLASS'S RIGHTS.**

In *Carlo v. City of Chino*, 105 F.3d 493, 501 (9th Cir. 1997), discussed *supra* at III(B)(1), the Ninth Circuit concluded that the officers involved were not entitled to qualified immunity because the law under *Hewitt v. Helms* and *Thompson* was clearly established, and because the "statute at issue drastically limits an officer's discretion …[and] requires that an arrestee be permitted to make three telephone calls," using "mandatory language." The "statute uses mandatory language to bind an officer's discretion regarding whether to permit an arrestee to use a telephone. Under *Helms,* it was clearly established that the California statute created a liberty interest." *Carlo v. City of Chino*, 105 F.3d 493, 502 (9th Cir. 1997). *See also, e.g., Golden v. Cnty. of Tulare*, No. 1:09-CV-00263, 2011 WL 1087097, at *3 (E.D. Cal. Mar. 23, 2011) (denying qualified immunity where Plaintiff was denied "a confidential telephone call to his attorney, a mandatory entitlement under [Penal Code] section 851.5", citing *Carlo*). Although the statute here is different, its language is similarly unequivocal that infraction custodial arrests are only permissible if the person does not produce identification and sign a promise to appear. The law after *Carlo* is even more clear, "[g]iven the clarity of the statute and the law defining liberty interests" as well as the *Carlo* decision itself.

**V.    CONCLUSION**

For the reasons stated above and previously, the motions should be denied.

DATED: December 12, 2022          McLANE, BEDNARSKI & LITT, LLP
                                  LAW OFFICES OF CAROL SOBEL
                                  SCHONBRUN, SEPLOW, ET AL.


                                  By: */s/ Barrett S. Litt*
                                      BARRETT S. LITT
                                  Attorneys for Plaintiffs