UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLACK LIVES MATTER LOS ANGELES ET AL,<br><br>  Plaintiff,<br><br>v.<br><br>CITY OF LOS ANGELES ET AL,<br><br>  Defendants. | Case No.:  2:20-cv-05027-CBM-AS<br><br>**ORDER RE: PLAINTIFFS' MOTION FOR CONTEMPT AGAINST CITY OF LOS ANGELES** |

The matter before the Court is Plaintiffs Black Lives Matter Los Angeles' Motion for Contempt against Defendant City of Los Angeles. (Dkt. No. 238.) The matter is fully briefed. (Dkt. Nos. 243, 244.)

## I. BACKGROUND

This putative class action arises out of protests and demonstrations which occurred throughout Los Angeles in late May and early June of 2020 in response to the murder of George Floyd. On October 3, 2022, the Court issued an Order certifying the class seeking injunctive relief under Rule 23(b)(2) and three classes (Direct Force, Infraction, and Arrest Classes) seeking damages under Rule 23(b)(3) and 23(c)(4). (Dkt. No. 174.) On July 14, 2025, Plaintiffs were granted leave to file a Fourth Amended Complaint (the "FAC"). (Dkt. Nos. 233, 237.) In

the FAC, the three certified Force, Infraction, and Arrest Classes, along with the organizational Plaintiffs, Black Lives Matter Los Angeles ("BLMLA") and CANGRESS, allege causes of action under (1) 42 U.S.C. § 1983 for violations of the First, Fourth and Fourteenth Amendments; Cal. Const. art. 1 §§ 2, 3, 7, 13, 19; Cal. Code §52.1; Penal Code § 853.5; Govt Code § 815; and common law claims of assault, battery, false arrest and false imprisonment against Defendants LAPD and Chief Jim McDonnell, in his official capacity. (Dkt. No. 233.)

On May 10, 2021, the Court granted Plaintiffs' Request for Preliminary Injunction ordering that:

(1) LAPD be restricted from the use of 40mm and 37mm launchers in public demonstrations except by officers who successfully completed LAPD training and met all annual qualification requirements on the weapons;

(2) an officer may use 40mm less-lethal munitions only when the officer reasonably believes that a suspect is violently resisting arrest or poses an immediate threat of violence of physical harm, and that the use of 40mm less-lethal munitions should be preceded by a warning, if feasible, consistent with Use of Force Warning set forth in LAPF Use of Force Tactics Directive No. 17;

(3) an officer may use 37mm less-lethal munitions as a crowd control tool only with the prior approval of the incident commander and only when a dispersal order has been issued, unless immediate action is necessary to stop violence, to ensure public safety and restore order. A warning to disperse must be given, consistent with all the dispersal order requirements set forth in LAPD Use of Force Tactics Director No. 11.1, and then the officer may fire the 37mm at the ground 5 to 10 feet in front the crowd. The 37mm may not be used a target specific munition unless absolutely necessary to prevent imminent serious bodily injury to the officer or others;

(4) The 40mm launcher must not be used to target the head, neck, face, eyes, kidneys, chest, groin or spine of a person; and

(5) the 40mm and 37mm launchers should only be fired at a distance of five feet or greater from another person, unless an officer or other person is attacked and there is a threat of imminent serious harm. (Dkt. No. 102 ("the Preliminary Injunction Order").)

On August 5, 2025, Plaintiffs filed the instant Motion seeking an order of civil contempt and sanctions based on the alleged violation of the Court's Preliminary Injunction when LAPD skirmish lines moved towards protestors and fired Kinetic Impact Projectiles ("KIPs") as direct impact weapons at entire groups of protestors during the recent protests arising from the United States Department of Homeland Security's ("DHS") immigration enforcement raids in Los Angeles during the summer of 2025. (Mot. at 4-8.). The scope of the Fourth Amended Complaint is limited to the original Plaintiffs in this action and does not extend to protestors from the recent DHS demonstrations; however, Plaintiffs bring the instant Motion, discussing those protests, as an example of Defendants' violation of the Court's Preliminary Injunction.

## II.   STATEMENT OF THE LAW

"Civil contempt . . . consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F. 3d 693, 695 (9th Cir. 1993). "The contempt need not be willful, and there is no good faith exception to the requirement of obedience to a court order, . . . [b]ut a person should not be held in contempt if his action appears to be based on a good faith and unreasonable interpretation of the [court's order]." *Id.* (internal quotations and citations omitted). "Sanctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both." *General Signal Corp. v. Conallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986).

//

### III. DISCUSSION

Plaintiffs' Motion seeks issuance of an order of contempt against the Defendants based on LAPD's conduct towards protestors and members of the press from the following evidence:

- LAPD Officer Orozco (identified in a New York Times video report) shot Atlachinolli Tezcacoatl twice while he had his hands up and was filming police with his phone. Tezcacoatl Decl. at ¶¶ 2-3. Officer Orozco then shot Mr. Tezcacoatl in the face, requiring surgery to repair his jaw. *Id.* ¶¶ 6-7.
- LAPD Officer shot Kelsey McMurtry while crouched behind a folding chair by a 40mm less-lethal weapon. Ex. 169. She was then struck by another officer with a 40mm LLM while on the ground, and then shot a third time in in the back. Mot. at 5. Plaintiffs allege mounted officers then trampled her as they advanced against the protestors. *Id.*
- LAPD officers shot Kathryn Luksus in the head while she was sitting down and holding a sign. Luksus Decl. ¶¶ 8-10.
- LAPD officers shot Jason Reedy in the groin with a 40mm KIP while he was on the sidewalk with his hand sup in the air. Ex. 170; Mot. at 6.
- In response to the shooting of Mr. Reedy, Shakeer Rahman, counsel of record, asked the officer for his name and serial number pursuant to Cal. Penal Code § 830.10. *Id.* The officer then shot Mr. Rahman twice in the groin for "taking [the officer's] focus." *Id.*; Ex. 171.
- LAPD shot Chad Ashby in the back of the head with a KIP while Mr. Ashby was trying to leave the protest. Ashby Decl. ¶¶ 1,3,6.
- While treating bloody wounds of protestors, LAPD officers shot registered nurse Christopher Fernandez with a 40mm LLM, while he was wearing a white cross on his clothing to indicant medical treatment. Fernandez Decl. ¶¶ 2-6.
- Without warning of intention to shoot with a less lethal weapon, LAPD shot

4

Jack Kearns in the back of his head with a 40mm. Ex. 172-173.

"If a violating party has taken all reasonable steps to comply with the court order, technical or inadvertent violations of the order will not support a finding of civil contempt.") *General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1379 (9th Cir. 1986). "A contemnor in violation of a court order may avoid a finding of civil contempt only by showing it took all reasonable steps to comply with the order." *Kelly v. Wengler*, 822 F.3d 1085, 1096 (9th Cir. 2016). Here, Plaintiffs argue that Defendants directly violated the Court's Preliminary Injunction by "repeatedly [shooting] individuals in the face, eye, groin and back" with 40mm weapons. (Mot at 10.) Because the Circuit has held that the 40mm munition is not intended to disperse crowds, but "is chiefly designed, intended, and used for the purpose of incapacitating its target," *Sanderlin v. Dwyer*, 116 F.4th 905, 912 (9th Cir. 2024), Plaintiffs argue these instances are not "technical or inadvertent" so as to allow Defendants to avoid liability. (*Id.*)

However, Defendants have not demonstrated substantial compliance or that all reasonable steps have been taken to be in compliance with the Court's Preliminary Injunction Order. (*See* Dkt. No. 243 at 4-7; Quiroz Decl. ¶ 4) (e.g., Crown management/Crowd Control management training, Crowd Management and Control for Patrol training, requiring officers to undergo 24 hours of perishable skills training every two years which includes use of force, LAPD disseminated the content of the TRO to all personnel, and a notice to all personal after the modified TRO was issued on April 28, 2021, LAPD issued nine directives and policy updates regarding the use of 37mm and 40mm LLMs between September 2021 and May 2025). Defendants do not argue that the exceptions to the Preliminary Injunction Order apply here (e.g., if a protestor is violently resisting arrest, poses an immediate threat of violence or physical harm, an officer or other person is attacked, etc.) *See Don't Shoot Portland v. City of Portland*, 503 F.Supp.3d 1022, 1034 (D. Or. 2020) (granting motion for contempt

5

based on failure to comply with court order prohibiting use of munitions except in response to active aggression).

Accordingly, the Court finds Defendants in contempt of the Preliminary Injunction Order and **GRANTS** Plaintiffs' Motion.

A. **Sanctions Against Defendants**

To prevent the City from continuing to violate the Court's Preliminary Injunction Order, Plaintiffs request that the Court: (1) appoint a Special Master at the City's expense to conduct an independent investigation into the LAPD's violation of the Court's Preliminary Injunction Order; (2) ban LAPD's use of 40mm KIPS for crowd control; and (3) award Plaintiffs reasonable attorney's fees for brining and prosecuting contempt proceedings. (Mot. at 13-15.) Defendants oppose all three requests and argue that the sanctions are "inappropriately punitive and lack the coercive or compensatory characteristic required for civil contempt sanctions." (Dkt. No. 243 at 7.)

"Courts have statutory authority to punish both civil and criminal contempt pursuant to 18 US.C.S. § 401." *Inst. Of Cetacean Research v. Sea Shepherd Conversation Soc'y*, 774 F.3d 935, 955 (9th Cir. 2014). After a finding of contempt, a court may issue sanctions for two purposes: "to compel or coerce obedience to a court order" and "to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance[.]" *O'Connor v. Midwest Pipe Fabrications, Inc.*, 972 F.2d 1204, 1211 (10th Cir. 1992).

i. **Special Master**

Under Federal Rule of Civil Procedure 53(a)(1)(C), the Court may appoint a special master to "address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." Fed. R. Civ. P. 53(a)(1)(C). "It is within a district court's discretion to appoint a master, and to decide the extent of the duties of a special master." *In re Hanford Nuclear Reservation Litig.*, 292 F.3d 1124, 1138 (9th Cir. 2002). The

1  Ninth Circuit has determined that noncompliance with a court order is an
2  "exceptional condition" that justifies appointment of a special master. *See Nat'l*
3  *Org. For the Reform of Marijuana Laws v. Mullen (NORML)*, 828 F.2d 536, 542
4  (9th Cir. 1987); *U.S. v. Suquamish Indian Tribe*, 901 F.2d 772, 775 ("Masters may
5  also be appointed because of . . . problems associated with compliance with the
6  district court order.").

  Plaintiffs request the appointment of a Special Master to conduct an independent investigation into the LAPD's violation of the preliminary injunction and compile a report and recommendations for further actions to make this Court's Preliminary Injunction Order more effective. (Mot. at 13.) Defendants oppose the appointment of a Special Master at the City's expense on the grounds that it would not compensate Plaintiffs for any harm alleged, nor would it coerce compliance with the Court's Preliminary Injunction. (Dkt. No. 243 at 9.) While other courts in the Ninth Circuit have appointed Special Masters in such circumstances, *see e.g. Krizia Berg, et al. v. County of Los Angeles, et al.*, 2025 WL 2995075, at *10 (C.D. Cal Oct. 3, 2025). Plaintiffs have already provided evidence of the violation of the Preliminary Injunction Order. (*See supra* p. 4-5.) Therefore, further investigation is unnecessary as to these violations.

  Accordingly, Plaintiffs request for the appointment of a Special Master is **DENIED** without prejudice.

  **ii.** **Ban on use of 40mm KIPS**

  Plaintiffs request the Court ban LAPD's use of 40mm KIPS as a crowd control tool, arguing that the Ninth Circuit has held that such munitions "are not intended to disperse an individual; they are intended to 'incapacitate' a target." (Mot. at 15) (citing *Nelson v. City of Davis*, 685 F.3d 867, 873-74 (9th Cir. 2012); *Deorle v. Rutherford*, 272 F.3d 1272, 1285 (9th Cir. 2001). The Court's May 10, 2021 Preliminary Injunction provides restrictions on LAPD's use of 40mm munitions, including: a restriction on using the 40mm launchers in public

demonstrations except by officers who successfully completed Department training and meet all annual qualification requirements on the weapon; an officer may use 40mm less-lethal munitions only when the officer reasonably believes that a suspect is violently resisting arrest or poses an immediate threat of violence or physical harm; use of 40mm less-lethal munitions should be preceded by a warning, if feasible, consistent with the Use of Force Warning set forth in LAPD Use of Force – Tactics Directive No. 17; they should only be fired at a distance of five feet or greater from another person; and must not be used to target the head, neck, face, eyes, kidneys, chest, groin or spine of a person. (*See* Preliminary Injunction Order.) Here, Plaintiffs provide evidence that Defendants used 40mm munitions on protestors who did not pose an immediate threat of violence of physical harm, did not provide warnings before using the munitions, and hit protestors in restricted areas of the body. (*See* Exs. 152-153, 169-173, 176; Luksus Decl. ¶¶ 8-10; Ashby Decl. ¶¶ 1,3,6; Fernandez Decl. ¶¶ 2-6.) Defendants violated the Court's Preliminary Injunction Order regarding certain restricted uses of the 40mm and therefore, a ban on 40mm launchers and less-lethal munitions is appropriate.

The Court **GRANTS** Plaintiffs' request for a ban on the use of 40mm KIPs as a crowd control tool.

    **iii.** **Attorneys' Fees**

Plaintiffs request the opportunity to submit a motion for reasonable attorneys' fees relating to the cost of bring the instant Motion. Defendants oppose this request, arguing such an award would be neither coercive nor compensatory "as the Plaintiffs in this case were not subjected to the uses of force forming the basis for Plaintiffs' Motion, so they could not have been harmed by the alleged violations." (Dkt. No. 243 at 10.)

The Court has discretion to "decide whether an award of fees and expenses is appropriate as a remedial measure." *Perry v. O'Donnell*, 759 F.2d 702, 705 (9th

Cir. 1985). The Court need not find that the civil contempt is "willful" to grant an award for attorneys' fees. *Id.* One of the purposes of civil contempt is to "compensate the contemnor's adversary for the injuries which result from the noncompliance." *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 778 (9th Cir. 1983). Here, Plaintiffs' "cost of bringing the violation to the attention of the court is part of the damages suffered by the [Plaintiffs] and those costs would reduce any benefits gained by" a finding of contempt. *See Perry*, 759 F.2d at 705 (quoting *Cook v. Ochsner Found. Hosp.*, 559 F.2d 270, 272 (5th Cir. 1977).

Based on the Court's finding of contempt herein, the Court **GRANTS** Plaintiffs' request to seek reasonable attorneys' fees associated with bringing the Motion. The party seeking an award of attorneys' fees bears the burden of establishing the reasonableness of the hourly rates requested. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008); *Vargas v. Howell*, 949 F.3d 1188, 1194 (9th Cir. 2020). Accordingly, should Plaintiffs seek fees, they must file a separate motion including an account of the work performed, identifying the team who worked on the case, their experience and hourly rates, and evidence to support whether the fee requested is "reasonable." *See* L.R. 54 and 55; *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n. 4 (9th Cir. 2001); *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1993, 76 L.Ed.2d 40 (1983).

## IV. CONCLUSION

Accordingly, the Court:

1. **GRANTS** Plaintiffs' Motion for Contempt and finds Defendant County of Los Angeles in contempt of Court for violating the Preliminary Injunction during the DHS Protests;
2. **GRANTS** Plaintiffs' request to seek reasonable attorneys' fees;
3. **DENIES** without prejudice Plaintiffs' request to appoint a Special Master; and

4. **GRANTS** Plaintiffs' request for a ban on LAPD's use of 40mm KIPS for crowd control.

**IT IS SO ORDERED.**

DATED: January 15, 2026

CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE