UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - CENTRAL DIVISION

HONORABLE CONSUELO B. MARSHALL, U.S. DISTRICT JUDGE

BLACK LIVES MATTER LOS ANGELES, et al,

Plaintiffs,

vs.

CITY OF LOS ANGELES, et al,

Defendants.

Case No. CV 20-5027

REPORTER'S TRANSCRIPT OF
PLAINTIFFS' MOTION FOR CLASS CERT
Wednesday, February 18, 2026
10:49 a.m.
LOS ANGELES, CALIFORNIA

TERRI A. HOURIGAN, CSR NO. 3838, CCRR
FEDERAL OFFICIAL COURT REPORTER
350 WEST FIRST STREET, ROOM 4311
LOS ANGELES, CALIFORNIA 90012
(213) 894-2849

**APPEARANCES OF COUNSEL:**

**FOR THE PLAINTIFF:**

LAW OFFICE OF CAROL SOBEL
BY: CAROL A. SOBEL
WESTON C. ROWLAND
Attorneys at Law
2632 Wilshire Boulevard, No. 552
Santa Monica, California 90403

MCLANE BEDNARSKI and LITT LLP
BY: BARRETT S. LITT
Attorney at Law
975 East Green Street
Pasadena, California 91106

**FOR THE DEFENDANT:**

LOS ANGELES CITY ATTORNEYS OFFICE
BY: GABRIEL SETH DERMER
JOSEPH S. PERSOFF
Attorneys at Law
200 N. Main Street, Room 675
Los Angeles, California 90012

**LOS ANGELES, CALIFORNIA; WEDNESDAY, FEBRUARY 18, 2026**

**10:49 a.m.**

**--oOo--**

THE COURTROOM DEPUTY: Item No. 2, CV 20-5027, *Black Lives Matter Los Angeles versus City of Los Angeles et al.*

Counsel, please state your appearances.

MR. LITT: Good morning, Your Honor. Barry Litt for the plaintiffs.

THE COURT: Good morning.

MS. SOBEL: Good morning, Your Honor. Carol Sobel for the plaintiffs.

THE COURT: Good morning.

MR. ROWLAND: Good morning, Your Honor. Weston Rowland for the plaintiffs.

THE COURT: Good morning.

MR. PERSOFF: Good morning, Your Honor. Deputy City Attorney Joseph Persoff on behalf of the defendants.

THE COURT: Good morning.

MR. DERMER: Good morning, Your Honor. Gabriel Seth Dermer, also, for the defendants.

THE COURT: And you are associated with City Attorneys Office or not?

MR. DERMER: Yes, Assistant City Attorney, Gabriel Dermer, on behalf of the defendants.

THE COURT: Good morning. The matter that is before the Court this morning is plaintiffs' motion for class cert.

And the reason I actually invited you in to address the Court, it's trying to make sure that the guidance given by the Ninth Circuit in its mandate or order, questioning whether there was sufficient facts to support some of the requirements, commonality, being one of them, typicality, being one of them, and whether that has been cured in the new motions that are before the Court.

It's important for us to address that here, because depending upon how the Court rules on this, it could go back to the Circuit yet again, and so I think we need to be as clear here as we can be.

We have all read the mandate by the Circuit, and we feel that the new motion addresses whatever those issues were in a way that we should be able to go forward with the class cert.

So that's what I'd like to have the parties address.

I think the defendant's position is that whatever the Circuit was concerned about, is still lacking in this new motion to certify the class.

The plaintiffs' position, probably just the opposite, but it would be good to have the parties just articulate that.

So, this is a motion filed by the plaintiffs, so I'm

going to let the plaintiffs go first.

The defendants did request the Court to take judicial notice of lots of documents.

Most of them just seem to be opinions by other Courts or orders issued by other Courts in other cases.

So, of course, I think under the judicial notice rules, the Court can take judicial notice of those things, they say what they say.

But how are they helpful in this case, because there are many of them, and I have not read each of those cases to try to figure out why the defendant thinks that another case, and maybe orders issued in that case would be helpful to this Court.

So that's something I would like to have the defendants address, in addition, to the adequacy of the motion to certify.

So I will hear from plaintiffs first.

So my concern that I have tried to express is, has this -- does this motion for class cert cure the concerns that the Ninth Circuit had in the order that he issued re the Court's ruling on the last motion to certify class?

MR. LITT: Yes, Your Honor.

So, I would like to make some clarifications in the papers before diving into that.

THE COURT: You may do so.

MR. LITT: One, is there was some confusion on our

part in the way we presented the new arrest class, which is labeled Arrest Class No. 2.

So I want to make clear that we added an additional one that was not clearly articulated in the original motion, but is articulated in the reply, which is Arrest Subclass 2H, which took place in Hollywood.

THE COURT: Is one of the differences, and when I looked at them, I thought they -- these events occurred at different locations, and so that's referenced in the motion itself, so is it plaintiffs' position, whatever happened, if we take this class, the Arrest Class No. 2, is just that they were arrested for failure to comply with the order to disperse, detained for some certain amount of time, subsequently released no charges filed, but some were at a different location than others.

Is that the real difference?

MR. LITT: So for Arrest Class No. 2, which is new, and was not part of the earlier complaints, the gravamen of the class as a whole is that there were arrests that are related -- the arrest charge may not be failure to disperse, maybe other things to follow a police order or whatever, but the gravamen is that people were arrested in a situation where the underlying issue was, was there a failure to disperse, however that is articulated.

And our position is that there were -- there was not

adequate notice or not adequate opportunity to comply with an order if there was adequate notice, and that's the whole class.

But because of disparate locations and particulars, we have several subclasses, Subclass 2A through Subclass 2H.

And each of those are for a specific date and a specific location, in which we described the circumstances of those particular arrests.

So whether or not the Court were to certify the whole Subclass No. 2, Arrest Class No. 2, each of the subclasses are before the Court for individualized certification as well.

THE COURT: So is the common issue as to all of them, those in this class or subclass, as you have described it, that there was not adequate time to comply with the order?

MR. LITT: It was either not adequate notice or not adequate opportunity to comply.

THE COURT: So what is the difference between adequate notice and opportunity to comply?

You can take any one of them as an example.

MR. LITT: The inadequate notice can take the form of no notice. It can take the form of inaudible notice --

THE REPORTER: I didn't hear you.

MR. LITT: Or that the notice was provided, but it was inaudible, so it was not adequate.

But that is -- if you arrest someone with an inadequate notice, then our position is that there is a common question as

to whether or not that was a lawful arrest.

In addition to that, even if there was adequate notice, there was not an adequate opportunity for people to leave or people were prevented from leaving, and then arrested.

So those are all forms, essentially, of wrongful arrest based on how -- you know, a purported unlawful assembly was being dealt with.

So each of the subclasses, the law is clear, that each subclass, if you have subclasses must meet the criteria of Rule 23, regardless of whether or not the Court certified subclass -- Arrest Class No. 2, as a whole, each of the subclasses are before the Court for individual certification.

So we think that subclass -- sorry, Arrest Class No. 2, as a whole, should be certified.

But the point I want to make is whether or not that is correct or the Court believes it's correct.

There is still the question of each individual subclass, which are focused in time and place and date, so that is -- so we have -- we provided yesterday a second revised proposed order.

I'm sure the Court has not looked at it, I just wanted to point that out to the Court.

At the end, we have provided what we suggest are the appropriate class definitions, because we wanted to be -- the way the motion is framed, some of the argument gets

interspersed, so in the proposed order that we just filed, we have tried to lay out very clearly how we would propose the class certification -- the class definitions read.

THE COURT: So, you are right, I have not seen the second proposed order that was filed yesterday, but there will come a point in time that the Court will review any proposed orders that were filed by the parties.

Obviously, if the Court feels I can use the proposed order provided by either side, then the Court would attempt to do that, rather than drafting another order.

MR. LITT: Yes. So one other point I wanted to make on that order, particularly in light of the Ninth Circuit's decision, that order is extremely factually detailed based on the evidence that we have presented, and we just want to urge that if the Court does agree with us, that the classes should be certified.

We have tried to provide the Court with the evidentiary support in the proposed orders, so that the Court doesn't have to go through all of the different evidence -- I'm not saying it wouldn't do that -- but we have tried to put that altogether in a single place for the Court's convenience.

THE COURT: All right. Thank you.

MR. LITT: So the third prefatory comment I wanted to make is with regard to Arrest Class No. 2. In the motion, we mistakenly said these were misdemeanors.

In fact, they are not only misdemeanors, they are both misdemeanors and infractions.

We described what the charges were and some of those charges are infractions, but we did say "misdemeanor."

I wanted to clear that up. Arrest Class No. 2, regardless whether it's a misdemeanor or an infraction, the claim is that it was a wrongful arrest for the reasons that we just discussed.

All right. So with that, let me go in a summary form how we understood the Ninth Circuit's ruling and what we did to address that.

THE COURT: Just before you do that, whether it's a misdemeanor or an infraction, as far as this case is concerned, is it plaintiff's position that there was still a detention and arrest and no charges filed?

MR. LITT: Yes.

As for arrest class -- for the arrest class and for a Arrest Class No. 2, there is an infraction class, which I will talk about in which whether or not the charge was an infraction is a critical part of the class definition.

THE COURT: All right. You may proceed.

MR. LITT: So, for Arrest Class No. 1, the original class, as it was defined, was primarily defined as a conditions class in which we described that there was handcuffing and food, water, and bathroom access was not provided.

The Ninth Circuit stated that these were individualized issues.

We have provided new evidence in the motion that was not in the original motion, and the new evidence was by two experts.

One, Dr. Mosa (phonetic), who is -- who basically discussed the affects of tight handcuffing, and that they are going to cause unnecessary pain, especially behind the back.

And Police Practices Expert, Roger Clark, who, in some ways, for this motion is more important.

What Mr. Clark explained was: One, these are not handcuffs.

We're talking about zip ties.

The Ninth Circuit's opinion, kind of -- and we did too, in all fairness, sort of used handcuffing and zip ties interchangeably, but they are not interchangeable.

Handcuffs can be adjusted to be loosened or tightened. Zip ties cannot be loosened, however tightly you put them on, the only -- you cannot loosen them, you cannot adjust them, you have to cut them off, remove them, and put on new zip ties.

That is very important, because the arrests in this case were always zip ties.

It's a mass arrest situation, and Mr. Clark goes into this in his report, which is uncontradicted.

In a mass arrest situation, the officers are putting

these on quickly, and the way to do that is to pull them on, and tighten them.

And so you tighten them so they are tightened to the wrist, and by definition, that qualifies them as tight handcuffs.

So when the Ninth Circuit said whether or not the handcuffs are tight or individualized, in most situations that is true.

In this case situation, it is not true, and the new evidence that we presented made that clear.

So, the second point that Mr. Clark made, which is also important, is that because those handcuffs cannot be tightened, and because everybody was handcuffed behind the backs, also not disputed by the defendants, that means that, by definition, you cannot accommodate bathroom, food, or water requests because you are handcuffed behind the back.

How are you going to use the restroom, if you are handcuffed behind the back?

And the only way you can deal with that is to remove the zip ties.

So, you cannot provide food or water because you are cuffed behind the back, which means you cannot use your hands to drink or to eat.

So, the point is that by virtue of the fact that everybody was zip tied behind the back, it means that nobody,

unless they -- unless there was some individualized situation, which does not defeat commonality or predominance, and for which there is no, or virtually no evidence presented by defendants, the condition is common that you are not provided bathroom, food, or water access.

So, this new evidence addresses the issues that the Ninth Circuit raised regarding whether or not there were common and predominant issues.

So to summarize, the new evidence establishes that the handcuffs had to be -- zip ties had to be tight, they could not be adjusted.

Such tightened handcuffs cause significant pain, and you could not accommodate bathroom, water, or food requests under those conditions.

Let me stop there for a moment.

Does the Court -- are there any questions for that before I move on to the next?

THE COURT: No, no questions. Thank you.

MR. LITT: So, Arrest Class No. 2, is new so that was not addressed by the Ninth Circuit.

We discussed that earlier, and unless the Court has questions about that, I won't go into that further at this point.

THE COURT: No questions.

MR. LITT: All right. So now we have the infraction

class.

So the Ninth Circuit -- well, let me go back a little on the history.

Originally, we framed the infraction class as a Fourth Amendment claim, and that was in the original complaint which was the subject -- which was the complaint at issue for the class certification motion.

And there was confusion, I admit on our part, by including the Fourth Amendment claim as to whether this was an excessive force claim.

We also -- we made clear in our reply to this Court on the original class certification motion, that this was really a due process claim.

But the Ninth Circuit characterized it as an excessive force claim, and said that whether or not that was excessive force was an individualized issue.

So I want to -- so the Ninth Circuit never addressed what is in fact our claim, and in which I think is now clear from the fourth amended complaint, including where the Fourth Amendment was inadvertently referred to, and an agreement between the parties that that was removed from the complaint.

So what the claim is, is that it is a due process claim. It's a due process claim because there is a state of liberty interest created by the California statute, the name which is escaping me, it's 835.3, or something like that as the penal

code or maybe it's .5.

But there is a penal code statute that says under California law, for certain offenses, it is only an infraction and you must be provided the opportunity to be released in the field.

So the claim is that that statute creates a liberty interest.

The primary case that we cited to the Court was the *Carlo* case. That was a case where California law provided for the right to a phone call, upon arrest.

The Ninth Circuit said violation of that right in the *Carlo* case, which is discussed extensively and which, at least is my recollection, the defendants really did not meaningfully address.

The *Carlo* case said that statute created a liberty interest in the right to a phone call, and the violation of that right, was a violation of due process.

That case also explained, because the defendants raised this in their papers, where there had to be a mass arrest analysis of what process is due.

And that case actually said the statute provided what processes due. The process that is due is give them a phone call.

Here, the processes due is release them in the field.

So defendant's argument about mass use is really not

appropriate, and is disposed of, in our view, by the *Carlo* decision.

The Ninth Circuit's opinion really does not address that theory, and so we don't believe that it has any impact on how the Court should analyze it, because the Ninth Circuit was addressing a Fourth Amendment claim.

We have made clear that we're not asserting a Fourth Amendment claim. We are asserting a procedural due process claim.

So I will stop there to see if the Court has any questions for me on that.

THE COURT: No. Thank you.

MR. LITT: And last, on the fourth issue, the -- we basically have totally revamped our approach.

We're not seeking a 23(b)(3) certification of the damages class for the force.

What we have proposed is that there are certain critical issues around ratification and *Monell* issues regarding the failure to train that impact all of the force cases, because these are cases against the county.

And so the question of whether or not there was ratification for the 1983 claims, not for the state law claims, but whether there is *Monell* liability is going to permeate all of these, and the *Monell* liability will not depend on individualized issues.

It will depend on proof of a common policy or custom.

So we have proposed that there are certain issues that in the first of these trials, that be part of it, because if it is determined in the plaintiff's favor, then that will be an issue that will apply throughout all of the other cases, because the failure to train on a 37-millimeter or 40-millimeter is really going to be an issue that is going to be asserted in every force case.

And the same is true, depending on -- for particular events on certain days, for whether or not Chief Moore ratified the conduct of his officers.

So that's how we have addressed the issues raised by the Ninth Circuit on the force claims.

And unless the Court has any other issues it would like me to address, that is all that I have at the moment.

THE COURT: All right. Thank you.

So the defense?

So again, what the Court is attempting to do is to see whether the new motion and evidence offered to support it complies with the order issued by the Ninth Circuit.

MR. PERSOFF: Thank you, Your Honor. Joseph Persoff on behalf of the defendants.

To first to address the Court's initial question about the request for judicial notice.

The purpose of that request for judicial notice relates

to the superiority issues.

Class actions are supposed to be a more streamlined way of resolving these claims, and the RJN demonstrates there have been, I think it's over 30 cases arising out of these protests, individual ones that have already been resolved, whereas in this case, we're probably years away from trial.

So that's the relevance of those.

The Court doesn't need to look into the reasoning of them specifically, it's just that they exist, which I think is a quintessential judicially noticeable thing.

THE COURT: They were individualized cases?

MR. PERSOFF: Yes, they weren't class actions.

THE COURT: They were resolved in some amount of time that is less than the amount of time that we have already been on this case?

MR. PERSOFF: Correct. I think some of them may have been before Your Honor, but either through settlement or dismissal or jury verdict, one way or the other.

THE COURT: So, therefore, if one is thinking of trying to expedite the litigation, it would be better to have individual cases, rather than a class.

Is that the point of it?

MR. PERSOFF: That is defendant's point, Your Honor.

THE COURT: Okay.

MR. PERSOFF: Now to the overlying question of how

has plaintiff's new motion responded to Ninth Circuit's opinion, defendant's position, unsurprisingly, would be it has not.

Now, plaintiffs have adjusted some of their class definitions, and as we don't dispute that the Arrest Class No. 2, which is the dispersal order class, that is completely -- that is brand new.

But the fundamentals underlying the Ninth Circuit's opinion still apply directly.

I think what I will just do is go through to respond directly to some of Mr. Litt's points.

We will start with that dispersal order class, because it's new.

So, what the plaintiffs have done is they have created a handful of subclasses, based on geographic locations and dates.

But what they are trying to do is --

THE COURT: Do you agree that the zip ties were used on all of these plaintiffs that would be in the new class as opposed to handcuffs?

MR. PERSOFF: For Arrest Class No. 1, my understanding is that it was all zip ties.

THE COURT: Okay.

MR. PERSOFF: Since Your Honor is asking about that, I will just jump to that one.

The reason why, despite that, all of the arrestees being

zip tied, it still doesn't allow for class certification because the Ninth Circuit's reasoning applies to this case. It's not only binding Ninth Circuit precedent, but it's the law of the case, and there is no justification, legal grounds to distinguish zip ties versus handcuffs.

The Ninth Circuit is aware that it was zip ties, and in our opposition, we cited a ruling from this Court from about a year ago, discussing all of the factors that have to go into consideration as to whether a tight handcuffing violates the constitution.

As the Ninth Circuit said, in its opinion, simply because someone was handcuffed tightly, I will just quote, but placing someone in tight handcuffs is not inherently unconstitutional.

Then the Court said later on, but a class member who never asked for their handcuffs to be removed or whose pain a jury finds overstated, might not have a constitutional claim.

So, for these zip ties, that same analysis would have to apply, so that precludes certification.

THE COURT: So, if we then take it one step further, I think as Mr. Litt did, the fact that zip ties were used instead of handcuffs, there is still that issue that there wouldn't be the ability for bathroom, food, or water and that that would be one of the common factors to each of these individuals.

MR. PERSOFF: Certainly, the bathroom access issue, that was addressed in the prior motion.

The Ninth Circuit addressed that and explained why class certification wasn't appropriate, and then plaintiffs, in their new motion, removed bathroom access from that definition.

So, that all goes down to what if someone requested to have the zip ties tightened, and maybe that request was granted.

THE COURT: Zip ties removed? You said zip ties tightened.

MR. PERSOFF: I apologize.

THE COURT: I was trying to correct the record.

But if someone requested to have the zip ties removed, so they could, in fact, have bathroom, water, food, then that is different from other members of the so-called class, because some may have asked -- made that request, some may not have, is that the point?

MR. PERSOFF: That is correct, Your Honor.

Also, the more fundamental point is that bathroom access and water access, that is no longer plaintiff's claim.

They have -- they abandoned that when they brought this new motion.

That was in their motion, it is not part of this motion, perhaps based on recognizing the Ninth Circuit's ruling.

THE COURT: Okay.

MR. PERSOFF: One other point to that is plaintiffs said zip ties, unlike handcuffs, can't be loosened, but that takes us back to the same point addressed by the Ninth Circuit, what if someone never requested that it be loosened, then there might be a claim.

That is why all of these different factors and considerations, the nature of the injury, whether they requested it be removed or loosened, that all goes into whether there was a constitutional violation, and that precludes the finding of predominance, and it necessitates individualized inquiry.

So jumping back to the dispersal order class, so what plaintiffs have done, they created all of these sub -- subclasses, based on times and locations of arrests.

And while this -- these proposed classes were not part -- were not there for the Ninth Circuit's opinion, the principle from the Ninth Circuit's opinion still apply, which is an individualized probable cause analysis is necessary.

And plaintiffs are seeking to group together people who were -- who were arrested for different reasons and charged with different -- received different charges.

So necessarily, there is no commonality, because someone who was charged for one thing, their evidence would not apply to someone who is charged for another violation.

And just repeating the language from the Ninth Circuit,

which actually discusses a dispersal order issued that plaintiffs raised now, in response to plaintiff Mayorca, to determine whether his arrest was lawful, a factfinder must therefore decide whether the LAPD made it impossible to obey its orders, and if so, and whether there was still probable cause to arrest him.

That is the Ninth Circuit's opinion in this case at opinion cite 1262.

So one can imagine -- they give these intersections that define the subclasses, and maybe someone standing on this side, the five minutes would be sufficient for them to get up, but someone standing on the other side of the intersection, it might not be.

These are all different circumstances that require individualized inquiry.

Turning to the infraction class, the key here is that the applicable legal standard mandates a Fourth Amendment analysis.

And defendant cited the law in their opposition, it's the Supreme Court's, *Gerstein v Pugh*, that is 420 U.S. 103, and in that, the Supreme Court talks about how when you are dealing with the processes due to an arrestee, the Fourth Amendment governs that.

And this isn't a merits issue, because defendants aren't contending that whether or not there was probable cause at this

point, the key is on class certification, we have to look at how plaintiffs would prove their claim, and to do that, we need to determine the applicable legal framework.

So under that framework, because we're dealing with an arrestee, it's the Fourth Amendment probable cause analysis.

And as the Ninth Circuit was very clear, and as I just discussed in relation to the Arrest Class, that is an individualized analysis.

And in defendant's opposition, we raised a lot of responses, in the alternative, even if there was -- even under procedural due process analysis, although defendant's position is that that wouldn't be appropriate here, there would have to be a Matthews analysis.

And plaintiffs addressed this *Carlo* decision from the Ninth Circuit, and that decision, one, is distinguishable because it did not deal with the due process of an arrestee, it involved -- it didn't involve the propriety of the arrest.

It was somebody who had already been arrested.

And two, that decision never said no Matthews analysis is appropriate.

Candidly, that does not conduct a Matthews analysis, I'm not sure why, but a subsequent Ninth Circuit decision did cite the *Carlo* decision, and then conducted a Matthews analysis, which suggests that simply because -- it suggests that *Carlo* did not stand for the proposition that a Court should not

conduct the Matthews analysis.

And that case is *Miller versus City of Scottsdale*, 88 F.4th 800, and that is a Ninth Circuit case from 2020.

THE COURT: Not cited in the briefs, correct?

MR. PERSOFF: Let me double-check that. No, it's not.

This was in response to an argument raised by plaintiffs in their reply.

THE COURT: And the cite again, please?

MR. PERSOFF: 88 F.4th 800.

THE COURT: Thank you.

MR. PERSOFF: Then as to the force issues class, there is another clear disputable legal issue, which is whether a predominance inquiry needs to be undertaken.

Defendants -- plaintiffs cite a Ninth Circuit decision suggesting that it does, or that it does not, that is the *Valentino* case from 1996.

Defendant's position is that plaintiffs are misinterpreting it, and they are -- in the opposition, we cited a DC Circuit opinion more recent than the Ninth Circuit in this case, cited in a footnote for another proposition, but in that case, the DC Circuit said predominance inquiry is necessary even for an issues class.

And plaintiffs made no argument they can establish predominance for this force issues class.

But putting that all to the side, their proposed force issues class has another fundamental problem, which, it's not one class, it's a bunch of different classes, because it's a bunch of different issues.

For each of those issues, what they don't dispute, they would still need to establish commonality and numerosity.

And in this particular situation, those two are in tension with each other, because in order to meet numerosity, plaintiffs would have to make it broader, the class definition broader, but then you lose commonality.

As it applies in this circumstance, you have these people who were subjected to different types of force, batons, 40-millimeter, 37-millimeter, et cetera, so the issues for each one of these issues would be distinct.

So for each group, you would have to treat them separately.

Do they meet numerosity, does all of the named plaintiffs here who alleged they were subject to force from a 40, does that meet numerosity?

So plaintiffs can't meet it, because when you break it down to the particular day that they were subjected to force, it narrows it even further.

So for some of them, you may have less than ten people.

Then, plaintiffs also discussed ratification.

But plaintiffs have no evidence of ratification, as the

Ninth Circuit made clear, plaintiffs cannot simply -- cannot achieve class certification by pleading, they must set forth evidence.

There is -- not only is there no evidence of ratification, but the evidence that plaintiffs submitted, and we're talking about Chief Moore, establishes the opposite.

Because the only evidence they have in their evidence, it's in the declaration of Ms. Sobel, regarding Chief Moore, he's telling officers to stop the force that they are using. So it's the exact opposite of ratification.

And then the issues class, also going back to the superiority issue, it kind of leads to this absurd result where we proceed on individual cases, there is only one trial.

But if this is certified, then we're going to have two trials, because you would have the class issue to resolve the *Monell* issue, but that would necessarily have to come after resolving the individual's claim of whether there is a violation in the first place.

So then I can just only imagine all of the administrative difficulties, it's hard enough to get one trial set, but then you would have -- I think in this case, there are over 60 individual force plaintiffs.

So each of those individual plaintiffs would have to have their trial to establish that the force used against them was unconstitutional.

And then after that is all done, there would have to be a second trial to establish *Monell* liability, when ordinarily there would be the one trial that would then establish *Monell* liability or not, whether or not there is that underlying constitutional violation.

And I also -- it wasn't addressed by plaintiffs, but I want to address the injunction class.

That class is just so, so overbroad, there cannot be any commonality.

It would include people who did protest, people who didn't protest, people who protested peacefully, people who didn't protest peacefully, people who were subjected to force, people who were not subjected to force, so there is no common law or fact that would resolve all of their claims.

And the other issue, which we addressed in the opposition at the very end, is sort of the absurd possible result, because if it becomes a class, the ruling would then be res judicata.

So then if the class was certified for everyone who either has protested or may protest in the future, and then let's say, defendants prevail at trial, then that would be res judicata for anyone who intends to attend a protest in the future.

So, the injunctive relief class is just not appropriate for class certification at all, and that is not even addressing

the standing issues.

Plaintiffs are only seeking to have the organizational plaintiffs as the class reps for that.

And so they lack standing for two reasons, and that is addressed in the opposition.

One, is because they failed to establish a likelihood of imminent harm; and, two, because they are seeking associational standing. It's not appropriate when the claims of the members require essentially individualized inquiry.

Then, of course, on top of that, these two organizations are seeking to represent non members.

Admittedly, we didn't find much on that, but there was one Southern District of Florida case, I believe cited in the opposition, saying that an organization does not -- is not adequate to represent nonclass -- or non members of that organization in a class action.

And to respond to a point plaintiffs made in their reply as to the standing issue, plaintiffs cite to a Supreme Court decision involving the overbreadth doctrine of challenge to a statute, and that is inapplicable to this case, then a facial challenge to that statute.

Unless the Court has any other specific questions?

THE COURT: I'm just reviewing my notes now to see.

So defendants note that the majority of the declarations filed in support of the current motions are declarations from

2020 or 2021.

And I'm not clear why defendants see that as an issue, since the events occurred in 2021.

I would expect that any declarants addressing these issues would be talking about that time period.

So what was defendant's point in pointing that out to the Court?

It's true, and one can see when one looks at the data of the declarations, but so what.

MR. PERSOFF: Certainly, Your Honor.

That goes to the adequacy issue, because plaintiffs, as the moving party, need to establish the proposed class representatives will vigorously prosecute the case.

And the fact that they didn't submit new declarations, obviously, it wouldn't make sense for them to submit new declarations regarding the incidents that occurred to them back in 2020, but renewing the fact that they have continued to follow the case, they actually know what is the going on, and they are still interested in prosecuting the case.

Because as the case cited --

THE COURT: The declarants are still interested?

MR. PERSOFF: Correct, exactly. Because as the case cited in the opposition says, if plaintiffs have to establish, they are not merely lending their name to the case for counsel to do everything about.

And based on this circumstance, they haven't established that by a preponderance of the evidence, because defendant's position is the fact that there is nothing new, except for one of the plaintiffs, who was a new plaintiff, they haven't established that they are vigorously prosecuting the case.

And in our opposition, we discuss all of the things that have happened since they filed their declarations.

In fact, if you look at the text of their declarations, there is language of it focused on conditions of confinement claim, which is no longer at issue.

And there is this new arrest class claim, which has -- it's new.

So that wasn't in existence at the time they submitted those declarations.

THE COURT: Thank you. I don't have any further questions.

Any further comments?

MR. PERSOFF: I have two additional points I want to make.

Back on the zip tie class, in the reply, plaintiffs argue how long people were held in zip ties can be determined by documents such as chronologies, bus transport records, body-worn video, and citations.

But what they are essentially saying is an individualized inquiry. All of these have to be reviewed for

each person to determine how long they were in zip ties for.

So that demonstrates that lack of predominance, and that certification isn't warranted.

Plaintiffs also blame defendants for their not being one clean document documenting how long everyone was arrested.

And they cite two cases for that to support that proposition, but they are both in opposite.

The first, it's called *Cline*, the defendants was under legal duty to maintain such documents. And plaintiffs cite no such duty here.

Then in the second case, *Del Valle*, the Court said it was not convinced that the defendants had no way of accessing this information.

Here, there is no such dispute.

The final point I want to make is in their motion, plaintiffs rely substantially on a declaration of Ms. Sobel.

That, kind of, gives the impression of -- maybe of a streamlined approach for this evidence, but in reality, if we go to trial, then Ms. Sobel would not have foundation to testify to many of these, if not all of these things, and a lot of the stuff would be inadmissible hearsay.

So we would have to look at how all of this information that is submitted through the declaration, would get -- would be admitted at trial.

That just further demonstrates how for each person's

claim, individualized inquiry would be required and class certification is inappropriate.

Thank you, Your Honor.

THE COURT: Thank you. I would just direct this question to plaintiffs, so, it's now 11:44, and so the Court would normally be taking the break at 12.

I would like to try to finish this up before 12:00 because we have two pretrial conferences on at 2:30.

So, do you think 15 minutes is going to give you enough time to address what you feel needs to be addressed?

MR. LITT: I think so. Yes, Your Honor.

THE COURT: Thank you.

MS. SOBEL: I'm Ms. Sobel, referred to by Mr. Persoff.

I did the declarations, and that is absolutely true. But the key difference here, Your Honor, was that I did the declarations from their evidence.

So I used their body-worn video, their reports of who was transported when, I used their radio transmissions saying we're not going to give them a dispersal order.

I used their Internal Affairs report saying that the investigator looked carefully -- tried to find a dispersal order and could find none.

Let me address that particularly --

THE COURT: What you are saying is that's evidence

that defendants have provided, so respond to defendant's question, how will you get that evidence before the Court?

That is evidence that you have described that you would attempt to use.

It wouldn't require your testimony.

MS. SOBEL: No, it would not require my testimony. It would require calling the investigator who would testify to what he or she did in that particular investigation.

And that is the June 1st downtown LA, at least 500 people, probably more, who were not given a dispersal order.

If the Court may recall, that begins with a radio transmission from the incident commander saying, arrest them.

An officer says, aren't we going to give them a dispersal order, and he says, no, they would just be a problem later on.

On top of that, you have the Internal Affairs investigation, where the Internal Affairs investigator concludes that there was no dispersal order given.

And in fact, not only was there no dispersal order given, but the investigator says in the course of looking at this, he determined the city stopped giving curfew orders on June 1st, and the county was issuing them.

How people who were protesting in Los Angeles would get a dispersal order from the county is beyond me, and apparently

beyond them.

But there are records, their own records support the claims.

The reason that we broke these down was because at the argument in the Ninth Circuit, the Court asked, I believe it was Judge Lee asked, is there a breakdown by the number of people and the date and the time, can we find that?

We didn't do as good of job as we should have. In this complaint and in this motion, we broke down everything by day and by group, and we substantiated with body-worn video from the officers about when people were first put in handcuffs, testimony from the arresting officers in one of the Hollywood cases, I believe it was Hollywood, about what he found when he got to Jackie Robinson Stadium, and found all of the people who we believe are the downtown LA people, that 500 group, in buses having been held for hours because the department was not set up to process them.

So, everything we did in this case, to the extent we could, we took their documentation to confirm what our clients were saying in their declarations.

And as I said, we broke down each class.

The Court may decide some of them shouldn't be certified, some of them should be certified.

As to -- I want to just address two other. Jonathan Mayorca, I don't think we are going to have a problem because

we have the photos of the officers with the weapons drawn on them, blocking their exit.

They were directed to go down an alley, and I believe we may have put this in the complaint or in his declaration, but when they got in that alley, there was a line of officers with weapons.

Now, I don't know, I participate in a lot of protests, I don't pass the officers with the weapons.

I don't think that means I should go out that way, if they are aiming at me, but there is that documentation.

They can prove if, and they can prove that for everyone who was in that alley, because they were all blocked.

Same thing for Krystle Hartfield, they all get taken to the same station at the same time, and that is one subclass, where they were all treated the same, all blocked by officers with weapons and the zip ties.

I just wanted to deal with one other, because Mr. Persoff dealt with the issue of whether somebody had five minutes to leave and could leave easily, or not.

Nadia Kahn was part of a group of people who were all arrested.

The order that was given, and we used their order, told people that they had to leave a circumference of a mile, which we think is impossible, unless you are an elite athlete.

But to counter -- to respond to Mr. Persoff's comment,

it may be that some of those people heard different things, but if you heard the order to leave a mile, and you couldn't -- it wouldn't take you five minutes for some people for get out and longer for other people to get out, you know, an hour or whatever, even 20 or 30 minutes, because then that presumptively means that the order to disperse that was given, defining the geographic zone people had to leave and the time they had to leave, would only be audible to the people who were standing near the officer.

They would not be audible to the people who were almost a mile away.

And that, I think, is undisputable in terms of how dispersal orders are lawfully to be given.

I think Mr. Litt is going to respond to the rest of this, but I want to raise one other issue quickly.

We asked the Court in October to set a conference and to set trial schedule.

We believe whether or not these classes are certified, the Court needs to set a trial schedule.

We filed an order -- we filed a report with the Court in November, and we think that, you know, if what the city wants is to go to trial on 63 claims, we will do it, we're ready.

But what is happening now, Your Honor, is that when we asked Mr. Bojorquez to update his Rule 26 responses, and this happened a while ago, his response to me was he could not do

that because he was not yet preparing for trial.

So how do we move depositions? How do we -- and believe me, Your Honor, we have served a lot of discovery. We are about to get six terabytes from the City of ongoing discovery.

We have other -- we're doing a motion to compel -- a motion to change the protective order, so we have been aggressively serving discovery in this case.

But if Mr. Bojorquez's position is he can't tell us who the witnesses are going to be for the City, because he hasn't yet prepared for trial, we are grossly hampered.

Thank you, Your Honor.

THE COURT: I hear counsel asking that the Court should set a trial schedule.

I don't know what defendant's position is on that.

Certainly, the Court could schedule a meet and confer or order a meet and confer, and then have parties prepare the normal Rule 26(f) report.

And then that is what the Court would use to set dates.

Ms. Sobel, I hear you saying the ruling on the present motion, motion to certify the class, should not delay the Court setting a trial schedule?

MS. SOBEL: Or preparing for trial, since we're going to have to try the damages case, whether there is an issue class that is approved or not. We will have to try that.

So we did suggest to the Court in our November filing,

that the Court order the parties to come up with a plan.

It's our position that there are quite a few people who are in very close proximity to each other when they are shot or when they are beaten with batons, and those should be tried together, given the facts, at least the presumption should be they should be tried.

But we need to discuss that with the defendants who have not so far been willing to discuss that.

THE COURT: That needs to occur whether the Court certifies the class or not?

MS. SOBEL: No. It could be totally independent, Your Honor, to move that. Thank you.

THE COURT: I think, at least, in the Court's perspective, I certainly have an interest to try to move the case.

It's probably the oldest case we have on calendar, and of course, there have been many protests since this one, so we have a lot of protest cases that don't relate to Floyd.

So the Court's interest would be having the parties meet and confer, prepare the Rule 26(f) report, but the Court will attempt to get the order out on this motion as well, as quickly as the Court thinks it can be issued.

But yes, I have an interest in seeing the case move as well, regardless of the certification.

So that seems to be the plaintiffs are requesting that.

MS. SOBEL: Yes.

THE COURT: Let's have a Rule 26 conference, pending the Court's issuing the order on the class cert.

I just want to know what defendant's position is on that. Defendants agree?

MR. PERSOFF: No objection, Your Honor.

THE COURT: Okay.

MR. PERSOFF: May I very briefly address a point made by plaintiffs in the last --

THE COURT: You have six minutes.

MR. LITT: Your Honor, we haven't finished with our response now.

THE COURT: If you haven't finished, then it will have to be continued.

As I said, I already have two pretrials set for 2:30. One is set for trial in March, so, I would give that case priority, so I will order you back so you can finish, but you are going to be waiting.

MR. LITT: All right. Let me take a shot at trying to respond to some of the arguments that were made within our five minutes.

THE COURT: I just think we can't do justice to it in five minutes.

So, it sounds like, at least, plaintiffs feel that you need more time to try to respond to some of the arguments made

by defense, so that is going to be another day.

I doubt that I will have time to hear it today.

Another day is going to probably delay the issuance of the order on the class cert, and I don't know when the next opportunity will be.

There are a lot of trials set in the next few months, so you have five minutes.

So if you feel like you can do justice to what you need to respond to, now you have four minutes.

I'm certainly willing to give you that time, but we do have to take a break.

MR. LITT: Realistically, given the number of issues that Mr. Persoff addressed, I don't think I can do it in four minutes.

THE COURT: Okay. Sounds like another day.

So why don't I do this, why don't I order counsel to meet and confer to discuss the preparation of the Rule 26(f) report, without the benefit of the Court's ruling on the class cert.

After you have met and conferred, you can file -- usually, it's a joint 26(f) report.

The Court would then invite you in and would set those dates.

So you could, at least, commence discovery, motions, other things that need to be done.

When could you meet and confer to discuss this?

Now, you are here today, so you may want to just use one of the witness rooms that is outside of this courtroom, and have that first meet and confer.

But if that is too soon, because maybe you need other things that you are not prepared to do that, then if you will give me a time when you will have your meet and confer and to file a report with the Court, and I can order that.

So when --

MS. SOBEL: I think it may be that Mr. Bojorquez is in trial, but that should not prevent the City from meeting and conferring, but we're willing to let this go until next week.

We really want to push it forward.

We can probably file something with the Court by the end of next week.

THE COURT: Okay. Would defendants -- would that give you adequate time?

What I would like to see is a joint Rule 26(f) for the purpose of preparing the report.

So what date could I order parties to meet and confer and then file with the Court a joint 26(f) report?

So next week, February, being a short month, I don't have a calendar before me.

THE COURTROOM DEPUTY: February 27th, Your Honor.

THE COURT: Is what, next what?

THE COURTROOM DEPUTY: Next Friday.

THE COURT: Is that adequate?

MR. LITT: Yes, Your Honor.

THE COURTS: The parties can meet and confer no later than February 27th to discuss Rule 26(f) report, and then file such a report with the Court, following your meet and confer.

MR. KRUEGER: I have a one-minute housekeeping matter, if I can?

THE COURT: Sure.

MR. KRUEGER: Last week the City filed an ex-parte, an ex-parte application to stay the plaintiff's motion for fees, based on the contempt ruling.

We asked for a stay, just if the Court could issue a ruling on that, I would appreciate it.

THE COURT: I have already looked at it, and I think I intend to just grant that.

MR. KRUEGER: Thank you, Your Honor.

THE COURT: I haven't issued an order yet.

If you gave me a proposed order, I can take a look --

MR. KRUEGER: We did.

THE COURT: -- and maybe use it, and I think the plaintiffs had no objection to that.

MS. SOBEL: We had no objection.

THE COURT: Why don't I say, granted, and then the Court, for the record, will issue an order.

MR. KRUEGER: Thank you, Your Honor.

THE COURT: All right. We're in recess now, and if we -- since we may need another day for you to complete the arguments on the class cert, maybe just before you leave, you could agree on what date that would be good for you.

It won't be this week.

I am here next week, so it could be one day next week, if that works for the parties, just to complete the argument on the class cert motion.

You can just give the clerk a date that seems to be good for both sides, and we will then issue a minute order with that date in it.

MS. SOBEL: Thank you, Your Honor.

THE COURT: Thank you.

MR. PERSOFF: Thank you, Your Honor.

THE COURT: Thank you. For the court reporter, we are off the record.

(The proceedings concluded at 11:58 a.m.)

**CERTIFICATE OF OFFICIAL REPORTER**

COUNTY OF LOS ANGELES )
)
STATE OF CALIFORNIA )

I, TERRI A. HOURIGAN, Federal Official Realtime Court Reporter, in and for the United States District Court for the Central District of California, do hereby certify that pursuant to Section 753, Title 28, United States Code that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the judicial conference of the United States.

Date: 18th day of February, 2026.

/s/ TERRI A. HOURIGAN

TERRI A. HOURIGAN, CSR NO. 3838, RPR, CRR
Federal Court Reporter

## /

**/s** [1] - 45:19

## 1

**1** [2] - 10:22, 19:19
**103** [1] - 23:19
**10:49** [2] - 1:14, 3:2
**11:44** [1] - 33:3
**11:58** [1] - 44:13
**12** [1] - 33:4
**1262** [1] - 23:7
**12:00** [1] - 33:5
**15** [1] - 33:7
**18** [2] - 1:14, 3:1
**18th** [1] - 45:16
**1983** [1] - 16:21
**1996** [1] - 25:16
**1st** [2] - 34:7, 34:20

## 2

**2** [13] - 3:6, 6:2, 6:11, 6:17, 7:9, 8:11, 8:13, 9:24, 10:5, 10:18, 13:18, 19:5
**20** [1] - 37:2
**20-5027** [1] - 1:7
**20-5027,** [1] - 3:6
**200** [1] - 2:15
**2020** [3] - 25:2, 29:24, 30:15
**2021** [2] - 29:24, 30:1
**2026** [3] - 1:14, 3:1, 45:16
**213** [1] - 1:24
**23** [1] - 8:10
**23(b)(3** [1] - 16:14
**26** [2] - 37:20, 39:23
**26(f** [7] - 38:13, 39:16, 41:13, 41:17, 42:12, 42:15, 42:24
**2632** [1] - 2:6
**27th** [2] - 42:18, 42:24
**28** [1] - 45:9
**2:30** [2] - 33:6, 40:11
**2A** [1] - 7:4
**2H** [2] - 6:5, 7:4

## 3

**30** [2] - 18:3, 37:2
**350** [1] - 1:23
**37-millimeter** [2] - 17:5, 26:12
**3838** [2] - 1:22, 45:20

## 4

**40** [1] - 26:17
**40-millimeter** [2] - 17:6, 26:12
**420** [1] - 23:19
**4311** [1] - 1:23

## 5

**5** [1] - 14:25
**500** [2] - 34:8, 35:12
**552** [1] - 2:6

## 6

**60** [1] - 27:20
**63** [1] - 37:18
**675** [1] - 2:15

## 7

**753** [1] - 45:9

## 8

**800** [2] - 25:2, 25:9
**835.3** [1] - 14:24
**88** [2] - 25:2, 25:9
**894-2849** [1] - 1:24

## 9

**90012** [2] - 1:23, 2:16
**90403** [1] - 2:6
**91106** [1] - 2:9
**975** [1] - 2:9

## A

**a.m** [3] - 1:14, 3:2, 44:13
**abandoned** [1] - 21:20
**ability** [1] - 20:22
**able** [1] - 4:18
**above-entitled** [1] - 45:12
**absolutely** [1] - 33:13
**absurd** [2] - 27:10, 28:14
**access** [6] - 10:25, 13:5, 20:25, 21:4, 21:18, 21:19
**accessing** [1] - 32:10
**accommodate** [2] - 12:15, 13:12
**achieve** [1] - 26:25
**action** [1] - 29:14
**actions** [2] - 18:1, 18:11
**added** [1] - 6:3
**addition** [2] - 5:15, 8:2
**additional** [2] - 6:3, 31:16
**address** [14] - 4:5, 4:12, 4:19, 5:15, 10:11, 15:13, 16:2, 17:14, 17:22, 28:5, 33:8, 33:22, 35:21, 40:4
**addressed** [12] - 13:19, 14:16, 17:11, 21:1, 21:2, 22:2, 24:13, 28:4, 28:13, 29:2, 33:8, 41:9
**addresses** [2] - 4:17, 13:6
**addressing** [3] - 16:5, 28:23, 30:2
**adequacy** [2] - 5:15, 30:9
**adequate** [13] - 7:1, 7:2, 7:13, 7:14, 7:15, 7:17, 7:23, 8:2, 8:3, 29:13, 42:11, 42:21
**adjust** [1] - 11:19
**adjusted** [3] - 11:17, 13:11, 19:3
**administrative** [1] - 27:18
**admit** [1] - 14:7
**admitted** [1] - 32:22
**admittedly** [1] - 29:10
**Affairs** [3] - 33:19, 34:14, 34:15
**affects** [1] - 11:7
**aggressively** [1] - 38:3
**ago** [2] - 20:7, 37:21
**agree** [4] - 9:15, 19:16, 40:1, 43:25
**agreement** [1] - 14:19
**aiming** [1] - 36:7
**al** [3] - 1:5, 1:8, 3:8
**alleged** [1] - 26:16
**alley** [3] - 35:25, 36:2, 36:9
**allow** [1] - 19:25
**almost** [1] - 37:7
**alternative** [1] - 24:9
**altogether** [1] - 9:20
**amended** [1] - 14:18
**Amendment** [8] - 14:4, 14:8, 14:19, 16:5, 16:7, 23:16, 23:21, 24:4
**amount** [3] - 6:13, 18:12, 18:13
**analysis** [12] - 15:19, 20:17, 22:17, 23:17, 24:4, 24:7, 24:10, 24:12, 24:19, 24:20, 24:22, 24:25
**analyze** [1] - 16:4
**Angeles** [4] - 2:16, 3:7, 34:21
**ANGELES** [7] - 1:5, 1:8, 1:15, 1:23, 2:13, 3:1, 45:3
**apologize** [1] - 21:10
**appearances** [1] - 3:9
**APPEARANCES** [1] - 2:1
**applicable** [2] - 23:16, 24:2
**application** [1] - 43:6
**applies** [2] - 20:1, 26:10
**apply** [5] - 17:4, 19:8, 20:18, 22:16, 22:22
**appreciate** [1] - 43:9
**approach** [2] - 16:13, 32:16
**appropriate** [7] - 8:24, 15:25, 21:3, 24:11, 24:19, 28:22, 29:6
**approved** [1] - 38:20
**argue** [1] - 31:19
**argument** [6] - 8:25, 15:24, 25:6, 25:23, 35:2, 44:3
**arguments** [3] - 40:16, 40:21, 43:24
**arising** [1] - 18:3
**arrest** [18] - 6:1, 6:20, 7:24, 8:1, 8:5, 10:7, 10:15, 10:17, 11:23, 11:25, 15:9, 15:18, 23:2, 23:5, 24:16, 31:9, 34:11
**Arrest** [15] - 6:2, 6:5, 6:11, 6:17, 7:9, 8:11, 8:13, 9:24, 10:5, 10:18, 10:22, 13:18, 19:4, 19:19, 24:6
**arrested** [7] - 6:12, 6:22, 8:4, 22:19, 24:17, 32:3, 36:18
**arrestee** [3] - 23:21, 24:4, 24:15
**arrestees** [1] - 19:24
**arresting** [1] - 35:9
**arrests** [4] - 6:19, 7:7, 11:21, 22:13
**articulate** [1] - 4:24
**articulated** [3] - 6:4, 6:5, 6:24
**asecond** [1] - 27:25
**assembly** [1] - 8:6
**asserted** [1] - 17:7
**asserting** [2] - 16:6, 16:7
**Assistant** [1] - 4:1
**associated** [1] - 3:24
**associational** [1] - 29:5
**athlete** [1] - 36:21
**attempt** [3] - 9:9, 34:1, 39:17
**attempting** [1] - 17:17
**attend** [1] - 28:20
**Attorney** [3] - 2:8, 3:20, 4:1
**Attorneys** [3] - 2:5, 2:15, 3:25
**ATTORNEYS** [1] - 2:13
**audible** [2] - 37:5, 37:7
**aware** [1] - 20:5

## B

**backs** [1] - 12:13
**BARRETT** [1] - 2:8
**Barry** [1] - 3:10
**based** [7] - 8:6, 9:13, 19:14, 21:23, 22:13, 30:24, 43:7
**bathroom** [9] - 10:25, 12:15, 13:5, 13:12, 20:22, 20:25, 21:4, 21:13, 21:18
**batons** [2] - 26:11, 38:25
**beaten** [1] - 38:25
**becomes** [1] - 28:15
**BEDNARSKI** [1] - 2:7
**begins** [1] - 34:10
**behalf** [3] - 3:20, 4:2, 17:21
**behind** [6] - 11:8, 12:13, 12:16, 12:18, 12:22, 12:25
**believes** [1] - 8:16
**benefit** [1] - 41:14
**better** [1] - 18:19
**between** [2] - 7:16, 14:20

**beyond** [2] - 34:22, 34:23
**binding** [1] - 20:2
**BLACK** [1] - 1:5
**Black** [1] - 3:7
**blame** [1] - 32:2
**blocked** [2] - 36:9, 36:12
**blocking** [1] - 35:24
**body** [3] - 31:21, 33:16, 35:7
**body-worn** [3] - 31:21, 33:16, 35:7
**Bordorcus** [1] - 37:20
**Borjocus** [1] - 42:5
**Borjorcus's** [1] - 38:4
**Boulevard** [1] - 2:6
**brand** [1] - 19:6
**break** [3] - 26:18, 33:4, 41:7
**breakdown** [1] - 35:3
**briefly** [1] - 40:4
**briefs** [1] - 25:3
**broader** [2] - 26:8, 26:9
**broke** [3] - 35:1, 35:6, 35:18
**brought** [1] - 21:20
**bunch** [2] - 26:2, 26:3
**bus** [1] - 31:20
**buses** [1] - 35:12
**BY** [3] - 2:4, 2:8, 2:14

## C

**calendar** [2] - 39:12, 42:17
**California** [7] - 2:6, 2:9, 2:16, 14:23, 15:2, 15:8, 45:8
**CALIFORNIA** [5] - 1:2, 1:15, 1:23, 3:1, 45:4
**candidly** [1] - 24:20
**cannot** [10] - 11:18, 11:19, 12:12, 12:15, 12:21, 12:22, 26:24, 28:6
**carefully** [1] - 33:20
**Carlo** [7] - 15:8, 15:11, 15:14, 15:25, 24:13, 24:22, 24:23
**CAROL** [2] - 2:4, 2:4
**Carol** [1] - 3:13
**case** [42] - 5:9, 5:11, 5:12, 10:13, 11:21, 12:9, 15:7, 15:8, 15:11, 15:14, 15:17, 15:20, 17:7, 18:5, 18:14, 20:1, 20:3, 23:6, 25:1, 25:2, 25:16, 25:20, 25:21, 27:19, 29:11, 29:18, 30:11, 30:16, 30:17, 30:18, 30:20, 30:22, 31:3, 32:9, 35:15, 38:3, 38:19, 39:11, 39:12, 39:19, 40:12
**Case** [1] - 1:7
**cases** [12] - 5:5, 5:10, 16:18, 16:19, 17:4, 18:3, 18:10, 18:20, 27:11, 32:4, 35:10, 39:14
**CCRR** [1] - 1:22
**Central** [1] - 45:8
**CENTRAL** [2] - 1:2
**cert** [8] - 4:4, 4:18, 5:18, 39:24, 40:25, 41:15, 43:24, 44:4
**CERT** [1] - 1:13
**certain** [5] - 6:13, 15:2, 16:16, 17:1, 17:9
**certainly** [5] - 20:25, 30:8, 38:11, 39:10, 41:6
**CERTIFICATE** [1] - 45:1
**certification** [15] - 7:10, 8:12, 9:3, 14:6, 14:11, 16:14, 19:25, 20:18, 21:3, 23:25, 26:25, 28:23, 32:1, 32:25, 39:20
**certified** [8] - 8:10, 8:14, 9:16, 27:12, 28:17, 35:19, 35:20, 37:15
**certifies** [1] - 39:6
**certify** [6] - 4:22, 5:15, 5:20, 7:8, 38:16, 45:8
**cetera** [1] - 26:12
**challenge** [2] - 29:17, 29:19
**change** [1] - 38:2
**characterized** [1] - 14:13
**charge** [2] - 6:20, 10:19
**charged** [3] - 22:19, 22:22, 22:23
**charges** [5] - 6:14, 10:3, 10:4, 10:15, 22:20
**check** [1] - 25:4
**Chief** [3] - 17:9, 27:4, 27:6
**chronologies** [1] - 31:20
**Circuit** [33] - 4:7, 4:14, 4:16, 4:21, 5:19, 11:1, 12:6, 13:7, 13:19, 14:1, 14:13, 14:16, 15:10, 16:4, 17:12, 17:19, 20:2, 20:5, 20:10, 21:2, 22:2, 22:24, 23:6, 24:5, 24:14, 24:21, 25:2, 25:14, 25:19, 25:21, 26:24, 35:2
**Circuit's** [10] - 9:12, 10:10, 11:14, 16:2, 18:25, 19:7, 20:1, 21:23, 22:15, 22:16
**circumference** [1] - 36:20
**circumstance** [2] - 26:10, 30:24
**circumstances** [2] - 7:6, 23:13
**citations** [1] - 31:21
**cite** [6] - 24:21, 25:8, 25:14, 29:16, 32:4, 32:7
**cited** [9] - 15:7, 20:6, 23:18, 25:3, 25:18, 25:20, 29:11, 30:18, 30:21
**City** [6] - 3:7, 3:19, 3:24, 4:1, 25:1, 37:25
**CITY** [2] - 1:8, 2:13
**city** [5] - 34:19, 37:17, 38:5, 42:6, 43:5
**claim** [22] - 10:7, 14:4, 14:8, 14:9, 14:12, 14:14, 14:17, 14:21, 14:22, 15:5, 16:5, 16:7, 16:8, 20:16, 21:19, 22:4, 24:1, 27:15, 31:8, 31:9, 32:24
**claims** [8] - 16:21, 17:12, 18:2, 28:12, 29:6, 34:25, 37:18
**clarifications** [1] - 5:22
**Clark** [4] - 11:9, 11:11, 11:23, 12:11
**CLASS** [1] - 1:13
**class** [68] - 4:4, 4:18, 4:22, 5:18, 5:20, 6:1, 6:11, 6:19, 7:2, 7:12, 8:24, 9:3, 10:17, 10:18, 10:20, 10:23, 10:24, 13:25, 14:3, 14:6, 14:11, 16:15, 18:1, 18:11, 18:20, 19:3, 19:5, 19:11, 19:17, 19:25, 20:14, 21:2, 21:14, 22:11, 23:15, 23:25, 25:11, 25:22, 25:24, 26:1, 26:2, 26:8, 26:25, 27:9, 27:13, 28:5, 28:6, 28:15, 28:17, 28:22, 28:23, 29:1, 29:14, 30:10, 31:9, 31:18, 32:24, 35:18, 38:16, 38:20, 39:6, 39:24, 40:25, 41:14, 43:24, 44:4
**Class** [14] - 6:2, 6:11, 6:17, 7:9, 8:11, 8:13, 9:24, 10:5, 10:18, 10:22, 13:18, 19:4, 19:19, 24:6
**classes** [4] - 9:15, 22:14, 26:2, 37:14
**clean** [1] - 32:3
**clear** [12] - 4:14, 6:3, 8:8, 10:5, 12:10, 14:10, 14:17, 16:6, 24:5, 25:12, 26:24, 29:25
**clearly** [2] - 6:4, 9:2
**clerk** [1] - 44:5
**clients** [1] - 35:16
**Cline** [1] - 32:6
**close** [1] - 38:24
**code** [1] - 14:25
**Code** [2] - 15:1, 45:9
**Com** [1] - 36:17
**commander** [1] - 34:11
**commence** [1] - 41:20
**comment** [2] - 9:23, 36:22
**comments** [1] - 31:15
**common** [7] - 7:11, 7:25, 13:4, 13:7, 16:25, 20:23, 28:11
**commonality** [6] - 4:9, 13:2, 22:21, 26:5, 26:9, 28:7
**compel** [1] - 38:1
**complaint** [6] - 14:4, 14:5, 14:18, 14:20, 35:6, 36:1
**complaints** [1] - 6:18
**complete** [2] - 43:23, 44:3
**completely** [1] - 19:5
**complies** [1] - 17:19
**comply** [5] - 6:12, 7:1, 7:13, 7:15, 7:17
**concern** [1] - 5:17
**concerned** [2] - 4:21, 10:13
**concerns** [1] - 5:18
**concluded** [1] - 44:13
**concludes** [1] - 34:16
**condition** [1] - 13:4
**conditions** [3] - 10:23, 13:13, 31:7
**conduct** [3] - 17:10, 24:20, 24:25
**conducted** [1] - 24:22
**confer** [10] - 38:11, 38:12, 39:16, 41:13, 41:22, 41:25, 42:3, 42:14, 42:23, 43:1
**conference** [3] - 37:13, 39:23, 45:13
**conferences** [1] - 33:6
**conferred** [1] - 41:16
**conferring** [1] - 42:7
**confinement** [1] - 31:7
**confirm** [1] - 35:16
**conformance** [1] - 45:13
**confusion** [2] - 5:25, 14:7
**consideration** [1] - 20:8
**considerations** [1] - 22:6
**constitution** [1] - 20:9
**constitutional** [3] - 20:16, 22:8, 28:3
**CONSUELO** [1] - 1:3
**contempt** [1] - 43:7
**contending** [1] - 23:24
**continued** [2] - 30:15, 40:10
**convenience** [1] - 9:21
**convinced** [1] - 32:10
**correct** [8] - 8:16, 18:15, 21:11, 21:17, 25:3, 30:20, 45:10
**counsel** [4] - 3:9, 30:22, 38:8, 41:12
**COUNSEL** [1] - 2:1
**counter** [1] - 36:22

**county** [3] - 16:19, 34:20, 34:22
**COUNTY** [1] - 45:3
**course** [4] - 5:6, 29:8, 34:18, 39:13
**COURT** [59] - 1:1, 1:22, 3:12, 3:15, 3:18, 3:21, 3:24, 4:3, 5:24, 6:7, 7:11, 7:16, 9:4, 9:22, 10:12, 10:21, 13:17, 13:23, 16:11, 17:15, 18:10, 18:12, 18:18, 18:23, 19:16, 19:21, 20:19, 21:8, 21:11, 21:24, 25:3, 25:8, 25:10, 29:21, 30:19, 31:13, 33:2, 33:10, 33:23, 38:8, 39:5, 39:9, 39:23, 40:3, 40:6, 40:9, 40:18, 41:11, 42:10, 42:19, 42:21, 43:4, 43:10, 43:13, 43:16, 43:19, 43:22, 44:9, 44:11
**court** [1] - 44:11
**Court** [64] - 4:4, 4:6, 4:11, 4:13, 5:2, 5:7, 5:13, 7:8, 7:10, 8:10, 8:12, 8:16, 8:21, 8:22, 9:6, 9:8, 9:9, 9:15, 9:17, 9:18, 13:15, 13:21, 14:10, 15:7, 16:4, 16:9, 17:13, 17:17, 18:7, 20:6, 20:14, 23:20, 24:24, 29:16, 29:20, 30:5, 32:9, 33:3, 33:25, 34:10, 35:2, 35:18, 37:13, 37:15, 37:16, 38:8, 38:11, 38:14, 38:16, 38:21, 38:22, 39:5, 39:16, 39:18, 41:18, 42:4, 42:9, 42:15, 42:25, 43:8, 43:20, 45:7, 45:20
**Court's** [8] - 5:20, 9:21, 17:22, 23:19, 39:9, 39:15, 39:24, 41:14
**COURTROOM** [3] - 3:6, 42:18, 42:20
**courtroom** [1] - 41:24
**Courts** [2] - 5:4, 5:5
**COURTS** [1] - 42:23
**created** [4] - 14:23, 15:14, 19:13, 22:12
**creates** [1] - 15:5
**criteria** [1] - 8:9
**critical** [2] - 10:20, 16:16
**CRR** [1] - 45:20
**Crystal** [1] - 36:10
**CSR** [2] - 1:22, 45:20
**cuffed** [1] - 12:22
**cure** [1] - 5:18
**cured** [1] - 4:10
**curfew** [1] - 34:19
**current** [1] - 29:23
**custom** [1] - 16:25
**cut** [1] - 11:20
**CV** [2] - 1:7, 3:6

## D

**damages** [2] - 16:15, 38:19
**data** [1] - 30:6
**date** [7] - 7:5, 8:18, 35:4, 42:14, 43:25, 44:5, 44:7
**Date** [1] - 45:16
**dates** [3] - 19:14, 38:14, 41:19
**days** [1] - 17:9
**DC** [2] - 25:19, 25:21
**deal** [3] - 12:19, 24:15, 36:14
**dealing** [2] - 23:20, 24:3
**dealt** [2] - 8:7, 36:15
**decide** [2] - 23:3, 35:19
**decision** [9] - 9:13, 16:1, 24:13, 24:14, 24:18, 24:21, 24:22, 25:14, 29:17
**declarants** [2] - 30:2, 30:19
**declaration** [4] - 27:6, 32:14, 32:21, 36:1
**declarations** [11] - 29:22, 29:23, 30:7, 30:12, 30:14, 31:5, 31:6, 31:12, 33:13, 33:15, 35:17
**defeat** [1] - 13:2
**defendant** [2] - 5:11, 23:18
**DEFENDANT** [1] - 2:12
**defendant's** [12] - 4:20, 15:24, 18:22, 19:1, 24:8, 24:10, 25:17, 30:4, 30:25, 33:24, 38:10, 39:25
**Defendants** [1] - 1:9
**defendants** [22] - 3:20, 3:23, 4:2, 5:2, 5:14, 12:14, 13:4, 15:12, 15:17, 17:21, 23:23, 25:14, 28:19, 29:22, 29:25, 32:2, 32:6, 32:10, 33:24, 39:3, 40:1, 42:10
**defense** [2] - 17:16, 40:22
**define** [1] - 23:9
**defined** [2] - 10:23
**defining** [1] - 37:4
**definition** [5] - 10:20, 12:4, 12:14, 21:4, 26:8
**definitions** [3] - 8:24, 9:3, 19:4
**Del** [1] - 32:9
**delay** [2] - 38:16, 40:24
**demonstrates** [3] - 18:2, 31:25, 32:23
**department** [1] - 35:13
**depositions** [1] - 37:23
**DEPUTY** [3] - 3:6, 42:18, 42:20
**Deputy** [1] - 3:19
**DERMER** [3] - 2:14, 3:22, 4:1
**Dermer** [2] - 3:23, 4:2
**described** [5] - 7:6, 7:12, 10:3, 10:24, 34:1
**despite** [1] - 19:24
**detailed** [1] - 9:13
**detained** [1] - 6:13
**detention** [1] - 10:14
**determine** [3] - 23:2, 24:2, 31:24
**determined** [3] - 17:3, 31:20, 34:19
**difference** [3] - 6:16, 7:16, 33:14
**differences** [1] - 6:7
**different** [13] - 6:9, 6:14, 9:19, 21:14, 22:5, 22:19, 22:20, 23:13, 26:2, 26:3, 26:11, 36:23
**difficulties** [1] - 27:18
**direct** [1] - 33:2
**directed** [1] - 35:25
**directly** [2] - 19:8, 19:10
**disburse** [1] - 6:20
**discovery** [4] - 37:24, 37:25, 38:3, 41:20
**discuss** [6] - 31:4, 39:3, 39:4, 41:13, 41:22, 42:24
**discussed** [6] - 10:8, 11:6, 13:19, 15:11, 24:6, 26:22
**discusses** [1] - 22:25
**discussing** [1] - 20:7
**dismissal** [1] - 18:17
**disparate** [1] - 7:3
**dispersal** [12] - 19:5, 19:11, 22:11, 22:25, 33:18, 33:20, 34:8, 34:12, 34:16, 34:17, 34:22, 37:10
**disperse** [3] - 6:12, 6:23, 37:3
**disposed** [1] - 15:25
**disputable** [1] - 25:12
**dispute** [3] - 19:4, 26:4, 32:12
**disputed** [1] - 12:14
**distinct** [1] - 26:13
**distinguish** [1] - 20:4
**distinguishable** [1] - 24:14
**DISTRICT** [3] - 1:1, 1:2, 1:3
**District** [3] - 29:11, 45:7, 45:8
**diving** [1] - 5:23
**DIVISION** [1] - 1:2
**doctrine** [1] - 29:17
**document** [1] - 32:3
**documentation** [2] - 35:16, 36:7
**documenting** [1] - 32:3
**documents** [3] - 5:3, 31:20, 32:7
**done** [4] - 19:13, 22:12, 27:24, 41:21
**double** [1] - 25:4
**double-check** [1] - 25:4
**doubt** [1] - 40:23
**down** [6] - 21:5, 26:19, 35:1, 35:6, 35:18, 35:25
**downtown** [2] - 34:7, 35:12
**Dr** [1] - 11:6
**drafting** [1] - 9:10
**drawn** [1] - 35:23
**drink** [1] - 12:23
**due** [12] - 14:11, 14:21, 14:22, 15:16, 15:19, 15:21, 15:23, 16:7, 23:21, 24:10, 24:15
**duty** [2] - 32:7, 32:8

## E

**easily** [1] - 36:16
**East** [1] - 2:9
**eat** [1] - 12:23
**either** [4] - 7:14, 9:9, 18:16, 28:18
**elite** [1] - 36:21
**end** [3] - 8:23, 28:14, 42:9
**entitled** [1] - 45:12
**escaping** [1] - 14:24
**especially** [1] - 11:8
**essentially** [3] - 8:5, 29:7, 31:22
**establish** [8] - 25:23, 26:5, 27:22, 27:25, 28:1, 29:4, 30:10, 30:21
**established** [2] - 30:24, 31:3
**establishes** [2] - 13:9, 27:4
**et** [4] - 1:5, 1:8, 3:7, 26:12
**events** [3] - 6:8, 17:9, 30:1
**evidence** [22] - 9:14, 9:19, 11:3, 11:4, 12:10, 13:3, 13:6, 13:9, 17:18, 22:22, 26:23, 27:1, 27:2, 27:3, 27:5, 30:25, 32:16, 33:15, 33:23, 33:25, 34:1
**evidentiary** [1] - 9:17
**ex** [2] - 43:5, 43:6
**ex-parte** [2] - 43:5, 43:6
**exact** [1] - 27:8
**exactly** [1] - 30:20
**example** [1] - 7:18
**except** [1] - 31:1
**excessive** [3] - 14:9, 14:13, 14:14
**exist** [1] - 18:8
**existence** [1] - 31:11
**exit** [1] - 35:24
**expect** [1] - 30:2
**expedite** [1] - 18:19
**Expert** [1] - 11:9
**experts** [1] - 11:5
**explained** [3] - 11:11, 15:17, 21:2

**express** [1] - 5:17
**extensively** [1] - 15:11
**extent** [1] - 35:15
**extremely** [1] - 9:13

## F

**F.4th** [2] - 25:2, 25:9
**facial** [1] - 29:19
**fact** [11] - 10:1, 12:24, 14:17, 20:20, 21:13, 28:12, 30:12, 30:15, 31:1, 31:6, 34:17
**factfinder** [1] - 23:2
**factors** [3] - 20:7, 20:23, 22:5
**facts** [2] - 4:8, 39:1
**factually** [1] - 9:13
**failed** [1] - 29:4
**failure** [5] - 6:12, 6:20, 6:23, 16:18, 17:5
**fairness** [1] - 11:15
**far** [2] - 10:13, 39:4
**favor** [1] - 17:3
**February** [5] - 1:14, 42:16, 42:18, 42:24, 45:16
**FEBRUARY** [1] - 3:1
**Federal** [2] - 45:6, 45:20
**FEDERAL** [1] - 1:22
**fees** [1] - 43:7
**few** [2] - 38:23, 41:2
**field** [2] - 15:4, 15:23
**figure** [1] - 5:11
**file** [5] - 41:16, 42:4, 42:8, 42:15, 42:25
**filed** [11] - 4:25, 6:14, 9:1, 9:5, 9:7, 10:15, 29:23, 31:5, 37:16, 43:5
**filing** [1] - 38:21
**final** [1] - 32:13
**finish** [2] - 33:5, 40:13
**finished** [2] - 40:7, 40:9
**first** [8] - 5:1, 5:16, 17:2, 17:22, 27:16, 32:6, 35:8, 41:25
**FIRST** [1] - 1:23
**five** [6] - 23:10, 36:15, 36:25, 40:17, 40:19, 41:3
**Florida** [1] - 29:11
**Floyd** [1] - 39:14
**focused** [2] - 8:18, 31:7
**follow** [2] - 6:21, 30:16
**following** [1] - 42:25
**food** [7] - 10:25, 12:15, 12:21, 13:5, 13:12, 20:22, 21:13
**footnote** [1] - 25:20
**FOR** [3] - 1:13, 2:3, 2:12
**force** [18] - 14:9, 14:14, 14:15, 16:15, 16:18, 17:7, 17:12, 25:11, 25:24, 25:25, 26:11, 26:16, 26:19, 27:7, 27:20, 27:22, 28:10, 28:11
**foregoing** [1] - 45:10
**form** [3] - 7:19, 7:20, 10:9
**format** [1] - 45:12
**forms** [1] - 8:5
**forth** [1] - 26:25
**forward** [2] - 4:18, 42:8
**foundation** [1] - 32:17
**four** [2] - 41:5, 41:9
**Fourth** [8] - 14:3, 14:8, 14:18, 16:5, 16:6, 23:16, 23:21, 24:4
**fourth** [2] - 14:18, 16:12
**framed** [2] - 8:25, 14:3
**framework** [2] - 24:2, 24:3
**Friday** [1] - 42:20
**fundamental** [2] - 21:18, 26:1
**fundamentals** [1] - 19:7
**future** [2] - 28:18, 28:21

## G

**Gabriel** [2] - 3:22, 4:1
**GABRIEL** [1] - 2:14
**geographic** [2] - 19:14, 37:4
**Gerstein** [1] - 23:19
**given** [9] - 4:6, 34:8, 34:16, 34:18, 36:19, 37:3, 37:10, 39:1, 41:8
**governs** [1] - 23:22
**grant** [1] - 43:11
**granted** [2] - 21:7, 43:19
**gravamen** [2] - 6:18, 6:22
**Green** [1] - 2:9
**grossly** [1] - 38:6
**grounds** [1] - 20:3
**group** [5] - 22:18, 26:14, 35:7, 35:12, 36:17
**guidance** [1] - 4:6

## H

**hampered** [1] - 38:6
**handcuffed** [4] - 12:13, 12:16, 12:18, 20:11
**handcuffing** [4] - 10:24, 11:7, 11:15, 20:8
**handcuffs** [14] - 11:12, 11:17, 12:5, 12:7, 12:12, 13:10, 13:11, 19:18, 20:4, 20:12, 20:15, 20:21, 22:1, 35:8
**handful** [1] - 19:14
**hands** [1] - 12:22
**hard** [1] - 27:18
**harm** [1] - 29:5
**hear** [5] - 5:16, 7:21, 38:8, 38:15, 40:23
**heard** [2] - 36:23, 36:24
**hearsay** [1] - 32:19
**Heartsville** [1] - 36:10
**held** [3] - 31:19, 35:13, 45:11
**helpful** [2] - 5:9, 5:12
**hereby** [1] - 45:8
**history** [1] - 14:2
**Hollywood** [3] - 6:6, 35:9, 35:10
**Honor** [27] - 3:10, 3:13, 3:16, 3:19, 3:22, 5:21, 17:20, 18:16, 18:22, 19:22, 21:17, 30:8, 33:1, 33:9, 33:14, 37:19, 37:24, 38:7, 39:8, 40:2, 40:7, 42:18, 42:22, 43:12, 43:21, 44:8, 44:10
**HONORABLE** [1] - 1:3
**hour** [1] - 37:1
**HOURIGAN** [4] - 1:22, 45:6, 45:19, 45:20
**hours** [1] - 35:13
**housekeeping** [1] - 43:2

## I

**imagine** [2] - 23:8, 27:17
**imminent** [1] - 29:5
**impact** [2] - 16:3, 16:18
**important** [4] - 4:12, 11:10, 11:21, 12:12
**impossible** [2] - 23:3, 36:21
**impression** [1] - 32:15
**inadequate** [2] - 7:19, 7:24
**inadmissible** [1] - 32:19
**inadvertently** [1] - 14:19
**inapplicable** [1] - 29:18
**inappropriate** [1] - 32:25
**inaudible** [2] - 7:20, 7:23
**incident** [1] - 34:11
**incidents** [1] - 30:14
**include** [1] - 28:8
**including** [2] - 14:8, 14:18
**independent** [1] - 39:7
**individual** [7] - 8:12, 8:17, 18:4, 18:20, 27:11, 27:20, 27:21
**individual's** [1] - 27:15
**individualized** [14] - 7:10, 11:1, 12:7, 13:1, 14:15, 16:24, 18:10, 22:9, 22:17, 23:14, 24:7, 29:7, 31:22, 32:24
**individuals** [1] - 20:24
**information** [2] - 32:11, 32:20
**infraction** [8] - 10:6, 10:13, 10:18, 10:19, 13:24, 14:3, 15:2, 23:15
**infractions** [2] - 10:2, 10:4
**inherently** [1] - 20:12
**initial** [1] - 17:22
**injunction** [1] - 28:5
**injunctive** [1] - 28:22
**injury** [1] - 22:6
**inquiry** [7] - 22:10, 23:14, 25:13, 25:21, 29:7, 31:23, 32:24
**instead** [1] - 20:21
**intend** [1] - 43:11
**intends** [1] - 28:20
**interchangeable** [1] - 11:16
**interchangeably** [1] - 11:16
**interest** [6] - 14:23, 15:6, 15:15, 39:10, 39:15, 39:19
**interested** [2] - 30:17, 30:19
**Internal** [3] - 33:19, 34:14, 34:15
**intersection** [1] - 23:11
**intersections** [1] - 23:8
**interspersed** [1] - 9:1
**investigation** [2] - 34:6, 34:15
**investigator** [4] - 33:20, 34:5, 34:15, 34:18
**invite** [1] - 41:18
**invited** [1] - 4:5
**involve** [1] - 24:16
**involved** [1] - 24:16
**involving** [1] - 29:17
**issuance** [1] - 40:24
**issue** [25] - 6:23, 7:11, 14:5, 14:15, 16:12, 17:4, 17:6, 20:21, 20:25, 23:23, 25:12, 27:10, 27:13, 27:14, 28:13, 29:16, 29:25, 30:9, 31:8, 36:15, 37:12, 38:20, 43:8, 43:20, 44:6
**issued** [7] - 5:5, 5:12, 5:19, 17:19, 22:25, 39:18, 43:13
**issues** [23] - 4:17, 11:2, 13:6, 13:8, 16:17, 16:24, 17:1, 17:11, 17:13, 17:25, 25:11, 25:22, 25:24, 26:1, 26:3, 26:4, 26:12, 26:13, 27:9, 28:24, 30:3, 41:8
**issuing** [2] - 34:20, 39:24
**Item** [1] - 3:6
**itself** [1] - 6:10

## J

**Jackie** [1] - 35:11
**job** [1] - 35:5
**joint** [3] - 41:17, 42:12, 42:15
**Jonathan** [1] - 35:21
**JOSEPH** [1] - 2:14
**Joseph** [2] - 3:20, 17:20
**JUDGE** [1] - 1:3
**Judge** [1] - 35:3
**judicata** [2] - 28:16, 28:20
**judicial** [6] - 5:2, 5:6, 5:7, 17:23, 17:24, 45:13
**judicially** [1] - 18:9
**jump** [1] - 19:23
**jumping** [1] - 22:11
**June** [2] - 34:7, 34:20
**jury** [2] - 18:17, 20:16
**justice** [2] - 40:18, 41:4
**justification** [1] - 20:3

## K

**key** [3] - 23:15, 23:25, 33:14
**kind** [3] - 11:14, 27:10, 32:15
**KRUEGER** [5] - 43:2, 43:5, 43:12, 43:15, 43:21

## L

**LA** [2] - 34:7, 35:12
**labeled** [1] - 6:2
**lack** [2] - 29:2, 31:25
**lacking** [1] - 4:21
**language** [2] - 22:24, 31:7
**LAPD** [1] - 23:3
**last** [4] - 5:20, 16:12, 40:5, 43:5
**law** [7] - 8:8, 15:2, 15:8, 16:21, 20:2, 23:18, 28:12
**LAW** [1] - 2:4
**Law** [3] - 2:5, 2:8, 2:15
**lawful** [2] - 8:1, 23:2
**lawfully** [1] - 37:10
**lay** [1] - 9:2
**leads** [1] - 27:10
**least** [6] - 15:11, 34:7, 39:1, 39:9, 40:20, 41:20
**leave** [8] - 8:3, 36:16, 36:20, 36:24, 37:4, 37:5, 43:24
**leaving** [1] - 8:4
**Lee** [1] - 35:3
**legal** [5] - 20:3, 23:16, 24:2, 25:12, 32:7
**lending** [1] - 30:22
**less** [2] - 18:13, 26:21
**liability** [4] - 16:22, 16:23, 27:25, 28:2
**liberty** [3] - 14:22, 15:5, 15:14
**light** [1] - 9:12
**likelihood** [1] - 29:4
**line** [1] - 36:2
**litigation** [1] - 18:19
**LITT** [21] - 2:7, 2:8, 3:10, 5:21, 5:25, 6:17, 7:14, 7:19, 7:22, 9:11, 9:23, 10:16, 10:22, 13:18, 13:24, 16:12, 33:9, 40:7, 40:15, 41:8, 42:22
**Litt** [3] - 3:10, 20:20, 37:11
**Litt's** [1] - 19:10
**Lives** [1] - 3:7
**LIVES** [1] - 1:5
**LLP** [1] - 2:7
**location** [2] - 6:14, 7:6
**locations** [4] - 6:9, 7:3, 19:14, 22:13
**look** [5] - 18:7, 23:25, 31:6, 32:20, 43:14
**looked** [4] - 6:8, 8:21, 33:20, 43:10
**looking** [1] - 34:18
**looks** [1] - 30:6
**loosen** [1] - 11:19
**loosened** [5] - 11:17, 11:18, 22:1, 22:3, 22:7
**LOS** [7] - 1:5, 1:8, 1:15, 1:23, 2:13, 3:1, 45:3
**Los** [4] - 2:16, 3:7, 34:21
**lose** [1] - 26:9

## M

**Main** [1] - 2:15
**maintain** [1] - 32:7
**majority** [1] - 29:22
**mandate** [2] - 4:7, 4:16
**mandates** [1] - 23:16
**March** [1] - 40:12
**MARSHALL** [1] - 1:3
**mass** [4] - 11:23, 11:25, 15:18, 15:24
**Mathews** [1] - 24:12
**matter** [3] - 4:3, 43:2, 45:12
**Matter** [1] - 3:7
**MATTER** [1] - 1:5
**Matthews** [4] - 24:18, 24:20, 24:22, 24:25
**Mayorca** [2] - 23:1, 35:22
**MCLANE** [1] - 2:7
**meaningfully** [1] - 15:12
**means** [5] - 12:14, 12:22, 12:25, 36:6, 37:3
**meet** [15] - 8:9, 26:7, 26:15, 26:17, 26:18, 38:11, 38:12, 39:15, 41:13, 41:22, 41:25, 42:3, 42:14, 42:23, 42:25
**meeting** [1] - 42:6
**member** [1] - 20:14
**members** [4] - 21:14, 29:6, 29:9, 29:13
**merely** [1] - 30:22
**merits** [1] - 23:23
**met** [1] - 41:16
**might** [3] - 20:16, 22:4, 23:12
**mile** [3] - 36:20, 36:24, 37:8
**Miller** [1] - 25:1
**minute** [2] - 43:2, 44:6
**minutes** [11] - 23:10, 33:7, 36:16, 36:25, 37:2, 40:6, 40:17, 40:19, 41:3, 41:5, 41:10
**misdemeanor** [3] - 10:4, 10:6, 10:13
**misdemeanors** [3] - 9:25, 10:1, 10:2
**misinterpreting** [1] - 25:18
**mistakenly** [1] - 9:25
**moment** [2] - 13:14, 17:14
**Monell** [6] - 16:17, 16:22, 16:23, 27:14, 27:25, 28:1
**Monica** [1] - 2:6
**month** [1] - 42:16
**months** [1] - 41:2
**Moore** [3] - 17:9, 27:4, 27:6
**morning** [11] - 3:10, 3:12, 3:13, 3:15, 3:16, 3:18, 3:19, 3:21, 3:22, 4:3, 4:4
**Mosa** [1] - 11:6
**most** [2] - 5:4, 12:7
**MOTION** [1] - 1:13
**motion** [32] - 4:4, 4:17, 4:22, 4:25, 5:15, 5:18, 5:20, 6:4, 6:9, 8:25, 9:24, 11:3, 11:4, 11:10, 14:6, 14:11, 17:18, 18:25, 21:1, 21:4, 21:21, 21:22, 32:13, 35:6, 38:1, 38:2, 38:16, 39:17, 43:6, 44:4
**motions** [3] - 4:10, 29:23, 41:20
**move** [5] - 13:16, 37:23, 39:8, 39:10, 39:19
**moving** [1] - 30:10
**MR** [48] - 3:10, 3:16, 3:19, 3:22, 4:1, 5:21, 5:25, 6:17, 7:14, 7:19, 7:22, 9:11, 9:23, 10:16, 10:22, 13:18, 13:24, 16:12, 17:20, 18:11, 18:15, 18:22, 18:24, 19:19, 19:22, 20:25, 21:10, 21:17, 21:25, 25:4, 25:9, 25:11, 30:8, 30:20, 31:16, 33:9, 40:2, 40:4, 40:7, 40:15, 41:8, 42:22, 43:2, 43:5, 43:12, 43:15, 43:21, 44:10
**MS** [9] - 3:13, 33:11, 34:4, 38:18, 39:7, 39:22, 42:5, 43:18, 44:8
**must** [4] - 8:9, 15:3, 23:2, 26:25

## N

**Nadia** [1] - 36:17
**name** [2] - 14:23, 30:22
**named** [1] - 26:15
**narrows** [1] - 26:20
**nature** [1] - 22:6
**near** [1] - 37:6
**necessarily** [2] - 22:21, 27:14
**necessary** [2] - 22:17, 25:21
**necessitates** [1] - 22:9
**need** [11] - 4:14, 18:7, 24:1, 26:5, 30:10, 39:3, 40:21, 41:4, 41:21, 42:1, 43:23
**needs** [4] - 25:13, 33:8, 37:15, 39:5
**never** [4] - 14:16, 20:15, 22:3, 24:18
**new** [25] - 4:10, 4:17, 4:21, 6:1, 6:17, 11:3, 11:4, 11:20, 12:9, 13:6, 13:9, 13:18, 17:18, 18:25, 19:6, 19:12, 19:17, 21:4, 21:21, 30:12, 30:13, 31:1, 31:2, 31:9, 31:10
**next** [10] - 13:16, 40:25, 41:2, 42:7, 42:9, 42:16, 42:19, 42:20, 44:2
**Ninth** [38] - 4:7, 5:19, 9:12, 10:10, 11:1, 11:14, 12:6, 13:7, 13:19, 14:1, 14:13, 14:16, 15:10, 16:2, 16:4, 17:12, 17:19, 18:25, 19:7, 20:1, 20:2, 20:5, 20:10, 21:2, 21:23, 22:2, 22:15, 22:16, 22:24, 23:6, 24:5, 24:14, 24:21, 25:2, 25:14, 25:19, 26:24, 35:2
**NO** [2] - 1:22, 45:20
**nobody** [1] - 12:25
**non** [2] - 29:9, 29:13
**nonclass** [1] - 29:13
**none** [1] - 33:21
**normal** [1] - 38:13
**normally** [1] - 33:4
**note** [1] - 29:22
**notes** [1] - 29:21
**nothing** [1] - 31:1
**notice** [15] - 5:3, 5:6, 5:7, 7:1, 7:2, 7:14, 7:17, 7:19, 7:20, 7:22, 7:25, 8:2, 17:23, 17:24
**noticeable** [1] - 18:9
**November** [2] -

37:17, 38:21
**number** [2] - 35:3, 41:8
**numerosity** [4] - 26:5, 26:7, 26:15, 26:17

## O

**obey** [1] - 23:3
**objection** [3] - 40:2, 43:17, 43:18
**obviously** [2] - 9:8, 30:13
**occur** [1] - 39:5
**occurred** [3] - 6:8, 30:1, 30:14
**October** [1] - 37:13
**OF** [8] - 1:2, 1:8, 1:13, 2:1, 2:4, 45:1, 45:3, 45:4
**offenses** [1] - 15:2
**offered** [1] - 17:18
**Office** [1] - 3:25
**OFFICE** [2] - 2:4, 2:13
**officer** [2] - 34:12, 37:6
**officers** [9] - 11:25, 17:10, 27:7, 35:8, 35:9, 35:23, 36:2, 36:5, 36:12
**OFFICIAL** [2] - 1:22, 45:1
**Official** [1] - 45:6
**oldest** [1] - 39:12
**one** [38] - 4:9, 5:25, 6:3, 6:7, 7:18, 9:11, 11:6, 11:11, 18:17, 18:18, 19:23, 20:19, 20:23, 21:25, 22:22, 23:8, 24:14, 26:2, 26:13, 27:11, 27:18, 28:1, 29:4, 29:11, 30:6, 31:1, 32:2, 35:9, 36:11, 36:14, 37:12, 39:13, 40:12, 41:23, 43:2, 44:2
**ones** [1] - 18:4
**ongoing** [1] - 37:25
**oOo** [1] - 3:3
**opinion** [10] - 11:14, 16:2, 19:1, 19:8, 20:10, 22:15, 22:16, 23:6, 23:7, 25:19
**opinions** [1] - 5:4
**opportunity** [6] - 7:1, 7:15, 7:17, 8:3, 15:3, 41:1
**opposed** [1] - 19:18
**opposite** [4] - 4:23, 27:4, 27:8, 32:5
**opposition** [9] - 20:6, 23:18, 24:8, 25:18, 28:14, 29:3, 29:12, 30:21, 31:4
**order** [45] - 4:7, 5:19, 6:12, 6:21, 7:2, 7:13, 8:20, 9:1, 9:5, 9:9, 9:10, 9:12, 9:13, 17:19, 19:5, 19:11, 22:11, 22:25, 26:7, 33:18, 33:21, 34:9, 34:13, 34:16, 34:17, 34:22, 36:19, 36:24, 37:3, 37:16, 38:2, 38:12, 38:22, 39:17, 39:24, 40:13, 40:25, 41:12, 42:4, 42:14, 43:13, 43:14, 43:20, 44:6
**orders** [7] - 5:5, 5:12, 9:7, 9:18, 23:4, 34:19, 37:10
**ordinarily** [1] - 27:25
**organization** [2] - 29:12, 29:14
**organizational** [1] - 28:25
**organizations** [1] - 29:8
**original** [5] - 6:4, 10:22, 11:4, 14:4, 14:11
**originally** [1] - 14:3
**ought** [1] - 36:12
**outside** [1] - 41:24
**overbreadth** [1] - 29:17
**overbroad** [1] - 28:6
**overlying** [1] - 18:24
**overstated** [1] - 20:16
**own** [1] - 34:24

## P

**page** [1] - 45:12
**pain** [3] - 11:8, 13:12, 20:15
**papers** [2] - 5:23, 15:18
**part** [8] - 6:1, 6:18, 10:20, 14:7, 17:2, 21:22, 22:15, 36:17
**parte** [2] - 43:5, 43:6
**participate** [1] - 36:4
**particular** [5] - 7:7, 17:8, 26:6, 26:19, 34:6
**particularly** [2] - 9:12, 33:22
**particulars** [1] - 7:3
**parties** [10] - 4:19, 4:24, 9:7, 14:20, 38:12, 38:22, 39:15, 42:14, 42:23, 44:3
**party** [1] - 30:10
**Pasadena** [1] - 2:9
**pass** [1] - 36:5
**peacefully** [2] - 28:9, 28:10
**penal** [1] - 14:24
**Penal** [1] - 15:1
**pending** [1] - 39:23
**people** [28] - 6:22, 8:3, 8:4, 22:18, 26:11, 26:21, 28:8, 28:9, 28:10, 28:11, 31:19, 34:8, 34:21, 35:4, 35:8, 35:11, 35:12, 36:17, 36:20, 36:23, 36:25, 37:1, 37:4, 37:5, 37:7, 38:23
**perhaps** [1] - 21:23
**period** [1] - 30:3
**permeate** [1] - 16:22
**PERSOFF** [22] - 2:14, 3:19, 17:20, 18:11, 18:15, 18:22, 18:24, 19:19, 19:22, 20:25, 21:10, 21:17, 21:25, 25:4, 25:9, 25:11, 30:8, 30:20, 31:16, 40:2, 40:4, 44:10
**Persoff** [5] - 3:20, 17:20, 33:12, 36:15, 41:9
**Persoff's** [1] - 36:22
**person** [1] - 31:23
**person's** [1] - 32:23
**perspective** [1] - 39:10
**phone** [3] - 15:9, 15:15, 15:21
**photos** [1] - 35:23
**place** [4] - 6:6, 8:18, 9:21, 27:16
**placing** [1] - 20:12
**plaintiff** [2] - 23:1, 31:2
**PLAINTIFF** [1] - 2:3
**plaintiff's** [8] - 4:4, 4:23, 6:10, 10:14, 17:3, 18:25, 21:19, 43:6
**Plaintiffs** [1] - 1:6
**plaintiffs** [46] - 3:11, 3:14, 3:17, 4:25, 5:1, 5:16, 19:3, 19:13, 19:17, 21:3, 21:25, 22:12, 22:18, 23:1, 24:1, 24:13, 25:6, 25:14, 25:17, 25:23, 26:8, 26:16, 26:18, 26:22, 26:23, 26:24, 27:3, 27:20, 27:21, 28:4, 28:25, 29:1, 29:15, 29:16, 30:9, 30:21, 31:2, 31:18, 32:2, 32:7, 32:14, 33:3, 39:21, 40:5, 40:20, 43:17
**PLAINTIFFS'** [1] - 1:13
**plan** [1] - 38:22
**pleading** [1] - 26:25
**point** [18] - 8:15, 8:22, 9:6, 9:11, 12:11, 12:24, 13:22, 18:21, 18:22, 21:16, 21:18, 21:25, 22:2, 23:25, 29:15, 30:4, 32:13, 40:4
**pointing** [1] - 30:4
**points** [2] - 19:10, 31:16
**Police** [1] - 11:9
**police** [1] - 6:21
**policy** [1] - 16:25
**position** [14] - 4:20, 4:23, 6:10, 6:25, 7:25, 10:14, 19:1, 24:10, 25:17, 31:1, 38:4, 38:10, 38:23, 39:25
**possible** [1] - 28:14
**Practices** [1] - 11:9
**precedent** [1] - 20:2
**precludes** [2] - 20:18, 22:8
**predominance** [6] - 13:2, 22:9, 25:13, 25:21, 25:24, 31:25
**predominant** [1] - 13:8
**prefatory** [1] - 9:23
**preparation** [1] - 41:13
**prepare** [2] - 38:12, 39:16
**prepared** [2] - 38:6, 42:2
**preparing** [3] - 37:22, 38:18, 42:13
**preponderance** [1] - 30:25
**present** [1] - 38:15
**presented** [4] - 6:1, 9:14, 12:10, 13:3
**presumption** [1] - 39:1
**presumptively** [1] - 37:3
**pretrial** [1] - 33:6
**pretrials** [1] - 40:11
**prevail** [1] - 28:19
**prevent** [1] - 42:6
**prevented** [1] - 8:4
**primarily** [1] - 10:23
**primary** [1] - 15:7
**principle** [1] - 22:16
**priority** [1] - 40:13
**probable** [4] - 22:17, 23:4, 23:24, 24:4
**problem** [3] - 26:1, 34:13, 35:22
**procedural** [2] - 16:7, 24:10
**proceed** [2] - 10:21, 27:11
**proceedings** [2] - 44:13, 45:11
**process** [11] - 14:12, 14:21, 14:22, 15:16, 15:19, 15:21, 16:7, 23:21, 24:10, 24:15, 35:14
**processes** [2] - 15:21, 15:23
**proof** [1] - 16:25
**propose** [1] - 9:2
**proposed** [12] - 8:19, 9:1, 9:5, 9:6, 9:8, 9:18, 16:16, 17:1, 22:14, 25:25, 30:10, 43:14
**proposition** [3] - 24:24, 25:20, 32:5
**propriety** [1] - 24:16
**prosecute** [1] - 30:11
**prosecuting** [2] - 30:17, 31:3
**protective** [1] - 38:2
**protest** [6] - 28:8, 28:9, 28:10, 28:18, 28:20, 39:14
**protested** [2] - 28:9, 28:18
**protesting** [1] - 34:21
**protests** [3] - 18:3, 36:4, 39:13
**prove** [3] - 24:1, 36:8
**provide** [2] - 9:17, 12:21
**provided** [11] - 7:22, 8:19, 8:23, 9:9, 10:25, 11:3, 13:4, 15:3, 15:8, 15:20, 33:24

**proxy** [1] - 38:24
**Pugh** [1] - 23:19
**pull** [1] - 12:1
**purported** [1] - 8:6
**purpose** [2] - 17:24, 42:13
**pursuant** [1] - 45:9
**push** [1] - 42:8
**put** [5] - 9:20, 11:18, 11:20, 35:8, 36:1
**putting** [2] - 11:25, 25:25

## Q

**qualifies** [1] - 12:4
**questioning** [1] - 4:7
**questions** [7] - 13:15, 13:17, 13:21, 13:23, 16:10, 29:20, 31:14
**quickly** [3] - 12:1, 37:12, 39:17
**quintessential** [1] - 18:9
**quite** [1] - 38:23
**quote** [1] - 20:11

## R

**radio** [2] - 33:17, 34:10
**raise** [1] - 37:12
**raised** [6] - 13:7, 15:17, 17:11, 23:1, 24:8, 25:6
**rather** [2] - 9:10, 18:20
**ratification** [6] - 16:17, 16:21, 26:22, 26:23, 27:3, 27:8
**ratified** [1] - 17:9
**re** [1] - 5:19
**read** [3] - 4:16, 5:10, 9:3
**ready** [1] - 37:18
**real** [1] - 6:16
**realistically** [1] - 41:8
**reality** [1] - 32:16
**really** [6] - 14:11, 15:12, 15:24, 16:2, 17:6, 42:8
**Realtime** [1] - 45:6
**reason** [3] - 4:5, 19:24, 35:1
**reasoning** [2] - 18:7, 20:1
**reasons** [3] - 10:7, 22:19, 29:2
**received** [1] - 22:20
**recent** [1] - 25:19
**recess** [1] - 43:22
**recognizing** [1] - 21:23
**recollection** [1] - 15:12
**record** [3] - 21:11, 43:20, 44:12
**records** [3] - 31:21, 34:24
**referenced** [1] - 6:9
**referred** [2] - 14:19, 33:11
**regard** [1] - 9:24
**regarding** [4] - 13:7, 16:17, 27:6, 30:14
**regardless** [3] - 8:10, 10:6, 39:20
**regulations** [1] - 45:13
**relate** [1] - 39:14
**related** [1] - 6:19
**relates** [1] - 17:24
**relation** [1] - 24:6
**release** [1] - 15:23
**released** [2] - 6:13, 15:3
**relevance** [1] - 18:6
**relief** [1] - 28:22
**rely** [1] - 32:14
**remove** [2] - 11:20, 12:19
**removed** [6] - 14:20, 20:15, 21:4, 21:8, 21:12, 22:7
**renewing** [1] - 30:15
**repeating** [1] - 22:24
**reply** [5] - 6:5, 14:10, 25:7, 29:15, 31:18
**report** [12] - 11:24, 33:19, 37:16, 38:13, 39:16, 41:14, 41:17, 42:4, 42:13, 42:15, 42:24, 42:25
**reported** [1] - 45:11
**REPORTER** [3] - 1:22, 7:21, 45:1
**reporter** [1] - 44:11
**Reporter** [2] - 45:7, 45:20
**REPORTER'S** [1] - 1:13
**reports** [1] - 33:16
**represent** [2] - 29:9, 29:13
**representatives** [1] - 30:11
**reps** [1] - 29:1
**request** [5] - 5:2, 17:23, 17:24, 21:6, 21:15
**requested** [4] - 21:5, 21:12, 22:3, 22:7
**requesting** [1] - 39:21
**requests** [2] - 12:15, 13:13
**require** [5] - 23:13, 29:7, 34:3, 34:4, 34:5
**required** [1] - 32:24
**requirements** [1] - 4:8
**res** [2] - 28:16, 28:19
**resolve** [2] - 27:13, 28:12
**resolved** [2] - 18:4, 18:12
**resolving** [2] - 18:2, 27:15
**respond** [8] - 19:9, 29:15, 33:24, 36:22, 37:11, 40:16, 40:21, 41:5
**responded** [1] - 18:25
**response** [4] - 23:1, 25:6, 37:21, 40:8
**responses** [2] - 24:9, 37:20
**rest** [1] - 37:11
**restroom** [1] - 12:17
**result** [2] - 27:10, 28:15
**revamped** [1] - 16:13
**review** [1] - 9:6
**reviewed** [1] - 31:23
**reviewing** [1] - 29:21
**revised** [1] - 8:19
**RJN** [1] - 18:2
**Robinson** [1] - 35:11
**Roger** [1] - 11:9
**Room** [1] - 2:15
**ROOM** [1] - 1:23
**rooms** [1] - 41:24
**Rowland** [1] - 3:17
**ROWLAND** [2] - 2:5, 3:16
**RPR** [1] - 45:20
**Rule** [8] - 8:10, 37:20, 38:13, 39:16, 39:23, 41:13, 42:12, 42:24
**rules** [2] - 4:13, 5:6
**ruling** [9] - 5:20, 10:10, 20:6, 21:23, 28:15, 38:15, 41:14, 43:7, 43:9

## S

**Santa** [1] - 2:6
**schedule** [5] - 37:14, 37:15, 38:9, 38:11, 38:17
**Scottsdale** [1] - 25:1
**second** [4] - 8:19, 9:5, 12:11, 32:9
**Section** [1] - 45:9
**see** [6] - 16:9, 17:17, 29:21, 29:25, 30:6, 42:12
**seeing** [1] - 39:19
**seeking** [5] - 16:14, 22:18, 28:25, 29:5, 29:9
**seem** [1] - 5:4
**sense** [1] - 30:13
**separately** [1] - 26:15
**served** [1] - 37:24
**serving** [1] - 38:3
**set** [12] - 26:25, 27:19, 35:13, 37:13, 37:14, 37:15, 38:8, 38:14, 40:11, 40:12, 41:2, 41:18
**Seth** [1] - 3:22
**SETH** [1] - 2:14
**setting** [1] - 38:17
**settlement** [1] - 18:16
**several** [1] - 7:4
**short** [1] - 42:16
**shot** [2] - 38:24, 40:15
**side** [4] - 9:9, 23:9, 23:11, 25:25
**sides** [1] - 44:6
**sight** [1] - 23:7
**significant** [1] - 13:11
**simply** [3] - 20:10, 24:23, 26:24
**single** [1] - 9:21
**situation** [6] - 6:22, 11:23, 11:25, 12:9, 13:1, 26:6
**situations** [1] - 12:7
**six** [2] - 37:25, 40:6
**so-called** [1] - 21:14
**SOBEL** [11] - 2:4, 2:4, 3:13, 33:11, 34:4, 38:18, 39:7, 39:22, 42:5, 43:18, 44:8
**Sobel** [6] - 3:13, 27:6, 32:14, 32:17, 33:11, 38:15
**someone** [10] - 7:24, 20:11, 20:12, 21:5, 21:12, 22:3, 22:21, 22:23, 23:9, 23:11
**soon** [1] - 42:1
**sorry** [1] - 8:13
**sort** [2] - 11:15, 28:14
**sounds** [2] - 40:20, 41:11
**Southern** [1] - 29:11
**specific** [3] - 7:5, 29:20
**specifically** [1] - 18:8
**Stadium** [1] - 35:11
**stand** [1] - 24:24
**standard** [1] - 23:16
**standing** [7] - 23:9, 23:11, 28:24, 29:2, 29:6, 29:16, 37:6
**start** [1] - 19:11
**STATE** [1] - 45:4
**state** [3] - 3:9, 14:22, 16:21
**STATES** [1] - 1:1
**States** [3] - 45:7, 45:9, 45:14
**station** [1] - 36:11
**statute** [7] - 14:23, 15:1, 15:5, 15:14, 15:20, 29:18, 29:19
**stay** [2] - 43:6, 43:8
**stenographically** [1] - 45:11
**step** [1] - 20:19
**still** [11] - 4:21, 8:17, 10:14, 19:8, 19:25, 20:21, 22:16, 23:4, 26:5, 30:17, 30:19
**stop** [3] - 13:14, 16:9, 27:7
**stopped** [1] - 34:19
**streamlined** [2] - 18:1, 32:16
**Street** [2] - 2:9, 2:15
**STREET** [1] - 1:23
**stuff** [1] - 32:19
**sub** [1] - 22:12
**subclass** [6] - 7:12, 8:9, 8:11, 8:13, 8:17, 36:11
**Subclass** [4] - 6:5, 7:4, 7:9
**subclasses** [8] - 7:4, 7:9, 8:8, 8:9, 8:12, 19:14, 22:13, 23:9
**subject** [2] - 14:5, 26:16
**subjected** [4] - 26:11, 26:19, 28:10,

28:11
**submit** [2] - 30:12, 30:13
**submitted** [3] - 27:3, 31:11, 32:21
**subsequent** [1] - 24:21
**subsequently** [1] - 6:13
**substantially** [1] - 32:14
**substantiated** [1] - 35:7
**sufficient** [2] - 4:8, 23:10
**suggest** [2] - 8:23, 38:21
**suggesting** [1] - 25:15
**suggests** [2] - 24:23
**summarize** [1] - 13:9
**summary** [1] - 10:9
**superiority** [2] - 17:25, 27:10
**support** [6] - 4:8, 9:18, 17:18, 29:23, 32:4, 34:24
**supposed** [1] - 18:1
**Supreme** [3] - 23:19, 23:20, 29:16

**T**

**talks** [1] - 23:20
**ten** [1] - 26:21
**tension** [1] - 26:7
**terabytes** [1] - 37:25
**terms** [1] - 37:9
**TERRI** [4] - 1:22, 45:6, 45:19, 45:20
**testify** [2] - 32:18, 34:5
**testimony** [3] - 34:3, 34:4, 35:9
**text** [1] - 31:6
**THE** [64] - 2:3, 2:12, 3:6, 3:12, 3:15, 3:18, 3:21, 3:24, 4:3, 5:24, 6:7, 7:11, 7:16, 7:21, 9:4, 9:22, 10:12, 10:21, 13:17, 13:23, 16:11, 17:15, 18:10, 18:12, 18:18, 18:23, 19:16, 19:21, 20:19, 21:8, 21:11, 21:24, 25:3, 25:8, 25:10, 29:21, 30:19, 31:13, 33:2, 33:10, 33:23, 38:8, 39:5, 39:9, 39:23, 40:3, 40:6, 40:9, 40:18, 41:11, 42:10, 42:18, 42:19, 42:20, 42:21, 42:23, 43:4, 43:10, 43:13, 43:16, 43:19, 43:22, 44:9, 44:11
**theory** [1] - 16:3
**therefore** [2] - 18:18, 23:3
**thinking** [1] - 18:18
**thinks** [2] - 5:11, 39:18
**third** [1] - 9:23
**throughout** [1] - 17:4
**tie** [1] - 31:18
**tied** [2] - 12:25, 19:25
**ties** [21] - 11:13, 11:15, 11:18, 11:20, 11:22, 12:20, 13:10, 19:16, 19:20, 20:4, 20:5, 20:17, 20:20, 21:6, 21:8, 21:12, 22:1, 31:19, 31:24, 36:13
**tight** [6] - 11:7, 12:4, 12:7, 13:10, 20:8, 20:12
**tighten** [2] - 12:2, 12:3
**tightened** [6] - 11:17, 12:3, 12:12, 13:11, 21:6, 21:9
**tightly** [2] - 11:18, 20:11
**Title** [1] - 45:9
**today** [2] - 40:23, 41:23
**together** [2] - 22:18, 39:1
**took** [2] - 6:6, 35:16
**top** [2] - 29:8, 34:14
**totally** [2] - 16:13, 39:7
**train** [2] - 16:18, 17:5
**TRANSCRIPT** [1] - 1:13
**transcript** [2] - 45:10, 45:12
**transmission** [1] - 34:11
**transmissions** [1] - 33:17
**transport** [1] - 31:20
**transported** [1] - 33:17
**treat** [1] - 26:14
**treated** [1] - 36:12
**trial** [19] - 18:5, 27:11, 27:18, 27:22, 27:25, 28:1, 28:19, 32:17, 32:22, 37:14, 37:15, 37:18, 37:22, 38:6, 38:9, 38:17, 38:18, 40:12, 42:6
**trials** [3] - 17:2, 27:13, 41:2
**tried** [7] - 5:17, 9:2, 9:17, 9:20, 33:20, 38:25, 39:2
**true** [6] - 12:8, 12:9, 17:8, 30:6, 33:13, 45:10
**try** [6] - 5:10, 33:5, 38:19, 38:20, 39:10, 40:21
**trying** [5] - 4:6, 18:19, 19:15, 21:11, 40:15
**turning** [1] - 23:15
**two** [12] - 11:4, 24:18, 26:6, 27:12, 29:2, 29:5, 29:8, 31:16, 32:4, 33:6, 35:21, 40:11
**types** [1] - 26:11
**typicality** [1] - 4:9

**U**

**U.S** [2] - 1:3, 23:19
**unconradicted** [1] - 11:24
**unconstitutional** [2] - 20:13, 27:23
**under** [6] - 5:6, 13:13, 15:1, 24:3, 24:9, 32:6
**underlying** [3] - 6:23, 19:7, 28:2
**understood** [1] - 10:10
**undertaken** [1] - 25:13
**undisputable** [1] - 37:9
**United** [3] - 45:7, 45:9, 45:14
**UNITED** [1] - 1:1
**unlawful** [1] - 8:6
**unless** [6] - 13:1, 13:21, 17:13, 29:20, 36:21
**unlike** [1] - 22:1
**unnecessary** [1] - 11:8
**unsurprisingly** [1] - 19:1
**up** [5] - 10:5, 23:10, 33:5, 35:14, 38:22
**update** [1] - 37:20
**urge** [1] - 9:14

**V**

**Valentino** [1] - 25:16
**Valle** [1] - 32:9
**verdict** [1] - 18:17
**versus** [3] - 3:7, 20:4, 25:1
**video** [3] - 31:21, 33:16, 35:7
**view** [1] - 15:25
**vigorously** [2] - 30:11, 31:3
**violates** [1] - 20:8
**violation** [7] - 15:10, 15:15, 15:16, 22:8, 22:23, 27:16, 28:3
**virtually** [1] - 13:3
**virtue** [1] - 12:24
**vs** [1] - 1:7

**W**

**waiting** [1] - 40:14
**wants** [1] - 37:17
**warranted** [1] - 32:1
**water** [8] - 10:25, 12:15, 12:21, 13:5, 13:12, 20:22, 21:13, 21:19
**ways** [1] - 11:10
**weapons** [4] - 35:23, 36:3, 36:5, 36:13
**WEDNESDAY** [1] - 3:1
**Wednesday** [1] - 1:14
**week** [7] - 42:7, 42:9, 42:16, 43:5, 44:1, 44:2
**WEST** [1] - 1:23
**Weston** [1] - 3:16
**WESTON** [1] - 2:5
**whereas** [1] - 18:4
**whole** [5] - 6:19, 7:2, 7:8, 8:11, 8:14
**willing** [3] - 39:4, 41:6, 42:7
**Wilshire** [1] - 2:6
**witness** [1] - 41:24
**witnesses** [1] - 38:5
**works** [1] - 44:3
**worn** [3] - 31:21, 33:16, 35:7
**wrist** [1] - 12:4
**wrongful** [2] - 8:5, 10:7

**Y**

**year** [1] - 20:6
**years** [1] - 18:5
**yesterday** [2] - 8:19, 9:5

**Z**

**zip** [24] - 11:13, 11:15, 11:18, 11:20, 11:22, 12:20, 12:25, 13:10, 19:16, 19:20, 19:25, 20:4, 20:5, 20:17, 20:20, 21:6, 21:8, 21:12, 22:1, 31:18, 31:19, 31:24, 36:13
**zone** [1] - 37:4